Mariah Gondeiro, Esq., CA Bar No. 323683
mgondeiro@faith-freedom.com
Julianne Fleischer, Esq., CA Bar No. 337006
jfleischer@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Tel:   (951) 600-2733
Fax:  (951) 600-4996

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OUR WATCH WITH TIM THOMPSON,** a California non-profit organization;<br><br>       Plaintiff,<br><br>   vs.<br><br>**ROB BONTA**, the attorney general of California;<br><br>      Defendants. | Case No.:<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      This action seeks to vindicate one of the most fundamental and longstanding constitutional rights: the right of parents to raise their children. *See, e.g.*, *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925) ("The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); *Troxel v. Granville*, 530 U.S. 57, 72-73 (2000) ("[A] State [may not]

**1**

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made.").

2.    California recently passed Senate Bill ("SB") 107, which violates the right of parents to direct the upbringing and care of their child. SB 107 allows minors to obtain gender transition procedures like harmful puberty blockers, cross-sex hormones, and irreversible surgeries without parental consent, while denying parents access to their child's medical information. The bill also allows California to exercise "emergency jurisdiction" over minors seeking gender dysphoria treatment.

3.    Court precedent affirms the right of parents to make medical decisions for their children. "The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000); *see also Calabretta v. Floyd*, 189 F.3d 808 (9th Cir.1999) (holding that "[t]he government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents.").

4.    Parents, not the government, are best suited to decide whether their child should undergo a life-altering and irreversible surgery that seeks to change the sex of the child.

5.    For instance, research reveals that 80 to 95 percent of children who experience gender confusion will ultimately embrace their biological sex if they are not encouraged to pursue gender identity treatments.[1]  Even transgender activist

---

[1] E.g., Kenneth J. Zucker, *Gender Dysphoria in Children and Adolescents*, in PRINCIPLES AND PRACTICES OF SEX THERAPY 395,407 (6th ed., 2020), available at https://www.sribd.com/document/516620519/Principles-and-Practice-of-Sex-Therapy-Sixth-Edition-by-Kathryn-S-K-Hall-Yitzchak-M-Binik; Stephen B. Levine, *Reflections on the Clinician's Role with Individuals Who Self-identify as Transgender*, Arch. Sex. Behav. (2021), Available at https://doi.org/10.1007/s10508-021-02142-1.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

organizations recommend that health professionals defer to parents "as they work through the options and implications" of gender dysphoria in their child. [2]

6.     SB 107 also violates the Full Faith and Credit Clause to the United States Constitution, which requires California to defer to the laws and jurisdiction of the 49 other states regarding the care and custody of children. SB 107 overrides the jurisdiction of courts in a family's home state that are usually the proper forum for custody determinations by allowing California courts to take emergency jurisdiction to make custody determinations over a child struggling with gender dysphoria. California has decided that its courts—not those of the family's home state—should be the final arbiters of whether parents are fit to raise their child.

7.     California has neither a legitimate nor legal interest in exceeding its jurisdiction by taking deeply personal, intimate, and life-altering medical decisions of out of state children into their own hands.

8.     Plaintiff Our Watch With Tim Thompson is a 501(c)(3) organization dedicated to protecting family and parental rights in California. Our Watch With Tim Thompson has had to divert organizational resources to address the effects of SB 107, including implementing education programs and designing and disseminating literature and podcasts to reach churches and parents outside of California.

9.     Immediate relief is necessary to prevent the State of California from permanently harming minors, hiding medical information from parents, taking away custody of children from their own parents, and denying courts of the family's home state the ability to exercise its rightful jurisdiction over the case.

---

[2] World Professional Association for Transgender Health, Standards of Care for the Health of Transexual, Transgender, and Gender-Nonconforming People at 17 (version 7, 2012) ("WPATH Guidelines"), available at https://www.wpath.org/media/cms/Documents/SOC%20v7/SOC%20V7_English2012.pdf?_t=613669341.

10.     Accordingly, Plaintiff seeks declaratory relief holding SB 107 unconstitutional, injunctive relief preventing further enforcement of SB 107, and reasonable attorneys' fees.

## PARTIES – PLAINTIFFS

11.     Plaintiff OUR WATCH WITH TIM THOMPSON ("Our Watch"), governed by Pastor Tim Thompson, is a California non-profit public benefit corporation committed to protecting family and parental rights, religious liberty, and the right to life across California. Our Watch accomplishes its mission through legislative advocacy, education of California citizens, and mobilization of California citizens to get involved in community events.

12.     Specifically, Our Watch's mission is committed to tackling major cultural issues, including the sexual indoctrination of children, critical race theory, and abortion rights. Our Watch firmly believes that transgenderism is a cultural issue that it must deal with in accordance with God's design for every child, as outlined in the Bible. SB 107 conflicts with Our Watch's mission by allowing children, without parental consent, to change their identity and therefore God's design for their life.

13.     Our Watch is directly harmed by SB 107. Since the enactment of SB 107, Our Watch has diverted resources from its other focus areas like critical race theory and abortion rights to counteract the harms of SB 107. The organization has implemented new educational outreach programs outside of California and even funded de-transitioning teenagers to come on the organization's podcast to speak on the issue.

14.     Our Watch has also diverted resources, so it can reach parents and churches in other states through its podcast and literature. Specifically, Our Watch has hired individuals to warn parents and churches in California and outside of California about the devastating effects of SB 107 and to explain how parents and churches can protect their children.

15.     SB 107 was the primary catalyst that prompted Our Watch to focus intently on educating parents and churches about transgender issues. The bill has caused Our

Watch to divert time and attention from its other focus areas and activities like legislative advocacy. Thus, Our Watch is not just continuing with normal business. Although counteracting SB 107 aligns with Our Watch's mission, the bill has caused Our Watch to shift its focus from education of California residents to education of out of state residents. The bill has also caused Our Watch to divert time and attention from other issues, causes, and activities that align with its mission.

## PARTIES – DEFENDANTS

16.     Defendant ROB BONTA is the Attorney General of California and is sued in his official capacity. His authority is delegated to him by Article V, section 13 of the California Constitution and is authorized to enforce SB 107.

## JURISDICTION AND VENUE

17.     This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments and the Full Faith and Credit Clause, and under federal law, particularly 42 U.S.C. § 1983.

18.     This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because all Defendant are situated in this judicial district.

## FACTUAL BACKGROUND

**Gender Dysphoria In Children**

20.     "Gender dysphoria" refers to the psychological distress often associated with the mismatch between a person's biological sex and his or her perceived gender identity. Gender dysphoria is a serious mental health condition that requires professional help.

21.     Multiple studies have found that approximately 80-95% of children who experience gender dysphoria ultimately find comfort with their biological sex and cease

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

experiencing gender dysphoria as they age if they are not encouraged to pursue gender identity treatments. *E.g.*, Zucker, *supra* ¶ 4, at 407 (summarizing studies); Levine, *supra* ¶ 4 (same).

22.    There is a disagreement in the medical community about the proper approach when a child experiences gender dysphoria, specifically whether a social gender transition is appropriate for children. Some mental health professionals believe that socially transitioning to a different gender identity during childhood, and affirmation of that alternative identity by adults, can become self-reinforcing and have profound long-term effects on the child's psyche and identity. *E.g.*, Kenneth J. Zucker, *The Myth of Persistence: Response to "A Critical Commentary on Follow-Up Studies & 'Desistance' Theories about Transgender and Non-Conforming Children" by Temple Newhook et al.*, 19:2 Int'l J. of Transgenderism 231 (2018)[3] ("I would argue that parents who support, implement, or encourage a gender social transition (and clinicians who recommend one) are implementing a psychosocial treatment that will increase the odds of long-term persistence.")

23.    Other medical and psychiatric professionals believe that the best response is to affirm a child's perceived gender identity and to support a social transition to that identity.

24.    However, medical professionals on both sides of the debate generally agree that social transitions are a significant psychotherapeutic intervention that can drastically change outcomes in children.

25.    Given the lack of evidence on long-term outcomes and divergent views on this sensitive issue, the World Health Professional Association for Transgender Health ("WPATH"), a transgender advocacy organization, recommends that health professionals defer to *parents* "as they work through the options and implications," even

---

[3] Kenneth J. Zucker, *The Myth of Persistence: Response to "A Critical Commentary on Follow-Up Studies & 'Desistance' Theories about Transgender and Non-Conforming Children" by Temple Newhook et al.*, 19:2 Int'l J. of Transgenderism 231 (2018). Available at https://www.researchgate.net/publications/325443416.

if they ultimately "do not allow their young child to make a gender-role transition." WPATH Guidelines, *supra* ¶ 4, at 17.

26.     If medical professionals agree that social transitions are a significant intervention for children, medical transitions are even more significant. Yet, many clinics in the United States are quick to offer irreversible medical treatment, including puberty blocking hormones and gender reassignment surgeries, to kids who would otherwise outgrow their gender-questioning. These treatments are offered despite known long-term and often irreversible side effects.

27.     For example, puberty blocking hormones can permanently alter neurodevelopment, sexual function, and bone development in children. *See* Jorgensen, S.C.J., Hunter, P.K., Regenstreif, L., Sinai, J. and Malone, W.J. (2022), *Puberty blockers for gender dysphoric youth: A lack of sound science*. J Am Coll Clin Pharm, 5: 1005-1007, at 1005 (citing studies).[4] Further, it has been suggested that puberty suppression may alter the course of gender identity development, essentially "locking in" a gender identity that may have reconciled with biological sex during the natural course of puberty. *Id.*

28.     There is no doubt that gender reassignment surgery causes life-long, irreversible side effects in children. Girls as young as 14[5] can have their breasts permanently cut off. While reconstruction surgeries are available, girls are left with permanent scars and disfigurement and a lack of function and sensation in their breasts.

29.     No large-scale, long-term studies have tracked the incidence of detransition and regret among patients who received gender-affirming medical treatment as minors. This is due in large part to these subjects being untouchable within the medical and

---

[4] Jorgensen, S.C.J., Hunter, P.K., Regenstreif, L., Sinai, J. and Malone, W.J. (2022), *Puberty blockers for gender dysphoric youth: A lack of sound science*. J Am Coll Clin Pharm, 5: 1005-1007, at 1005. Available at  https://doi.org/10.1002/jac5.1691

[5] *See* Peter Rowe (April 14, 2016) *Surgery Unburdens Transgender Boy*. LA Times. Available at:  https://www.latimes.com/local/california/la-me-transgender-teen-20160414-story.html (discussing story of 14 year old girl who received gender reassignment surgery).

research communities. However, preliminary studies in the United States have shown that more than a quarter of patients who started gender-affirming hormones before age 18 stopped getting refills for their medication within four years. *See* Christina M Roberts, David A Klein, Terry A Adirim, Natasha A Schvey, Elizabeth Hisle-Gorman, Continuation of Gender-affirming Hormones Among Transgender Adolescents and Adults, *The Journal of Clinical Endocrinology & Metabolism*, Volume 107, Issue 9, September 2022, Pages e3937–e3943.[6]

30.     While there are no long-term studies reflecting the incidence of regret and detransition in minors, there exists countless lived experiences of minors who socially or medically transitioned and later reversed course. Chloe Cole is one such example.[7]

31.     Cole was 13 when doctors placed her on puberty blockers, followed a few weeks later by testosterone. At 15, Cole wanted breast removal surgery. Her parents wanted her to wait until she was older to undergo such treatment; however, doctors readily agreed to a double mastectomy for Cole.

32.     In June 2020, surgeons performed a mastectomy on Cole – just one month before her sixteenth birthday. Less than a year later, Cole regretted her surgery and medical transition following a discussion about breastfeeding and pregnancy. Cole has reconciled with her biological sex, but she is still suffering with long-term effects from her surgery, including severed nerve endings, permanent changes in pigmentation, and fluid emission.[8] Cole regrets that this surgery stripped her of "the beauty of motherhood"

---

[6] Christina M Roberts, David A Klein, Terry A Adirim, Natasha A Schvey, Elizabeth Hisle-Gorman, Continuation of Gender-affirming Hormones Among Transgender Adolescents and Adults, *The Journal of Clinical Endocrinology & Metabolism*, Volume 107, Issue 9, September 2022, Pages e3937–e3943. Available at https://doi.org/10.1210/clinem/dgac251.

[7] Robin Respaut, Chad Terhune, Michelle Conlin (December 22, 2022) *Why Detransitioners are Crucial to the Science of Gender Care.* Reuters. Available at: https://www.reuters.com/investigates/special-report/usa-transyouth-outcomes/ (telling Cole's story of transition and detransition as a minor).

[8] Edie Hepel (September 24, 2022) *Meet Chloe Cole, The 18-Year-Old Leading The Fight To Protect Children From Transgender Surgeries.* Catholic News Agency. https://www.catholicnewsagency.com/news/252376/chloe-cole-leading-fight-to-protect-children-from-transgender-surgeries (Cole speaks of the long-term effects of her surgeries).

at an age when she was not able to fully comprehend the loss. Cole now speaks out publicly to end gender-affirming care for minors.

33.     There are many other stories like Cole's, including Max Robinson and Max Lizzara[9], which reflect that gender-affirming healthcare for minors is a nuanced and sensitive issue – one that parents should be intimately involved in.

**Senate Bill 107**

34.     On September 29, 2022, Governor Gavin Newsom signed into law SB 107, rendering California a sanctuary state. The law allows minor children from any state to obtain puberty blockers and cross-sex hormones and undergo irreversible surgeries without parental involvement.

35.     SB 107 was initially drafted by Senator Scott Wiener "in response to recent executive and legislative action in states like Alabama and Texas" that have banned minors from receiving sterilizing puberty blockers, cross-sex hormones, and transgender surgeries or that have labeled these treatments as child abuse. A true and correct copy of Senator Wiener's statement is attached hereto as Exhibit 1.

36.     For example, Arizona recently passed a law that requires transgender kids to wait until 18 to receive gender reassignment surgery. Discussing the bill, Governor Doug Doucey stated, "The reason is simple, and common sense – this is a decision that will dramatically affect the rest of an individual's life, including the ability of that individual to become a biological parent later in life."[10]

37.     In Texas, it is now considered child abuse to subject children to a wide variety of medical treatments for gender transitioning, including reassignment surgeries and administration of puberty-blocking drugs or supraphysiologic doses of testosterone or estrogen. Texas Governor Greg Abbott and Attorney General Ken Paxton specifically

---

[9] *Supra* 7.

[10] Dani Birzer (March 30, 2022) *Arizona Governor Signs Two Bills Impacting Transgender Minors.* The Associated Press. Available at https://www.kold.com/2022/03/30/arizona-governor-signs-two-bills-impacting-transgender-minors/  (discussing Arizona's Senate Bill 1138).

highlighted "issues of physical and emotional harm associated with these procedures and treatments" and noted every child's fundamental right to procreation.[11]

38.     Governor Newsom signed SB 107 into law because "[s]tates across the country [were] passing laws to demonize the transgender community…." The bill is a direct attack on the laws and policies of other states like Alabama and Texas.

39.     SB 107 prohibits California courts from enforcing "a law of another state that authorizes a state agency to remove a child from their parent or guardian based on the parent or guardian allowing their child to receive gender-affirming health care." S.B. 107 § 8.

40.     SB 107 will allow California doctors, via telehealth appointments, to prescribe cross-sex hormones to children in South Dakota or Utah, where gender-reassignment treatment is banned.

41.     SB 107 also denies parents the right to access their child's medical information. Section 1 of the bill mandates that doctors conceal a child's medical information from parents if it is related to "gender identity" drugs and procedures. S.B. 107 § 1.

42.     Section 2 prohibits a parent from enforcing another state's legal process in California to obtain medical information regarding their child as it relates to "gender-affirming health care" or "gender-affirming mental health care:" "no subpoena shall be issued pursuant to this section if the foreign subpoena is based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care." S.B. 107 § 2(e).

43.     Section 5 of SB 107 gives California emergency jurisdiction over a child who appears in the state and is "unable to obtain gender-affirming care" in the child's home state. S.B. 107 § 5. This means that a child could go to California, seek gender

---

[11] In 2022, Governor Greg Abbott wrote a letter directing the Texas Department of Family and Protective Services to investigate for child abuse any parents who subject their children to sex-change procedures based on a legal opinion from Attorney General Ken Paxton. That letter and supporting legal opinion is available here: https://gov.texas.gov/uploads/files/press/O-MastersJaime202202221358.pdf.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

transition procedures, and have a court exercise emergency jurisdiction, overriding the jurisdiction of the family's home state.

44.   California law generally prohibits "unjustifiable conduct" to get jurisdiction in a California court for custody determinations. Section 7 of SB 107 creates a carve-out, explicitly stating that "taking of a child" away "from the person who has legal custody" is not unjustifiable conduct if done to pursue gender transition procedures in California. S.B. 107 § 7.

45.   SB 107 amended California law to directly conflict with federal law by taking away other states' rightful jurisdiction of children visiting California who seek – or claims to be seeking – puberty blockers, cross-sex hormones, irreversible gender reassignment surgery, etc. Section 4 of SB 107 updates the California Family Code to read: "[t]he presence of a child in this state for the purpose of obtaining gender-affirming health care or gender-affirming mental health care…is sufficient to meet the requirements" for California courts to exercise jurisdiction over a custody decision. S.B. 107 § 4. This ignores the proper and rightful jurisdiction of the child's home state.

46.   Section 6 further exacerbates this problem by stating that, even if California is an "inconvenient forum" compared to another state based on factors like how long the child has lived outside the state, where evidence for the case is located, and where the parties to the case are located, California courts must disregard these important considerations and claim sole jurisdiction if the child's case involves gender identity issues. S.B. 107 § 6. SB 107 was passed despite concerns that it violated the Uniform Child Custody Jurisdiction Enforcement Act. [12]

---

[12] The California Family Council posted footage of the committee hearing concerning SB 107. It is available here: https://www.youtube.com/watch?v=A-Lf3X6-og0. The California Family Council also summarized that hearing in this article: California Family Council (July 18, 2022) *New Bill Lets Courts Take Custody of Minors Who Flee to CA for Trans-Treatments*. Available at: https://www.californiafamily.org/2022/07/new-bill-lets-courts-take-custody-of-minors-who-flee-to-ca-for-trans-treatments/.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE DUE PROCESS CLAUSE**

**OF THE FOURTEENTH AMENDMENT**

**(42 U.S.C. § 1983)**

47.   Plaintiff incorporates by reference the allegations in the preceding paragraphs 1 through 46, as if fully set forth herein.

48.   The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Art. XIV.

49.   The Due Process Clause, "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," *Id.* at 720, including "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

50.   "The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000); *see also Calabretta v. Floyd*, 189 F.3d 808 (9th Cir.1999) (holding that "[t]he government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents.").

51.   SB 107 violates the Due Process Clause by stripping parents of their fundamental right to direct the upbringing and care for of their child, including accessing their child's medical records as it relates to "gender-affirming care" or "gender-affirming mental health care." S.B. 107 § 1. The bill prevents parents from seeking court intervention to gain access to their child's medical records. S.B. 107 § 2.

52.   SB 107 further violates the Due Process Clause because the bill allows the "taking of the child" away from his or her parents to California to obtain gender transition

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

procedures. S.B. 107 § 7. California courts may then exercise emergency jurisdiction over the child. S.B. 107 § 5.

53.     Plaintiff has suffered damages due to SB 107 because it has had to divert resources to combat the devastating effects of the bill. The bill frustrates Plaintiff's mission – namely – the preservation of parental rights.

54.     Plaintiff has no adequate remedy at law and will suffer irreparable harm unless the Court enjoins Defendant's violation of the Due Process Clause.

55.     Plaintiff is entitled to recover their costs and attorneys' fees under 42 U.S.C. § 1988 plus injunctive relief and a judicial declaration that SB 107 is unconstitutional.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE RIGHT TO FAMILIAL ASSOCIATION
## UNDER THE FIRST AND FOURTEENTH AMENDMENTS
### (42 U.S.C. § 1983)

56.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 through 55, as if fully set forth herein.

57.     Pursuant to the Due Process Clause of the Fourteenth Amendment, parents have a "fundamental liberty interest" in "the companionship and society of his or her child" and that the state's interference with that liberty interest without due process of law is remediable under 42 USC § 1983. *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). "[T]his constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir.1987) overruled on other grounds by *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir.1999).

58.     Moreover, the First Amendment protects the right to intimate association. *See Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619-20 (1984)). First Amendment protections extend to "family relationships, that presuppose 'deep attachments and

commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (quoting *Board of Dirs. of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 545 (1987)).

59. Protecting family relations "from unwarranted state interference" is necessary to safeguard the ability to define one's identity which is central to the concept of liberty. *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984)).

60. SB 107 constitutes an "unwarranted interference" of parents' rights to familial association under the First Amendment and Fourteenth Amendment, as SB 107 allows the "taking of the child" away from his or her parents to California to obtain gender transition procedures. S.B. 107 § 7. California courts may then exercise emergency jurisdiction over the child. S.B. 107 § 5.

61. The enforcement of SB 107 is the direct and legal cause of the deprivation of parents' constitutionally protected rights under the First and Fourteenth Amendments to the association, companionship, and society of parent and child.

62. Plaintiff has no adequate remedy at law and will suffer irreparable harm unless the Court enjoins Defendant's violation of the Due Process Clause.

63. Plaintiff is entitled to recover their costs and attorneys' fees under 42 U.S.C. § 1988 plus injunctive relief and a judicial declaration that SB 107 is unconstitutional.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE FULL FAITH AND CREDIT**

**CLAUSE OF THE FOURTH AMENDMENT**

**(42 U.S.C. § 1983)**

64. Plaintiffs incorporate by reference the allegations in the preceding paragraphs 1 through 63, as if fully set forth herein.

65. The Full Faith and Credit Clause states: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.

And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." U.S. Const. Art. IV, § 1, cl. 1.

66.    The Full Faith and Credit Clause demands that state court judgments be accorded full effect in the courts of other states and precludes states from adopting any "policy of hostility" toward the public acts of another state. *Franchise Tax Board v. Hyatt*, 578 U.S. 171 (2016); *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485 (2019).

67.    The clause also requires states to recognize judgments from other state courts, so that "a cause of action merged in a judgment in one state is likewise merged in every other." *Magnolia Petroleum Co. v. Hunt*, 340 U.S. 430, 439 (1943).

68.    28 U.S.C. § 1738A generally requires each state to give full faith and credit to child custody determinations made by another state, and further recognizes that a child's home state is generally the state with jurisdiction to make such determinations.

69.    SB 107 violates the Full Faith and Credit Clause because the bill was passed as a direct "policy of hostility" towards statutes passed in other states, which restrict or criminalize gender-transition procedures for minors.

70.    For instance, State Senator Scott Wiener, the sponsor of SB 107, stated that SB 107 was "[i]n response to recent executive and legislative action in states like Alabama and Texas." *See* Exhibit 1. Governor Newsom similarly commented that he was signing SB 107 because "[s]tates across the country [were] passing laws to demonize the transgender community."

71.    SB 107 further violates the Full Faith and Credit Clause by taking away other states' rightful jurisdiction for any child visiting California who seeks—or claims to be seeking—puberty blockers, cross-sex hormones, etc.

72.    Specifically, SB 107 amended the California Family Code to state that the presence of a child in California for the purpose of obtaining gender-affirming health care is sufficient for California courts to exercise jurisdiction over custody decisions for the child. This ignores the rightful authority and jurisdiction of other states.

73. Plaintiff has no adequate remedy at law and will suffer irreparable harm unless the Court enjoins Defendant's violation of the Full Faith and Credit Clause.

74. Plaintiff is entitled to recover their costs and attorneys' fees under 42 U.S.C. § 1988 plus injunctive relief and a judicial declaration that SB 107 is unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For damages;

2. For an order declaring SB 107 unconstitutional;

3. For an order temporarily, preliminarily, and permanently enjoining SB 107;

4. For costs, attorneys' fees, and interest, as allowed by law; and

5. For such other relief the Court determines is proper.

Respectfully submitted,

ADVOCATES FOR FAITH & FREEDOM

Dated: March 6, 2023          /s/Mariah R. Gondeiro
                              Mariah R. Gondeiro

**VERIFICATION**

I am an officer of Our Watch With Tim Thompson, a party to this action, and authorized to make this verification for and on its behalf, and I make this verification for that reason.

I am informed, believe, and on that ground allege that the matters stated in the foregoing **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** are true. The matters stated in the foregoing document are true and based upon my own knowledge. I believe the matters based upon information and belief are also true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___March 6, 2023___, at Murrieta, California.

**OUR WATCH WITH TIM THOMPSON**

By  *Timothy R Thompson*
        Tim Thompson

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

EXHIBIT "1"

3/1/23, 6:08 PM    LGBTQ Lawmakers in 19 States Have or Will Introduce Laws to Protect Trans Kids from Civil and Criminal Penalties When Seeking…

Case 2:23-cv-00422-DAD-DB    Document 1    Filed 03/07/23    Page 19 of 22

# LGBTQ LAWMAKERS IN 19 STATES HAVE OR WILL INTRODUCE LAWS TO PROTECT TRANS KIDS FROM CIVIL AND CRIMINAL PENALTIES WHEN SEEKING GENDER-AFFIRMING CARE

May 3, 2022

**SACRAMENTO** – Senator Scott Wiener (D-San Francisco), LGBTQ Victory Institute, Equality California and Planned Parenthood Affiliates of California today announced the national, LGBTQ-led rollout of trans refuge state legislation in 19 states. In response to recent executive and legislative action in states like Alabama and Texas, these trans refuge laws will shield trans kids and their families from penalties when seeking gender-affirming care. (*Click here to read Senator Wiener's bill* (https://twitter.com/Scott_Wiener/status/1516475367845892099? ref_src=twsrc%255Etfw%257Ctwcamp%255Etweetembed%257Ctwterm%255E15164753678458 trans-refuge-bill-safe-haven-trans-youth), SB 107.

In addition to already-introduced legislation in California by Senator Scott Wiener, in New York by Senator Brad Hoylman and Assemblymember Harry Bronson, and in Minnesota by Senator Scott Dibble, 21 LGBTQ lawmakers representing 16 additional states (19 states total) publicly committed today to introduce trans refuge state bills in **Colorado**, **Connecticut**, **Florida**, **Georgia**, **Illinois**, **Kansas**, **Kentucky**, **Maine**, **Michigan**, **New Hampshire**, **New Mexico**, **Oregon**, **Rhode Island**, **Vermont**, **Washington** and **West Virginia**.

"Today, we're proud to announce that over a third of the states in our country — 19 — are pushing back hard against the horrendous anti-trans legislation we're seeing in Texas and elsewhere," said **California State Senator Scott Wiener**. "Starting with our legislation in California, we are building a coordinated national legislative campaign by LGBTQ lawmakers — a rainbow wall — to provide refuge for trans kids and their families. We're making it crystal clear: We won't let trans kids be belittled, used as political pawns, separated from their families, or denied gender-affirming care. We won't let their parents be criminalized or have their kids taken away. This first of its kind legislative effort sends a clear message both to our community and to those who are attacking our community: We're all in this together and we're ready to fight."

"When trans kids' lives are on the line, playing defense doesn't cut it. It's time to play offense. We are using the collective power of LGBTQ state legislators all across the nation to launch a counter-offensive that aims to protect trans kids and parents while also demonstrating that there is a positive agenda for trans people that lawmakers can support. While LGBTQ elected officials will fight

Case 2:23-cv-00422-DAD-DB   Document 1   Filed 03/07/23   Page 20 of 22

tooth and nail to get these passed in every state, now we need allies to step up
to help us get it done. And even in states that have little chance of these bills
advancing, the message it sends is still incredibly important: trans kids need to
know they have leaders standing up and fighting for them," said **Mayor Annise
Parker,** President & CEO of LGBTQ Victory Institute.

"Parents should not live in fear of being hunted down by the government for
loving and supporting their child. As a native Texan, I'm ashamed of Governor
Abbott's hateful attacks against trans kids and their families. But as a
Californian, I'm so proud of our state for serving as a beacon of hope and a place
of refuge for those children and their parents. We are thankful to Senator
Wiener, the Legislative LGBTQ Caucus and our partners at Planned Parenthood
for standing with trans youth and their families in this fight," said **Tony Hoang**,
Executive Director of Equality California.

"Planned Parenthood Affiliates of California stands with all LGBTQ+
communities, particularly transgender communities, during this moment. We
are all too familiar with the extreme and dangerous policing of essential health
care and restrictions targeting the trans community—especially trans youth.
Planned Parenthood health centers across California will always be open, for all
who seek or need care. We strongly support these protections put forth by
Senator Wiener," said **Jodi Hicks**, President & CEO of Planned Parenthood
Affiliates of California.

"This is important legislation for any state to help defend against anti-
transgender policies. We have to combat hateful discriminatory laws with every
tool we have. When they go low, we need to go high," said **Colorado state
Representative Brianna Titone.**

"From our state legislatures to Congress, we stand against these laws that are
trying to wipe away the history of the LGBTQ community. These so called
'leaders' must understand that when you come for one of us, you come for all
us, and we will not stand down," said **Florida state Senator Shevrin Jones.**

"We have made strides to ensure the LGBTQ community has protections. Now is
the time to ensure our LGBTQ youth have protections as well," said **Kentucky
state Representative Keturah Herron.**

"Politicians across the country are playing games with people's lives by
criminalizing the fundamental right of trans youth and their families to seek
gender-affirming health care. While we cannot stop these despicable laws from
being enacted in other states, we can make sure that these youth and their
families can safely receive the care they need in Minnesota, without fear or
hatred," said **Minnesota state Senator Scott Dibble.**

"These assaults on families are unacceptable, immoral and something that we
must stand together as a state and reject. We must do everything we can to
send a clear message that these families are welcome here," said **Minnesota
state Representative Liz Reyer.**

"Punishing parents for taking care of their children isn't a crime, it's a parental
responsibility. Transgender children and their families need the support of their
community, not the threat of imprisonment," said **New Hampshire state**

**Representative Gerri Cannon.**

"It is clear that politicians are using vulnerable trans people to stoke fear and hatred to win elections. We will not allow our state laws to be abused to serve their political agenda. I look forward to seeing Washington State join a coalition of states that are standing up for the rights and dignity of trans people," said **Washington state Senator Marko Liias.**

"Attacks to the trans community, especially our trans youth, have been far too numerous. We need to stand strong with the trans community by introducing legislation to protect our trans children from hostile state legislatures. I will proudly introduce legislation in West Virginia to ensure our trans children and their parents are protected and supported," said **West Virginia Delegate Cody Thompson.**

Below is the full list of state lawmakers who have already introduced or will introduce trans refuge state legislation as soon as possible:

- California state Senator Scott Wiener
- Colorado state Representative Brianna Titone
- Connecticut state Representative Raghib Allie-Brennan
- Florida state Senator Shevrin Jones
- Florida state Representative Michele Rayner
- Georgia state Representative Karla Drenner
- Georgia state Representative Park Cannon
- Illinois state Representative Kelly Cassidy
- Illinois state Representative Lamont Robinson
- Kansas state Representative Brandon Woodard
- Kentucky state Representative Keturah Herron
- Maine state Representative Laurie Osher
- Michigan state Senator Jeremy Moss
- Minnesota state Senator Scott Dibble
- Minnesota state Representative Liz Reyer
- New Hampshire state Representative Gerri Cannon
- New Mexico state Representative Roger Montoya
- New York state Assemblymember Harry Bronson
- New York state Senator Brad Hoylman
- Oregon state Senator Kate Lieber
- Oregon state Representative Dacia Grayber
- Rhode Island state Senator Tiara TyShae Mack
- Vermont state Representative Taylor Small
- Washington state Senator Marko Liias
- West Virginia state Delegate Cody Thompson

Case 2:23-cv-00422-DAD-DB    Document 1    Filed 03/07/23    Page 22 of 22

# OFFICE INFORMATION

### CAPITOL OFFICE

1021 O Street, Suite 8620
Sacramento, CA 95814-4900
**Phone:** (916) 651-4011

### SAN FRANCISCO OFFICE

455 Golden Gate Avenue, Suite 14800
San Francisco, CA 94102
**Phone:** (415) 557-1300

### CONTACT OUR OFFICE

**Staff (/staff)**
**Email Senator (/contact)**
**Sign Up for Updates (/sign-updates)**

**California State Senate (http://www.senate.ca.gov/) | Democratic Caucus © 2023 (http://democrats.senate.ca.gov/) | Privacy Policy (http://democrats.senate.ca.gov/privacy) | Accessibility Statement (http://senate.ca.gov/accessibility) | Register to Vote (http://registertovote.ca.gov/)**