1  Rob Bonta
   Attorney General of California
2  Renuka R. George
   Senior Assistant Attorney General
3  Kathleen Boergers, State Bar No. 213530
   Supervising Deputy Attorney General
4  Nimrod Pitsker Elias, State Bar No. 251634
   Lily Weaver, State Bar No. 289038
5  Natalie S. Torres, State Bar No. 283571
   Deputy Attorneys General
6   1515 Clay Street, 20th Floor
    P.O. Box 70550
7   Oakland, CA  94612-0550
    Telephone:  (510) 879-0012
8   Fax:  (510) 622-2270
    E-mail: Nimrod.Elias@doj.ca.gov
9  *Attorneys for Defendant Rob Bonta,*
   *Attorney General of California*

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14

15
   **OUR WATCH WITH TIM THOMPSON,** a       Case No. 2:23-cv-00422-DAD-DB
16 California Non-Profit Organization,
                                            **MEMORANDUM OF POINTS AND**
17                              Plaintiff,  **AUTHORITIES IN SUPPORT OF**
                                            **DEFENDANT'S MOTION TO DISMISS**
18         v.                               **FIRST AMENDED COMPLAINT [Fed. R.**
                                            **Civ. P. 12(b)(1) & (6)]**
19
   **ROB BONTA,** Attorney General of       Hearing Date: June 20, 2023
20 California,                              Time:         1:30 p.m.
                                            Dept:         Courtroom 4
21                              Defendant.  Judge:        Hon. Dale A. Drozd

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.   SB 107 Provides Legal Safeguards for Transgender Minors and
Their Parents Seeking Gender-Affirming Care in California ................... 2

         1.   SB 107 bars compliance with foreign subpoenas that are
based on out-of-state laws penalizing the provision of
gender-affirming care ...................................................................... 3

         2.   SB 107 clarifies situations when California courts retain
jurisdiction over family law matters ............................................... 4

         3.   SB 107 limits California law enforcement's ability to assist
with out-of-state criminal actions involving gender-
affirming care .................................................................................. 8

LEGAL STANDARD ......................................................................................................... 9

    A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction ...................... 9

    B.   Motion to Dismiss for Failure to State a Claim ........................................ 9

ARGUMENT ..................................................................................................................... 10

    I.   Plaintiff Lacks Standing ................................................................................. 10

    A.   Plaintiff Lacks Article III Standing ......................................................... 10

    B.   The Doctrine of Third Party Standing Independently Bars
Plaintiff's Suit ......................................................................................... 13

    II.   Plaintiff Has Failed to State a Claim for Relief Under Any of Its
Constitutional Theories .................................................................................. 15

    A.   Plaintiff's Due Process and Familial Association Claims Fail as a
Matter of Law ......................................................................................... 16

    B.   Plaintiff's Full Faith and Credit Claim Fails as a Matter of Law ........... 20

         1.   SB 107 does not violate the Full Faith and Credit Clause's
obligation to respect the final judgments of other states .............. 20

         2.   SB 107 permissibly furthers California's legitimate public
policy ............................................................................................. 21

         3.   The Full Faith and Credit Clause does not require California
to apply an out-of-state law that violates California's public
policy in California court proceedings .......................................... 23

    C.   Plaintiff's Facial Challenge to SB 107 Fails as a Matter of Law ............ 24

CONCLUSION ................................................................................................................. 25

i

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Alaska Packers Ass'n v. Indus. Acc. Comm'n of Cal.*
5     294 U.S. 532 (1935) ........................................................................................... 21, 23

6

*Am. Acad. of Pediatrics v. Lungren*
    16 Cal.4th 307 (1997) ............................................................................................ 17

7

*Ashcroft v. Iqbal*
8     556 U.S. 662 (2009) ............................................................................................... 10

9

*Baker v. Gen. Motors Corp.*
    522 U.S. 222 (1998) ............................................................................................... 20
10

*Broderick v. Rosner*
11     294 U.S. 629 (1935) ............................................................................................... 22

12

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
13     657 F.3d 936 (9th Cir. 2011) ................................................................................. 11

14

*E. Bay Sanctuary Covenant v. Biden*
    993 F.3d 640 (9th Cir. 2021) ................................................................................. 13
15

16

*Finstuen v. Crutcher*
    496 F.3d 1139 (10th Cir. 2007) ............................................................................. 23

17

*Franchise Tax Bd. of Cal. v. Hyatt*
18     578 U.S. 171 (2016) .......................................................................................... 21, 22

19

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) ......................................................................................... 10, 11
20

*Hyatt v. State Franchise Tax Bd.*
21     105 A.D.3d 186 (N.Y. Supr. Ct. App. Div. 2013) ............................................ 20, 21

22

*In Defense of Animals, et al. v. Sanderson Farms, Inc.*
23     2021 WL 4243391 (N.D. Cal. 2021) ............................................... 10, 11, 12, 13

24

*Kowalski v. Tesmer*
    543 U.S. 125 (2004) ............................................................................................... 14
25

26

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010) ..................................................................... 10, 11, 12

27

*La Clinica de la Raza v. Trump*
28     No. 19-CV-04980-PJH, 2020 WL 6940934 (N.D. Cal. Nov. 25, 2020) ............ 11, 12

ii

# TABLE OF AUTHORITIES
### (continued)

Page

**CASES**

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)....................................................................................... 9, 10

*Nguyen v. City of Buena Park*
2020 WL 5991616 (C.D. Cal. Aug. 18, 2020)............................................... 24

*Pink v. A.A.A. Highway Exp.*
314 U.S. 201 (1941)....................................................................................... 22, 23

*Rodriguez v. City of San Jose*
930 F.3d 1123 (9th Cir. 2019)....................................................................... 11, 12

*Shroyer v. New Cingular Wireless, Inc.*
622 F.3d 1035 (9th Cir. 2010)....................................................................... 9, 15

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001)......................................................................... 9, 16

*U. S. v. Salerno*
481 U.S. 739 (1987)....................................................................................... 23, 24

*Ward v. City of San Jose*
967 F.2d 280 (9th Cir. 1991).......................................................................... 14

*Warth v. Seldin*
422 U.S. 490 (1975)........................................................................................ 13

*Wash. State Grange v. Wash. State Republican Party*
552 U.S. 442 (2008)....................................................................................... 15, 24

**STATUTES**

28 United States Code

§ 1738................................................................................................................. 20

Cal. Civ. Code

§ 56.10(b)(7) ..................................................................................................... 16

§ 56.109.............................................................................................................. 2

# TABLE OF AUTHORITIES
### (continued)

Page

Cal. Code Civ. Proc.

§ 2029.300 ................................................................................................................. 2

§ 2029.350 ................................................................................................................. 2

Cal. Fam. Code

§ 3400 ...................................................................................................................... 4

§ 3408 ...................................................................................................................... 6

§ 3421 ...................................................................................................................... 2

§ 3421(a)(1) ......................................................................................................... 5, 19

§ 3421(a)(1)-(4) ....................................................................................................... 5

§ 3421(a)(2) ......................................................................................................... 5, 19

§ 3422 ................................................................................................................. 5, 20

§ 3423 ................................................................................................................. 6. 20

§ 3423(a)-(b) ........................................................................................................... 6

§ 3424 ................................................................................................................. 2, 20

§ 3424(a) ................................................................................................................. 5

§ 3424(c) ................................................................................................................. 6

§ 3424(c)-(d) ........................................................................................................... 6

§ 3424(d) ................................................................................................................. 6

§ 3425 ...................................................................................................................... 6

§ 3426 ...................................................................................................................... 6

§ 3427 ...................................................................................................................... 2

§ 3427(a) ................................................................................................................. 7

§ 3428 ...................................................................................................................... 2

# TABLE OF AUTHORITIES
**(continued)**

**Page**

Cal. Fam. Code

§ 3428(a) ........................................................................................................ 7

§ 3428(a)(1)-(3) ............................................................................................. 7

§ 3429 ............................................................................................................ 6

§ 3443 ........................................................................................................ 8, 21

§ 3446 ........................................................................................................ 8, 21

§ 3453 ............................................................................................................ 8

§ 3453.5 ......................................................................................................... 2

§ 6910 .......................................................................................................... 17

§ 6924(b) ...................................................................................................... 18

§ 7050(e)(1) .................................................................................................. 18

Cal. Health & Saf. Code

§ 1530.6 ........................................................................................................ 19

§§ 123105 & 123110 .................................................................................. 16

§ 123115(a)(2) ............................................................................................. 16

§ 124260(b)(1) ............................................................................................. 18

Cal. Pen. Code

§ 819 ............................................................................................................... 2

§ 1326 ............................................................................................................. 2

Cal. Welf. & Inst. Code

§ 366.27(a) ................................................................................................... 19

§ 369(f) ........................................................................................................ 19

§ 16010.2(b)(3)(A) ........................................................................................ 3

§ 16010.2 ........................................................................................................ 3

v

1

## TABLE OF AUTHORITIES
### (continued)

2

<u>**Page**</u>

3

The Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA)........................ *passim*

4

Senate Bill 107 ....................................................................................................... *passim*

5

**REGULATIONS**

6

Cal. Code Regs. Title 9

7

    § 782.14................................................................................................................... 17

8

    § 784.29(a) .............................................................................................................. 17

9

**COURT RULES**

10

Federal Rule of Civil Procedure

11

    12(b)(1) ............................................................................................................... 9, 15

12

    12(b)(6) .................................................................................................................... 9

13

**OTHER AUTHORITIES**

14

The Full Faith and Credit Clause ........................................................................ *passim*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

Recently, several states have enacted (or are considering) laws that impose civil and criminal liability on anyone who allows or assists a minor to obtain gender-affirming health care. Doctors, parents, and youth can face investigations, felony charges, prison time, and exorbitant fines for seeking medical treatment based on well-accepted standards of care. In light of the unprecedented surge in such legislation, the California Legislature enacted Senate Bill (SB) 107. *See* S.B. 107, 2021-2022 Reg. Sess. (Cal. 2022) (SB 107) (Attached as Exhibit 1). SB 107 seeks to protect families who come to California to obtain gender-affirming health care that is inaccessible where they live, as well as doctors and staff providing such care in California. SB 107 implements various safeguards against the enforcement of other states' laws that would penalize people for obtaining health care that is legal in California—and often lifesaving.

Plaintiff's challenge rests on a presumption that SB 107 allows children to be taken to California to obtain gender-affirming care against their parents' wishes. It does not. Indeed, the express aim of SB 107 is to "provide[] parents assurances that, if they come to California with their child to obtain medical care for the child, their *own parental choice* will not be subject to second-guessing by their home state." SB 107 (Wiener) Sen. Jud. Com. Analysis, at 11 (Aug. 29, 2022) (emphasis added). Further, SB 107 does not alter existing parental consent laws in California. Gender-affirming health care for minors such as puberty blockers, hormone replacement therapy, and surgeries generally require parental consent in California. Nothing in SB 107 changes that. Nor does SB 107 modify the ability of parents to access their children's medical records. Finally, SB 107 does not supplant the "home state" jurisdiction of any other state's courts, grant California courts any new substantive authority to take custody of minors, or allow California courts to ignore other states' custody determinations. Based on the plain language of the statute, which the Court can interpret as a matter of law, the assertions underlying the First Amended Complaint (FAC) are wrong. The Court should dismiss for a failure to state a claim.

The Court should also dismiss the FAC because Plaintiff lacks standing. Plaintiff Our Watch with Tim Thompson (Plaintiff), a non-profit advocacy organization, lacks Article III

1

1    standing because SB 107 did not injure Plaintiff in any way. SB 107 does not impede any of

2    Plaintiff's organizational activities or functions. Plaintiff also lacks prudential standing to assert

3    third party claims on behalf of out-of-state parents and other states.

4        In sum, California acted well within its constitutional authority in seeking to ensure that

5    transgender youth and their families can safely obtain medically necessary health care in our state

6    without fear of repercussion. This lawsuit should be dismissed.

7                                    **BACKGROUND**

8    **A.    SB 107 Provides Legal Safeguards for Transgender Minors and Their
         Parents Seeking Gender-Affirming Care in California**
9

10       The California Legislature passed SB 107 against a national backdrop of proliferating state

11   actions targeting transgender youth and their families and doctors. It enacts various safeguards to

12   protect California residents and people traveling to our state against the enforcement of other

13   states' laws that penalize individuals for obtaining gender-affirming care that is legal in

14   California. *See, e.g.*, SB 107 (Wiener) Sen. Jud. Com. Analysis, at 11 (Aug. 29, 2022) (discussing

15   "regressive transphobic laws and executive orders" from other states which put "parents and

16   doctors in the position of risking sentences of up to ten years in prison for simply getting their

17   child the medical care they need"); *see also* SB 107 (Wiener) Assembly Jud. Com. Analysis at 1,

18   6-7 (June 5, 2022). SB 107's protections operate in three main ways, by: (1) barring compliance

19   with foreign subpoenas that are based on other states' laws penalizing the provision of gender-

20   affirming care; (2) clarifying situations when California courts retain jurisdiction over family law

21   matters; and (3) limiting state law enforcement assistance with out-of-state criminal actions

22   involving gender-affirming care.[1]

23

24       _____

         [1] For ease of reference, this brief generally refers to the various sections of SB 107 in
25   shorthand and does not always note the codes that were amended or added. Those sections added
     or amended other statutory provisions as follows. Cal. S.B. 107 §§ 1 (adding Cal. Civ. Code
26   § 56.109); 2 (amending Cal. Code Civ. Proc. § 2029.300); 2.5 (amending Cal. Code Civ. Proc.
     § 2029.300); 3 (amending Cal. Code Civ. Proc. § 2029.350); 3.5 (amending Cal. Code Civ. Proc.
27   § 2029.350); 4 (amending Cal. Fam. Code § 3421); 5 (amending Cal. Fam. Code § 3424); 6
     (amending Cal. Fam. Code § 3427); 7 (amending Cal. Fam. Code § 3428); 8 (amending Cal. Fam.
28   Code § 3453.5); 9 (adding Cal. Pen. Code § 819); & 10 (amending Cal. Pen. Code § 1326).

1    **1.    SB 107 bars compliance with foreign subpoenas that are based on**
         **out-of-state laws penalizing the provision of gender-affirming care**

2

3    SB 107 limits the ability of litigants in other states to obtain civil discovery from California

4    entities to prosecute an out-of-state action that would penalize an individual for obtaining (or

5    helping their child or patient obtain) gender-affirming health care and gender-affirming mental

6    health care in California. SB 107 §§ 1-3.5.[2]  Section 1 states that:

7        [A] provider of health care, health care service plan, or contractor shall not release medical
         information related to a person or entity allowing a child to receive gender-affirming health
8        care or gender-affirming mental health care in response to any civil action, including a
         foreign subpoena, based on another state's law that authorizes a person to bring a civil
9        action against a person or entity [permitting such care].

10   SB 107 § 1. Section 1 also provides that the same entities cannot release gender-affirming health

11   care information to people who are authorized to receive it when "the information is being

12   requested pursuant to another state's law that authorizes a person to bring a civil action against a

13   person or entity" permitting such care. *Id*. Sections 2 and 2.5 similarly prohibit a Superior Court

14   clerk from issuing a domestic subpoena in response to a foreign subpoena that "is based on a

15   violation of another state's laws that interfere with a person's right to allow a child to receive

16   gender-affirming health care." SB 107 §§ 2, 2.5. Sections 3 and 3.5 impose similar limitations on

17   licensed California attorneys, prohibiting them from issuing subpoenas pursuant to foreign

18   subpoenas based on out-of-state laws that interfere with the provision of gender-affirming care.

19   SB 107 §§ 3, 3.5.

20

21
     _____

22       [2] SB 107 adopts the definitions of "gender-affirming health care" and "gender-affirming
     mental health care" found in California Welfare & Institutions Code section 16010.2. Gender-
23   affirming health care is defined as "medically necessary health care that respects the gender
     identity of the patient, as experienced and defined by the patient" and may include: (1)
24   interventions to suppress the development of endogenous secondary sex characteristics; (2)
     interventions to align the patient's appearance or physical body with the patient's gender identity;
25   and (3) interventions to alleviate symptoms of clinically significant distress resulting from gender
     dysphoria. Cal. Welf. & Inst. Code § 16010.2(b)(3)(A). Gender-affirming mental health care is
26   "mental health care or behavioral health care that respects the gender identity of the patient, as
     experienced and defined by the patient," and may include developmentally appropriate
27   exploration and integration of identity, reduction of distress, adaptive coping, and strategies to
     increase family acceptance. *Id*. at § 16010.2(b)(3)(B). Unless stated otherwise, references to
28   "gender-affirming health care" refer to both medical and mental health care.

3

2.   **SB 107 clarifies situations when California courts retain jurisdiction over family law matters**

SB 107 also modifies several provisions of the Family Code that codify the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)[3] to ensure that California courts can protect families that come to California for gender-affirming care. The UCCJEA, which nearly all states—including California—have adopted, promotes uniform jurisdiction and enforcement provisions in inter-state child custody cases.[4] The UCCJEA governs state courts' jurisdiction to make and modify child custody determinations and requires state courts to enforce valid child custody determinations made by sister state courts.[5] Importantly, however, the UCCJEA is not a substantive custody statute; it does not dictate legal standards for making or modifying child custody decisions.[6] It merely outlines which states have jurisdiction to decide the merits and requires uniform enforcement of such determinations.[7] Generally speaking, there are two requirements for making or modifying a custody determination under the UCCJEA: (1) the court must have a basis for jurisdiction, and (2) the parties must be given notice and an opportunity to be heard.[8]

As discussed below, SB 107 amended UCCJEA provisions relating to: (1) jurisdiction over initial child custody determinations; (2) emergency jurisdiction; (3) determining whether a state is an inconvenient forum; and (4) declining jurisdiction because the petitioner engaged in unjustifiable conduct. Each are addressed in turn.

Consistent with the UCCJEA, the California Family Code provides four bases for asserting jurisdiction in initial child custody determinations: (1) home state jurisdiction; (2) significant connection jurisdiction; (3) more appropriate forum jurisdiction; and (4) vacuum jurisdiction.[9]

---

[3] *See* Cal. Fam. Code section 3400 *et seq*.
[4] *See generally* Patricia M. Hoff, The Uniform Child-Custody Jurisdiction and Enforcement Act, U.S. Dep't of J., Off. of J. Progs (Dec. 2001), https://www.ojp.gov/pdffiles1/ojjdp/189181.pdf (last visited Apr. 18, 2023).
[5] *Id.* at 1.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 5.
[9] SB 107 did not change the legal standards for home state, more appropriate forum, or vacuum jurisdiction (bases 1, 3, and 4 above).

4

Cal. Fam. Code § 3421(a)(1)-(4). However, home state jurisdiction is given statutory priority. *Id*. A California court has jurisdiction to make an initial child custody determination if California is the home state of the child on the date that custody proceedings commence, or was the home state of the child within six months before proceedings commenced and the child is absent from this state but a parent continues to live here. Cal. Fam. Code § 3421(a)(1).

If California lacks home state jurisdiction, it can assert significant connection jurisdiction. Cal. Fam. Code § 3421(a)(2). However, it can only do so if: (1) the child has no home state (or the home state declines jurisdiction); (2) the child and the child's parents, or the child and at least one parent, have a significant connection to this state other than mere physical presence; and (3) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships. *Id*. at (a)(2)(A)-(B). SB 107 amends the requirements for significant connection jurisdiction. It establishes that the "presence of a child in this state for the purposes of obtaining gender-affirming health care" (SB 107, § 4) meets the requirement of a having significant connection with this state. Cal. Fam. Code § 3421(a)(2).

The UCCJEA also recognizes the need to protect children in emergencies, no matter where they are located when the emergency arises. The UCCJEA gives courts temporary emergency jurisdiction when a child is in the state and has been abandoned, and when an emergency makes it necessary to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse. UCCJEA § 204; *see also* Cal. Fam. Code § 3424(a).[10] SB 107 added two emergency situations to this list: cases involving domestic violence, and cases where the child has been unable to obtain gender-affirming health care in another state. SB 107 § 5.[11] However, even though emergency jurisdiction can be invoked in limited circumstances, numerous safeguards protect the home state's authority.

First, in any child custody proceeding, each party's first pleading must state under oath whether there has been any other proceeding concerning the custody of the child and provide the

---

[10] Emergency jurisdiction is the only exception to the exclusive, continuing jurisdiction of the state that made the initial child custody determination, which is typically the home state. Cal. Fam. Code § 3422.

[11] The addition of domestic violence to the list of emergency situations in which the court can assert temporary jurisdiction is not at issue in this case.

5

court with the relevant information. Cal. Fam. Code § 3429. The California court should immediately know if another state has initiated a child custody proceeding or made a child custody determination. *Id*. Second, aside from emergency jurisdiction, a California court "may not exercise jurisdiction" if a child custody proceeding has been commenced in another state as long as those proceedings substantially conformed with the UCCJEA. Cal. Fam. Code § 3426. Third, before a child custody determination is made by a California court, notice and an opportunity to be heard must be given to all persons entitled to such notice, including any parent whose parental rights have not been terminated and any person having physical custody of the child. Cal. Fam. Code § 3425. This includes notice to persons outside California. Cal. Fam. Code § 3408. Fifth, if another state has commenced child custody proceedings or made a child custody determination, any emergency order issued by a California court must limit the length of the order to a period of time that the court considers adequate to allow the petitioner to seek an order from the other state (typically the home state). Cal. Fam. Code § 3424(c). Sixth, if another state has commenced child custody proceedings or made a child custody determination, the California court "shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." Cal. Fam. Code § 3424(d).

Emergency jurisdiction is temporary and it does not—and cannot—modify or supplant a child custody determination from a child's home state. Cal. Fam. Code § 3424(c)-(d); *see also* Cal. Fam. Code § 3423 ("a court of this state may not modify a child custody determination made by a court of another state").[12]

As with all courts, family courts must determine if they are the appropriate forum for the matter before them. Consistent with the UCCJEA, a California court that has jurisdiction to make a child custody determination may decline to exercise that jurisdiction if it determines that it is an

---

[12] The only exception to this rule is when a California court has jurisdiction to make an initial child custody determination and either: (1) the court of the other state determines it no longer has exclusive, continuing jurisdiction or that a court of this state would be a more convenient forum; or (2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state. Cal. Fam. Code § 3423(a)-(b). SB 107 did not change this prohibition on modifying a child custody determination made by the court of another state.

1    inconvenient forum and that another court is a more appropriate forum. Cal. Fam. Code

2    § 3427(a). There are several factors that a family court must consider before deciding that it is an

3    inconvenient forum. *Id*. at (b). SB 107 augments this section to include that, when gender-

4    affirming health care for the child is an issue, "a court of this state shall not determine that it is an

5    inconvenient forum where the law or policy of the other state that may take jurisdiction limits the

6    ability of a parent to obtain gender-affirming health care or gender-affirming mental health care

7    for their child." SB 107 § 6. In other words, SB 107 simply provides that a California court

8    cannot decline jurisdiction on the ground that it is an inconvenient forum in one specific

9    circumstance: when a parent's ability to obtain gender-affirming health care for their child in

10   another state is at issue and is constrained because of that state's law or policy. *Id*.

11         The UCCJEA also requires a court to decline jurisdiction if the person seeking to invoke

12   the court's jurisdiction has engaged in "unjustifiable conduct." UCCJEA § 208; *see also* Cal.

13   Fam. Code § 3428(a). Neither the UCCJEA nor the Family Code defines "unjustifiable conduct."

14   Nonetheless, even when unjustifiable conduct has occurred, courts may retain jurisdiction if: (1)

15   the parents have acquiesced in the exercise of jurisdiction; (2) a court of a state otherwise having

16   jurisdiction determines that California is a more appropriate forum; or (3) no court of any other

17   state would have jurisdiction. Cal. Fam. Code § 3428(a)(1)-(3). SB 107 amends this section by

18   stating that when making a jurisdiction determination:

19         [A] court shall not consider as a factor weighing against the petitioner any taking of the
         child, or retention of the child after a visit . . . from the person who has legal custody, if
20        there is evidence that the taking or retention of the child was a result of domestic violence
         against the petitioner . . . or for the purposes of obtaining gender-affirming health care . . .
21        for the child and the law or policy of the other state limits the ability of a parent to obtain
         gender-affirming health care or gender-affirming mental health care for their child.
22

23   SB 107 § 7. In other words, SB 107 provides two examples of what is *not* unjustifiable conduct

24   requiring a court to decline jurisdiction, one of which is bringing a child to California for gender-

25   affirming care when a parent is unable to obtain such care for their child in another state.[13] *Id*. SB

26   107 also adds a section to the Family Code stating that "[a] law of another state that authorizes a

27   _____

28   [13] As with section 5, section 7's addition of fleeing domestic violence as an example of
     what does not qualify as unjustifiable conduct is not challenged in this case.

state agency to remove a child from their parent or guardian based on the parent or guardian

allowing their child to receive gender-affirming health care or gender-affirming mental health

care is against the public policy of this state and shall not be enforced or applied in a case pending

in a court in this state." SB 107 § 8.

Beyond establishing rules for jurisdiction, the UCCJEA requires states to recognize and

enforce child custody determinations made by other states. Pursuant to those provisions,

California courts "shall recognize and enforce a child custody determination of a court of another

state." Cal. Fam. Code § 3443; *see also* Cal. Fam. Code § 3446 ("A court of this state shall

recognize and enforce, but may not modify . . . a registered child custody determination of a court

of another state."). Consistent with the UCCJEA, California law requires California courts to

"accord full faith and credit to an order issued by another state" and "enforce a child custody

determination made by a court of another state unless the order has been vacated, stayed, or

modified by a court having jurisdiction to do so"). Cal. Fam. Code § 3453. SB 107 did not change

any of these recognition and enforcement provisions.

### 3. SB 107 limits California law enforcement's ability to assist with out-of-state criminal actions involving gender-affirming care

Finally, SB 107 adds to, and amends, sections of the Penal Code to limit (and in some cases

to prevent) California's law enforcement agencies from assisting other states' prosecutions of

people involved in providing or seeking gender-affirming care. First, SB 107 declares that "[i]t is

the public policy of the state that an out-of-state arrest warrant for an individual based on

violating another state's law against providing, receiving, or allowing their child to receive

gender-affirming health care or gender-affirming mental health care is the lowest law

enforcement priority." SB 107 § 9. Second, "California law enforcement agencies shall not

knowingly make or participate in the arrest or participate in any extradition of an individual

pursuant to an out-of-state arrest warrant for violation of another state's law against providing,

receiving, or allowing a child to receive gender-affirming health care . . . if that care is lawful

under the laws of this state, to the fullest extent permitted by federal law." *Id*. Third, "[n]o state or

local law enforcement agency shall cooperate with or provide information to any individual or

1   out-of-state agency or department regarding the provision of lawful gender-affirming health care

2   or gender-affirming mental health care performed in this state." SB 107 § 9. Fourth, SB 107

3   amends the Penal Code section addressing subpoenas in criminal actions, stating that:

4       [A] provider of health care, health care service plan, or contractor shall not release medical
        information related to a person or entity allowing a child to receive gender-affirming health

5       care . . . in response to any foreign subpoena that is based on a violation of another state's
        laws authorizing a criminal action against a person or entity that allows a child to receive

6       gender-affirming care or gender-affirming mental health care.

7   *Id.* at § 10. SB 107 also includes a severability clause. *Id.* at § 11.

8                                   **LEGAL STANDARD**

9       **A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction**

10          Federal Rule of Civil Procedure 12(b)(1) allows a party to raise the defense that a court

11  lacks jurisdiction over the subject matter of a claim for lack of standing. Fed. R. Civ. P. 12(b)(1).

12  Article III standing requires a plaintiff to demonstrate: (1) an injury in fact; (2) a causal

13  connection; and (3) redressability. "First, the plaintiff must have suffered an 'injury in fact'—an

14  invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or

15  imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

16  (1992) (citations omitted). "Second, there must be a causal connection between the injury and the

17  conduct complained of—the injury has to be 'fairly traceable to the challenged action of the

18  defendant, and not th[e] result [of] the independent action of some third party not before the

19  court.'" *Id*. "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be

20  redressed by a favorable decision." *Id*. at 561 (citations omitted).

21      **B.    Motion to Dismiss for Failure to State a Claim**

22          A motion to dismiss tests the legal sufficiency of a claim. Fed. R. Civ. P. 12(b)(6).

23  Dismissal should be entered where the plaintiff has failed to allege facts sufficient to support a

24  cognizable legal theory. *Shroyer v. New Cingular Wireless, Inc.*, 622 F.3d 1035, 1041 (9th Cir.

25  2010). All material allegations in the pleadings are taken as true and construed in the light most

26  favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th

27  Cir. 2001). The Court, however, is not required to accept as true allegations that are "merely

28  conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id*. "To survive a

                                        9

1   motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

2   claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

3   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and

4   conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*.

5                                               **ARGUMENT**

6   **I.   PLAINTIFF LACKS STANDING**

7           Plaintiff lacks Article III standing because SB 107 did not impede any of Plaintiff's

8   organizational activities or functions. Even if Plaintiff could establish Article III standing,

9   Plaintiff lacks prudential standing to assert third party claims on behalf of out-of-state parents and

10  other states.

11          **A.   Plaintiff Lacks Article III Standing**

12          While the *Lujan* decision established the "irreducible constitutional minimum" for standing

13  in the context of an individual plaintiff, the same analysis is used to determine whether an

14  organizational plaintiff has standing. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378 (1982).

15  An organization suing on its own behalf can establish an injury when it has suffered "both a

16  diversion of its resources and a frustration of its mission." *La Asociacion de Trabajadores de*

17  *Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087–88 (9th Cir. 2010) (internal citation

18  omitted) (hereinafter *La Asociacion*). "Frustration of mission cannot be just a setback to an

19  organization's values or interests, it must result in an actual impediment to the organization's real

20  world efforts on behalf of such principles." *In Defense of Animals, et al. v. Sanderson Farms,*

21  *Inc.*, 2021 WL 4243391, at *3 (N.D. Cal. 2021). And an organization must "show that it would

22  have suffered some other injury if it had not diverted resources to counteracting the problem." *La*

23  *Asociacion*, 624 F.3d at 1088. In other words, an organization has standing to sue if it "could not

24  avoid suffering one injury or the other." *Id*.

25          Importantly, an organization "cannot manufacture the injury by incurring litigation costs or

26  simply choosing to spend money fixing a problem that otherwise would not affect the

27

28

1   organization at all." *La Asociacion*, 624 F.3d at 1088 (internal citation omitted).[14] "An

2   organization may sue only if it was *forced* to choose between suffering an injury and diverting

3   resources to counteract the injury." *Id.* at 1088 n. 4 (emphasis added); *see also Rodriguez v. City*

4   *of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019) (organizations representing gun owners and

5   providing them with legal advice lacked standing because they were not required to divert

6   resources to oppose the city's refusal to return confiscated guns to their owner). Put differently,

7   the "challenged conduct must harm the organization's activities specifically, not merely frustrate

8   their mission in a general sense." *In Defense of Animals*, 2021 WL 4243391, at *4.

9          In this case, Plaintiff has not met the requirements for organizational standing because it

10  has not identified any actual injury—in the form of a real-world impediment to Plaintiff's

11  activities—caused by SB 107. Plaintiff alleges that it is a 501(c)(3) organization "dedicated to

12  protecting family and parental rights in California." FAC ¶ 8. Plaintiff alleges that it

13  "accomplishes its mission through legislative advocacy, education of California citizens, and

14  mobilization of California citizens to get involved in community events." *Id.* ¶ 11. Although

15  Plaintiff asserts that SB 107 has caused it to "divert[] resources from other focus areas like critical

16  race theory and abortion rights," that puts the cart before the horse. *Id.* ¶ 13. Plaintiff must first

17  "show that it would have suffered some other injury if it had *not* diverted resources to

18  counteracting the problem." *La Asociacion*, 624 F.3d at 1088 (emphasis added); *see also La*

19  *Clinica de la Raza v. Trump*, No. 19-CV-04980-PJH, 2020 WL 6940934, at *4 (N.D. Cal. Nov.

20  25, 2020) (plaintiff must "demonstrate that they will be injured by the Rule if they do nothing").

21  Yet the FAC provides no details describing how SB 107 impeded Plaintiff's prior activities.

22  Plaintiff does not offer a single example describing how its pre-existing advocacy, education, and

23  mobilization efforts were hindered by SB 107. *See, e.g., Havens*, 455 U.S. at 379 (challenged

24  conduct must "have perceptively impaired" the "organization's activities").

25         The FAC once again reveals just the opposite. Plaintiff reiterates that "SB 107 was the

26  *primary catalyst* that prompted Our Watch to focus nearly exclusively on educating parents and

27  ─────────────
            [14] It is well-accepted that "standing must be established independent of the lawsuit filed
28  by the plaintiff." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 657 F.3d
    936, 943 (9th Cir. 2011) (internal citations omitted).

                                                   11

churches about transgender issues and the effect on parental rights." FAC ¶ 15 (emphasis added).

Transgender issues were not a focus area before SB 107, which is a tacit admission that SB 107

could not have impeded Plaintiff's existing activities. *Id*. In other words, Plaintiff has not

shown—and by its own admission, cannot show—that "it was forced to choose between suffering

an injury and diverting resources to counteract the injury." *La Asociacion*, 624 F.3d at 1088 n. 4.

Because Plaintiff would not have been harmed by "do[ing] nothing" after SB 107 was enacted, it

does not have Article III standing. *La Clinica de la Raza*, 2020 WL 6940934, at *4.

Plaintiff's FAC fails to address this fatal flaw in its organizational standing theory. Plaintiff

once again provides no examples of how SB 107 purportedly harmed its pre-existing advocacy,

education, and mobilization activities. Instead, Plaintiff added just three words to its diversion of

resources allegations. *See* FAC ¶ 13 (alleging it implemented "new educational outreach

programs *both inside and* outside of California" (new words italicized). Plaintiff's persistent

failure to identify any injury that it would have suffered "if it had not diverted resources to

counteracting the problem," *La Asociacion*, 624 F.3d at 1088, dooms its organizational standing.

Plaintiff cannot create standing by "simply choosing to spend money fixing a problem that

otherwise would not affect the organization at all." *Id*.; *see also In Defense of Animals*, 2021 WL

4243391, at *4 (an organization cannot "gin up standing" by "investigating conduct or starting a

new campaign against someone who frustrates its general mission"). Allowing an organization to

"start[] a new campaign against someone who frustrates its general mission . . . would effectively

nullify the constitutional requirements for standing." *In Defense of Animals*, 2021 WL 4243391,

at *4.

In sum, courts routinely deny organizational standing where, as here, the challenged policy

does not concretely impede the organization's activities. *See, e.g.*, *In Defense of Animals*, 2021

WL 4243391, at *4–6 (non-profit organizations dedicated to animal rights lacked standing to

challenge a poultry processing company's allegedly fraudulent advertising because they failed to

plead "any concrete way" in which their missions were frustrated, and because they spent money

and staff time "trying to manufacture standing" rather than being forced to divert those

resources); *Rodriguez*, 930 F.3d at 1136 (gun rights organizations lacked standing because they

12

"offered no theory explaining their organizational harm" that purportedly required them to divert resources to oppose a city's confiscation and retention of an owner's guns).

The Ninth Circuit's decision in *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) exemplifies a challenged action that actually impeded an organization's activities. Legal services organizations that represent asylum seekers challenged a federal rule that eliminated asylum eligibility for migrants crossing into the United States other than at a port of entry. *Id*. at 658–59. The legal services organizations had standing because the rule: (1) made 80% of their prospective clients ineligible for asylum; (2) prevented the organizations from representing migrants who were still eligible for asylum by detaining those migrants at ports of entry, which were hundreds of miles away from the organizations' offices; and (3) decreased the funding that the organizations relied upon to represent asylum seekers. *Id*. at 663–64. That fundamental impairment of the organizations' core activities stands in stark contrast to this case.[15]

Unlike the plaintiff organizations in *E. Bay Sanctuary Covenant*, Plaintiff has not described how any of its services, activities, functions, or funding would have been hampered by SB 107 had it done nothing in response. Plaintiff has not suffered any injury and therefore lacks Article III standing. The Court should dismiss.

**B.    The Doctrine of Third Party Standing Independently Bars Plaintiff's Suit**

Even assuming that Plaintiff can establish Article III standing, prudential limitations on third party standing bar this lawsuit. The Supreme Court has held that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499–500 (1975) (internal citations omitted). Prudential limitations on third party standing represent a "healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed . . . the courts might be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though

---

[15] Because organizational standing requires showing an actual impediment to an organization's activities, some courts have suggested that it is "easier for service organizations to show standing," as opposed to advocacy organizations like Plaintiff. *See, e.g.*, *In Defense of Animals*, 2021 WL 4243391, at *4 n. 4.

13

1    judicial intervention may be unnecessary to protect individual rights." *Kowalski v. Tesmer*, 543

2    U.S. 125, 129 (2004) (internal citations omitted) (holding that criminal defense attorneys lacked

3    third party standing to challenge the constitutionality of a statute denying appellate counsel to

4    criminal defendants who pled guilty).

5           Although the bar on third party standing is not absolute, a party invoking the legal rights of

6    others must demonstrate that: (1) "the party asserting the right has a close relationship with the

7    person who possesses the right"; and (2) "there is a hindrance to the possessor's ability to protect

8    his own interests." *Kowalski*, 543 U.S. at 129–30 (internal citations omitted). In *Kowalski*, for

9    example, the Supreme Court concluded that the criminal defense attorney plaintiffs did not have

10   standing to assert the constitutional rights of unidentified future clients because they lacked a

11   close relationship with their hypothetical future clients, and there was no hindrance to indigent

12   criminal defendants asserting their own constitutional rights. *Id*. at 131–32.

13          This is precisely the type of lawsuit that is properly barred by the third party standing rule.

14   Plaintiff's due process, familial association, and full faith and credit constitutional claims rest

15   entirely on the premise that SB 107 violates the rights of: (1) hypothetical out-of-state parents;

16   and (2) other states in the union. But Plaintiff has no relationship with other sovereign states, nor

17   has it shown a close relationship with out-of-state parents. Plaintiff's organizational mission

18   centers on "protecting family and parental rights in California." FAC ¶ 8. Merely creating

19   educational programs directed at out-of-state parents does not establish a close relationship with

20   those parents, especially where the organization's mission is the education and mobilization of

21   "California citizens." *See* FAC ¶ 11. More importantly, Plaintiff has not identified any

22   "hindrance" to out-of-state parents or other states protecting their own interests. *Kowalski*, 543

23   U.S. at 129–130. There is no reason at all—let alone a compelling one—to permit a non-profit,

24   California-based advocacy organization to assert the constitutional rights of hypothetical out-of-

25   state parents or states that have banned gender-affirming health care. Constitutional claims should

26   be raised by the "one at whom the constitutional protection is aimed."[16] *Kowalski*, 543 U.S. at

27          [16] Plaintiff's due process and familial association claims may properly be raised only by
28   parents and children; they do not even extend to siblings, let alone to third parties. *See, e.g.*, *Ward*

1    129. That is not this Plaintiff.

2         Constitutional and prudential standing limitations bar this lawsuit. The Court should

3    dismiss the FAC. Fed. R. Civ. P. 12(b)(1).

4    **II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER ANY OF ITS
         CONSTITUTIONAL THEORIES**

5

6         The Court should also dismiss the Complaint because Plaintiff has failed to allege facts

7    sufficient to support a cognizable legal theory. *Shroyer,* 622 F.3d at 1041. Plaintiff's due process

8    and familial association claims fail because they are based on unsupported allegations that SB

9    107 undermines parents' right to access their children's medical records, changes laws involving

10   parental consent to medical procedures, permits parental kidnapping, and overrides other states'

11   jurisdiction over family law matters. These allegations contradict the plain language of the

12   relevant statutory provisions. Plaintiff's Full Faith and Credit Clause claim fails because SB 107

13   permissibly furthers California's legitimate public policy, and because that constitutional

14   provision does not require California to apply an out-of-state law that violates California's public

15   policy in California court proceedings. Lastly, Plaintiff's facial challenge to SB 107 cannot

16   succeed because Plaintiff does not remotely demonstrate that SB 107 is unconstitutional "in all of

17   its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

18   The Court should dismiss.

19        **A.    Plaintiff's Due Process and Familial Association Claims Fail as a Matter of
              Law**

20

21        Plaintiff's constitutional due process and familial association claims are based on several

22   assertions that bear little resemblance to the actual language of SB 107. Plaintiff avers that SB

23   107: (1) "den[ies] parents access their child's medical information"; (2) "prevents parents from

24   *v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991) (holding that only parents and children, but
     not siblings, could assert a "constitutionally protected liberty interest in the companionship and

25   society of his or her child"). Plaintiff's authorities are in agreement. *See, e.g.*, FAC ¶ 76 (citing
     *Lee v. City of L.A.*, 250 F.3d 668, 685 (9th Cir. 2001) ("It is well established that a *parent* has a

26   fundamental liberty interest in the companionship and society of his or her child" and this
     constitutional interest "extends to protect *children* from unwarranted state interference with their

27   relationships with their parents") (emphases added) (internal citations omitted).

28

1   seeking court intervention to gain access to their child's medical records"; (3) "allows minor

2   children from any state to obtain puberty blockers and cross-sex hormones and undergo

3   irreversible surgeries without parental involvement"; (4) justifies "parental kidnapping"; and (5)

4   "overrides the jurisdiction of courts in a family's home state." FAC ¶¶ 2, 5, 6, 34, 56, 67.

5   According to Plaintiff, SB 107 "render[s] all non-California custody agreements and judgments

6   illusory" and "completely obliterates parents' rights." FAC ¶¶ 70, 96. None of these assertions are

7   supported by the statutory text, and the Court need not accept the truth of such unreasonable

8   inferences. *See Sprewell*, 266 F.3d at 988 (the Court need not accept as true allegations that are

9   "unwarranted deductions of fact, or unreasonable inferences.").

10          First, SB 107 does not change California law regarding the right of parents to access their

11   child's medical records. In California, parents are generally entitled to their child's medical

12   records and they do not need a subpoena to obtain them. *See* Cal. Health & Saf. Code §§ 123105

13   & 123110; *see also* Cal. Civ. Code § 56.10(b)(7).[17] Nothing in SB 107 changes that.[18] Section 1

14   of SB 107 addresses an entirely different situation: when medical information is sought from a

15   medical provider "based on another state's law that authorizes a person to bring a civil action"

16   against the person or entity that allowed or provided gender-affirming care. SB 107 § 1. Section 1

17   only prevents a provider from releasing medical information in one narrow circumstance: when

18   the request is based on out-of-state laws authorizing a civil action against a person or entity that

19   provided gender-affirming care. *Id*. This limitation is unrelated to a parent's right to access their

20   child's medical records.[19]

21          [17] There are exceptions to this rule, such as when "the health care provider determines that
22   access to the patient records requested by the representative would have a detrimental effect on
    the provider's professional relationship with the minor patient or the minor's physical safety or
    psychological well-being." Cal. Health & Saf. Code § 123115(a)(2).
23          [18] Plaintiff admits that "California law generally gives parents access to their children's
24   medical records." *See* FAC ¶ 45 n. 13. However, Plaintiff speculates that the statutory exception
    found in Cal. Health & Saf. Code § 123115(a)(2) "may be utilized in tandem with SB 107 to
    prevent parental access to medical records." *Id*. Such speculation is entirely unfounded, and in
25   any event, this exception predates SB 107, was not changed by SB 107, and is not being
    challenged in this lawsuit.
26          [19] Plaintiff complains that section 1 "makes no exception for custodial parents in another
27   state requesting access to such information." FAC ¶ 45. But no exception is needed. Custodial
    parents can always request access to their child's medical information. They can also subpoena
28   such information in all circumstances except for one: when the subpoena is based on an out-of-

16

1    Second, section 2 does not "prevent[] parents from seeking court intervention to gain access

2    to their child's medical records." FAC ¶ 67. Section 2 does not alter a parent's legal right to

3    access their child's medical records in any way. It merely prevents the clerk of a superior court

4    from issuing a subpoena in the same limited situation: when the foreign subpoena "is based on

5    another state's laws that interfere with a person's right to allow a child to receive gender-

6    affirming health care." SB 107 § 2. Even if a parent needed a subpoena to access their child's

7    medical records (which is generally not the case), courts can issue such a subpoena in all

8    circumstances except this limited one. *Id.*

9    Third, Plaintiff's assertion that SB 107 "allows minor children from any state to obtain

10   puberty blockers and cross-sex hormones and undergo irreversible surgeries without parental

11   involvement" is unfounded.[20] FAC ¶ 34. As a preliminary matter, SB 107 does not change

12   parental consent laws surrounding gender-affirming health care. In California, a minor is defined

13   as a person under 18 years of age.[21] With limited exceptions, minors need parental consent for

14   medical care.[22] Parental or legal guardian consent is required for most medical care, including

15   surgery, hormone therapy, puberty blockers, and non-mental health related medical interventions[23]

16   —————————————————————
     state law authorizing a civil action against a person or entity that allowed a minor to receive
     gender-affirming care. SB 107 § 1.

17       [20] Plaintiff acknowledges in a footnote that "California law generally requires parents to
     consent to medical treatment for minors." FAC ¶ 54 n.16. Although Plaintiff claims that the

18   statutory exceptions to this general rule are overly broad, those exceptions pre-date SB 107, were
     not changed by SB 107, and are not being challenged in this lawsuit.

19       [21] Cal. Code Regs. Tit. 9, § 782.14 ("Client means a person, 18 years of age or older,
     admitted to a mental health rehabilitation center for evaluation, observation, diagnosis,

20   rehabilitation and treatment.").
         [22] Cal. Code Regs. Tit. 9, § 784.29(a) (requiring medical providers to obtain informed

21   consent from a client to provide medical treatment); Cal. Fam. Code § 6910 ("The parent,
     guardian, or caregiver of a minor who is a relative of the minor and who may authorize medical

22   care and dental care under Section 6550, may authorize in writing an adult into whose care a
     minor has been entrusted to consent to medical care or dental care, or both, for the minor."); *see*

23   *also Am. Acad. of Pediatrics v. Lungren*, 16 Cal.4th 307, 315 (1997) ("The requirement that
     medical care be provided to a minor only with the consent of the minor's parent or guardian

24   remains the general rule, both in California and throughout the United States.").
         [23] Plaintiff also claims that, under SB 107, children can receive gender-affirming care

25   without a diagnosis of gender dysphoria, and that children can decide what medical interventions
     they want. FAC ¶¶ 40-43. But this argument is a red herring, as SB 107 did not change

26   clinical standards for treating gender dysphoria. In any event, these standards track the
     recommendations of major medical organizations and do not, as Plaintiff claims, allow teenagers

27   to have surgery "on a whim." FAC ¶ 42. For example, the Endocrine Society recommends that
     pharmaceutical interventions should not be provided until puberty and then only for "adolescents

28

17

1  to treat gender dysphoria.[24] In line with California's parental consent laws, health care providers,

2  such as the UCLA Gender Health Program, require parental consent for gender-affirming medical

3  treatment.[25] Nothing in SB 107 addresses—let alone modifies—longstanding parental consent

4  requirements in this state.[26]

5        Moreover, the intent of SB 107 is to empower (not undermine) out-of-state parents seeking

6  medically recommended gender-affirming health care for their child. SB 107 "provides parents

7  assurances that, if they come to California with their child to obtain medical care for the child,

8  their *own parental choice* will not be subject to second-guessing by their home state." SB 107

9  (Wiener) Sen. Jud. Comm. Analysis, at 11 (Aug. 29, 2022) (emphasis added); *see also* SB 107

10  (Wiener) Assembly Jud. Comm. Analysis, at 10-11 (June 5, 2022) (SB 107 seeks to protect "care

11  that is administered after a patient provides informed consent, *is administered with parental*

12  *consent*, and is administered under the supervision of a trained medical professional" (emphasis

13

14  _____

15  who meet diagnostic criteria for [gender dysphoria]/gender incongruence" and fulfill criteria for
   treatment. Wylie C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender-*

16  *Incongruent Persons*, 102(11) J. Clin. Endocrinology & Metabolism 3869, 3871 (2017). Gender
   dysphoria in adolescents should only be diagnosed by mental health professionals using

17  diagnostic tools like the Diagnostic and Statistical Manual of Mental Disorders (DSM) published
   by the American Psychiatric Association. *Id.* at 3870. Hormone therapy should only be initiated

18  under rigorous safety monitoring "after a multidisciplinary team of medical and [mental health
   professionals] has confirmed the persistence of [gender dysphoria]/gender incongruence and
   sufficient mental capacity to give informed consent." *Id.* at 3871. The Endocrine Society

19  recommends that "clinicians delay gender-affirming genital surgery involving gonadectomy
   and/or hysterectomy until the patient is at least 18 years old or legal age of majority." *Id.* at 3872.

20     [24] In California, emancipated minors at least 15 years of age and financially independent
   minors living apart from their parents may consent to their own medical care. Cal. Fam. Code

21  §§ 7050(e)(1); 6922 (a).
      [25] *See* UCLA Gender Health Program, *Health Insurance FAQ*, UCLA (2023),

22  https://www.uclahealth.org/medical-services/gender-health/patient-resources/health-insurance-faq
   (last visited March 29, 2023) ("Due to California state law, our primary care team cannot provide

23  gender affirming medical treatments without parent/legal caregiver consent. If a patient is legally
   emancipated or turns 18, they can consent to their own care without parent consent.").

24     [26] California law allows minors to consent to their own mental health care in certain
   circumstances, none of which were affected by SB 107. *See* Cal. Fam. Code § 6924(b) (a minor

25  who is 12 years or older may consent to mental health treatment or counseling on an outpatient
   basis if: (1) the minor, in the opinion of the attending professional person, is mature enough to

26  participate intelligently in the outpatient services and (2) the minor would present a danger of
   serious physical or mental harm to self or to others without the mental health treatment or

27  counseling or is the alleged victim of incest or child abuse); *see also* Cal. Health & Saf. Code
   § 124260(b)(1).

28

                      18

1   added). Far from undermining parental rights, SB 107 enables parents to pursue gender-affirming

2   health care for their child in California without fear of criminal and civil liability in other states.

3          Fourth, SB 107 does not permit "parental kidnapping . . . for ideological purposes." FAC

4   ¶ 56 (citing SB 107 § 7). As discussed above, section 7 does not address custody determinations

5   at all. SB 107 § 7. It only addresses when a court must decline jurisdiction on one specific basis—

6   when the person invoking its jurisdiction engaged in unjustifiable conduct. *Id*. Section 7 merely

7   states that when a family court evaluates whether a petitioner engaged in "unjustifiable conduct,"

8   the court cannot consider the act of bringing a child to California for gender-affirming care when

9   a *parent* is unable to obtain such care for their child in another state. SB 107 § 7. In other words,

10  it provides one example of conduct that does not legally qualify as unjustifiable conduct. *Id*.

11  Notably, even before SB 107 became law, California family courts were free to conclude that

12  bringing a child to the state for gender-affirming care did not qualify as such conduct.[27]

13  Moreover, section 7 does not affect any other state's jurisdiction (as a home state or otherwise).

14  *Id*.

15         Lastly, there is no merit to Plaintiff's claim that SB 107 "overrides the jurisdiction of the

16  family's home state." FAC ¶ 6. SB 107 did not change the standard for home state jurisdiction or

17  alter the home state priority established by the statutory scheme. *See* Cal. Fam. Code

18  § 3421(a)(1); SB 107 § 4. Section four merely amended the requirements for "significant

19  connection" jurisdiction, which is typically only relevant when there is no home state or the home

20  state has declined to exercise jurisdiction. *See* Cal. Fam. Code § 3421(a)(2). Home states maintain

21  exclusive, continuing jurisdiction (except in emergencies), and their child custody determinations

22  cannot be modified by a court of another state (excepting emergencies). *See* Cal. Fam. Code

23  §§ 3422 & 3423. And even emergency situations require deference to home state jurisdiction; any

24  emergency order is temporary, the courts must immediately communicate, and the court claiming

25  emergency jurisdiction gives the petitioner a limited period of time to seek a custody order from

26

27        [27] Plaintiff wrongly asserts that bringing a child to California for gender-affirming care
    was deemed unjustifiable conduct before SB 107 was enacted. FAC ¶ 56. In fact, "unjustifiable

28  conduct" has never been statutorily defined.

19

1  the home state court. Cal. Fam. Code § 3424. Temporary emergency jurisdiction does not—and

2  cannot—supplant a child custody determination from a child's home state. *Id.*

3      SB 107 does not violate the right to due process or familial association. The Court should

4  dismiss those claims.

5      **B.   Plaintiff's Full Faith and Credit Claim Fails as a Matter of Law**

6      Plaintiff's assertion that SB 107 violates the Full Faith and Credit Clause also fails as a

7  matter of law. According to Plaintiff, SB 107 violates the Full Faith and Credit Clause because it:

8  (1) "was passed as a direct 'policy of hostility' towards statutes passed in other states"; and (2)

9  "unlawfully prohibits the enforcement of an order based upon another state's law authorizing a

10  child to be removed from their parent because the parent allowed the child to undergo gender

11  transitioning surgery."[28] FAC ¶¶ 87, 90. Both claims lack merit.

12      **1.   SB 107 does not violate the Full Faith and Credit Clause's obligation
13          to respect the final judgments of other states**

14      The Constitution's Full Faith and Credit Clause provides: "Full Faith and Credit shall be

15  given in each State to the public Acts, Records, and judicial Proceedings of every other State.

16  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and

17  Proceedings shall be proved, and the Effect thereof." Art. IV, § 1. Congress implemented the Full

18  Faith and Credit Clause in 28 United States Code section 1738. Supreme Court jurisprudence

19  "differentiates the credit owed to laws (legislative measures and common law) and to judgments"

20  under the Full Faith and Credit Clause. *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998).

21  With respect to judgments, "the full faith and credit obligation is exacting. A final judgment in

22  one State . . . qualifies for recognition throughout the land." *Id.* at 233. Subpoenas, however, are

23  not considered final judgments under the Full Faith and Credit Clause. *See, e.g.*, *Hyatt v. State*

24  *Franchise Tax Bd.*, 105 A.D.3d 186, 198 (N.Y. Supr. Ct. App. Div. 2013) (holding that "the

25  subpoenas are not judgments of the California courts to which full faith and credit must be

26  granted," particularly where "the propriety of the subpoenas was never determined by the courts

27  _____

28  [28] Plaintiff also claims that SB 107 violated the Full Faith and Credit Clause "by taking away other states' rightful jurisdiction for any child visiting California" who seeks gender-affirming care. FAC ¶ 93. This assertion is addressed in section II.A., *infra.*

20

1   of California").

2          SB 107 does not even use the word judgment, let alone require California to ignore a final

3   judgment from a sister state. On the contrary, SB 107 did not change California's legal

4   obligations to recognize and enforce child custody determinations made by other states. *See, e.g.*,

5   Cal. Fam. Code § 3443 (California courts "shall recognize and enforce a child custody

6   determination of a court of another state"); *see also id.* §§ 3446 ("A court of this state shall

7   recognize and enforce, but may not modify . . . a registered child custody determination of a court

8   of another state."); 3453 (California courts "shall accord *full faith and credit* to an order issued by

9   another state" and "enforce a child custody determination made by a court of another state unless

10  the order has been vacated, stayed, or modified by a court having jurisdiction to do so")

11  (emphasis added). SB 107 does not violate California's obligation under the Full Faith and Credit

12  Clause to respect the final judgments of other states.

13                    **2.       SB 107 permissibly furthers California's legitimate public policy**

14         In contrast to final judgments, when it comes to recognizing out-of-state statutes, the Full

15  Faith and Credit Clause gives states some flexibility. The Full Faith and Credit Clause "does not

16  require a State to substitute for its own statute, applicable to persons and events within it, the

17  statute of another State reflecting a conflicting and opposed policy." *Franchise Tax Bd. of Cal. v.*

18  *Hyatt*, 578 U.S. 171, 176 (2016) (internal citation omitted). States need not "apply another State's

19  law that violates its '"own legitimate public policy."'" *Id*. at 177 (internal citations omitted). This

20  is known as the public policy exception. The public policy exception is well established in

21  Supreme Court jurisprudence. *Id; see also Alaska Packers Ass'n v. Indus. Acc. Comm'n of Cal.*,

22  294 U.S. 532, 549–50 (1935) (acknowledging the importance of a state's public policy and

23  holding that "[n]o persuasive reason is shown for denying to California the right to enforce its

24  own laws in its own courts" and that "the full faith and credit clause does not require that the

25  statutes of Alaska" trump California's laws). SB 107 properly establishes California's public

26  policy of protecting transgender youth and their families receiving medically necessary (and

27  lawful) health care in our state.

28         One limit to the public policy exception is that states may not evince "a policy of hostility

21

toward" another state. *Hyatt*, 578 U.S. at 176 (cleaned up). In *Hyatt*, for example, the Nevada Supreme Court applied a "special and discriminatory rule" by awarding $1 million dollars in damages to a Nevada taxpayer in a lawsuit against a California agency. *Id*. at 175, 178. That award far exceeded the maximum damages of $50,000 that could have been awarded in similar circumstances against a Nevada agency, and the ruling ignored both Nevada's and California's rules for immunity. *Id*. at 178. Because the Nevada Supreme Court treated a California agency differently than it would have treated a Nevada agency in similar circumstances, Nevada exhibited a "policy of hostility" towards California. *Id*. at 176; *see also Broderick v. Rosner*, 294 U.S. 629, 642–43 (1935) (finding a policy of hostility when a state statute would permit enforcement of certain claims in that state but deny enforcement of similar, valid claims under a sister state's law).

SB 107 does not resemble the actions challenged in *Hyatt* or *Broderick*. It does not create a "special and discriminatory rule" towards a specific sister state while simultaneously disregarding California's own legal standards. Nor does it treat similar claims differently, depending on which state is asserting the claim. On the contrary, California has consistently permitted gender-affirming care for minors, and SB 107 merely creates legal safeguards for transgender youth and their families who choose to come to California to obtain care that is legal here. SB 107 establishes California's public policy of protecting individuals within our borders from being penalized or prosecuted by other states for providing or receiving gender-affirming health care. The California Legislature's considered determination is well within the Full Faith and Credit Clause's public policy exception. *See, e.g.*, *Pink v. A.A.A. Highway Exp.*, 314 U.S. 201, 210 (1941) (The Full Faith and Credit Clause is not a "means for compelling one state wholly to subordinate its own laws and policy concerning its peculiarly domestic affairs to the laws and policy of others.").

3. **The Full Faith and Credit Clause does not require California to apply an out-of-state law that violates California's public policy in California court proceedings**

Plaintiff singles out section 8 in particular as running afoul of the Full Faith and Credit Clause. FAC ¶¶ 90, 92. That section states:

> A law of another state that authorizes a state agency to remove a child from their parent or guardian based on the parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care is against the public policy of this state and shall not be enforced or applied in a case pending in a court in this state.

SB 107 § 8. Plaintiff claims that section 8 "unlawfully prohibits the enforcement of an *order* based upon another state's law authorizing a child to be removed from their parent because the parent allowed the child to undergo gender transitioning surgery." FAC ¶ 90 (emphasis added). But another state's *law* is different from a state court *order* enforcing that law. For nearly a century, the Supreme Court has consistently held that the Full Faith and Credit Clause permits states to apply their own laws in their own courts, and not subordinate their domestic laws to those of other states. *See Franchise Tax Bd. of Cal.*, 578 U.S. at 176; *Alaska Packers Ass'n*, 294 U.S. at 549-50; *Pink*, 314 U.S. at 210. Section 8's application to other states' laws—and not to final judgments premised on those laws—falls squarely within this line of precedent.

In support of this argument, Plaintiff cites an out-of-circuit case, *Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007). FAC ¶ 92. But that case does not help Plaintiff. In *Finstuen*, the Tenth Circuit confirmed that "[i]n applying the Full Faith and Credit Clause, the Supreme Court has drawn a distinction between statutes and judgments." *Finstuen*, 496 F.3d at 1152. The Full Faith and Credit Clause "applies unequivocally to judgments of sister states, [but] it applies with less force to their statutory laws." *Id*. In light of that critical distinction, the Tenth Circuit held that "final adoption orders and decrees are judgments that are entitled to recognition by all other states under the Full Faith and Credit Clause." *Id*. at 1156. Nothing in *Finstuen* suggests that California must apply another state's laws in its own court proceedings.

23

1   Because SB 107 furthers California's legitimate public policy and does not impact

2   California's recognition of final judgments from other states, it does not run afoul of the Full

3   Faith and Credit Clause.

4   **C.   Plaintiff's Facial Challenge to SB 107 Fails as a Matter of Law**

5   As a final matter, Plaintiff's facial challenge to SB 107 should be dismissed. Plaintiff

6   "seeks declaratory relief holding SB 107 unconstitutional . . ." FAC ¶ 10; *see also* Prayer for

7   Relief (requesting "an order declaring SB 107 unconstitutional"). But Plaintiff cannot meet the

8   high bar for invalidating a statute on its face. "A facial challenge to a legislative Act is . . . the

9   most difficult challenge to mount successfully, since the challenger must establish that no set of

10  circumstances exists under which the Act would be valid." *U. S. v. Salerno*, 481 U.S. 739, 745

11  (1987). The fact that a law "might operate unconstitutionally under some conceivable set of

12  circumstances is insufficient to render it wholly invalid." *Id*. (holding that respondents "failed to

13  shoulder their heavy burden to demonstrate" that the law was unconstitutional on its face). "Facial

14  challenges are disfavored" because they "often rest on speculation" and "they raise the risk of

15  premature interpretation of statutes on the basis of factually barebones records." *Wash. St.*

16  *Grange*, 552 U.S. at 450 (internal citations omitted).

17  Plaintiff speculates that SB 107 will result in "a flood of children" fleeing (or being taken)

18  to California to obtain gender-affirming care that their parents oppose. FAC ¶ 51. For the many

19  reasons outlined above, this fear is unjustified, implausible, and entirely unmoored from the

20  actual statutory language. Such unfounded speculation is also legally insufficient to strike down

21  SB 107 in its entirety. In this facial challenge, Plaintiff must establish that SB 107 "is

22  unconstitutional in all of its applications." *Wash. St. Grange*, 552 U.S. at 449. Plaintiff does not

23  come close to such a showing. The Court should dismiss on this basis as well. *See, e.g., Nguyen v.*

24  *City of Buena Park*, 2020 WL 5991616, at *7 (C.D. Cal. Aug. 18, 2020) (granting motion to

25  dismiss equal protection and due process claims because "Plaintiffs cannot allege that no set of

26  circumstances exists under which the Ordinances would be valid" among other reasons).

27

28

1

**CONCLUSION**

2   Plaintiff has already had the opportunity to amend its Complaint, and it has failed to

3   establish standing or state a claim. The Court should therefore dismiss the First Amended

4   Complaint with prejudice.

5   Dated:  April 27, 2023                    Respectfully submitted,

6                                             ROB BONTA
                                              Attorney General of California
7                                             KATHLEEN BOERGERS
                                              Supervising Deputy Attorney General
8

9

10                                            _/s/ Nimrod Pitsker Elias_

11                                            NIMROD PITSKER ELIAS
                                              LILY WEAVER
12                                            NATALIE TORRES
                                              Deputy Attorneys General
13                                            _Attorneys for Defendant Rob Bonta,_
                                              _Attorney General of California_

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss
(2:23-cv-00422-DAD-DB)

EXHIBIT 1

## Senate Bill No. 107

### CHAPTER 810

An act to add Section 56.109 to the Civil Code, to amend Sections 2029.300 and 2029.350 of the Code of Civil Procedure, to amend Sections 3421, 3424, 3427, and 3428 of, and to add Section 3453.5 to, the Family Code, and to amend Section 1326 of, and to add Section 819 to, the Penal Code, relating to health care.

[Approved by Governor September 29, 2022. Filed with
Secretary of State September 29, 2022.]

LEGISLATIVE COUNSEL'S DIGEST

SB 107, Wiener. Gender-affirming health care.

(1)  The United States Constitution generally requires a state to give full faith and credit to the public acts, records, and judicial proceedings of every other state. Existing law authorizes, upon the demand made by another state, the extradition of a person charged with committing an act in this state that results in a crime in the demanding state, as specified. Existing law sets forth procedures by which a person may enforce a judgment for the payment of money and child custody orders issued by the court of a state other than California. Existing law authorizes a California court or attorney to issue a subpoena if a foreign subpoena has been sought in this state. Existing law generally prohibits a provider of health care, a health care service plan, or a contractor from disclosing medical information regarding a patient, enrollee, or subscriber without first obtaining an authorization, unless a specified exception applies, including that the disclosure is in response to a subpoena.

This bill would prohibit a provider of health care, a health care service plan, or a contractor from releasing medical information related to a person or entity allowing a child to receive gender-affirming health care or gender-affirming mental health care in response to a criminal or civil action, including a foreign subpoena, based on another state's law that authorizes a person to bring a civil or criminal action against a person or entity that allows a child to receive gender-affirming health care or gender-affirming mental health care. The bill additionally would prohibit law enforcement agencies from knowingly making or participating in the arrest or extradition of an individual pursuant to an out-of-state arrest warrant based on another state's law against providing, receiving, or allowing a child to receive gender-affirming health care or gender-affirming mental health care in this state, as specified.

(2)  Existing law, known as the Uniform Child Custody Jurisdiction and Enforcement Act, provides the state exclusive jurisdictional basis for making an initial child custody determination, and permits a California court to

90

assume temporary emergency jurisdiction in specified circumstances. Existing law permits a court to decline to exercise its jurisdiction if it determines that it is an inconvenient forum and a court in another state is a more appropriate forum.

Existing law permits a California court to decline to exercise its jurisdiction if the petitioner has wrongfully taken the child from another state or engaged in similar reprehensible conduct, except as specified. Existing law prohibits a court from considering the taking or retention of a child from a person who has legal custody of the child if there is evidence that the taking or retention was a result of domestic violence.

The bill would prohibit the enforcement of an order based on another state's law authorizing a child to be removed from their parent or guardian based on that parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care. The bill would prohibit a court from finding that it is an inconvenient forum where the law or policy of another state that may take jurisdiction limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care, as defined, and the provision of such care is at issue in the case before the court. The bill would authorize a court to take temporary jurisdiction because a child has been unable to obtain gender-affirming health care. The bill would additionally prohibit a court from considering the taking or retention of a child from a person who has legal custody of the child, if the taking or retention was for obtaining gender-affirming health care or mental health care. The bill would declare its provisions to be severable.

(3)  This bill would incorporate additional changes to Sections 2029.300 and 2029.350 of the Code of Civil Procedure proposed by AB 2091 to be operative only if this bill and AB 2091 are enacted and this bill is enacted last.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 56.109 is added to the Civil Code, to read:

56.109.  (a)  Notwithstanding subdivision (b) of Section 56.10, a provider of health care, health care service plan, or contractor shall not release medical information related to a person or entity allowing a child to receive gender-affirming health care or gender-affirming mental health care in response to any civil action, including a foreign subpoena, based on another state's law that authorizes a person to bring a civil action against a person or entity that allows a child to receive gender-affirming health care or gender-affirming mental health care.

(b)  Notwithstanding subdivision (c) of Section 56.10, a provider of health care, health care service plan, or contractor shall not release medical information to persons or entities who have requested that information and who are authorized by law to receive that information pursuant to subdivision (c) of Section 56.10, if the information is related to a person or entity

allowing a child to receive gender-affirming health care or gender-affirming mental health care, and the information is being requested pursuant to another state's law that authorizes a person to bring a civil action against a person or entity who allows a child to receive gender-affirming health care or gender-affirming mental health care.

(c) For the purposes of this section, "person" means an individual or governmental subdivision, agency, or instrumentality.

(d) For the purpose of this section, "gender-affirming health care" and "gender-affirming mental health care" shall have the same meaning as provided in Section 16010.2 of the Welfare and Institutions Code.

SEC. 2.   Section 2029.300 of the Code of Civil Procedure is amended to read:

2029.300.   (a) To request issuance of a subpoena under this section, a party shall submit the original or a true and correct copy of a foreign subpoena to the clerk of the superior court in the county in which discovery is sought to be conducted in this state. A request for the issuance of a subpoena under this section does not constitute making an appearance in the courts of this state.

(b) In addition to submitting a foreign subpoena under subdivision (a), a party seeking discovery shall do both of the following:

(1) Submit an application requesting that the superior court issue a subpoena with the same terms as the foreign subpoena. The application shall be on a form prescribed by the Judicial Council pursuant to Section 2029.390. No civil case cover sheet is required.

(2) Pay the fee specified in Section 70626 of the Government Code.

(c) When a party submits a foreign subpoena to the clerk of the superior court in accordance with subdivision (a), and satisfies the requirements of subdivision (b), the clerk shall promptly issue a subpoena for service upon the person to which the foreign subpoena is directed.

(d) A subpoena issued under this section shall satisfy all of the following conditions:

(1) It shall incorporate the terms used in the foreign subpoena.

(2) It shall contain or be accompanied by the names, addresses, and telephone numbers of all counsel of record in the proceeding to which the subpoena relates and of any party not represented by counsel.

(3) It shall bear the caption and case number of the out-of-state case to which it relates.

(4) It shall state the name of the court that issues it.

(5) It shall be on a form prescribed by the Judicial Council pursuant to Section 2029.390.

(e) (1) Notwithstanding subdivision (a), no subpoena shall be issued pursuant to this section if the foreign subpoena is based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care.

(2) For the purpose of this subdivision, "gender-affirming health care" and "gender-affirming mental health care" shall have the same meaning as provided in Section 16010.2 of the Welfare and Institutions Code.

90

SEC. 2.5.   Section 2029.300 of the Code of Civil Procedure is amended to read:

2029.300.   (a)  To request issuance of a subpoena under this section, a party shall submit the original or a true and correct copy of a foreign subpoena to the clerk of the superior court in the county in which discovery is sought to be conducted in this state. A request for the issuance of a subpoena under this section does not constitute making an appearance in the courts of this state.

(b)  In addition to submitting a foreign subpoena under subdivision (a), a party seeking discovery shall do both of the following:

(1)  Submit an application requesting that the superior court issue a subpoena with the same terms as the foreign subpoena. The application shall be on a form prescribed by the Judicial Council pursuant to Section 2029.390. No civil case cover sheet is required.

(2)  Pay the fee specified in Section 70626 of the Government Code.

(c)  When a party submits a foreign subpoena to the clerk of the superior court in accordance with subdivision (a), and satisfies the requirements of subdivision (b), the clerk shall promptly issue a subpoena for service upon the person to which the foreign subpoena is directed.

(d)  A subpoena issued under this section shall satisfy all of the following conditions:

(1)  It shall incorporate the terms used in the foreign subpoena.

(2)  It shall contain or be accompanied by the names, addresses, and telephone numbers of all counsel of record in the proceeding to which the subpoena relates and of any party not represented by counsel.

(3)  It shall bear the caption and case number of the out-of-state case to which it relates.

(4)  It shall state the name of the court that issues it.

(5)  It shall be on a form prescribed by the Judicial Council pursuant to Section 2029.390.

(e)  Notwithstanding subdivision (a), a subpoena shall not be issued pursuant to this section in any of the following circumstances:

(1)  If the foreign subpoena is based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care. For the purpose of this paragraph, "gender-affirming health care" and "gender-affirming mental health care" shall have the same meaning as provided in Section 16010.2 of the Welfare and Institutions Code.

(2)  If the submitted foreign subpoena relates to a foreign penal civil action and would require disclosure of information related to sensitive services. For purposes of this paragraph, "sensitive services" has the same meaning as defined in Section 791.02 of the Insurance Code.

SEC. 3.   Section 2029.350 of the Code of Civil Procedure is amended to read:

2029.350.   (a)  Notwithstanding Sections 1986 and 2029.300, if a party to a proceeding pending in a foreign jurisdiction retains an attorney licensed to practice in this state, who is an active member of the State Bar, and that

attorney receives the original or a true and correct copy of a foreign subpoena, the attorney may issue a subpoena under this article.

(b) (1) Notwithstanding subdivision (a), an authorized attorney shall not issue a subpoena pursuant to subdivision (a) if the foreign subpoena is based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care.

(2) For the purpose of this subdivision, "gender-affirming health care" and "gender-affirming mental health care" shall have the same meaning as provided in Section 16010.2 of the Welfare and Institutions Code.

(c) A subpoena issued under this section shall satisfy all of the following conditions:

(1) It shall incorporate the terms used in the foreign subpoena.

(2) It shall contain or be accompanied by the names, addresses, and telephone numbers of all counsel of record in the proceeding to which the subpoena relates and of any party not represented by counsel.

(3) It shall bear the caption and case number of the out-of-state case to which it relates.

(4) It shall state the name of the superior court of the county in which the discovery is to be conducted.

(5) It shall be on a form prescribed by the Judicial Council pursuant to Section 2029.390.

SEC. 3.5.   Section 2029.350 of the Code of Civil Procedure is amended to read:

2029.350.   (a) Notwithstanding Sections 1986 and 2029.300, if a party to a proceeding pending in a foreign jurisdiction retains an attorney licensed to practice in this state, who is an active member of the State Bar, and that attorney receives the original or a true and correct copy of a foreign subpoena, the attorney may issue a subpoena under this article.

(b) (1) Notwithstanding subdivision (a), an authorized attorney shall not issue a subpoena pursuant to subdivision (a) if the foreign subpoena is based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care.

(2) For the purpose of this subdivision, "gender-affirming health care" and "gender-affirming mental health care" shall have the same meaning as provided in Section 16010.2 of the Welfare and Institutions Code.

(c) Notwithstanding subdivision (a), an attorney shall not issue a subpoena under this article based on a foreign subpoena that relates to a foreign penal civil action and that would require disclosure of information related to sensitive services. For purposes of this subdivision, "sensitive services" has the same meaning as defined in Section 791.02 of the Insurance Code.

(d) A subpoena issued under this section shall satisfy all of the following conditions:

(1) It shall incorporate the terms used in the foreign subpoena.

(2) It shall contain or be accompanied by the names, addresses, and telephone numbers of all counsel of record in the proceeding to which the subpoena relates and of any party not represented by counsel.

(3) It shall bear the caption and case number of the out-of-state case to which it relates.

(4) It shall state the name of the superior court of the county in which the discovery is to be conducted.

(5) It shall be on a form prescribed by the Judicial Council pursuant to Section 2029.390.

SEC. 4.   Section 3421 of the Family Code is amended to read:

3421.   (a)   Except as otherwise provided in Section 3424, a court of this state has jurisdiction to make an initial child custody determination only if any of the following are true:

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

(2) A court of another state does not have jurisdiction under paragraph (1), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under Section 3427 or 3428, and both of the following are true:

(A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(3) All courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 3427 or 3428.

(4) No court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2), or (3).

(b) Subdivision (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

(c) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

(d) The presence of a child in this state for the purpose of obtaining gender-affirming health care or gender-affirming mental health care, as defined by Section 16010.2 of the Welfare and Institutions Code, is sufficient to meet the requirements of paragraph (2) of subdivision (a).

SEC. 5.   Section 3424 of the Family Code is amended to read:

3424.   (a)   A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse, or because the child has been unable to obtain gender-affirming

90

health care or gender-affirming mental health care, as defined by Section 16010.2 of the Welfare and Institutions Code.

(b)  If there is no previous child custody determination that is entitled to be enforced under this part and a child custody proceeding has not been commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under Sections 3421 to 3423, inclusive. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, a child custody determination made under this section becomes a final determination, if it so provides and this state becomes the home state of the child.

(c)  If there is a previous child custody determination that is entitled to be enforced under this part, or a child custody proceeding has been commenced in a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under Sections 3421 to 3423, inclusive. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

(d)  A court of this state that has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Sections 3421 to 3423, inclusive, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Sections 3421 to 3423, inclusive, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

(e)  It is the intent of the Legislature in enacting subdivision (a) that the grounds on which a court may exercise temporary emergency jurisdiction be expanded. It is further the intent of the Legislature that these grounds include those that existed under Section 3403 of the Family Code as that section read on December 31, 1999, particularly including cases involving domestic violence.

SEC. 6.  Section 3427 of the Family Code is amended to read:

3427.  (a)  A court of this state that has jurisdiction under this part to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

(b)  Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1)  Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

(2)  The length of time the child has resided outside this state.

(3)  The distance between the court in this state and the court in the state that would assume jurisdiction.

(4)  The degree of financial hardship to the parties in litigating in one forum over the other.

(5)  Any agreement of the parties as to which state should assume jurisdiction.

(6)  The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.

(7)  The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

(8)  The familiarity of the court of each state with the facts and issues in the pending litigation.

(c)  If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

(d)  A court of this state may decline to exercise its jurisdiction under this part if a child custody determination is incidental to an action for dissolution of marriage or another proceeding while still retaining jurisdiction over the dissolution of marriage or other proceeding.

(e)  If it appears to the court that it is clearly an inappropriate forum, the court may require the party who commenced the proceeding to pay, in addition to the costs of the proceeding in this state, necessary travel and other expenses, including attorney's fees, incurred by the other parties or their witnesses. Payment is to be made to the clerk of the court for remittance to the proper party.

(f)  (1)  In a case where the provision of gender-affirming health care or gender-affirming mental health care to the child is at issue, a court of this state shall not determine that it is an inconvenient forum where the law or policy of the other state that may take jurisdiction limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child.

(2)  For the purposes of this section, "gender-affirming health care" and "gender-affirming mental health care" have the same meaning as defined by Section 16010.2 of the Welfare and Institutions Code.

SEC. 7.  Section 3428 of the Family Code is amended to read:

3428.  (a)  Except as otherwise provided in Section 3424 or by any other law of this state, if a court of this state has jurisdiction under this part because a person seeking to invoke its jurisdiction has engaged in unjustifiable

conduct, the court shall decline to exercise its jurisdiction unless one of the following are true:

(1)  The parents and all persons acting as parents have acquiesced in the exercise of jurisdiction.

(2)  A court of the state otherwise having jurisdiction under Sections 3421 to 3423, inclusive, determines that this state is a more appropriate forum under Section 3427.

(3)  No court of any other state would have jurisdiction under the criteria specified in Sections 3421 to 3423, inclusive.

(b)  If a court of this state declines to exercise its jurisdiction pursuant to subdivision (a), it may fashion an appropriate remedy to ensure the safety of the child and prevent a repetition of the unjustifiable conduct, including staying the proceeding until a child custody proceeding is commenced in a court having jurisdiction under Sections 3421 to 3423, inclusive.

(c)  If a court dismisses a petition or stays a proceeding because it declines to exercise its jurisdiction pursuant to subdivision (a), it shall assess against the party seeking to invoke its jurisdiction necessary and reasonable expenses including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees are sought establishes that the assessment would be clearly inappropriate. The court may not assess fees, costs, or expenses against this state unless authorized by law other than this part.

(d)  In making a determination under this section, a court shall not consider as a factor weighing against the petitioner any taking of the child, or retention of the child after a visit or other temporary relinquishment of physical custody, from the person who has legal custody, if there is evidence that the taking or retention of the child was a result of domestic violence against the petitioner, as defined in Section 6211, or for the purposes of obtaining gender-affirming health care or gender-affirming mental health care, as defined by Section 16010.2 of the Welfare and Institutions Code, for the child and the law or policy of the other state limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child.

SEC. 8.   Section 3453.5 is added to the Family Code, to read:

3453.5.   (a)  A law of another state that authorizes a state agency to remove a child from their parent or guardian based on the parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care is against the public policy of this state and shall not be enforced or applied in a case pending in a court in this state.

(b)  For the purpose of this subdivision, "gender-affirming health care" and "gender-affirming mental health care" shall have the same meaning as provided in Section 16010.2 of the Welfare and Institutions Code.

SEC. 9.   Section 819 is added to the Penal Code, to read:

819.   (a)  It is the public policy of the state that an out-of-state arrest warrant for an individual based on violating another state's law against providing, receiving, or allowing their child to receive gender-affirming

health care or gender-affirming mental health care is the lowest law enforcement priority.

(b)  California law enforcement agencies shall not knowingly make or participate in the arrest or participate in any extradition of an individual pursuant to an out-of-state arrest warrant for violation of another state's law against providing, receiving, or allowing a child to receive gender-affirming health care and gender-affirming mental health care in this state, if that care is lawful under the laws of this state, to the fullest extent permitted by federal law.

(c)  No state or local law enforcement agency shall cooperate with or provide information to any individual or out-of-state agency or department regarding the provision of lawful gender-affirming health care or gender-affirming mental health care performed in this state.

(d)  Nothing in this section shall prohibit the investigation of any criminal activity in this state which may involve the performance of gender-affirming health care or gender-affirming mental health care provided that no information relating to any medical procedure performed on a specific individual may be shared with an out-of-state agency or any other individual.

(e)  For the purpose of this subdivision, "gender-affirming health care" and "gender-affirming mental health care" shall have the same meaning as provided in Section 16010.2 of the Welfare and Institutions Code.

SEC. 10.   Section 1326 of the Penal Code is amended to read:

1326.   (a)  The process by which the attendance of a witness before a court or magistrate is required is a subpoena. It may be signed and issued by any of the following:

(1)  A magistrate before whom a complaint is laid or their clerk, the district attorney or their investigator, or the public defender or their investigator, for witnesses in the state.

(2)  The district attorney, their investigator, or, upon request of the grand jury, any judge of the superior court, for witnesses in the state, in support of an indictment or information, to appear before the court in which it is to be tried.

(3)  The district attorney or their investigator, the public defender or their investigator, or the clerk of the court in which a criminal action is to be tried. The clerk shall, at any time, upon application of the defendant, and without charge, issue as many blank subpoenas, subscribed by them, for witnesses in the state, as the defendant may require.

(4)  The attorney of record for the defendant.

(b)  A subpoena issued in a criminal action that commands the custodian of records or other qualified witness of a business to produce books, papers, documents, or records shall direct that those items be delivered by the custodian or qualified witness in the manner specified in subdivision (b) of Section 1560 of the Evidence Code. Subdivision (e) of Section 1560 of the Evidence Code shall not apply to criminal cases.

(c)  (1)  Notwithstanding subdivision (b), a provider of health care, health care service plan, or contractor shall not release medical information related to a person or entity allowing a child to receive gender-affirming health

care or gender-affirming mental health care in response to any foreign subpoena that is based on a violation of another state's laws authorizing a criminal action against a person or entity that allows a child to receive gender-affirming health care or gender-affirming mental health care.

(2)  For the purpose of this subdivision, "gender-affirming health care" and "gender-affirming mental health care" shall have the same meaning as provided in Section 16010.2 of the Welfare and Institutions Code.

(d)  In a criminal action, no party, or attorney or representative of a party, may issue a subpoena commanding the custodian of records or other qualified witness of a business to provide books, papers, documents, or records, or copies thereof, relating to a person or entity other than the subpoenaed person or entity in any manner other than that specified in subdivision (b) of Section 1560 of the Evidence Code. When a defendant has issued a subpoena to a person or entity that is not a party for the production of books, papers, documents, or records, or copies thereof, the court may order an in camera hearing to determine whether or not the defense is entitled to receive the documents. The court may not order the documents disclosed to the prosecution except as required by Section 1054.3.

(e)  This section shall not be construed to prohibit obtaining books, papers, documents, or records with the consent of the person to whom the books, papers, documents, or records relate.

SEC. 11.   The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 12.   (a)  Section 2.5 of this bill incorporates amendments to Section 2029.300 of the Code of Civil Procedure proposed by this bill and Assembly Bill 2091. That section shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, (2) each bill amends Section 2029.300 of the Code of Civil Procedure, and (3) this bill is enacted after Assembly Bill 2091, in which case Section 2029.300 of the Code of Civil Procedure, as amended by Assembly Bill 2091, shall remain operative only until the operative date of this bill, at which time Section 2.5 of this bill shall become operative, and Section 2 of this bill shall not become operative.

(b)  Section 3.5 of this bill incorporates amendments to Section 2029.350 of the Code of Civil Procedure proposed by this bill and Assembly Bill 2091. That section shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2023, (2) each bill amends Section 2029.350 of the Code of Civil Procedure, and (3) this bill is enacted after Assembly Bill 2091, in which case Section 2029.350 of the Code of Civil Procedure, as amended by Assembly Bill 2091, shall remain operative only until the operative date of this bill, at which time Section 3.5 of this bill shall become operative, and Section 3 of this bill shall not become operative.

O