1  Mariah Gondeiro, Esq., CA Bar No. 323683
   mgondeiro@faith-freedom.com
2  Julianne Fleischer, Esq., CA Bar No. 337006
   jfleischer@faith-freedom.com
3  ADVOCATES FOR FAITH & FREEDOM
   25026 Las Brisas Road
4  Murrieta, California 92562
   Telephone:    (951) 600-2733
5  Facsimile:    (951) 600-4996
6
7  Attorneys for Plaintiff

8           **UNITED STATES DISTRICT COURT**

9       **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11 **OUR WATCH,** a California non-profit | Case No.:  2:23-CV-00422-DAD-DB
   organization;

12 | **PLAINTIFF OUR WATCH'S MOTION**
                    Plaintiff, | **FOR PRELIMINARY INJUNCTION;**
13 | **MEMORANDUM OF POINTS AND**
                                | **AUTHORITIES IN SUPPORT**
14        vs.

15 **ROB BONTA**, the attorney general of California; | Hearing Date: June 20, 2023
                                                      | Time: 1:30 p.m.
16         Defendants. | Dept: Courtroom 4
                        | Judge: Hon. Dale A. Drozd
17

18

19     **TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF**

20 **RECORD**:

21     **PLEASE TAKE NOTICE** that Plaintiff Our Watch with Tim Thompson ("Our Watch" or

22 "Plaintiff") moves this Honorable Court for a preliminary injunction to enjoin Defendant Rob

23 Bonta, in his official capacity as Attorney General of California, along with his officers, agents,

24 servants, employees, attorneys, and other persons who are in active concert or participation with

25 them, from directly or indirectly taking any action to enforce California Senate Bill 107.

26     Plaintiff makes this application pursuant to the Federal Rule of Civil Procedure 65(a) and

27 Civil Local Rule 231 based on the following:

28

                              1

1. Plaintiff demonstrates a strong likelihood of success on the merits because Senate Bill 107 ("SB 107") violates its constitutional rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution.

2. Plaintiff demonstrates that it will suffer irreparable harm by further enforcement of SB 107.

3. The balance of equities tips sharply in Plaintiff's.

4. Issuance of an injunction serves the public because it is always in the public's interest to prevent the violation of constitutional rights.

5. Plaintiff has no adequate remedy at law.

6. The Court has jurisdiction to issue the order as requested because Plaintiff's Verified First Amended Complaint raises substantial federal questions and alleges violations of the United States Constitution.

This motion is supported by the accompanying Memorandum of Points and Authorities, the Plaintiff's Verified First Amended Complaint, the declaration of Plaintiff's counsel, Mariah Gondeiro, and by such further argument and evidence that may be adduced at any hearing on this matter or of which the Court may take judicial notice.

Dated: April 27, 2023     Respectfully submitted,

              /s/ Mariah R. Gondeiro
             Mariah Gondeiro, Esq.
             Attorney for Plaintiff



MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................ 1

II. FACTUAL BACKGROUND ............................................................... 2

III. ARGUMENT .................................................................................. 11

    A.    Plaintiff Is Likely To Succeed On The Merits ....................... 11

        1.    SB 107 Violates the Due Process Clause..................... 11

        2.    SB 107 Violates the Right to Familial Association under the Fourteenth Amendment and First Amendment............................ 14

        3.    SB 107 Violates the Full Faith and Credit Clause ...................... 16

    B.    Plaintiff Will Continue To Suffer Irreparable Harm Absent Injunctive Relief. ................................................................. 21

    C.    The Balance Of Equities Tips In Plaintiff's Favor, And Enjoining SB 107 Serves The Public Interest. ........................................... 22

IV. CONCLUSION ............................................................................... 22

MEMORANDUM OF POINTS AND AUTHORITIES

**TABLE OF AUTHORITIES**

Cases

*Alaska Packers Ass'n v. Indus. Acc. Comm'n,*
  294 U.S. 532 (1935) ................................................................ 18

*Arizona Dream Act Coal. v. Brewer,*
  757 F.3d 1053 (9th Cir. 2014) ............................................ 22

*Assoc. Gen. Contractors v. Coal for Econ. Equity,*
  950 F.2d 1401 (9th Cir. 1991) ............................................ 21

*Baker by Thomas v. Gen. Motors Corp.,*
  522 U.S. 222 (1998) ....................................................... 19, 20

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte,*
  481 U.S. 537 (1987) ............................................................ 15

*Burke v. County of Alameda,*
  586 F.3d 725 (9th Cir. 2009) ............................................ 12

*Calabretta v. Floyd,*
  189 F.3d 808 (9th Cir. 1999) ............................................ 14

*Drakes Bay Oyster Co. v. Jewell,*
  747 F.3d 1073 (9th Cir. 2014) ............................................ 22

*Dubbs v. Head Start, Inc.,*
  336 F.3d 1194 (10th Cir. 2003) ........................................ 12

*Fauntleroy v. Lum,*
  210 U.S. 230 (1908) ............................................... 16, 19, 20

*Finstuen v. Crutcher*
496 F.3d 1139 (10th Cir. 2007) .......................................... 20

*Franchise Tax Bd. of Calif. v. Hyatt,*
  538 U.S. 488 (2003) ............................................................ 16

*Franchise Tax Bd. of California v. Hyatt,*
  139 S. Ct. 1485 (2019) ........................................................ 16

*Franchise Tax Board v. Hyatt,*
  578 U.S. 171 (2016) ...................................................... 16, 17

*Hughes v. Fetter,*
  341 U.S. 609 (1951) ............................................................ 18

*Idaho v. Coeur d'Alene Tribe,*
  794 F.3d 1039 (9th Cir. 2015) ............................................ 21

*Keates v. Koile,*
  883 F.3d 1228 (9th Cir. 2018) ............................................ 15

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) ...................................... 14, 15

*Mann v. Cnty. of San Diego,*
  907 F.3d 1154 (9th Cir. 2018) ...................................... 11, 12

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012) ............................................ 22

*Meyer v. Nebraska,*
  262 U.S. 390 (1923) ............................................................ 11



MEMORANDUM OF POINTS AND AUTHORITIES

*Parham v. J.R.*,
   442 U.S. 584 (1979) .................................................................................................... 12

*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*,
   268 U.S. 510 (1925) ...............................................................................................1, 11

*Planned Parenthood Arizona, Inc. v. Humble*,
   753 F.3d 905 (9th Cir. 2014) ....................................................................................11

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005) ................................................................................... 22

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ................................................................................................. 15

*Rogers v. County of San Joaquin*,
   487 F.3d 1288 (9th Cir. 2007) ................................................................................. 12

*Troxel v. Granville*,
   530 U.S. 57 (2000) ...............................................................................1, 11, 13, 14

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) .......................................................................... 21, 22

*Wallis v. Spencer*,
   202 F.3d 1126 (9th Cir. 2001)...................................................... 12, 13, 14, 15

*Washington v. Glucksberg*,
   521 U.S. 702 (1997) ..................................................................................................11

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................................................11

**Statutes**

28 U.S.C. § 1738 (1994) ................................................................................................. 19
28 U.S.C. § 1738A .......................................................................................................... 19
42 U.S.C. § 1983 ............................................................................................................. 14
California Civil Code § 56.10(b)(7) ................................................................................. 6
California Civil Code § 56.109 ......................................................................................... 6
California Family Code § 3400 ......................................................................................... 7
California Family Code § 3421(d) .................................................................................... 8
California Family Code § 3424(a) .................................................................................... 8
California Family Code § 3424(b) .................................................................................... 8
California Family Code § 3424(c) .................................................................................... 9
California Family Code § 3427 ......................................................................................... 9
California Family Code § 3428 ......................................................................................... 9
California Family Code § 3465 ......................................................................................... 7
California Family Code § 6910 ......................................................................................... 9
California Family Code § 6911 ......................................................................................... 9
California Health & Safety Code § 123105 ..................................................................... 6
California Health & Safety Code § 123110 ..................................................................... 6
California Health & Safety Code § 123115(a)(2) ............................................................ 6
California Health & Safety Code § 124260(b).................................................................. 6
California Welfare and Institutions Code §§ 16001.9(a), 16010.2............................ 9, 13
Code of Civil Procedure § 2029.300 ............................................................................... 6
U.S. Const. Art. IV, § 1.......................................................................................... 16, 19
U.S. Const. Art. XIV .......................................................................................................11



MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The right of parents to raise their children is one of the most fundamental and long-standing constitutional rights. *See, e.g., Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925) ("The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); *Troxel v. Granville*, 530 U.S. 57, 72-73 (2000) ("[A] State [may not] infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made."). California Senate Bill 107 ("SB 107") is an explicit and radical assault on sacred parental rights and the comity between states.

SB 107 violates the fundamental right of parents to direct the care and upbringing of their child, including the right to be involved in a child's medical decisions. The bill allows minors to obtain reassignment treatment like harmful puberty blockers, cross-sex hormones, and irreversible surgeries without parental consent, while denying parents access to their child's medical information. The bill also requires the State of California to exercise jurisdiction over minors present in the state seeking gender reassignment treatment.

SB 107 also violates the Full Faith and Credit Clause to the United States Constitution, which requires California defer to the laws and jurisdictions of the 49 other states regarding the care and custody of children. SB 107 overrides the jurisdiction of courts in a family's home state, which are usually the proper forum for custody determinations. The bill allows California courts to take emergency jurisdiction over a child struggling with gender dysphoria. California has decided that its courts—not those of the family's home state—are best suited to determine whether parents are fit to raise their child.

SB 107 makes it possible for parents and minors to avoid safeguards in place regarding life-altering medical procedures for children. Parents and third parties can avoid any scrutiny about what they are subjecting a child to. Simple and necessary guardrails like age limitations, parental consent requirements, psychological status, diagnostic requirements, etc., as adopted by other

states, can all be circumvented provided that the child sets foot in California. California courts have authority to take jurisdiction over any child who arrives in California for any type of gender-affirming care.

Defendant's violation of the Constitution causes Plaintiff to suffer irreparable harm because SB 107 interferes with Plaintiff's mission of preserving parental rights. Defendant has no legitimate public interest in enforcing a law that usurps the Constitution. Thus, Plaintiff respectfully requests that this Court, in the interest of justice and as a guardian of civil rights, enjoin Defendant from enforcing SB 107.

## II. FACTUAL BACKGROUND

Plaintiff Our Watch With Tim Thompson ("Our Watch" or "Plaintiff") is a California 501(c)(3) organization dedicated to protecting family and parental rights in California. Verified First Amended Complaint ("VC"), ¶¶ 8, 11, ECF No. 10. Our Watch is also committed to tackling major cultural issues such as transgenderism. *Id.*, ¶ 12. Our Watch has had to divert organizational resources to address the effects of SB 107, including implementing education programs and designing and disseminating literature and podcasts to reach churches and parents both inside California and outside of California. *Id.*, ¶¶ 13-15. The bill has also caused Our Watch to divert time and attention from other issues, causes, and activities that align with its mission such as legislative advocacy. *Id.*, ¶ 15. SB 107 was the primary catalyst that prompted Our Watch to divert nearly all its time and resources to educating parents and churches about transgender issues and SB 107. *Id.*

**Gender Dysphoria In Children**

Multiple studies have found that approximately 80-95% of children who experience gender dysphoria ultimately find comfort with their biological sex and cease experiencing gender dysphoria as they age if they are not encouraged to pursue gender identity treatments. *Id.*, ¶ 21. There is a disagreement in the medical community about the proper approach when a child experiences gender dysphoria, specifically whether a social gender transition is appropriate for children. *Id.*, ¶ 22. Some mental health professionals believe that socially transitioning to a

different gender identity during childhood, and affirmation of that alternative identity by adults, can become self-reinforcing and have profound long-term effects on the child's psyche and identity. *Id.* Other medical and psychiatric professionals believe that the best response is to affirm a child's perceived gender identity and to support a social transition to that identity. *Id.*, ¶ 22.

However, medical professionals on both sides of the debate generally agree that social transitions are a significant psychotherapeutic intervention that can drastically change outcomes in children. *Id.*, ¶ 24. Given the lack of evidence on long-term outcomes and divergent views on this sensitive issue, the World Health Professional Association for Transgender Health ("WPATH"), a transgender advocacy organization, recommends that health professionals defer to parents "as they work through the options and implications," even if they ultimately "do not allow their young child to make a gender-role transition." *Id.*, ¶ 25.

Many clinics in the United States are quick to offer irreversible medical treatment, including puberty blocking hormones and gender reassignment surgeries, to kids who would otherwise outgrow their gender confusion. *Id.*, ¶ 26. These treatments are offered despite known long-term and often irreversible side effects. *Id.*

For example, puberty blocking hormones can permanently alter neurodevelopment, sexual function, and bone development in children. *Id.*, ¶ 27. Further, it has been suggested that puberty suppression may alter the course of gender identity development, essentially "locking in" a gender identity that may have reconciled with biological sex during the natural course of puberty. *Id.*

There is no doubt that gender reassignment surgery causes life-long, irreversible side effects in children. *Id.*, ¶ 28. Girls as young as 14 can have their breasts permanently cut off. *Id.* While reconstruction surgeries are available, girls are left with permanent scars and disfigurement and a lack of function and sensation in their breasts. *Id.*

No large-scale, long-term studies have tracked the incidence of detransition and/or regret among patients who received gender-affirming medical treatment as minors. *Id.*, ¶ 29. This is mainly due to the medical and research communities considering this topic untouchable. *Id.* However, preliminary studies in the United States have shown that more than a quarter of patients

who started gender-affirming hormones before age 18 stopped acquiring refills for their medication within four years. *Id.*

**Senate Bill 107**

On September 29, 2022, Governor Gavin Newsom signed into law SB 107, rendering California a sanctuary state. *Id.*, ¶ 34. The law allows minor children from any state to obtain puberty blockers and cross-sex hormones and undergo irreversible surgeries without parental involvement. *Id.*

SB 107 was initially drafted by Senator Scott Wiener "in response to recent executive and legislative action in states like Alabama and Texas" that have banned minors from receiving sterilizing puberty blockers, cross-sex hormones, and transgender surgeries or that have labeled these treatments as child abuse. *Id.*, ¶ 35. Governor Newsom signed SB 107 into law because "[s]totes across the country [were] passing laws to demonize the transgender community…." *Id.*, ¶ 38. The bill is a direct attack on the laws and policies of other states like Alabama and Texas. *Id.*

For example, Arizona recently passed a law that requires transgender kids to wait until 18 to receive gender reassignment surgery. *Id.*, ¶ 36. Discussing the bill, Governor Doug Doucey stated, "The reason is simple, and common sense – this is a decision that will dramatically affect the rest of an individual's life, including the ability of that individual to become a biological parent later in life." *Id.* In Texas, it is now considered child abuse to subject children to a wide variety of medical treatments for gender transitioning, including reassignment surgeries and administration of puberty-blocking drugs or supraphysiologic doses of testosterone or estrogen. *Id.*, ¶ 37. Texas Governor Greg Abbott and Attorney General Ken Paxton specifically highlighted "issues of physical and emotional harm associated with these procedures and treatments" and noted every child's fundamental right to procreation. *Id.*

**SB 107's Definitions of Gender-Affirming Health Care And Gender-Affirming Mental Health Care**

The terms "gender-affirming health care" and "gender-affirming mental health" are defined

in Section 16010.2 of the California Welfare and Institutions Code[1], which reads: (A) Gender affirming health care means medically necessary health care that respects the gender identity of the patient, as experienced and defined by the patient, and may include, but is not limited to, the following:

      (i) Interventions to suppress the development of endogenous secondary sex characteristics.

      (ii) Interventions to align the patient's appearance or physical body with the patient's gender identity.

      (iii) Interventions to alleviate symptoms of clinically significant distress resulting from gender dysphoria, as defined in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition.

Gender affirming mental health care means mental health care or behavioral health care that respects the gender identity of the patient, as experienced and defined by the patient, and may include, but is not limited to, developmentally appropriate exploration and integration of identity, reduction of distress, adaptive coping, and strategies to increase family acceptance.



SB 107's adopted definition of gender-affirming healthcare permits the patient – a child – to determine interventions that she believes are medically necessary for herself as well as those which align with her desired identity. VC, ¶ 40. Medical interventions could include gender reassignment surgeries, which are surgeries designed to remove secondary sex characteristics. *Id*.

Historically, gender treatments for minors required a diagnosis of gender dysphoria as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). *Id.*, ¶ 41. At a minimum, the child needs to meet certain criteria, i.e., gender distress must be experienced consistently, persistently, and insistently for a minimum of six months. *Id*.

California's definitions and related laws do not require a health professional diagnosis of a child with gender dysphoria. *Id.*, ¶ 42. On a whim, a child can decide she does not like her breasts,

---

[1] S.B. 107 adopts these definitions in their entirety. *See* S.B. 107 §§ 1-10.

and the removal of them would be covered under the definition of "gender-affirming health care" regardless of whether her distress rises to the level of a gender dysphoria diagnosis. *Id.*

**SB 107's Amendments to California Law**

Section 1 of SB 107 amends California Civil Code § 56.109 to require doctors to "release medical information related to a person or entity allowing a child to receive gender-affirming health care or gender-affirming mental health care in response to any civil action, including a foreign subpoena…" S.B. 107 § 1(a). The term "person" relative to this statute is defined expansively and ambiguously to include an individual, governmental subdivision, agency, or instrumentality. VC, ¶ 44. The expansive definition of a "person" protects government entities, including foster care, shielding them from civil action should they improperly subject a child to transgender treatment. *Id.*

Section 1 also mandates that doctors conceal a child's medical information from "persons or entities…who are authorized by law to receive that information", "in response to any civil action, including a foreign subpoena, based on another state's law that authorizes a person to bring a civil action against a person or entity that allows a child to receive gender-affirming health care or gender-affirming mental health care." S.B. 107 § 1(b). This provision makes no exception for custodial parents in another state requesting access to such information.[2]

Section 2 of SB 107 amends Code of Civil Procedure § 2029.300. This section is designed to permit litigants in other states to obtain records and discovery from persons in California for evidentiary purposes of litigation in the parties' home state. VC, ¶ 46. Section 2 blocks the receipt of certain records from California for use in other states' actions: "no subpoena shall be issued pursuant to this section if the foreign subpoena is based on a violation of another state's laws that

---

[2] California law generally gives parents access to their children's medical records. *See* Cal. Health & Saf. Code §§ 123105 & 123110; *see also* Cal. Civ. Code § 56.10(b)(7)). However, California law provides exceptions, such as when "the health care provider determines that access to the patient records requested by the representative would have a detrimental effect on the provider's professional relationship with the minor patient or the minor's physical safety or psychological well-being." Cal. Health & Saf. Code § 123115(a)(2). This section may be utilized in tandem with SB 107 to prevent parental access to medical records.

MEMORANDUM OF POINTS AND AUTHORITIES

interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care." S.B. 107 § 2(e).

The result of Section 2 is two-fold. First, if the foreign subpoena requests records related to "sensitive services," the potential respondent cannot comply regardless of any agreement or court order to the contrary. *Id.* § 2.5(e)(2). Second, Section 2 forbids a potential respondent from providing documents and records if the foreign subpoena is "based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care." *Id.* § 2(e). A "person" is ambiguously defined and could include a schoolteacher, a court-appointed counsel, a trans advocate, or a neighbor. VC, ¶ 47.

Sections 4, 5, 6, and 7 of SB 107 amend California's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")[3]. S.B. 107 §§ 4, 5, 6, and 7. Currently, 49 states have enacted the UCCJEA to prevent parents from crossing state lines to avoid custody orders and visitation orders from their home state. VC, ¶ 49.  SB 107 disrupts this multi-state law and renders all non-Californian custody agreements illusory. *Id.* SB 107 carves out substantial changes to the standardized Act that has served to protect parents and the best interests of children for close to two decades. *Id.* Any exception to this well-established Act allows states to pit their custody laws against each other for political gain. *Id.*

Section 4 of SB 107 amends Section 3421 of the Family Code, which grants California courts jurisdiction to make the initial child custody agreements in certain circumstances. VC, ¶ 50. Generally, there needs to a sufficient nexus between the state of California and the parents or the child for California courts to have control. *Id.* SB 107 turns the UCCJEA on its head, as no nexus is needed for California to take jurisdiction. *Id.*

---

[3] California's version of the UCCJEA is currently codified at California Family Code §§ 3400-3465. SB 107 was passed despite concerns that it violated the Uniform Child Custody Jurisdiction Enforcement Act. The California Family Council posted footage of the CA Public Safety Committee hearing concerning SB 107 and the UCCJEA. It is available here: https://www.youtube.com/watch?v=A-Lf3X6-og0.  The California Family Council also summarized that hearing in this article: California Family Council (July 18, 2022) *New Bill Lets Courts Take Custody of Minors Who Flee to CA for Trans-Treatments.* Available at: https://www.californiafamily.org/2022/07/new-bill-lets-courts-take-custody-of-minors-who-flee-to-ca-for-trans-treatments/.

1      The language of Section 4 states in relevant part: "The presence of a child in this state for

2  the purpose of obtaining gender-affirming health care or gender-affirming mental health care as,

3  defined by paragraph (3) subdivision (b) of Section 106010.2 of the Welfare and Institutions Code,

4  is sufficient to meet the requirements of paragraph (2) of subdivision (a)." S.B. 107 § 4; *see also*

5  Cal. Fam. Code §3421(d). This amendment gives California court's jurisdiction over the child to

6  make initial custody determinations regardless of whether there is a sufficient nexus. VC, ¶ 51.

7  The bill only requires that the child – not the child and parents – be present in California for the

8  purpose of obtaining gender-affirming health care or gender-affirming mental health care. *Id.*

9      The UCCJEA also uniformly recognizes the need to protect children in emergency

10  situations no matter where they are located when the emergency arises. VC, ¶ 51. Thus, the

11  UCCJEA gives courts temporary emergency jurisdiction when a child is in the state and an

12  emergency makes it necessary to protect the child because the child, or a sibling or parent of the

13  child, is subjected to, or threatened with, mistreatment or abuse. UCCJEA § 204; *see also* Cal.

14  Fam. Code § 3424(a).

15      Section 5 of SB 107 amends Family Code Section 3424 to expand the circumstances under

16  which a California court may take "temporary emergency jurisdiction" over a child. S.B. 107 § 5.

17  SB 107 now "provides that a court of this state has temporary emergency jurisdiction over a child

18  if the child is present in the state because the child has been unable to obtain gender-affirming

19  health care or gender-affirming mental health care." VC, ¶ 53. There is no evidence that gender

20  reassignment care is an exigent need. *Id.*

21      Pursuant to Section 5, California courts have emergency jurisdiction[4] of a child who is

22  present in California, regardless of whether the child's state permitted gender-affirming care. S.B.



23  _____

24      [4] Once emergency jurisdiction is established, the UCCJEA prescribes the remaining
custody process. If there is no previous child custody determination, the parent or guardian of the

25  child seeking gender-reassignment treatments may commence custody proceedings in California
under SB 107 Section 4, or any other state having jurisdiction. The emergency order remains in
effect "until an order is obtained from a court of a state having jurisdiction." Cal. Fam. Code, §

26  3424(b). If no child custody proceeding is commenced in a court of a state having jurisdiction, the
emergency order "becomes a final determination… and [California] becomes the home state of the

27  child." *Id.* If there is a previous child custody determination, or a child custody proceeding has
been having jurisdiction, the emergency order must specify "remains in effect until an order is

28

8

107 § 5. The law permits California entities, Child and Family Services, foster care, and other non-parents to obtain emergency custody of a child so that the child can override their parent's objections to the gender reassignment treatment. VC, ¶ 54.[5] The minor can avoid any limitations of his or her home state that might require parental consent or a mental health assessment. *Id.*

The UCCJEA generally allows a court to decline to exercise jurisdiction if the court is an inconvenient forum based on factors such as the location of witnesses, financial hardship to the parties, and the familiarity of a court in another state with the family's background. Cal. Fam. Code § 3427. Section 6 of SB 107 limits the court's discretion in the following manner: "In a case where the provision of gender-affirming health care or gender-affirming mental health care to the child is at issue, a court of this state shall not determine that it is an inconvenient forum where the law or policy of the other state that may take jurisdiction limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child." S.B. 107 § 6.

California law generally prohibits "unjustifiable conduct" to obtain jurisdiction in a California court for custody determinations. Cal. Fam. Code § 3428. Section 7 of SB 107 creates a carve-out from the universal UCCJEA, explicitly stating that the "taking of a child" away "from the person who has legal custody" is not unjustifiable conduct if done to pursue gender transition procedures in California. S.B. 107 § 7.

---

obtained from the other state within the period specified or the period expires." Cal. Fam. Code, § 3424(c).

[5] While California law generally requires parents to consent to medical treatment for minors (*see* Cal. Code Regs. Tit. 9, § 784.29(a)), there are broad exceptions, which operating in tandem with SB 107 would permit minors to receive this treatment without parental consent. For example, children in foster care have a right to receive medical treatment, including transgender healthcare. *See* California Welfare and Institutions Code §§ 16001.9(a), 16010.2. DCFS can consent to treatment for the minor, including surgery if the minor is over 14 years of age (*See* DCFS Child Welfare Policy Manual, available at https://policy.dcfs.lacounty.gov/). Courts and established guardians can also consent to treatment for the minor. *See* Cal. Fam. Code §§ 6910, 6911. In addition, one parent can consent to treatment for the minor, in defiance of the other parent, and be protected under SB 107. Informed consent can also be waived in emergencies. Cal. Code Regs. tit. 9 § 853. Minors 12 and up do not need parental consent to receive gender-affirming mental health care. *See* Cal. Health & Safety Code § 124260(b).

Section 8 of SB 107 prohibits California courts from enforcing "a law of another state that authorizes a state agency to remove a child from their parent or guardian based on the parent or guardian allowing their child to receive gender-affirming health care." S.B. 107 § 8.

Sections 9 and 10 of SB 107 add to, and amend, sections of the California Penal Code to limit (and in some cases to prevent) California's law enforcement agencies from assisting other states' prosecutions of people involved in providing or seeking gender-affirming care. VC, ¶ 58.

Section 9 declares that "[i]t is the public policy of the state that an out-of-state arrest warrant for an individual based on violating another state's law against providing, receiving, or allowing their child to receive gender-affirming health care or gender-affirming mental health care is the lowest law enforcement priority." S.B. 107 § 9. Section 9 further states that "California law enforcement agencies shall not knowingly make or participate in the arrest or participate in any extradition of an individual pursuant to an out-of-state arrest warrant for violation of another state's law against providing, receiving, or allowing a child to receive gender-affirming health care . . . if that care is lawful under the laws of this state, to the fullest extent permitted by federal law." *Id*.

Section 9 also prohibits state and local law enforcement agencies from cooperating with or providing information to "any individual or out-of-state agency or department" regarding "lawful gender-affirming health care" performed in California. S.B. 107 § 9(c). This section protects an out-of-state non-custodial parent who obtains gender reassignment treatment for their minor in California from prosecution because the treatment is lawful in California, even though the treatment may violate an out-of-state custody agreement. VC, ¶ 60.

Section 10 of SB 107 addresses subpoenas in criminal actions, stating that "a provider of health care, health care service plan, or contractor shall not release medical information related to a person or entity allowing a child to receive gender-affirming health care . . . in response to any foreign subpoena that is based on a violation of another state's laws authorizing a criminal action against a person or entity that allows a child to receive gender-affirming care or gender-affirming mental health care." S.B. 107 § 6.

### III. ARGUMENT

In determining whether to grant a preliminary injunction, courts must consider four factors: (1) whether the movant has shown a likelihood of success on the merits, (2) whether there is a likelihood that the movant will suffer irreparable harm in the absence of an injunction, (3) whether the balance of the equities tips in the movant's favor, and (4) whether the injunction is in the public's interest. *Planned Parenthood Arizona, Inc. v. Humble*, 753 F.3d 905, 911 (9th Cir. 2014); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (setting out factors). Movant can obtain a preliminary injunction if she can show "serious questions" going to the merits and that the balance of hardships "tips sharply" towards the movant. *Humble*, 753 F.3d at 911. Plaintiff easily satisfies these factors here.

### A. Plaintiff Is Likely To Succeed On The Merits

Our Watch will likely succeed on the merits because SB 107 violates the Due Process Clause to the Fourteenth Amendment, the right to familial association under the First and Fourteenth Amendments, and the Full Faith and Credit Clause to the Fourth Amendment.

#### 1. SB 107 Violates the Due Process Clause

Our Watch is likely to succeed on the merits of its due process claim. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Art. XIV. The Due Process Clause "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," *Id.* at 720, including "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. These rights have been acknowledged for a century. *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce*, 268 U.S. 510 at 535.

"[P]arental consent is critical" in medical procedures involving children "because children rely on parents or other surrogates to provide informed permission for medical procedures that are essential for their care." *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1162 (9th Cir. 2018) (citing

MEMORANDUM OF POINTS AND AUTHORITIES

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1207 (10th Cir. 2003) and Am. Academy of Pediatrics, Informed Consent, Parental Permission, and Assent in Pediatric Practice, 95 Pediatrics 314–17 (Feb. 1995) ("It should go without saying that adequate consent is elemental to proper medical treatment.")). "Simply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state… Parents can and must make those judgments," specifically where those decisions are not made in bad faith. *Parham v. J.R.*, 442 U.S. 584, 603 (1979).

A parent is entitled to notice and consent regardless of the procedure used, the environment in which the examination occurs, or whether the child protests the examination. *Mann*, 907 F.3d at 1162. Given the trauma that can be associated with a medical examination, a parent's right to notice and consent is an essential protection for the child and the parent. *Id.* Notice and consent is not required if there is "specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2001). "Serious allegations of abuse that have been investigated and corroborated" may give rise to a reasonable inference that children "might again be beaten or molested during the time it would take to get a warrant" unless the official takes the children into emergency custody. *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294-95 (9th Cir. 2007). Lack of health insurance, by contrast, does not provide a reasonable cause to believe a child is in imminent danger. *Id.* at 1296.

Further, because the "scope of the intrusion" must be "reasonably necessary to avert" a specific injury, the intrusion cannot be longer than necessary to avert the injury. *Wallis,* 202 F.3d at 1140–41; *see also Burke v. County of Alameda*, 586 F.3d 725, 730 (9th Cir. 2009) (holding that although the officials had reasonable cause to believe the child was in imminent danger, the officials may have violated the father's rights because the "scope of the intrusion" may have been greater than necessary to avert the danger to the child). *Id.* at 732–33.

For instance, in *Wallis*, parents challenged the state's decision to illegally remove their children from their custody, place the children in an institution, and conduct intrusive physical examinations on the children without the parents' consent. 202 F.3d at 1131. The government

claimed exigent circumstances existed to remove the children from their parents without a court order because the father was going to sacrifice one of the children to Satan on September 21, 1991, a day after the children's seizure. *Id.* at 1140. The Court held there were triable issues of fact as to whether the removal of the children from their mother's custody and subsequent placement in a county institution for an indefinite period was necessary considering there was no evidence of past or future abuse by the mother. *Id.* at 140-41.

SB 107 is unprecedented in that it allows children to flee to California to obtain life-altering gender reassignment treatment without parental consent.VC, ¶¶ 39, 45, 54. Notably, the bill's definition of "gender-affirming health care" explicitly grants minors the authority to define what medical interventions are appropriate for them. *Id.*, ¶¶ 39-41. SB 107 then permits doctors to refuse to disclose medical records to parents who rely on another state's laws to bring a civil action – shielding government entities and individuals who improperly subject a child to transgender treatment. VC, ¶¶ 45, 54.

The bill also allows California to retain temporary jurisdiction of a child who desires to pursue gender transition procedures in California. VC, ¶¶ 50-54, 56. California considers gender-affirming health care or gender-affirming mental health care an emergency, allowing doctors to waive medical consent requirements (or receive consent from the court, foster care, or the minor's guardian) and the state to assert emergency jurisdiction of the child. *Id.* The court can then place the child in foster care, where the minor is entitled to receive medical and mental health services. *See* Cal. Welf. & Inst. Code § 16001.9 (a). Even when no emergency exists, if a child is present in the state to receive gender-affirming healthcare, the state may assert jurisdiction and make an initial custody determination. VC, ¶ 50.

However, as *Wallis* affirms, exigent circumstances are required to justify the taking of a child, even temporarily, and the existence of reasonable cause is a factual question. 202 F.3d at 1138. Indeed, in *Wallis*, the court explained that a father wanting to sacrifice his child was not enough evidence to justify the taking of the children from both parents and subsequent placement in a county institution. *Id.* at 140-41. SB 107 undermines the necessary factual showing required

13

to take a child away from his or her parents and deems gender-affirming care an emergency. VC, ¶¶ 50-54. In other words, a child could live in a safe home with loving parents, but if he or she seeks any type of gender-affirming health care or mental care, California can assert jurisdiction and deny parents access to their child's medical information.

SB 107 is even less defensible than the law struck down in *Troxel*, which allowed any person to petition the court for visitation rights at any time if a court determined the visitation was in the child's best interest. 530 U.S. at 60-61. In *Troxel*, the lower court incorrectly placed the burden on the fit custodial parent to disprove that visitation would be in the child's best interest, thereby failing to protect the fundamental right of fit parents to make decisions concerning the rearing of their children. *Id.* at 69-70. SB 107 does not even require a state to determine whether it is in the best interest of the child to undergo gender-affirming care without parental involvement. VC, ¶¶ 50-54, 56. And it ostensibly treats any parent denying their child gender-affirming care as unfit.

SB 107 is a dangerous expansion of state power and has no support in Supreme Court or Ninth Circuit precedent. The law is an obvious violation of a parent's right to direct the care and upbringing of their child.

    2.    <u>SB 107 Violates the Right to Familial Association under the Fourteenth Amendment and First Amendment</u>

"It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process is remediable under 42 U.S.C. § 1983." *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (cleaned up). "This constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their parents." *Id.* (cleaned up).

"The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141; *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999) (holding

that "[t]he government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents.").

Moreover, the First Amendment offers protection to the right to intimate association. *See Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619-20 (1984)). First Amendment protections extend to "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Lee*, 250 F.3d at 685 (quoting *Board of Dirs. of Rotary Int'l*, 481 U.S. at 545). In the Ninth Circuit, First Amendment rights to familial association are measured by the same standard as Fourteenth Amendment rights to familial association. *Lee*, 250 F.3d at 685–86.

Ninth Circuit case law clearly establishes that the rights of parents and children to familial association under the Fourteenth and First Amendments are violated if a state official removes children from their parents without their consent, "unless information at the time of the seizure, after reasonable investigation, establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury, and the scope, degree, and duration of the intrusion are reasonably necessary to avert the specific injury at issue." *Keates v. Koile*, 883 F.3d 1228, 1237–38 (9th Cir. 2018); *see also Wallis*, 202 F.3d at 1138. Otherwise, "a state has no interest whatever in protecting children from parents." *Id*.

As explained above, SB 107 does not require a parent to consent to their child's medical procedure and treats gender-affirming care as an emergency, thereby allowing California to assert emergency jurisdiction over the child. VC, ¶¶ 50-54. Gender-affirming care is not just limited to a physical examination, *Wallis*, 202 F.3d at 1131, but experimental and irreversible medical procedures that could cause permanent scars and disfigurement and permanently alter neurodevelopment, sexual function, and bone development in children. VC, ¶¶ 26-28. SB 107 also treats any parent who denies their child gender-affirming care as unfit, even if the parent is trying

to help their child work through their insecurities and vulnerabilities to avoid a potentially irreversible and regrettable decision. *Id.*, ¶¶ 25-26, 30-33, 50-54. The bill is an extreme and unwarranted interference of a parent's right to familial association in violation of the First and Fourteenth Amendments.

### 3.   SB 107 Violates the Full Faith and Credit Clause

The Constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State." U.S. Const. Art. IV, § 1. The Clause is violated when a state acts in hostility toward the public acts of other states and when a state does not fully enforce the judicial rulings of other states. *See, e.g., Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1497 (2019) ("Hyatt III") (discussing policies of hostility); *Fauntleroy v. Lum*, 210 U.S. 230, 240-41 (1908) (discussing the full faith and credit obligation to enforce the judgments of other states). SB 107 violates these basic principles, as the bill was passed in hostility toward the judgments and public acts of other states, and it ignores the rightful jurisdiction and judgments of other states.

#### a.   SB 107 is a "policy of hostility" towards the public acts of other states

The U.S. Supreme Court has recognized "that the Full Faith and Credit Clause does not compel a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate." *Franchise Tax Bd. of Calif. v. Hyatt*, 538 U.S. 488, 494 (2003) ("Hyatt I"). However, in *Hyatt II* and *Hyatt III*, the Court further explained in both instances that the Full Faith and Credit Clause demands that state court judgments be accorded full effect in the courts of other states and precludes states from adopting any policy of hostility toward the public acts (i.e. statutes) of another state. *Franchise Tax Board v. Hyatt*, 578 U.S. 171, 176 (2016) ("Hyatt II"); *Hyatt III*, 139 S. Ct. at 1497.

For example, in *Hyatt II*, the Court found that Nevada had adopted a policy of hostility when it applied a special rule of applicability to California but not the principles of Nevada law ordinarily applicable to suits against Nevada's own agencies. 578 U.S. at 178-80. In applying its own rules, Nevada cited concerns that California's conflicting statute failed to provide "adequate

---

16

recourse" to Nevada's citizens. *Id.* at 178. The Court noted that this concern was not sufficient to overcome the full faith and credit obligation and held that, "in devising a special – and hostile – rule for California, Nevada has not sensitively applied principles of comity with a healthy regard for California's sovereign status." *Id.* at 180 (internal quotation omitted).

SB 107 was passed as a policy of hostility toward transgender statutes and polices of other states, as evidenced by the statements of both State Senator Scott Wiener and Governor Gavin Newsom. State Senator Wiener, the sponsor of SB 107, stated that he drafted SB 107 "in response to recent executive and legislative action in states like Alabama and Texas." VC, ¶¶ 35, 38, Ex. 1. Governor Newsom similarly commented that he was signing SB 107 into law because "[s]tates across the country [were] passing laws to demonize the transgender community." *Id.*, ¶ 38.

True to word, California specifically exempted children obtaining gender-affirming care from its general rule that the state should not consider the taking or retention of a child from a person who has legal custody. *Id.*, ¶ 56. Thus, just like in *Hyatt II*, where Nevada applied a special rule of applicability to California, California has created a special carve-out from its general jurisdiction rule to allow the "taking of a child" if done to pursue gender transition procedures in California, while overlooking other egregious violations that could warrant the "taking of a child", such as sexual abuse. S.B. 107 § 7. This rule unjustifiably ignores the proper and rightful jurisdiction of the child's home state. VC, ¶¶ 49-56.

Further, SB 107 attempts to impermissibly trump the laws of other states regarding gender-reassignment treatment and custody determinations. For example, South Dakota HB 1080 and Utah SB 16 ban gender reassignment surgery and hormone treatments for minors. SB 107 will allow California doctors to provide gender reassignment treatments to minors who still live in another state. California doctors, via telehealth appointments, will be able to prescribe cross-sex hormones to a child in South Dakota or Utah in hostile disregard of the full faith and credit obligation that a state defer to other states' laws and jurisdictions. Further, if South Dakota or Utah parents seek to hold California doctors accountable pursuant to their state's laws, SB 107 would shield medical professionals from the reaches of South Dakota's and Utah's conflicting laws.

MEMORANDUM OF POINTS AND AUTHORITIES

SB 107 "close[s] the door of [California's] courts to the cause of action" created by other state statutes in favor of its own policies. *Hughes v. Fetter*, 341 U.S. 609, 611-612 (1951) (invalidating a Wisconsin statute that "close[d] the doors of its courts" to an Illinois cause of action). In the same vein as *Hughes*, SB 107 unlawfully prohibits the enforcement of an order based upon another state's law authorizing a child to be removed from their parent because the parent allowed the child to undergo gender transitioning surgery. S.B. 107 § 8. The bill also prevents law enforcement from carrying out their duties by executing an out-of-state warrant, and hospitals cannot respond to a subpoena requesting medical information of a child receiving gender-affirming care. *Id.*, §§ 9, 10.

California's policy might pass constitutional muster if the state applied the same rules consistently. But similar to the special carve-out rule regarding jurisdiction, SB 107 also exempts law enforcement from its general duty to facilitate out-of-state warrants if the warrant relates to gender-affirming care. *Id.*, § 9. California "cannot escape th[e] constitutional obligation to enforce the rights and duties validly created under the laws of other states…." *Hughes*, 341 U.S. at 611.

Finally, when statutes conflict, the Full Faith and Credit Clause often affords states the right to implement their own statutes; however, when a state's statute infringes on a constitutional provision or the "governmental interest" of one jurisdiction far outweighs that of another, a state must subordinate its statute to that of the other state. *See Alaska Packers Ass'n v. Indus. Acc. Comm'n*, 294 U.S. 532, 547 (1935). Here, SB 107 infringes upon parental rights and violates the governmental interests of other states. California claims the bill is intended to protect minors, but it actually harms children. Research shows that social transitions of minors are significant psychotherapeutic interventions that merit parental involvement. VC, ¶¶ 24-28.  It has been reported that children regretted undergoing life-altering gender reassignment treatment. *Id.*, ¶¶ 30-33. The interests of states like Alabama and Texas therefore preempt the interests of California.

In sum, SB 107 was passed in direct hostility to the laws of other states, rendering California law sovereign over all other states on issues of transgenderism and closing the doors of California courts to the causes of action created by other states to protect minors from experimental

MEMORANDUM OF POINTS AND AUTHORITIES

transgender treatments. The bill directly disregards the principles of comity which lie at the heart of the Full Faith and Credit Clause.

b.      *SB 107 ignores the rightful jurisdiction and judgments of other states*

Once a sister state has rendered a judgment, the Full Faith and Credit Clause — together with the federal Full Faith and Credit statute — generally require the courts of every other state to honor that judgment, no matter how much the judgment intrudes on the forum state's sovereign interests. U.S. Const. Art. IV, § 1; 28 U.S.C. § 1738 (1994). Even when a sister state has rendered a judgment based on legal principles inconsistent with those applicable in the forum state, *Fauntleroy v. Lum* establishes that the full faith and credit obligation requires the forum state to enforce the judgment. 210 U.S. 230, 240-241 (1908). Regarding judgments, "the full faith and credit obligation is exacting." *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998).

Regarding child custody, 28 U.S.C. § 1738A requires each state to give full faith and credit to child custody determinations made by another state, and further recognizes that a child's home state is generally the state with jurisdiction to make such determinations.

Here, SB 107 amends California's version of the UCCJEA to directly conflict with nationally accepted UCCJEA and the Full Faith and Credit Clause by overriding the rightful jurisdiction of courts in a family's home state. Specifically, Section 4 of the bill amended the California Family Code to state that "the presence of a child" in California "for the purpose of obtaining gender-affirming health care" is sufficient for California courts to exercise jurisdiction over custody decisions for the child. S.B. 107 § 4. Section 8 of the bill prohibits the enforcement of a court order based on another state's law authorizing a child to be removed from their parent or guardian based on that parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care. S.B. 107 § 8.

Section 6 of SB 107 further compounds these problems by stating that, even if California is an "inconvenient forum" compared to another state based on factors like how long the child has lived outside the state, where evidence for the case is located, and where the parties to the case are

located, California courts must disregard these important considerations and claim sole jurisdiction if the child's case involves gender identity issues. *Id.*, § 6.

Case law is clear that California cannot disregard the custody jurisdiction and judgments of sister states, as this fails to meet the "exacting" standard of the Full Faith and Credit Clause. *Baker by Thomas*, 522 U.S. at 233 ("As to judgments, the full faith and credit obligation is exacting."). Even if California disagrees with the legal principles underlying a judgment, it still cannot ignore the bounds of the Full Faith and Credit Clause. *See Id. at 232-33* ("[O]ur decisions support no roving 'public policy exception' to the full faith and credit due judgments."); *Fauntleroy*, 210 U.S. at 236 ("[T]he judgment of a state court has the same credit, validity, and effect in every other court in the United States, which it had in the state where it was pronounced.").

For example, in *Finstuen v. Crutcher*, the court held that an Oklahoma statute preventing recognition of adoptions by same-sex couples was unconstitutional because the Full Faith and Credit Clause required Oklahoma to recognize adoptions, including same-sex couples' adoptions, that were validly decreed in other states, despite the state being opposed to the practice as a matter of policy. 496 F.3d 1139, 1153 (10th Cir. 2007). Similarly, here, California may disagree with the policies of other states seeking to protect minors from irreversible gender transition procedures, but it cannot interfere with or prohibit the enforcement of the custody determinations of those state that were validly decreed. Imagine the chaos that would ensue if other states began exercising emergency jurisdiction over children from California every time there was a disagreement over policy matters?  This is precisely what SB 107 attempts to do.

Regarding subpoenas, SB 107 limits the ability of California courts to enforce subpoenas issued by out-of-state courts, seeking information about gender-affirming medical care.

Once again, SB 107 violates the Full Faith and Credit Clause because California has decided that its courts—not those of the family's home state—should be the final arbiters of whether parents are fit to raise their child. Plaintiff shows that it is likely to succeed on the merits of its claims, and, at a bare minimum, demonstrates serious questions about them.

MEMORANDUM OF POINTS AND AUTHORITIES

**B.      Plaintiff Will Continue To Suffer Irreparable Harm Absent Injunctive Relief.**

Absent injunctive relief, Plaintiff will continue to suffer irreparable harm to its constitutional rights because it will have to continue diverting resources to address the numerous harms of SB 107. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (Organizations may establish irreparable harm by showing "ongoing harms to their organizational missions….").

Our Watch's mission is committed to tackling major cultural issues and protecting parental rights. VC., ¶ 12. Our Watch firmly believes that transgenderism is a cultural issue that it must deal with in accordance with God's design for every child, as outlined in the Bible. *Id.* SB 107 conflicts with Our Watch's mission by allowing children, without parental consent, to change their identity and therefore God's design for their life. *Id.*

Since the enactment of SB 107, Our Watch has diverted resources from its other focus areas to counteract the harms of SB 107. *Id.*, ¶ 13. The organization has implemented new educational outreach programs and even funded de-transitioning teenagers to come on the organization's podcast to speak on the issue. *Id.* Our Watch has also diverted resources, so it can reach parents and churches in other states through its podcast and literature. *Id.*, ¶ 14. Specifically, Our Watch has hired individuals to warn parents and churches in California and outside of California about the devastating effects of SB 107 and to explain how parents and churches can protect their children. *Id.*, ¶ 14.

SB 107 was the primary catalyst that prompted Our Watch to focus on educating parents and churches about transgender issues. *Id.*, ¶ 15. Enforcement of SB 107 will result in ongoing harm to Our Watch's mission and continued diversion of resources. *Id.*

Injunctive relief is the only adequate remedy available. Our Watch's mission is to protect parental rights, and as established above, SB 107 is a clear affront to those rights. *Id.*, ¶ 12; *see also Assoc. Gen. Contractors v. Coal for Econ. Equity*, 950 F.2d 1401, 1412 (9th Cir. 1991) ("[A]n alleged constitutional infringement will often alone constitute irreparable harm."). Our Watch is also precluded from recovering damages because the state is immune. *See, e.g., Idaho v. Coeur*

*d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015). Thus, Plaintiff can demonstrate irreparable injury, warranting an injunction.

**C.     The Balance Of Equities Tips In Plaintiff's Favor, And Enjoining SB 107 Serves The Public Interest.**

With regard to the remaining factors, "[t]he balance of equities and public interest factors merge when [as here] the government is the opposing party." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Because Plaintiff has demonstrated that SB 107 violates the Constitution, Plaintiff has also established that both the public interest and the balance of the equities favor a preliminary injunction. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). "[I]t is clear that it would not be equitable or in the public's interest to allow the state ... to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1026 (9th Cir. 2013) (internal quotation omitted). On the contrary, the public interest and the balance of the equities tip sharply in favor of "prevent[ing] the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("[P]ublic interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Thus, injunctive relief is in the public interest because the public has an interest in protecting fundamental parental rights.



### IV. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiff's motion to preliminary enjoin Defendant's enforcement of SB 107.

Respectfully submitted,

ADVOCATES FOR FAITH & FREEDOM

Dated:  April 27, 2023                    /s/Mariah R. Gondeiro
                                          Mariah R. Gondeiro
                                          Attorney for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES