Rob Bonta, State Bar No. 202668
Attorney General of California
Renuka R. George, State Bar No. 262310
Senior Assistant Attorney General
Kathleen Boergers, State Bar No. 213530
Supervising Deputy Attorney General
Nimrod Pitsker Elias, State Bar No. 251634
Lily Weaver, State Bar No. 289038
Natalie S. Torres, State Bar No. 283571
Deputy Attorneys General
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone: (510) 879-0012
 Fax: (510) 622-2270
 E-mail: Nimrod.Elias@doj.ca.gov
*Attorneys for Defendant Rob Bonta,*
*Attorney General of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OUR WATCH WITH TIM THOMPSON, a California Non-Profit Organization,**<br><br>Plaintiff,<br><br>v.<br><br>**ROB BONTA, the Attorney General of California,**<br><br>Defendant. | Case No. 2:23-cv-00422-DAD-DB<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date: June 20, 2023<br>Time: 1:30 p.m.<br>Dept: Courtroom 4<br>Judge: Hon. Dale A. Drozd<br>Date Filed: 4/13/2023 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

    A.   SB 107 Provides Legal Safeguards for Transgender Minors and Their Parents Seeking Gender-Affirming Care in California ..................... 2

        1.   SB 107 bars compliance with foreign subpoenas that are based on out-of-state laws penalizing the provision of gender-affirming care ......................................................................... 2

        2.   SB 107 clarifies situations when California courts retain jurisdiction over family law matters ........................................ 3

        3.   SB 107 limits California law enforcement's ability to assist with out-of-state criminal actions involving gender-affirming care ........................................................................ 8

    B.   Plaintiff's Challenge to SB 107 .............................................................. 8

LEGAL STANDARD ................................................................................................... 9

ARGUMENT ............................................................................................................... 9

   I.   Plaintiff is Not Likely to Succeed on the Merits ............................................. 9

    A.   Preliminary Relief is Unavailable Because the Status Quo Has Changed ................................................................................................... 9

    B.   Plaintiff Lacks Standing ....................................................................... 10

        1.   Plaintiff lacks Article III standing ................................................ 10

        2.   Plaintiff lacks prudential standing to assert the claims of third parties ...................................................................... 13

    C.   Plaintiff's Due Process and Familial Association Claims are Unlikely to Succeed ........................................................................... 15

    D.   Plaintiff's Full Faith and Credit Claim is Unlikely to Succeed ................ 20

        1.   SB 107 does not violate the Full Faith and Credit Clause's obligation to respect the final judgments of other states............... 21

        2.   SB 107 permissibly furthers California's legitimate public policy ................................................................................... 22

        3.   The Full Faith and Credit Clause does not require California to apply an out-of-state law that violates California's public policy in California court proceedings ........................................... 23

   II.   Plaintiff Has Not Shown Irreparable Harm ................................................ 24

   III.   The Equities and Public Interest Weigh Against An Injunction .......................... 25

CONCLUSION .......................................................................................................... 25

i

Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction (2:23-cv-00422-DAD-DB)

# TABLE OF AUTHORITIES

**CASES**                                                                                                    **Page**

*Alaska Packers Ass'n v. Indus. Acc. Comm'n of Cal.*
  294 U.S. 532 (1935) ................................................................................ 21, 23

*Am. Acad. of Pediatrics v. Lungren*
  16 Cal.4th 307 (1997) ............................................................................ 15

*Anderson v. U.S.*
  612 F.2d 1112 (9th Cir. 1979) .............................................................. 10

*Baker v. Gen. Motors Corp.*
  522 U.S. 222 (1998) ........................................................................ 20, 21, 23

*Boardman v. Pac. Seafood Grp.*
  822 F.3d 1011 (9th Cir. 2016) ........................................................ 9, 24, 25

*Broderick v. Rosner*
  294 U.S. 629 (1935) ............................................................................ 22

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
  657 F.3d 936 (9th Cir. 2011) .............................................................. 11

*Drakes Bay Oyster Co. v. Jewell*
  747 F.3d 1073 (9th Cir. 2014) ............................................................ 25

*E. Bay Sanctuary Covenant v. Biden*
  993 F.3d 640 (9th Cir. 2021) .......................................................... 12, 13

*Finstuen v. Crutcher*
  496 F.3d 1139 (10th Cir. 2007) ........................................................ 23, 24

*Franchise Tax Bd. of Cal. v. Hyatt*
  578 U.S. 171 (2016) (*Hyatt*) ...................................................... 21, 22, 23

*Garcia v. Google. Inc.*
  786 F.3d 733 (9th Cir. 2015) (en banc) ........................................ 9, 10, 24

*Havens Realty Corp. v. Coleman*
  455 U.S. 363 (1982) ...................................................................... 10, 11, 12

*Hughes v. Fetter*
  341 U.S. 609 (1951) ............................................................................ 22

ii

Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a
Preliminary Injunction (2:23-cv-00422-DAD-DB)

**TABLE OF AUTHORITIES**
(continued)

Page

*Hyatt v. State Franchise Tax Bd.*
    105 A.D.3d 186 (N.Y. Supr. Ct. App. Div. 2013) .......................................................... 20, 21

*In Defense of Animals, et al. v. Sanderson Farms, Inc.*
    2021 WL 4243391 (N.D. Cal. 2021).......................................................... 10, 11, 12

*Klein v. San Clemente*
    584 F.3d 1196 (9th Cir. 2009).................................................................................. 9

*Kowalski v. Tesmer*
    543 U.S. 125 (2004) ....................................................................................... 13, 14

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010) ....................................................................... 10, 11, 12

*La Clinica de la Raza v. Trump*
    2020 WL 6940934 (N.D. Cal. 2020)....................................................................... 11

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
    571 F.3d 873 (9th Cir. 2009)................................................................................... 9

*Maryland v. King*
    567 U.S. 1301 (2012) ......................................................................................... 25

*Mazurek v. Armstrong*
    520 U.S. 968 (1997) .............................................................................................. 9

*Pink v. A.A.A. Highway Exp.*
    314 U.S. 201 (1941) ............................................................................................. 23

*Rodriguez v. City of San Jose*
    930 F.3d 1123 (9th Cir. 2019)........................................................................... 11, 12

*U.S. v. Salerno*
    481 U.S. 739 (1987) ............................................................................................. 24

*Ward v. City of San Jose*
    967 F.2d 280 (9th Cir. 1991) ................................................................................ 14

*Warth v. Seldin*
    422 U.S. 490 (1975) ............................................................................................. 13

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ................................................................................... 8, 9, 24, 25

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

28 United States Code § 1738 ........................................................................................ 20

Cal. Civ. Code
  § 56.10(b)(7) ................................................................................................................ 17
  § 56.109 ........................................................................................................................ 2

Cal. Code Civ. Proc.
  § 2029.300 .................................................................................................................... 2
  § 2029.350 .................................................................................................................... 2

Cal. Fam. Code
  § 3400 *et seq.* ............................................................................................................ 3
  § 3402(g) ...................................................................................................................... 19
  § 3408 ....................................................................................................................... 5, 19
  § 3421 ............................................................................................................................ 2
  § 3421(a)(1) ........................................................................................................ 4, 18, 19
  § 3421(a)(1)-(4) ............................................................................................................ 4
  § 3421(a)(2) ............................................................................................................. 4, 18
  § 3422 ....................................................................................................................... 5, 18
  § 3423 ....................................................................................................................... 6, 18
  § 3424 ....................................................................................................................... 2, 18
  § 3424(a) ....................................................................................................................... 5
  § 3424(b) ...................................................................................................................... 19
  § 3424(c) ................................................................................................................... 5, 20
  § 3424(c)-(d) ................................................................................................................. 6
  § 3424(d) .................................................................................................................. 6, 20
  § 3425 ....................................................................................................................... 5, 19
  § 3426 ....................................................................................................................... 5, 18
  § 3427 ......................................................................................................................... 2, 6
  § 3427(a) ....................................................................................................................... 6
  § 3428 ............................................................................................................................ 2
  § 3428(a) ....................................................................................................................... 6
  § 3428(a)(1)-(3) .......................................................................................................... 6, 7
  § 3429 ....................................................................................................................... 5, 18
  § 3443 ................................................................................................................. 7, 18, 21
  § 3446 ..................................................................................................................... 7, 21
  § 3453 ................................................................................................................. 7, 18, 21
  § 3453.5 ......................................................................................................................... 2
  § 6910 .......................................................................................................................... 15
  § 6924(b) ...................................................................................................................... 15
  § 7050(e)(1) ................................................................................................................. 15

Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a
Preliminary Injunction (2:23-cv-00422-DAD-DB)

## TABLE OF AUTHORITIES
### (continued)

Cal. Health & Saf. Code                                                                                         **Page**
   § 123105............................................................................................................... 17
   § 123110............................................................................................................... 17
   § 123115(a)(2)...................................................................................................... 17
   § 124260(b)(1) ..................................................................................................... 16

Cal. Pen. Code
   § 819...................................................................................................................... 2
   § 1326.................................................................................................................... 2

Cal. Welf. & Inst. Code
   § 16010.2(b)(1) ................................................................................................... 15
   § 16010.2(b)(3)(A) ......................................................................................... 3, 16
   § 16010.2 ........................................................................................................ 2, 16

Uniform Child-Custody Jurisdiction and Enforcement Act.................................................. *passim*

**REGULATIONS**

Cal. Code Regs. Title 9
   § 782.14............................................................................................................... 15
   § 784.29(a) .......................................................................................................... 15

**COURT RULES**

Local Rule 231(d)(2)........................................................................................................... 25

**INTRODUCTION**

Several states have recently imposed civil and criminal liability on anyone who allows a minor to obtain gender-affirming health care. Doctors, parents, and transgender youth can face investigations, felony charges, prison time, and exorbitant fines for seeking medical treatment based on well-accepted standards of care. In that context, the California Legislature enacted Senate Bill (SB) 107. *See* S.B. 107, 2021-2022 Reg. Sess. (Cal. 2022) (SB 107). SB 107 protects families who come to California to obtain gender-affirming health care, as well as doctors and staff providing such care which is legal in California and often lifesaving.

Plaintiff Our Watch with Tim Thompson (Plaintiff) seeks to enjoin SB 107 because that law purportedly allows teenagers to receive gender-affirming health care in California without their parents' consent. But Plaintiff cannot establish any—let alone all—of the requirements for obtaining that extraordinary remedy. First, Plaintiff is unlikely to succeed on the merits. Plaintiff lacks Article III standing because SB 107 does not impede any of Plaintiff's organizational activities or functions. And Plaintiff lacks prudential standing to assert third party claims on behalf of out-of-state parents and other states. Plaintiff's constitutional claims fail on the merits because SB 107 does not alter existing parental consent laws in California, modify the ability of parents to access their children's medical records, supplant the "home state" jurisdiction of any other state, or allow California courts to ignore other states' custody determinations. Second, Plaintiff's vague claims about diverting resources—which are not supported by a single affidavit—are wholly insufficient to demonstrate irreparable harm.

Finally, the equities and public interest strongly favor denying the injunction. California's elected representatives enacted SB 107 to ensure that transgender youth and their families can safely obtain medically necessary health care in our state without fear of repercussion. Protecting transgender youth, their families, and their medical providers is manifestly in the public interest. The Court should deny the motion for a preliminary injunction.

# FACTUAL AND PROCEDURAL BACKGROUND

**A.      SB 107 Provides Legal Safeguards for Transgender Minors and Their
Parents Seeking Gender-Affirming Care in California**

The California Legislature passed SB 107 against a national backdrop of proliferating state actions targeting transgender youth and their families and doctors. It enacts various safeguards to protect California residents, providers, and people traveling to our state against the enforcement of other states' laws that penalize individuals for obtaining gender-affirming care that is legal in California. *See, e.g.*, SB 107 (Wiener) Sen. Jud. Com. Analysis, at 11 (Aug. 29, 2022) (discussing "regressive transphobic laws and executive orders" from other states which put "parents and doctors in the position of risking sentences of up to ten years in prison for simply getting their child the medical care they need"); *see also* SB 107 (Wiener) Assembly Jud. Com. Analysis at 1, 6-7 (June 5, 2022). SB 107's protections operate in three main ways by: (1) barring compliance with foreign subpoenas that are based on other states' laws penalizing the provision of gender-affirming care; (2) clarifying situations when California courts retain jurisdiction over family law matters; and (3) limiting state law enforcement assistance with out-of-state criminal actions involving gender-affirming care.[1]

### 1.      SB 107 bars compliance with foreign subpoenas that are based on out-of-state laws penalizing the provision of gender-affirming care

SB 107 limits the ability of litigants in other states to obtain civil discovery from California entities to prosecute an out-of-state action that would penalize an individual for obtaining (or helping their child or patient obtain) gender-affirming health care and gender-affirming mental health care in California. SB 107 §§ 1-3.5.[2] Section 1 states that:

---

[1] For ease of reference, this brief generally refers to the various sections of SB 107 in shorthand and does not always note the codes that were amended or added. Those sections added or amended other statutory provisions as follows. Cal. S.B. 107 §§ 1 (adding Cal. Civ. Code § 56.109); 2 (amending Cal. Code Civ. Proc. § 2029.300); 2.5 (amending Cal. Code Civ. Proc. § 2029.300); 3 (amending Cal. Code Civ. Proc. § 2029.350); 3.5 (amending Cal. Code Civ. Proc. § 2029.350); 4 (amending Cal. Fam. Code § 3421); 5 (amending Cal. Fam. Code § 3424); 6 (amending Cal. Fam. Code § 3427); 7 (amending Cal. Fam. Code § 3428); 8 (amending Cal. Fam. Code § 3453.5); 9 (amending Cal. Pen. Code § 819); & 10 (amending Cal. Pen. Code § 1326).

[2] SB 107 adopts the definitions of "gender-affirming health care" and "gender-affirming mental health care" found in California Welfare & Institutions Code section 16010.2. Gender-

2

[A] provider of health care, health care service plan, or contractor shall not release medical information related to a person or entity allowing a child to receive gender-affirming health care or gender-affirming mental health care in response to any civil action, including a foreign subpoena, based on another state's law that authorizes a person to bring a civil action against a person or entity [permitting such care].

SB 107 § 1. Section 1 also provides that the same entities cannot release gender-affirming health care information to people who are authorized to receive it when "the information is being requested pursuant to another state's law that authorizes a person to bring a civil action against a person or entity" permitting such care. *Id.* Sections 2 and 2.5 similarly prohibit a Superior Court clerk from issuing a domestic subpoena in response to a foreign subpoena that "is based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care." SB 107 §§ 2, 2.5. Sections 3 and 3.5 impose similar limitations on California attorneys, prohibiting them from issuing subpoenas pursuant to foreign subpoenas based on out-of-state laws that interfere with providing gender-affirming care. SB 107 §§ 3, 3.5.

### 2. SB 107 clarifies situations when California courts retain jurisdiction over family law matters

SB 107 also modifies several provisions of the Family Code that codify the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)[3] to ensure that California courts can protect families that come to California for gender-affirming health care. The UCCJEA, which nearly all states have adopted, promotes uniform jurisdiction and enforcement provisions in inter-state child custody cases.[4] The UCCJEA governs state courts' jurisdiction to make and modify

---

affirming health care is defined as "medically necessary health care that respects the gender identity of the patient, as experienced and defined by the patient" and may include: (1) interventions to suppress the development of endogenous secondary sex characteristics; (2) interventions to align the patient's appearance or physical body with the patient's gender identity; and (3) interventions to alleviate symptoms of clinically significant distress resulting from gender dysphoria. Cal. Welf. & Inst. Code § 16010.2(b)(3)(A). Gender-affirming mental health care is "mental health care or behavioral health care that respects the gender identity of the patient, as experienced and defined by the patient," and may include developmentally appropriate exploration and integration of identity, reduction of distress, adaptive coping, and strategies to increase family acceptance. *Id.* at § 16010.2(b)(3)(B). Unless stated otherwise, references to "gender-affirming health care" refer to both medical and mental health care.

[3] *See* Cal. Fam. Code section 3400 *et seq.*

[4] *See generally* Patricia M. Hoff, The Uniform Child-Custody Jurisdiction and Enforcement Act, U.S. Dep't of J., Off. of J. Progs (Dec. 2001), https://www.ojp.gov/pdffiles1/ojjdp/189181.pdf (last visited Apr. 18, 2023).

3

child custody determinations and requires state courts to enforce valid child custody determinations made by sister state courts.[5] Importantly, however, the UCCJEA is not a substantive custody statute; it does not dictate legal standards for making or modifying child custody decisions.[6] It merely outlines which states have jurisdiction to decide the merits and requires uniform enforcement of such determinations.[7]

SB 107 amended UCCJEA provisions relating to: (a) jurisdiction over initial child custody determinations; (b) emergency jurisdiction; (c) determining whether California is an inconvenient forum; and (d) declining jurisdiction due to unjustifiable conduct. Each are addressed in turn.

Consistent with the UCCJEA, the California Family Code provides four bases for asserting jurisdiction in initial child custody determinations: (1) home state; (2) significant connection; (3) more appropriate forum; and (4) vacuum.[8] Cal. Fam. Code § 3421(a)(1)-(4). Home state jurisdiction has statutory priority. *Id.* A California court has jurisdiction to make an initial child custody determination if California is the home state of the child on the date that custody proceedings commence, or was the home state of the child within six months before proceedings commenced and the child is absent from this state but a parent continues to live here. Cal. Fam. Code § 3421(a)(1).

If California lacks home state jurisdiction, it can assert significant connection jurisdiction. Cal. Fam. Code § 3421(a)(2). However, it can only do so if: (1) the child has no home state (or the home state declines jurisdiction); (2) the child and the child's parents, or the child and at least one parent, have a significant connection to this state other than mere physical presence; and (3) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships. *Id.* at (a)(2)(A)-(B). SB 107 amends the requirements for significant connection jurisdiction. It establishes that the "presence of a child in this state for the purposes of obtaining gender-affirming health care" (SB 107, § 4) meets the requirements for having a significant connection with this state. Cal. Fam. Code § 3421(a)(2).

---

[5] *Id.* at 1.
[6] *Id.*
[7] *Id.*
[8] SB 107 did not change the legal standards for home state, more appropriate forum, or vacuum jurisdiction (bases 1, 3, and 4 above).

4

The UCCJEA also recognizes the need to protect children in emergencies, no matter where they are located when the emergency arises. The UCCJEA gives courts temporary emergency jurisdiction when a child is in the state and has been abandoned, and when an emergency makes it necessary to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse. UCCJEA § 204; *see also* Cal. Fam. Code § 3424(a).[9] SB 107 added two emergency situations to this list: cases involving domestic violence, and cases where the child has been unable to obtain gender-affirming health care in another state. SB 107 § 5. However, even though emergency jurisdiction can be invoked in these limited circumstances, numerous safeguards protect the home state's authority.

First, in any child custody proceeding, each party's first pleading must state under oath whether there has been any other proceeding concerning the custody of the child and provide the court with the relevant information. Cal. Fam. Code § 3429. Thus, a California court would immediately know if another state has initiated a child custody proceeding or made a child custody determination. *Id*. Second, aside from emergency jurisdiction, a California court "may not exercise jurisdiction" if a child custody proceeding has been commenced in another state as long as those proceedings substantially conformed with the UCCJEA. Cal. Fam. Code § 3426. Third, before the court determines custody, notice and an opportunity to be heard must be given to all persons entitled to such notice, including any parent whose parental rights have not been terminated and any person having physical custody of the child. Cal. Fam. Code § 3425. This includes notice to persons outside California. Cal. Fam. Code § 3408. Fourth, if another state has commenced child custody proceedings or made a child custody determination, any emergency order issued by a California court must limit the length of the order to allow the petitioner to seek an order from the other state (typically the home state). Cal. Fam. Code § 3424(c). Fifth, if another state has commenced child custody proceedings or made a child custody determination, the California court "shall immediately communicate with the court of that state to resolve the

---

[9] Emergency jurisdiction is the only exception to the exclusive, continuing jurisdiction of the state that made the initial child custody determination, which is typically the home state. Cal. Fam. Code § 3422.

5

emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." Cal. Fam. Code § 3424(d).

Emergency jurisdiction is temporary and it does not—and cannot—modify or supplant a child custody determination from a child's home state. Cal. Fam. Code § 3424(c)-(d); *see also* Cal. Fam. Code § 3423 ("a court of this state may not modify a child custody determination made by a court of another state").

As with all courts, family courts must determine if they are the appropriate forum for the matter before them. Consistent with the UCCJEA, a California court that has jurisdiction to make a child custody determination may decline to exercise that jurisdiction if it determines that it is an inconvenient forum and that another court is a more appropriate forum. Cal. Fam. Code § 3427(a). There are several factors that a family court must consider. *Id*. at (b). SB 107 augments section 3427 to include that, when gender-affirming health care for the child is an issue, "a court of this state shall not determine that it is an inconvenient forum where the law or policy of the other state that may take jurisdiction limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child." SB 107 § 6. In other words, SB 107 provides that a California court cannot decline jurisdiction on the ground that it is an inconvenient forum in one specific circumstance: when a parent's ability to obtain gender-affirming health care for their child in another state is at issue and is constrained because of that state's law or policy. *Id*.

The UCCJEA also requires a court to decline jurisdiction if the person seeking to invoke the court's jurisdiction has engaged in "unjustifiable conduct." UCCJEA § 208; *see also* Cal. Fam. Code § 3428(a). Neither the UCCJEA nor the Family Code defines "unjustifiable conduct." Nonetheless, even when unjustifiable conduct has occurred, courts may retain jurisdiction if: (1) the parents have acquiesced in the exercise of jurisdiction; (2) a court of a state otherwise having jurisdiction determines that California is a more appropriate forum; or (3) no court of any other state would have jurisdiction. Cal. Fam. Code § 3428(a)(1)-(3). SB 107 amends this section by stating that when making a jurisdiction determination:

1

[A] court shall not consider as a factor weighing against the petitioner any taking of the child, or retention of the child after a visit . . . from the person who has legal custody, if there is evidence that the taking or retention of the child was a result of domestic violence against the petitioner . . . or for the purposes of obtaining gender-affirming health care . . . for the child and the law or policy of the other state limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child.

2

3

4

5    SB 107 § 7. In other words, SB 107 provides two examples of what is *not* unjustifiable conduct

6    requiring a court to decline jurisdiction, one of which is bringing a child to California for gender-

7    affirming care when a parent is unable to obtain such care for their child in another state. *Id*. SB

8    107 also adds a section stating that:

9

A law of another state that authorizes a state agency to remove a child from their parent or guardian based on the parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care is against the public policy of this state and shall not be enforced or applied in a case pending in a court in this state.

10

11

12    SB 107 § 8.

13          Beyond establishing rules for jurisdiction, the UCCJEA requires states to recognize and

14    enforce child custody determinations made by other states. Pursuant to those provisions,

15    California courts "shall recognize and enforce a child custody determination of a court of another

16    state." Cal. Fam. Code § 3443; *see also* Cal. Fam. Code § 3446 ("A court of this state shall

17    recognize and enforce, but may not modify . . . a registered child custody determination of a court

18    of another state."). Consistent with the UCCJEA, California law requires California courts to

19    "accord full faith and credit to an order issued by another state" and "enforce a child custody

20    determination made by a court of another state unless the order has been vacated, stayed, or

21    modified by a court having jurisdiction to do so." Cal. Fam. Code § 3453. SB 107 did not change

22    any of these recognition and enforcement provisions.

23          **3.    SB 107 limits California law enforcement's ability to assist with out-of-state criminal actions involving gender-affirming care**

24

25          SB 107 adds to, and amends, sections of the Penal Code to limit (and in some cases to

26    prevent) California's law enforcement agencies from assisting other states' prosecutions of people

27    involved in providing or seeking gender-affirming care. First, SB 107 declares that "[i]t is the

28    public policy of the state that an out-of-state arrest warrant for an individual based on violating

7

another state's law against providing, receiving, or allowing their child to receive gender-

affirming health care or gender-affirming mental health care is the lowest law enforcement

priority." SB 107 § 9. Second:

> California law enforcement agencies shall not knowingly make or participate in the arrest or participate in any extradition of an individual pursuant to an out-of-state arrest warrant for violation of another state's law against providing, receiving, or allowing a child to receive gender-affirming health care . . . if that care is lawful under the laws of this state, to the fullest extent permitted by federal law.

*Id.* Third, "[n]o state or local law enforcement agency shall cooperate with or provide information

to any individual or out-of-state agency or department regarding the provision of lawful gender-

affirming health care or gender-affirming mental health care performed in this state." *Id.* Fourth,

SB 107 amends the Penal Code section addressing subpoenas in criminal actions, stating that:

> [A] provider of health care, health care service plan, or contractor shall not release medical information related to a person or entity allowing a child to receive gender-affirming health care . . . in response to any foreign subpoena that is based on a violation of another state's laws authorizing a criminal action against a person or entity that allows a child to receive gender-affirming care or gender-affirming mental health care.

*Id.* at § 10. SB 107 also includes a severability clause. *Id.* at § 11.

**B.     Plaintiff's Challenge to SB 107**

On March 7, 2023, Plaintiff filed a verified Complaint against Defendant Rob Bonta, the

California Attorney General (Defendant), challenging the constitutionality of SB 107. *See* ECF

No. 1. The Complaint asserted three causes of action under the U.S. Constitution, alleging that SB

107 violates: (1) the Due Process Clause; (2) the right to familial association; and (3) the Full

Faith and Credit Clause. *Id.* at ¶¶ 47-74. The Complaint sought damages, declaratory and

injunctive relief, and costs and fees. *Id.* at Prayer for Relief. On March 30, 2023, Defendant filed

a motion to dismiss. *See* ECF No. 6. On April 13, 2023, Plaintiff filed a verified First Amended

Complaint (FAC) asserting the same causes of action and seeking the same relief. *See* ECF No.

10 at ¶¶ 63-98; Prayer for Relief. On April 27, 2023, Defendant filed another motion to dismiss.

*See* ECF No. 12. Later that day, Plaintiff moved for a preliminary injunction. *See* ECF No. 13.

**LEGAL STANDARD**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*

*v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The party seeking a preliminary

8

Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction (2:23-cv-00422-DAD-DB)

injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Id.* at 20. If a movant fails to establish a likelihood of success, the court need not consider the other three factors. *Garcia v. Google. Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

Plaintiff, as the movant here, bears the burden of proving each of these elements. *Klein v. San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.") (emphasis in original) (internal citation omitted).

## ARGUMENT

### I. PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS

#### A. Preliminary Relief is Unavailable Because the Status Quo Has Changed

As a preliminary matter, this Court should deny the motion for a preliminary injunction because the status quo changed four months ago when SB 107 went into effect. The "purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016) (internal citations omitted).[10] Here, the status quo changed on January 1, 2023 when SB 107 went into effect.[11] Plaintiff did not file a Complaint until more than two months after SB 107 became effective, and did not seek preliminary relief until nearly four months afterwards. *See* ECF Nos. 1, 12. Because the status quo changed, Plaintiff cannot seek a prohibitory injunction, which "preserve[s] the status quo pending a determination of the action on the merits" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009).

To the extent that Plaintiff seeks a mandatory injunction, that request too is unavailing. "Mandatory preliminary relief, which goes well beyond maintaining the status quo Pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the

---

[10] "Status quo ante litem" refers to "the last uncontested status which preceded the pending controversy." *Id.* (internal citations omitted).
[11] *See* footnote 1, *infra.*

9

moving party." *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979) (internal citations omitted). Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases. *Id.* at 1115; *see also Garcia*, 786 F.3d at 740 (the burden when seeking a mandatory injunction is "doubly demanding"). As discussed below, Plaintiff has not identified any organizational injury at all, let alone the type of extreme damage that would justify a mandatory preliminary injunction. Plaintiff's months-long delay in filing suit and seeking emergency relief is an adequate basis for the Court to deny this motion. *See id.* at 746.

### B.   Plaintiff Lacks Standing

Plaintiff is unlikely to succeed on the merits because it lacks standing to assert its constitutional claims. Plaintiff lacks Article III standing because SB 107 did not impede any of its organizational activities or functions. And Plaintiff lacks prudential standing to assert third party claims on behalf of out-of-state parents and other states.

#### 1.   Plaintiff lacks Article III standing

When evaluating whether an organization has standing, the court conducts "the same inquiry as in the case of an individual" and asks whether the plaintiff has "alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction." *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378-79 (1982) (internal citations omitted). An organization suing on its own behalf can establish an injury when it has suffered "both a diversion of its resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087-88 (9th Cir. 2010) (internal citation omitted) (hereinafter *La Asociacion*). "Frustration of mission cannot be just a setback to an organization's values or interests, it must result in an actual impediment to the organization's real world efforts on behalf of such principles." *In Defense of Animals, et al. v. Sanderson Farms, Inc.*, 2021 WL 4243391, at *3 (N.D. Cal. 2021); *see also Havens*, 455 U.S. at 379 (distinguishing between injury to an "organization's activities" and "simply a setback to the organization's abstract social interests"). And an organization must "show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion*, 624 F.3d at 1088. In other words, an organization has standing to sue if it "could not avoid suffering one injury or the

other." *Id*.

Importantly, an organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion*, 624 F.3d at 1088 (internal citation omitted).[12] "An organization may sue only if it was *forced* to choose between suffering an injury and diverting resources to counteract the injury." *Id.* at 1088 n.4 (emphasis added); *see also Rodriguez v. City of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019) (organizations representing gun owners and providing them with legal advice lacked standing because they were not required to divert resources to oppose the city's refusal to return confiscated guns to their owner). Put differently, the "challenged conduct must harm the organization's activities specifically, not merely frustrate their mission in a general sense." *In Defense of Animals*, 2021 WL 4243391, at *4; *see also Havens*, 455 U.S. at 379.

In this case, Plaintiff has not met the requirements for organizational standing because it has not identified any actual injury—in the form of a real-world impediment to Plaintiff's activities—caused by SB 107. Plaintiff alleges that it is a 501(c)(3) organization "dedicated to protecting family and parental rights in California." FAC ¶ 8. Plaintiff claims that it "accomplishes its mission through legislative advocacy, education of California citizens, and mobilization of California citizens to get involved in community events." *Id*. ¶ 11. Although Plaintiff asserts that SB 107 has caused it to "divert[] resources from other focus areas like critical race theory and abortion rights," that puts the cart before the horse. *Id*. ¶ 13. Plaintiff must first "show that it would have suffered some other injury if it had *not* diverted resources to counteracting the problem." *La Asociacion*, 624 F.3d at 1088 (emphasis added); *see also La Clinica de la Raza v. Trump*, 2020 WL 6940934, at *4 (N.D. Cal. 2020) (plaintiff must "demonstrate that they will be injured by the Rule if they do nothing"). Yet the FAC provides no details describing how SB 107 impeded Plaintiff's activities and operations. Plaintiff does not offer a single example describing how its pre-existing advocacy, education, and mobilization

---

[12] It is well-accepted that "standing must be established independent of the lawsuit filed by the plaintiff." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 657 F.3d 936, 943 (9th Cir. 2011) (internal citations omitted).

1    efforts were hindered by SB 107. *See, e.g., Havens*, 455 U.S. at 379 (challenged conduct must

2    "have perceptively impaired" the "organization's activities").

3        Plaintiff's FAC fails to address this fatal flaw in its organizational standing theory. And

4    Plaintiff's preliminary injunction motion merely cross-references the FAC. *See* ECF No. 13.

5    Neither provide any examples of how SB 107 purportedly harmed Plaintiff's pre-existing

6    advocacy, education, and mobilization activities. Plaintiff's persistent failure to identify any

7    injury that it would have suffered "if it had not diverted resources to counteracting the problem,"

8    *La Asociacion*, 624 F.3d at 1088, dooms its organizational standing. Plaintiff cannot create

9    standing by "simply choosing to spend money fixing a problem that otherwise would not affect

10   the organization at all." *Id.*; *see also In Defense of Animals*, 2021 WL 4243391, at *4 (an

11   organization cannot "gin up standing" by "investigating conduct or starting a new campaign

12   against someone who frustrates its general mission"). Allowing an organization to "start[] a new

13   campaign against someone who frustrates its general mission . . . would effectively nullify the

14   constitutional requirements for standing." *In Defense of Animals*, 2021 WL 4243391, at *4.

15       In sum, courts routinely deny organizational standing where, as here, the challenged

16   policy does not concretely impede the organization's activities. *See, e.g.*, *In Defense of Animals*,

17   2021 WL 4243391, at *4–6 (non-profit organizations dedicated to animal rights lacked standing

18   to challenge a poultry processing company's allegedly fraudulent advertising because they failed

19   to plead "any concrete way" in which their missions were frustrated, and because they spent

20   money and staff time "trying to manufacture standing" rather than being forced to divert those

21   resources); *Rodriguez*, 930 F.3d at 1136 (gun rights organizations lacked standing because they

22   "offered no theory explaining their organizational harm" that purportedly required them to divert

23   resources to oppose a city's confiscation and retention of an owner's guns).

24       The Ninth Circuit's decision in *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th

25   Cir. 2021) exemplifies a challenged action that actually impeded an organization's activities.

26   Legal services organizations that represent asylum seekers challenged a federal rule that

27   eliminated asylum eligibility for migrants crossing into the United States other than at a port of

28   entry. *Id.* at 658–59. The legal service organizations had standing because the rule: (1) made 80%

12

1   of their prospective clients ineligible for asylum; (2) prevented the organizations from

2   representing migrants who were still eligible for asylum by detaining those migrants at ports of

3   entry, which were hundreds of miles away from the organizations' offices; and (3) decreased the

4   funding that the organizations relied upon to represent asylum seekers. *Id*. at 663–64. That

5   fundamental impairment of the organizations' core activities stands in stark contrast to this case.

6         Unlike the plaintiff organizations in *E. Bay Sanctuary Covenant*, Plaintiff has not

7   described how any of its services, activities, operations, functions, or funding would have been

8   hampered by SB 107 had it done nothing in response. Plaintiff has not been injured, lacks Article

9   III standing, and therefore is unlikely to succeed on the merits.

10         **2.**     **Plaintiff lacks prudential standing to assert the claims of third parties**

11         Prudential limitations on third party standing also make Plaintiff unlikely to succeed on

12   the merits. The Supreme Court has held that a plaintiff generally must assert his own legal rights

13   and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.

14   *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (internal citations omitted). Prudential limitations

15   on third party standing represent a "healthy concern that if the claim is brought by someone other

16   than one at whom the constitutional protection is aimed . . . the courts might be called upon to

17   decide abstract questions of wide public significance even though other governmental institutions

18   may be more competent to address the questions and even though judicial intervention may be

19   unnecessary to protect individual rights." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal

20   citations omitted). Although the bar on third party standing is not absolute, a party invoking the

21   legal rights of others must demonstrate that: (1) "the party asserting the right has a close

22   relationship with the person who possesses the right"; and (2) "there is a hindrance to the

23   possessor's ability to protect his own interests." *Id.* at 129-30 (internal citations omitted). In

24   *Kowalski*, for example, the Supreme Court concluded that the criminal defense attorney plaintiffs

25   did not have standing to assert the constitutional rights of unidentified future clients because they

26   lacked a close relationship with their hypothetical future clients, and there was no hindrance to

27   indigent criminal defendants asserting their own constitutional rights. *Id.* at 131-32.

28         This case represents precisely the type of lawsuit properly barred by the third party

standing rule. Plaintiff's due process, familial association, and full faith and credit constitutional claims rest entirely on the premise that SB 107 violates the rights of: (1) hypothetical out-of-state parents; and (2) other states. *See* FAC ¶¶ 63-98. But Plaintiff has no relationship with other states, nor has it shown a close relationship with out-of-state parents. Plaintiff's organizational mission centers on "protecting family and parental rights in California." FAC ¶ 8. Merely creating educational programs directed at out-of-state parents does not establish a close relationship with those parents, especially where the organization's mission is educating and mobilizing "California citizens." *See* FAC ¶ 11. More importantly, Plaintiff has not identified any "hindrance" to out-of-state parents or other states protecting their own interests. *Kowalski*, 543 U.S. at 129-130. There is no reason at all to permit a California-based advocacy organization to assert the constitutional rights of hypothetical out-of-state parents and states that have banned gender-affirming health care. Constitutional claims should be raised by the "one at whom the constitutional protection is aimed."[13] *Kowalski*, 543 U.S. at 129. That is not this Plaintiff. Constitutional and prudential standing limitations preclude Plaintiff from prevailing on the merits.

### C.   Plaintiff's Due Process and Familial Association Claims are Unlikely to Succeed

Plaintiff's constitutional due process and familial association claims are based on several inaccurate assertions. Plaintiff avers that SB 107: (1) "allows children to flee to California to obtain life-altering gender reassignment treatment without parental consent"; (2) "explicitly grants minors the authority to define what medical interventions are appropriate for them"; (3) "allow[s] doctors to waive medical consent requirements"; (4) "den[ies] parents access to their

---

[13] Plaintiff's due process and familial association claims may properly be raised only by parents and children; they do not even extend to siblings, let alone to third parties. *See, e.g.*, *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991) (holding that only parents and children, but not siblings, could assert a "constitutionally protected liberty interest in the companionship and society of his or her child"). Plaintiff's authorities are in agreement. *See, e.g.*, FAC ¶ 76 (citing *Lee v. City of L.A.*, 250 F.3d 668, 685 (9th Cir. 2001) ("It is well established that a *parent* has a fundamental liberty interest in the companionship and society of his or her child" and this constitutional interest "extends to protect *children* from unwarranted state interference with their relationships with their parents") (emphases added) (internal citations omitted).

14

child's medical information"; and (5) "overrides the jurisdiction of courts in a family's home state." ECF No. 13 at 1, 13. None of these claims are accurate.

First, even assuming that Plaintiff could raise due process claims despite the lack of parental relationship to any affected children (*see infra* n.14), SB 107 does not change parental consent laws surrounding gender-affirming health care.[14] In California, a minor is a person under 18 years of age.[15] With limited exceptions, minors need parental consent for medical care.[16] Parental or legal guardian consent is required for most medical care, including surgery, hormone therapy, puberty blockers, and non-mental health related medical interventions to treat gender dysphoria.[17] Similarly, although minors in foster care have a right to receive medically necessary gender-affirming care, that right "is subject to existing laws governing consent to health care for minors and nonminors and does not limit, add, or otherwise affect applicable laws governing consent to health care."[18] In line with California's parental consent laws, health care providers, such as the UCLA Gender Health Program, require parental consent for gender-affirming medical treatment.[19] Nothing in SB 107 addresses—let alone modifies—longstanding parental consent requirements in this state.[20] Plaintiff's cases establishing the right of parents to make important

---

[14] Plaintiff admits that "California law generally requires parents to consent to medical treatment for minors." FAC ¶ 54 n.16.

[15] Cal. Code Regs. Tit. 9, § 782.14 ("Client means a person, 18 years of age or older, admitted to a mental health rehabilitation center for evaluation, observation, diagnosis, rehabilitation and treatment.").

[16] Cal. Code Regs. Tit. 9, § 784.29(a) (requiring medical providers to obtain informed consent from a client to provide medical treatment); Cal. Fam. Code § 6910 ("The parent, guardian, or caregiver of a minor who is a relative of the minor and who may authorize medical care and dental care under Section 6550, may authorize in writing an adult into whose care a minor has been entrusted to consent to medical care or dental care, or both, for the minor."); *see also Am. Acad. of Pediatrics v. Lungren*, 16 Cal.4th 307, 315 (1997) ("The requirement that medical care be provided to a minor only with the consent of the minor's parent or guardian remains the general rule, both in California and throughout the United States.").

[17] In California, emancipated minors at least 15 years of age and financially independent minors living apart from their parents may consent to their own medical care. Cal. Fam. Code §§ 7050(e)(1); 6922(a).

[18] Cal. Welf. & Inst. Code §16010.2(b)(1).

[19] *See* UCLA Gender Health Program, *Health Insurance FAQ*, UCLA (2023), https://www.uclahealth.org/medical-services/gender-health/patient-resources/health-insurance-faq (last visited March 29, 2023) ("Due to California state law, our primary care team cannot provide gender affirming medical treatments without parent/legal caregiver consent. If a patient is legally emancipated or turns 18, they can consent to their own care without parent consent.").

[20] California law allows minors to consent to their own mental health care in certain circumstances, none of which were affected by SB 107. *See* Cal. Fam. Code § 6924(b) (a minor

15

1  medical decisions for their children are therefore inapposite. ECF No. 13 at 12-14 (citing, *e.g.*,

2  *Wallis v. Spencer*, 202 F.3d 1126 (2000).)

3      Second, SB 107 does not "explicitly grant[] minors the authority to define what medical

4  interventions are appropriate for them." ECF No. 13 at 13. SB 107 adopts the pre-existing

5  definitions of "gender-affirming health care" and "gender-affirming mental health care" found in

6  California Welfare and Institutions Code section 16010.2. SB 107 § 1. In relevant part, that

7  section defines "gender-affirming health care" as "medically necessary health care that respects

8  the gender identity of the patient, as experienced and defined by the patient," and provides

9  examples of medical interventions. Cal. Welf. & Inst. Code §16010.2(b)(3)(A). This definition

10  gives patients the right to define their "*gender identity*." *Id*. It does not give them the right to

11  define what is "*medically necessary*." *Id*. Plaintiff improperly conflates the two. Clinical

12  standards for treating gender dysphoria determine medical necessity. None of those standards,

13  which follow the recommendations of major medical organizations, were changed by SB 107.

14      For example, the Endocrine Society recommends that pharmaceutical interventions should

15  not be provided until puberty and then only for "adolescents who meet diagnostic criteria for

16  [gender dysphoria]/gender incongruence" and fulfill criteria for treatment. Wylie C. Hembree et

17  al., *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons*, 102(11) J. Clin.

18  Endocrinology & Metabolism 3869, 3871 (Nov. 2017). Gender dysphoria in adolescents should

19  only be diagnosed by mental health professionals using diagnostic tools like the Diagnostic and

20  Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric

21  Association. *Id.* at 3870. Hormone therapy should only be initiated under rigorous safety

22  monitoring "after a multidisciplinary team of medical and [mental health professionals] has

23  confirmed the persistence of [gender dysphoria]/gender incongruence and sufficient mental

24  capacity to give informed consent." *Id.* at 3871. The Endocrine Society recommends that

25  ───────────────
who is 12 years or older may consent to mental health treatment or counseling on an outpatient
basis if: (1) the minor, in the opinion of the attending professional person, is mature enough to

26  participate intelligently in the outpatient services; and (2) the minor would present a danger of
serious physical or mental harm to self or to others without the mental health treatment or

27  counseling or is the alleged victim of incest or child abuse); *see also* Cal. Health & Saf. Code
§ 124260(b)(1).

28

1    "clinicians delay gender-affirming genital surgery involving gonadectomy and/or hysterectomy

2    until the patient is at least 18 years old or legal age of majority."[21] *Id.* at 3872. SB 107 did not

3    change any standard of care for treating gender dysphoria or give minors the right to decide for

4    themselves what medical interventions they should receive.

5            Third, SB 107 does not "allow[] doctors to waive medical consent requirements." ECF

6    No. 13 at 13. Plaintiff cites no authority for this proposition and none exists. Parental or legal

7    guardian consent—as well as informed consent by the patient—is generally required for medical

8    care such as surgery, hormone therapy, or puberty blockers. (*See infra* n.17).

9            Fourth, SB 107 does not change California law regarding the right of parents to access

10   their child's medical records. In California, parents are generally entitled to their child's medical

11   records and they do not need a subpoena to obtain them. *See* Cal. Health & Saf. Code §§ 123105,

12   123110; *see also* Cal. Civ. Code § 56.10(b)(7).[22] Nothing in SB 107 changes these rights.[23]

13   Section 1 of SB 107 addresses an entirely different situation: when medical information is sought

14   from a medical provider "based on another state's law that authorizes a person to bring a civil

15   action" against the person or entity that allowed or provided gender-affirming care. SB 107 § 1.

16   Section 1 only prevents a provider from releasing medical information in one narrow

17   circumstance: when the request is based on out-of-state laws authorizing a civil action against a

18   person or entity that provided gender-affirming care. *Id*. This limitation is unrelated to a parent's

19   general right to access their child's medical records.

20 _____

[21] The World Professional Organization for Transgender Health, which Plaintiff cites in
21   the Complaint (FAC ¶ 25), similarly recommends a direct assessment of gender dysphoria by
     trained mental health professionals, family counseling and supportive psychotherapy, and
22   assessing and treating any coexisting mental health concerns before referring adolescents for
     physical interventions. Any "referral should include documentation of an assessment of gender
23   dysphoria and mental health, the adolescent's eligibility for physical interventions . . . [and] the
     mental health professional's relevant expertise." *See* The World Professional Organization for
24   Transgender Health: Standards of Care for the Health of Transsexual, Transgender, and Gender
     Nonconforming People at 14, available at
25   https://www.wpath.org/media/cms/Documents/SOC%20v7/SOC%20V7_English2012.pdf?_t=16
     13669341.
26       [22] There are exceptions to this rule, such as when "the health care provider determines that
     access to the patient records requested by the representative would have a detrimental effect on
27   the provider's professional relationship with the minor patient or the minor's physical safety or
     psychological well-being." Cal. Health & Saf. Code § 123115(a)(2).
28       [23] Plaintiff admits that "California law generally gives parents access to their children's
     medical records." *See* FAC ¶ 45 n.13.

17

Lastly, there is no merit to Plaintiff's claim that SB 107 "overrides the jurisdiction of courts in a family's home state." ECF No. 13 at 1. SB 107 did not change the standard for home state jurisdiction or alter the home state priority established by the statutory scheme. *See* Cal. Fam. Code § 3421(a)(1); SB 107 § 4. Section 4 merely amended the requirements for "significant connection" jurisdiction, which is only relevant when there is no home state or the home state has declined to exercise jurisdiction. *See* Cal. Fam. Code § 3421(a)(2). Home states that have made child custody determinations maintain exclusive, continuing jurisdiction (except in emergencies), and their child custody determinations cannot be modified by a court of another state (excepting emergencies). *See* Cal. Fam. Code §§ 3422, 3423. And even emergency situations require deference to home state jurisdiction; any emergency order is temporary, the courts must immediately communicate, and the court claiming emergency jurisdiction gives the petitioner a limited period of time to seek a custody order from the home state court. Cal. Fam. Code § 3424. Temporary emergency jurisdiction does not—and cannot—supplant a child custody determination from a child's home state. *Id*.

A hypothetical may help illustrate why Plaintiff's legal claims rest on unfounded speculation about the real-world effects of SB 107. Assume, for example, that a minor comes to California seeking gender-affirming care without her parent's consent.[24] If someone files an initial child custody proceeding in California on behalf of that minor, the first pleading must state under oath whether there has been any other proceeding and/or determination concerning the custody of the child. Cal. Fam. Code § 3429. If another state made a child custody determination in conformance with the UCCJEA, the California court must recognize and enforce it. *See* Cal. Fam. Code § 3443; *see also id*. § 3453 (California courts "shall accord full faith and credit to an order issued by another state"). If another state has commenced a child custody proceeding (but not yet made a final determination), the California court "may not exercise its jurisdiction." Cal. Fam. Code § 3426. Instead, "the court of this state shall stay its proceeding and communicate with the court of the other state." *Id*. SB 107 did not change any of these provisions.

---

[24] Minors generally cannot receive medical care without parental consent. *See infra* n.17.

If child custody proceedings have not been commenced or completed in another state, the California court will evaluate the petition. But before doing so, notice and an opportunity to be heard must be given to all parents whose rights have not been terminated and any person having physical custody of the child. Cal. Fam. Code § 3425. This includes notice to persons outside California. *Id*. § 3408. Upon receiving notice, an out-of-state parent could then file for an initial custody determination in his home state, and that home state would have statutory priority because the California court could not assert significant connection jurisdiction unless there was no home state (or the home state declined jurisdiction).[25] *Id*. § 3421(a)(1). The out-of-state parent could seek dismissal of the California proceedings for lack of jurisdiction, and the jurisdictional question "must be given priority on the calendar and handled expeditiously." *Id*. § 3407. The out-of-state parent could also fully participate in the California proceedings. Importantly, nothing in the UCCJEA or SB 107 dictate the substantive legal standards that the California court would use to make a child custody determination.

The process unfolds similarly if someone files a petition for temporary emergency jurisdiction over a child who is seeking gender-affirming care in California. All affected parents and custodians, including out-of-state parents, would receive notice and an opportunity to be heard. Cal. Fam. Code §§ 3408, 3425. The duration of any emergency order would depend on whether custody has been, or is being, litigated elsewhere. If no child custody proceeding or determination has occurred in another state, any emergency order remains in effect only until an order is obtained from a court of a state having jurisdiction to make an initial child custody determination (usually the home state). *Id*. § 3424(b). An out-of-state parent could therefore promptly file a petition in her home state, and any order issued by the home state court would supersede the temporary, emergency order. *Id*.[26] However, if another state has commenced child

---

[25] "Home state means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months before the commencement of a child custody proceeding." Cal. Fam. Code § 3402(g).

[26] Under the UCCJEA, a temporary emergency order can become a final determination only if: (1) no other state has commenced a child custody proceeding or made a child custody determination; (2) no other state makes such an order after a parent in that state receives notice of the temporary order; (3) the temporary order provides that it will become a final determination; and (4) the state that issued the emergency order becomes the home state of the child. UCCJEA, § 204(b). SB 107 did not change this provision. *See* Cal. Fam. Code § 3424(b).

custody proceedings or made a child custody determination, any emergency order must be limited to a period of time that the court considers adequate to allow the petitioner to seek an order from the other state (typically the home state). *Id*. § 3424(c). In addition, the California court "shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." *Id*. § 3424(d). No emergency order can take away custody without due process or override a home state's jurisdictional priority.

In short, SB 107 does not violate the right to due process or familial association. Plaintiff is unlikely to succeed on those claims.

**D.    Plaintiff's Full Faith and Credit Claim is Unlikely to Succeed**

Plaintiff's assertion that SB 107 violates the Full Faith and Credit Clause is also unlikely to succeed. According to Plaintiff, SB 107 violates the Full Faith and Credit Clause because it: (1) "is a 'policy of hostility' towards the public acts of other states"; and (2) "ignores the rightful jurisdiction and judgments of other states."[27] ECF No. 13 at 16-20. Both claims lack merit.

**1.    SB 107 does not violate the Full Faith and Credit Clause's obligation to respect the final judgments of other states**

The Constitution's Full Faith and Credit Clause provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Art. IV, § 1.[28] Supreme Court jurisprudence "differentiates the credit owed to laws (legislative measures and common law) and to judgments" under the Full Faith and Credit Clause. *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998). With respect to judgments, "the full faith and credit obligation is exacting. A final judgment in one State . . . qualifies for recognition throughout the land." *Id*. at 233. Subpoenas are not considered final judgments under the Full Faith and Credit Clause. *See, e.g.*, *Hyatt v. State*

---

[27] Plaintiff's claim that SB 107 ignores the rightful jurisdiction of other states is addressed in section I.C., *infra*.

[28] Congress implemented the Full Faith and Credit Clause in 28 United States Code section 1738.

20

*Franchise Tax Bd.*, 105 A.D.3d 186, 198 (N.Y. Supr. Ct. App. Div. 2013) ("the subpoenas are not judgments of the California courts to which full faith and credit must be granted," particularly where "the propriety of the subpoenas was never determined by the courts of California").

SB 107 does not use the word judgment, nor does it require California to ignore a final judgment from a sister state. On the contrary, SB 107 did not change California's legal obligations to recognize and enforce child custody determinations made by other states. *See, e.g.*, Cal. Fam. Code § 3443 (California courts "shall recognize and enforce a child custody determination of a court of another state"); *see also id.* § 3446 ("A court of this state shall recognize and enforce, but may not modify . . . a registered child custody determination of a court of another state."); § 3453 (California courts "shall accord *full faith and credit* to an order issued by another state" and "enforce a child custody determination made by a court of another state unless the order has been vacated, stayed, or modified by a court having jurisdiction to do so") (emphasis added). SB 107 does not violate California's obligation under the Full Faith and Credit Clause to respect the final judgments of other states.

### 2.  SB 107 permissibly furthers California's legitimate public policy

In contrast to final judgments, the Full Faith and Credit Clause gives states some flexibility when it comes to recognizing out-of-state statutes. The Full Faith and Credit Clause "does not require a State to substitute for its own statute, applicable to persons and events within it, the statute of another State reflecting a conflicting and opposed policy." *Franchise Tax Bd. of Cal. v. Hyatt*, 578 U.S. 171, 176 (2016) (internal citation omitted) (*Hyatt*). States need not "apply another State's law that violates its "own legitimate public policy." *Id*. at 177 (internal citations omitted). This is the public policy exception, which is well established in Supreme Court jurisprudence. *Id; see also Alaska Packers Ass'n v. Indus. Acc. Comm'n of Cal.*, 294 U.S. 532, 549-50 (1935) (acknowledging the importance of a state's public policy and holding that "[n]o persuasive reason is shown for denying to California the right to enforce its own laws in its own courts" and that "the full faith and credit clause does not require that the statutes of Alaska" trump California's laws); *Baker*, 522 U.S. at 233 ("A court may be guided by the forum State's 'public policy' in determining the *law* applicable to a controversy.") SB 107 properly establishes

21

1  California's public policy of protecting transgender youth and their families receiving medically

2  necessary (and lawful) health care in our state.

3  　　　One limit to the public policy exception is that states may not evince "a policy of hostility

4  toward" another state. *Hyatt*, 578 U.S. at 176 (internal quotation marks and citations omitted). In

5  *Hyatt*, for example, the Nevada Supreme Court applied a "special and discriminatory rule" by

6  awarding one million dollars in damages to a Nevada taxpayer in a lawsuit against a California

7  agency. *Id*. at 175, 178. That award far exceeded the maximum damages of $50,000 that could

8  have been awarded in similar circumstances against a Nevada agency, and the ruling ignored both

9  Nevada's and California's rules for immunity. *Id*. at 178. Because the Nevada Supreme Court

10 treated a California agency differently than it would have treated a Nevada agency in similar

11 circumstances, Nevada exhibited a "policy of hostility" towards California. *Id*. at 176; *see also*

12 *Broderick v. Rosner*, 294 U.S. 629, 642-43 (1935) (finding a policy of hostility when a state

13 statute would permit enforcement of certain claims in that state but deny enforcement of similar,

14 valid claims under a sister state's law); *Hughes v. Fetter*, 341 U.S. 609, 611-12 (1951)

15 (invalidating a Wisconsin statute that barred wrongful death actions when the death occurred in

16 other states but permitted them for deaths that occurred in Wisconsin).

17 　　　SB 107 does not remotely resemble the actions challenged in *Hyatt*, *Broderick*, or *Hughes*.

18 It does not create a "special and discriminatory rule" towards a specific sister state while

19 simultaneously disregarding California's own legal standards (*Hyatt*). It does not treat similar

20 claims differently, depending on which state is asserting the claim (*Broderick*). Nor does it bar an

21 action arising under another state's law while permitting similar actions under its own laws

22 (*Hughes*). On the contrary, California has consistently permitted gender-affirming care for

23 minors, and SB 107 merely creates legal safeguards for transgender youth and their families who

24 come to California for such care.[29] SB 107 establishes California's public policy of protecting

---

[29] Plaintiff points to statements issued by State Senator Scott Wiener and Governor Gavin Newsom—statements mentioning other states that criminalized gender-affirming care—as evidence that SB 107 was passed as an act of hostility towards those states. ECF No. 13 at 17. But Plaintiff cites no authority for the proposition that the subjective intent of certain lawmakers impacts the legal analysis under the Full Faith and Credit Clause. In any event, California is not applying a discriminatory rule to specific states, or barring compliance with other states' laws

28

22

1  individuals within our borders from being penalized or prosecuted by other states for providing or

2  receiving lawful health care. The California Legislature's considered determination is well within

3  the Full Faith and Credit Clause's public policy exception. *See, e.g.*, *Pink v. A.A.A. Highway Exp.*,

4  314 U.S. 201, 210 (1941) (The Full Faith and Credit Clause is not a "means for compelling one

5  state wholly to subordinate its own laws and policy concerning its peculiarly domestic affairs to

6  the laws and policy of others.").

7  ### 3. The Full Faith and Credit Clause does not require California to apply an out-of-state law that violates California's public policy in California court proceedings

8

9  Plaintiff singles out section 8 in particular as running afoul of the Full Faith and Credit

10  Clause. ECF No. 13 at 18. That section states:

11  A law of another state that authorizes a state agency to remove a child from their parent or
12  guardian based on the parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care is against the public policy of this state
13  and shall not be enforced or applied in a case pending in a court in this state.

14  SB 107 § 8. Plaintiff claims that section 8 "unlawfully prohibits the enforcement of an *order*

15  based upon another state's law authorizing a child to be removed from their parent because the

16  parent allowed the child to undergo gender transitioning surgery." ECF No. 13 at 18 (emphasis

17  added). But another state's *law* is different from a state court *order* enforcing that law. For nearly

18  a century, the Supreme Court has consistently held that the Full Faith and Credit Clause permits

19  states to apply their own laws in their courts, and does not require subordinating their domestic

20  laws to those of other states. *See Franchise Tax Bd. of Cal.*, 578 U.S. at 176; *Baker*, 522 U.S. at

21  233; *Pink*, 314 U.S. at 210; *Alaska Packers Ass'n*, 294 U.S. at 549-50. Section 8's application to

22  other states' laws—and not to final judgments premised on those laws—falls squarely within this

23  line of precedent.

24  In support of this argument, Plaintiff cites an out-of-circuit case, *Finstuen v. Crutcher*, 496

25  F.3d 1139 (10th Cir. 2007). ECF No. 13 at 20. But that case does not help Plaintiff. In *Finstuen*,

26  the Tenth Circuit confirmed that "[i]n applying the Full Faith and Credit Clause, the Supreme

27  while permitting the enforcement of similar California laws. It is merely creating legal safeguards
28  for everyone who comes to California seeking gender-affirming care that is legal within our
   borders, no matter where they hail from.

23

1   Court has drawn a distinction between statutes and judgments." *Finstuen*, 496 F.3d at 1152. The

2   Full Faith and Credit Clause "applies unequivocally to the judgments of sister states, [but] it

3   applies with less force to their statutory laws." *Id.* In light of that critical distinction, the Tenth

4   Circuit held that "final adoption orders and decrees are judgments that are entitled to recognition

5   by all other states under the Full Faith and Credit Clause." *Id.* at 1156. Nothing in *Finstuen*

6   suggests that California must apply another state's laws in its own court proceedings.

7           Because SB 107 furthers California's legitimate public policy and does not impact

8   California's recognition of final judgments from other states, it does not run afoul of the Full

9   Faith and Credit Clause. Plaintiff is unlikely to succeed on the merits, and therefore the Court

10  need not consider the remaining preliminary injunction factors.[30] *Garcia*, 786 F.3d at 740.

11  **II.    PLAINTIFF HAS NOT SHOWN IRREPARABLE HARM**

12          Under the second preliminary injunction factor, a plaintiff must show that it "is likely to

13  suffer irreparable harm in the absence of preliminary relief." *See Winter,* 555 U.S. at 20.

14  "[S]peculative injury does not constitute irreparable injury sufficient to warrant granting a

15  preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to

16  establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to

17  preliminary injunctive relief." *Boardman*, 822 F.3d at 1022 (internal citation omitted).

18          Plaintiff falls far short of demonstrating irreparable harm. For starters, Plaintiff's months-

19  long delay in seeking a preliminary injunction undercuts any claim of irreparable harm. *See*

20  *Garcia*, 786 F.3d at 746. Plaintiff claims that "it will have to continue diverting resources to

21  address the numerous harms of SB 107." ECF No. 13 at 21. But as discussed in part I.B.1, *infra*,

22  Plaintiff cannot establish Article III standing (let alone irreparable harm) by voluntarily spending

23  money opposing a law that does not impede its advocacy, mobilization, or educational activities

24  in any way. Nor does Plaintiff offer any *evidence* to support its claim. Plaintiff provides no

25  information about how much money it has purportedly spent opposing SB 107, or how much less

26  money it is spending on other focus areas because it has diverted resources from them. Vague,

27  ───────────────
         [30] Plaintiff is also unlikely to succeed on the merits of the relief it seeks (invalidating SB
28  107 on its face) because Plaintiff cannot "establish that no set of circumstances exists under
     which the Act would be valid." *U.S. v. Salerno,* 481 U.S. 739, 745 (1987).

24

Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a
Preliminary Injunction (2:23-cv-00422-DAD-DB)

conclusory, and unsupported claims about diverting resources are insufficient to "*demonstrate immediate threatened injury.*" *Boardman*, 822 F.3d at 1022; *see also* L.R. 231(d)(2) (requiring preliminary injunction motions to include "affidavits on the question of irreparable injury.")

Plaintiff also claims that a constitutional infringement alone can constitute irreparable harm. ECF No. 13 at 21. But there is no merit to any of Plaintiff's constitutional claims. *See* part I.C & I.D, *infra*. Moreover, even setting the merits aside, Plaintiff's claims rest on the constitutional rights of *others*—out-of-state parents and sovereign states that have banned gender-affirming care for minors. Plaintiff cites no authority for the proposition that a party can obtain the extraordinary and drastic remedy of a preliminary injunction when standing in the shoes of third parties. Plaintiff has not shown a likelihood of suffering irreparable harm.

## III.   THE EQUITIES AND PUBLIC INTEREST WEIGH AGAINST AN INJUNCTION

Where, as here, the government is the opposing party, the last two factors of the preliminary injunction analysis—the balance of equities and public interest—merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (internal citations omitted). To analyze these factors, the Court "balance[s] the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," paying "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

Here, the final two factors weigh heavily in favor of denying the injunction. Plaintiff's injuries are vague and unsupported. In contrast, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (internal citations omitted). California's elected representatives passed SB 107 to protect families who come to California to obtain gender-affirming health care that is lawful in our state. Offering legal protections to transgender teenagers and their families seeking medically necessary healthcare that they cannot obtain elsewhere is plainly in the public interest.

### CONCLUSION

The motion for a preliminary injunction should be denied.

1  Dated:  May 11, 2023                          Respectfully submitted,

2                                                ROB BONTA
                                                 Attorney General of California
3                                                RENUKA R. GEORGE
                                                 Senior Assistant Attorney General
4                                                KATHLEEN BOERGERS
                                                 Supervising Deputy Attorney General
5
                                                 ***/s/ Nimrod Pitsker Elias***
6
                                                 NIMROD PITSKER ELIAS
7                                                LILY WEAVER
                                                 NATALIE TORRES
8                                                Deputy Attorneys General
                                                 *Attorneys for Defendant Rob Bonta,*
9                                                *Attorney General of California*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                     26
_____
Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a
Preliminary Injunction (2:23-cv-00422-DAD-DB)