Mariah Gondeiro, Esq., CA Bar No. 323683
mgondeiro@faith-freedom.com
Julianne Fleischer, Esq., CA Bar No. 337006
jfleischer@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Tel: (951) 600-2733
Fax: (951) 600-4996

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **OUR WATCH WITH TIM THOMPSON,** a California non-profit organization;<br><br>Plaintiff,<br><br>vs.<br><br>**ROB BONTA**, the attorney general of California;<br><br>Defendants. | Case No.: 2:23-cv-00422-DAD-DB<br><br>**VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      This action seeks to vindicate one of the most fundamental and longstanding constitutional rights: the right of parents to raise their children. *See, e.g., Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925) ("The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); *Troxel v. Granville*, 530 U.S. 57, 72-73 (2000) ("[A] State [may not]

infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made.").

2.    California recently passed Senate Bill ("SB") 107, which violates the right of parents to direct the upbringing and care of their child. SB 107 allows minors to obtain gender transition procedures like harmful puberty blockers, cross-sex hormones, and irreversible surgeries without parental consent, while denying parents access to their child's medical information. The bill also allows California to exercise "emergency jurisdiction" over minors seeking gender dysphoria treatment.

3.    Court precedent affirms the right of parents to make medical decisions for their children. "The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000); *see also Calabretta v. Floyd*, 189 F.3d 808 (9th Cir.1999) (holding that "[t]he government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents.").

4.    Parents, not the government, are best suited to decide whether their child should undergo a life-altering and irreversible surgery that seeks to change the sex of the child.

5.    For instance, research reveals that 80 to 95 percent of children who experience gender confusion will ultimately embrace their biological sex if they are not encouraged to pursue gender identity treatments.[1] Even transgender activist

---

[1] E.g., Kenneth J. Zucker, *Gender Dysphoria in Children and Adolescents*, in PRINCIPLES AND PRACTICES OF SEX THERAPY 395,407 (6th ed., 2020), available at https://www.sribd.com/document/516620519/Principles-and-Practice-of-Sex-Therapy-Sixth-Edition-by-Kathryn-S-K-Hall-Yitzchak-M-Binik; Stephen B. Levine, *Reflections on the Clinician's Role with Individuals Who Self-identify as Transgender*, Arch. Sex. Behav. (2021), Available at https://doi.org/10.1007/s10508-021-02142-1.

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

organizations recommend that health professionals defer to parents "as they work through the options and implications" of gender dysphoria in their child. [2]

6.     SB 107 also violates the Full Faith and Credit Clause to the United States Constitution, which requires California to defer to the laws and jurisdiction of the 49 other states regarding the care and custody of children. SB 107 overrides the jurisdiction of courts in a family's home state that are usually the proper forum for custody determinations by allowing California courts to take jurisdiction to make custody determinations over a child struggling with gender dysphoria. California has decided that its courts—not those of the family's home state—should be the final arbiters of whether parents are fit to raise their child.

7.     California has neither a legitimate nor legal interest in exceeding its jurisdiction by taking deeply personal, intimate, and life-altering medical decisions of out of state children into their own hands.

8.     Plaintiff Our Watch With Tim Thompson is a 501(c)(3) organization dedicated to protecting family and parental rights in California. Our Watch With Tim Thompson has had to divert organizational resources to address the effects of SB 107, including implementing education programs and designing and disseminating literature and podcasts to reach churches and parents outside of California.

9.     In sum, the sweeping changes adopted by SB 107 create gaping holes in child custody, criminal investigation, and the apprehension and extradition of child abductors. SB 107 makes it possible for parents and minors to avoid even the most minimal of safeguards in place regarding life-altering medical procedures for children. Parents and third parties can avoid any scrutiny about what they are subjecting a child to. Simple and necessary guardrails like age limitations, parental consent requirements,

---

[2] World Professional Association for Transgender Health, Standards of Care for the Health of Transexual, Transgender, and Gender-Nonconforming People at 17 (version 7, 2012) ("WPATH Guidelines"), available at https://www.wpath.org/media/cms/Documents/SOC%20v7/SOC%20V7_English2012.pdf?_t=613669341.

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

psychological status, diagnostic requirements, etc., as adopted by other states, can all be circumvented provided that the child sets foot in California. California courts must take jurisdiction over any child who arrives in California for any type of gender affirming care.

10.     Accordingly, Plaintiff seeks declaratory relief holding SB 107 unconstitutional, injunctive relief preventing further enforcement of SB 107, and reasonable attorneys' fees.

## **PARTIES – PLAINTIFFS**

11.     Plaintiff OUR WATCH WITH TIM THOMPSON ("Our Watch"), governed by Pastor Tim Thompson, is a California non-profit public benefit corporation. Its mission is to restore Christian-Judeo values in government and education. Our Watch accomplishes its mission through legislative advocacy, research, education of California citizens, and mobilization of California citizens to get involved in community events.

12.     Specifically, Our Watch is committed to tackling major cultural issues that violate Christian-Judeo values, including the sexual indoctrination of children, transgenderism, critical race theory, and abortion. It tackles these issues by hosting speakers at church and on its podcast, organizing events and conferences, sending letters to elected officials, organizing rallies, and researching issues that affect its mission and members, who are primarily comprised of Christians and parents. These members look to Our Watch to help them get involved in local and state-wide advocacy.

13.     For instance, Our Watch provides research on upcoming statewide bills and local races – issues that are important to Our Watch's members – and provides them with resources to get involved with legislative advocacy. It connects them with other organizations who may be scheduling rallies and protests and provides them with vital information on proposed bills and candidates through a biblical vantage point.

14.     Our Watch firmly believes that transgenderism is a cultural issue that it must deal with in accordance with God's design for every child, as outlined in the Bible. SB

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

107 conflicts with Our Watch's mission by allowing children, without parental consent, to change their identity and therefore God's design for their life.

15.     Our Watch has been directly harmed by SB 107. Although Our Watch has been committed to addressing the issue of transgenderism through its podcast, educational materials (i.e., newsletter), and legislative advocacy, transgenderism is now a more prominent focal point in its day-to-day operations. SB 107 was the primary catalyst that prompted Our Watch to divert its attention to transgender issues because it received numerous inquiries and concerns from members across the state of California and country, including parents. The bill's passage prompted the need to educate parents and churches about the devasting effects of SB 107 and how parents and the church can protect children.

16.     Specifically, Our Watch has diverted resources, such as staff time and money, from its local issues to address the nationwide effects of SB 107. It now spends less time and money on local issues affecting parents like school policies and topics like critical race theory because it is a small organization with small resources. It has diverted resources to address SB 107 by preparing written educational materials and hosting conferences and online training. The online trainings require staff to divert their attention from the local issues to prepare for the online trainings, conduct research, and coordinate speakers who can discuss the effects of SB 107, such as legislators, teenagers who have de-transitioned, and medical professionals.

17.     Our Watch also plans to expend money on conferences to connect key stakeholders who are also fighting against the devastating effects of SB 107, such as organizations, ministries, politicians, and parents. The conferences will require Our Watch to divert resources, such as staff time and money, from its locally driven events and conferences. Like the online training, the conferences will help Our Watch educate key stakeholders on how to combat SB 107 and protect children. The conferences will include speakers like medical professionals, parents, legislators, and teenagers who have de-transitioned.

## PARTIES – DEFENDANTS

18.    Defendant ROB BONTA is the Attorney General of California and is being sued in his official capacity. His authority is delegated to him by Article V, section 13 of the California Constitution and is authorized to enforce SB 107.

## JURISDICTION AND VENUE

19.    This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments and the Full Faith and Credit Clause, and under federal law, particularly 42 U.S.C. § 1983.

20.    This Court has authority to grant the requested declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Rule 57 of the Federal Rules of Civil Procedure. This Court is also authorized to grant injunctive relief and damages under 28 U.S.C. § 1343, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

21.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because all Defendant are situated in this judicial district.

## FACTUAL BACKGROUND

**Gender Dysphoria In Children**

22.    "Gender dysphoria" refers to the psychological distress often associated with the mismatch between a person's biological sex and his or her perceived gender identity. Gender dysphoria is a serious mental health condition that requires professional help.

23.    Multiple studies have found that approximately 80-95% of children who experience gender dysphoria ultimately find comfort with their biological sex and cease experiencing gender dysphoria as they age if they are not encouraged to pursue gender identity treatments. *E.g.*, Zucker, *supra* ¶ 4, at 407 (summarizing studies); Levine, *supra* ¶ 4 (same).

24.    There is a disagreement in the medical community about the proper approach when a child experiences gender dysphoria, specifically whether a social

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

gender transition is appropriate for children. Some mental health professionals believe that socially transitioning to a different gender identity during childhood, and affirmation of that alternative identity by adults, can become self-reinforcing and have profound long-term effects on the child's psyche and identity. *E.g.*, Kenneth J. Zucker, *The Myth of Persistence: Response to "A Critical Commentary on Follow-Up Studies & 'Desistance' Theories about Transgender and Non-Conforming Children" by Temple Newhook et al.,* 19:2 Int'l J. of Transgenderism 231 (2018)[3] ("I would argue that parents who support, implement, or encourage a gender social transition (and clinicians who recommend one) are implementing a psychosocial treatment that will increase the odds of long-term persistence.")

25.　　Other medical and psychiatric professionals believe that the best response is to affirm a child's perceived gender identity and to support a social transition to that identity.

26.　　However, medical professionals on both sides of the debate generally agree that social transitions are a significant psychotherapeutic intervention that can drastically change outcomes in children.

27.　　Given the lack of evidence on long-term outcomes and divergent views on this sensitive issue, the World Health Professional Association for Transgender Health ("WPATH"), a transgender advocacy organization, recommends that health professionals defer to *parents* "as they work through the options and implications," even if they ultimately "do not allow their young child to make a gender-role transition." WPATH Guidelines, *supra* ¶ 4, at 17.

28.　　If medical professionals agree that social transitions are a significant intervention for children, medical transitions are even more significant. Yet, many clinics

---

[3] Kenneth J. Zucker, *The Myth of Persistence: Response to "A Critical Commentary on Follow-Up Studies & 'Desistance' Theories about Transgender and Non-Conforming Children" by Temple Newhook et al.,* 19:2 Int'l J. of Transgenderism 231 (2018). Available at https://www.researchgate.net/publications/325443416.

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

in the United States are quick to offer irreversible medical treatment, including puberty blocking hormones and gender reassignment surgeries, to kids who would otherwise outgrow their gender-questioning. These treatments are offered despite known long-term and often irreversible side effects.

29.     For example, puberty blocking hormones can permanently alter neurodevelopment, sexual function, and bone development in children. *See* Jorgensen, S.C.J., Hunter, P.K., Regenstreif, L., Sinai, J. and Malone, W.J. (2022), *Puberty blockers for gender dysphoric youth: A lack of sound science*. J Am Coll Clin Pharm, 5: 1005-1007, at 1005 (citing studies).[4] Further, it has been suggested that puberty suppression may alter the course of gender identity development, essentially "locking in" a gender identity that may have reconciled with biological sex during the natural course of puberty. *Id.*

30.     There is no doubt that gender reassignment surgery causes life-long, irreversible side effects in children. Girls as young as 14[5] can have their breasts permanently cut off. While reconstruction surgeries are available, girls are left with permanent scars and disfigurement and a lack of function and sensation in their breasts.

31.     No large-scale, long-term studies have tracked the incidence of detransition and regret among patients who received gender-affirming medical treatment as minors. This is due in large part to these subjects being untouchable within the medical and research communities. However, preliminary studies in the United States have shown that more than a quarter of patients who started gender-affirming hormones before age 18 stopped getting refills for their medication within four years. *See* Christina M Roberts, David A Klein, Terry A Adirim, Natasha A Schvey, Elizabeth Hisle-Gorman,

---

[4] Jorgensen, S.C.J., Hunter, P.K., Regenstreif, L., Sinai, J. and Malone, W.J. (2022), *Puberty blockers for gender dysphoric youth: A lack of sound science*. J Am Coll Clin Pharm, 5: 1005-1007, at 1005. Available at  https://doi.org/10.1002/jac5.1691

[5] *See* Peter Rowe (April 14, 2016) *Surgery Unburdens Transgender Boy*. LA Times. Available at:  https://www.latimes.com/local/california/la-me-transgender-teen-20160414-story.html  (discussing story of 14-year-old girl who received gender reassignment surgery).

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Continuation of Gender-affirming Hormones Among Transgender Adolescents and Adults, *The Journal of Clinical Endocrinology & Metabolism*, Volume 107, Issue 9, September 2022, Pages e3937–e3943.[6]

32.     While there are no long-term studies reflecting the incidence of regret and detransition in minors, there exists countless lived experiences of minors who socially or medically transitioned and later reversed course. Chloe Cole is one such example.[7]

33.     Cole was 13 when doctors placed her on puberty blockers, followed a few weeks later by testosterone. At 15, Cole wanted breast removal surgery. Her parents wanted her to wait until she was older to undergo such treatment; however, doctors readily agreed to a double mastectomy for Cole.

34.     In June 2020, surgeons performed a mastectomy on Cole – just one month before her sixteenth birthday. Less than a year later, Cole regretted her surgery and medical transition following a discussion about breastfeeding and pregnancy. Cole has reconciled with her biological sex, but she is still suffering with long-term effects from her surgery, including severed nerve endings, permanent changes in pigmentation, and fluid emission.[8] Cole regrets that this surgery stripped her of "the beauty of motherhood" at an age when she was not able to fully comprehend the loss. Cole now speaks out publicly to end gender-affirming care for minors.

---

[6] Christina M Roberts, David A Klein, Terry A Adirim, Natasha A Schvey, Elizabeth Hisle-Gorman, Continuation of Gender-affirming Hormones Among Transgender Adolescents and Adults, *The Journal of Clinical Endocrinology & Metabolism*, Volume 107, Issue 9, September 2022, Pages e3937–e3943. Available at https://doi.org/10.1210/clinem/dgac251.

[7] Robin Respaut, Chad Terhune, Michelle Conlin (December 22, 2022) *Why Detransitioners are Crucial to the Science of Gender Care.* Reuters. Available at: https://www.reuters.com/investigates/special-report/usa-transyouth-outcomes/ (telling Cole's story of transition and detransition as a minor).

[8] Edie Hepel (September 24, 2022) *Meet Chloe Cole, The 18-Year-Old Leading The Fight To Protect Children From Transgender Surgeries.* Catholic News Agency. https://www.catholicnewsagency.com/news/252376/chloe-cole-leading-fight-to-protect-children-from-transgender-surgeries (Cole speaks of the long-term effects of her surgeries).

35.     There are many other stories like Cole's, including Max Robinson and Max Lizzara[9], which reflect that gender-affirming healthcare for minors is a nuanced and sensitive issue – one that parents should be intimately involved in.

**Senate Bill 107**

36.     On September 29, 2022, Governor Gavin Newsom signed into law SB 107, rendering California a sanctuary state. The law allows minor children from any state to obtain puberty blockers and cross-sex hormones and undergo irreversible surgeries without parental involvement.

37.     SB 107 was initially drafted by Senator Scott Wiener "in response to recent executive and legislative action in states like Alabama and Texas" that have banned minors from receiving sterilizing puberty blockers, cross-sex hormones, and transgender surgeries or that have labeled these treatments as child abuse. A true and correct copy of Senator Wiener's statement is attached hereto as Exhibit 1.

38.     For example, Arizona recently passed a law that requires transgender kids to wait until 18 to receive gender reassignment surgery. Discussing the bill, Governor Doug Doucey stated, "The reason is simple, and common sense – this is a decision that will dramatically affect the rest of an individual's life, including the ability of that individual to become a biological parent later in life."[10]

39.     In Texas, it is now considered child abuse to subject children to a wide variety of medical treatments for gender transitioning, including reassignment surgeries and administration of puberty-blocking drugs or supraphysiologic doses of testosterone or estrogen. Texas Governor Greg Abbott and Attorney General Ken Paxton specifically

---

[9] *Supra* 7.

[10] Dani Birzer (March 30, 2022) *Arizona Governor Signs Two Bills Impacting Transgender Minors.* The Associated Press. Available at https://www.kold.com/2022/03/30/arizona-governor-signs-two-bills-impacting-transgender-minors/  (discussing Arizona's Senate Bill 1138).

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

highlighted "issues of physical and emotional harm associated with these procedures and treatments" and noted every child's fundamental right to procreation.[11]

40.     Governor Newsom signed SB 107 into law because "[s]tates across the country [were] passing laws to demonize the transgender community…." The bill is a direct attack on the laws and policies of other states like Alabama and Texas.

**SB 107's Definition of Gender Affirming Health Care and Gender Affirming Mental Health Care**

41.     The terms "gender affirming health care" and "gender affirming mental health" are defined in Section 16010.2 of the California Welfare and Institutions Code[12], which reads: (A) Gender affirming health care means medically necessary health care that respects the gender identity of the patient, as experienced and defined by the patient, and may include, but is not limited to, the following:

(i)  Interventions to suppress the development of endogenous secondary sex characteristics.

(ii)  Interventions to align the patient's appearance or physical body with the patient's gender identity.

(iii)  Interventions to alleviate symptoms of clinically significant distress resulting from gender dysphoria, as defined in the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition.

(B)  Gender affirming mental health care means mental health care or behavioral health care that respects the gender identity of the patient, as experienced and defined by the patient, and may include, but is not limited to, developmentally appropriate

---

[11] In 2022, Governor Greg Abbott wrote a letter directing the Texas Department of Family and Protective Services to investigate for child abuse any parents who subject their children to sex-change procedures based on a legal opinion from Attorney General Ken Paxton. That letter and supporting legal opinion is available here: https://gov.texas.gov/uploads/files/press/O-MastersJaime202202221358.pdf.

[12] S.B. 107 adopts these definitions in their entirety. *See* S.B. 107 §§ 1-10.

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

exploration and integration of identity, reduction of distress, adaptive coping, and strategies to increase family acceptance.

42.     The definition of gender affirming healthcare permits the patient – a child – to determine interventions that she believes are medically necessary for herself as well as those which align with her desired identity. Medical interventions could include gender reassignment surgeries, which are surgeries designed to remove secondary sex characteristics. Gender affirming mental health care could encompass social transition through the use of the child's chosen name and pronouns.

43.     Historically, gender treatments for minors required a diagnosis of gender dysphoria as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5).  At a minimum, the child needs to meet certain criteria, i.e., gender distress must be experienced consistently, persistently, and insistently for a minimum of six months.

44.     The California "gender-affirming care" definitions and related laws have no requirement that the child suffer from gender dysphoria before embarking on the path of gender transition, which can have life-long consequences. On a whim, the child can decide she does not like her breasts, and the removal of them would be covered under the definition of "gender affirming health care" whether or not her distress rises to the level of a gender dysphoria diagnosis.

45.     There is no requirement of a mental health assessment to determine that the child has gender dysphoria before he or she can start taking irreversible cross-sex hormones.

**SB 107's Amendments to California Law**

46.     Section 1 of SB 107 amends California Civil Code §56.109 to mandate that doctors "shall not release medical information related to a person or entity allowing a child to receive gender-affirming health care or gender-affirming mental health care in response to any civil action, including a foreign subpoena…" S.B. 107 § 1(a). The term

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

"person" relative to this statute is defined expansively and ambiguously to include an individual, governmental subdivision, agency, or instrumentality. The expansive definition of "person" will protect government entities, including foster care, shielding them from civil action should they improperly subject a child to transgender medicine.

47.     Section 1 also mandates that doctors conceal a child's medical information from "persons or entities…who are authorized by law to receive that information", "in response to any civil action, including a foreign subpoena, based on another state's law that authorizes a person to bring a civil action against a person or entity that allows a child to receive gender-affirming health care or gender-affirming mental health care." S.B. 107 § 1(b). This provision makes no exception for custodial parents in another state requesting access to such information.[13]

48.     Section 2 of the SB 107 amends Code of Civil Procedure §2029.300. This section is designed to permit litigants in other states to obtain records and discovery from persons in the state of California for evidentiary purposes of litigation in the parties' home state. Section 2 blocks the receipt of certain records from California for use in other states' actions: "no subpoena shall be issued pursuant to this section if the foreign subpoena is based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care." S.B. 107 § 2(e).

49.     The result of Section 2 is two-fold. First, if the foreign subpoena requests for records relates to "sensitive services," the potential respondent cannot comply regardless of any agreement or court order to the contrary. *See* S.B. 107 § 2.5(e)(2). Second, Section 2 forbids a potential respondent from providing documents and records

---

[13] California law generally gives parents access to their children's medical records. *See* Cal. Health & Saf. Code §§ 123105 & 123110; *see also* Cal. Civ. Code § 56.10(b)(7)). However, California law provides exceptions, such as when "the health care provider determines that access to the patient records requested by the representative would have a detrimental effect on the provider's professional relationship with the minor patient or the minor's physical safety or psychological well-being." Cal. Health & Saf. Code § 123115(a)(2). This section may be utilized in tandem with SB 107 to prevent parental access to medical records.

if the foreign subpoena is "based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care." S.B. 107 § 2(e). A "person" is ambiguously defined and could include a schoolteacher, a court-appointed counsel, a trans advocate, a neighbor or anyone.

50.     Section 3 of SB 107 is similar to Section 2, but it places its onus on attorneys handling foreign subpoenas relating to a child's receipt of gender-affirming health care or gender-affirming mental health care. S.B. 107 § 3.

51.     Sections 4, 5, 6, and 7 of SB 107 amend California's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")[14]. S.B. 107 §§ 4, 5, 6, and 7. Currently, 49 states have enacted the UCCJEA to prevent parents from crossing state lines to avoid custody orders and visitation orders from their home state. SB 107 disrupts this multi-state law and renders all non-Californian custody agreements illusory. SB 107 carves out substantial changes to the standardized Act that has served to protect parents and the best interests of children for close to two decades. Any exception to this well-established Act allows states to pit their custody laws against each other for political gain.

52.     Section 4 of SB 107 amends Section 3421 of the Family Code that grants California courts jurisdiction to make the initial child custody agreements in certain circumstances. Generally, there needs to a sufficient nexus between the state of California and the parents or the child for California courts to have control. SB 107 turns the UCCJEA on its head, as no nexus is needed for California to take jurisdiction.

_____

[14] California's version of the UCCJEA is currently codified at California Family Code §§ 3400-3465. SB 107 was passed despite concerns that it violated the Uniform Child Custody Jurisdiction Enforcement Act. The California Family Council posted footage of the CA Public Safety Committee hearing concerning SB 107 and the UCCJEA. It is available here: https://www.youtube.com/watch?v=A-Lf3X6-og0. The California Family Council also summarized that hearing in this article: California Family Council (July 18, 2022) *New Bill Lets Courts Take Custody of Minors Who Flee to CA for Trans-Treatments*. Available at: https://www.californiafamily.org/2022/07/new-bill-lets-courts-take-custody-of-minors-who-flee-to-ca-for-trans-treatments/.

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

53.     The language of Section 4 states in relevant part: "The presence of a child in this state for the purpose of obtaining gender-affirming health care or gender affirming mental health care as, defined by paragraph (3) subdivision (b) of Section 106010.2 of the Welfare and Institutions Code, is sufficient to meet the requirements of paragraph (2) of subdivision (a)." S.B. 107 § 4; *see also* Cal. Fam. Code §3421(d). This amendment gives California court's jurisdiction over the child to make initial custody determinations irrespective of any lack of connection of that child – or the parents - with California.  The bill only requires that the child – not the child and parents – be present in California for the purpose of obtaining gender-affirming health care or gender-affirming mental health care. This, of course, will open a flood of children, regardless of their parents' or guardians' approval, entering the state.

54.     The UCCJEA also uniformly recognizes the need to protect children in emergency situations, no matter where they are located when the emergency arises. Thus, the UCCJEA gives courts temporary emergency jurisdiction when a child is in the state and an emergency makes it necessary to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse. UCCJEA § 204; *see also* Cal. Fam. Code § 3424(a).

55.     Section 5 of SB 107 amends Family Code Section 3424 to expand the circumstances under which a California court may take "temporary emergency jurisdiction" over a child. S.B. 107 § 5. SB 107 now "provides that a court of this state has temporary emergency jurisdiction over a child if the child is present in the state because the child has been unable to obtain gender-affirming health care or gender-affirming mental health care." SB 107 (Wiener) Sen. Floor Analysis, at 4 (Aug. 30, 2022). California is codifying that it is child mistreatment or abuse not to submit your gender confused child to experimental gender treatments. There is no evidence that gender care is an exigent need.

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

56.     Pursuant to Section 5, which changes the nationally accepted UCCJEA, the California courts have emergency jurisdiction[15] of a child who, with or without parents, is present in the state of California regardless of whether the child's state permitted gender affirming care. S.B. 107 § 5. The only necessary factor is that the child is present in the state to get gender-affirming health care or gender affirming mental health care. The law permits California entities, Child and Family Services, foster care, and other non-parents to obtain emergency custody of a child so that child can avoid parents who refuse to consent to gender interventions or are fearful that puberty blockers will result in a myriad of long term affects.[16] The child can avoid any limitations of his home state that might require him as a minor to get parental permission, be a certain age for certain interventions, or have gone through a mental health assessment by getting himself to California.

57.     The UCCJEA generally allows a court to decline to exercise jurisdiction if the court is an inconvenient forum based on factors such as the location of witnesses, financial hardship to the parties, and the familiarity of a court in another state with the

---

[15] Once emergency jurisdiction is established, the UCCJEA prescribes the remaining custody process. If there is no previous child custody determination, the parent or guardian of the child seeking gender-reassignment treatments may commence custody proceedings in California under SB 107 Section 4, or any other state having jurisdiction. The emergency order remains in effect "until an order is obtained from a court of a state having jurisdiction." Cal. Fam. Code, § 3424(b). If no child custody proceeding is commenced in a court of a state having jurisdiction, the emergency order "becomes a final determination… and [California] becomes the home state of the child." *Id.* If there is a previous child custody determination, or a child custody proceeding has been having jurisdiction, the emergency order must specify "remains in effect until an order is obtained from the other state within the period specified or the period expires." Cal. Fam. Code, § 3424(c).

[16] While California law generally requires parents to consent to medical treatment for minors (*see* Cal. Code Regs. Tit. 9, § 784.29(a)), there are broad exceptions, which operating in tandem with SB 107 would permit minors to receive this treatment without parental consent. For example, children in foster care have a right to receive transgender healthcare. *See* California Welfare and Institutions Code § 16010.2. DCFS can consent to treatment for the minor, including surgery if the minor is over 14 years of age (*See* DCFS Child Welfare Policy Manual, available at https://policy.dcfs.lacounty.gov/). Courts and established guardians can also consent to treatment for the minor. *See* Cal. Fam. Code §§ 6910, 6911. In addition, one parent can consent to treatment for the minor, in defiance of the other parent, and be protected under SB 107. Consent can also be waived in emergencies. Cal. Code Regs. tit. 9 § 853. Minors 12 and up do not need parental consent to receive gender-affirming mental health care. *See* Cal. Health & Safety Code § 124260(b).

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

family's background. Cal. Fam. Code § 3427. Section 6 of SB 107 limits the court's discretion in the following manner: "In a case where the provision of gender-affirming health care or gender-affirming mental health care to the child is at issue, a court of this state shall not determine that it is an inconvenient forum where the law or policy of the other state that may take jurisdiction limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child." S.B. 107 § 6.

58.    California law generally prohibits "unjustifiable conduct" to get jurisdiction in a California court for custody determinations. Cal. Fam. Code § 3428. Section 7 of SB 107 creates a carve-out from the universal UCCJEA, explicitly stating that "taking of a child" away "from the person who has legal custody" is not unjustifiable conduct if done to pursue gender transition procedures in California. S.B. 107 § 7. As section 7 reads, parental kidnapping—when allegedly done for ideological purposes—is no longer deemed unjustifiable conduct.

59.    Section 8 of SB 107 prohibits California courts from enforcing "a law of another state that authorizes a state agency to remove a child from their parent or guardian based on the parent or guardian allowing their child to receive gender-affirming health care." S.B. 107 § 8. This section is likely to result in many unconscionable rulings stemming from SB107.

60.    Sections 9 and 10 of SB 107 add to, and amend, sections of the Penal Code to limit (and in some cases to prevent) California's law enforcement agencies from assisting other states' prosecutions of people involved in providing or seeking gender-affirming care.

61.    Section 9 declares that "[i]t is the public policy of the state that an out-of-state arrest warrant for an individual based on violating another state's law against providing, receiving, or allowing their child to receive gender-affirming health care or gender-affirming mental health care is the lowest law enforcement priority." S.B. 107 §

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

9. Section 9 further states that "California law enforcement agencies shall not knowingly make or participate in the arrest or participate in any extradition of an individual pursuant to an out-of-state arrest warrant for violation of another state's law against providing, receiving, or allowing a child to receive gender-affirming health care . . . if that care is lawful under the laws of this state, to the fullest extent permitted by federal law." *Id*.

62.     Section 9 also prohibits state and local law enforcement agencies from cooperating with or providing information to "any individual or out-of-state agency or department" regarding "lawful gender-affirming health care" performed in California. S.B. 107 § 9 (c). This section protects an out-of-state non-custodial parent who gets gender care for their minor in California from prosecution because the treatment is lawful in California, even though the treatment may violate an out-of-state custody agreement.

63.     Section 10 of SB 107 addresses subpoenas in criminal actions, stating that "a provider of health care, health care service plan, or contractor shall not release medical information related to a person or entity allowing a child to receive gender-affirming health care . . . in response to any foreign subpoena that is based on a violation of another state's laws authorizing a criminal action against a person or entity that allows a child to receive gender-affirming care or gender-affirming mental health care." S.B. 107 § 6.

64.     Finally, Section 11 of SB 107 includes a severability clause. SB 107 § 11.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE DUE PROCESS CLAUSE**

**OF THE FOURTEENTH AMENDMENT**

**(42 U.S.C. § 1983)**

65.     Plaintiff incorporates by reference the allegations in the preceding paragraphs 1 through 64, as if fully set forth herein.

66.     The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Art. XIV.

67.     The Due Process Clause, "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," *Id.* at 720, including "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000).

68.     "The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000); *see also Calabretta v. Floyd*, 189 F.3d 808 (9th Cir.1999) (holding that "[t]he government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents.").

69.     SB 107 violates the Due Process Clause by forbidding healthcare providers from providing medical information related to "gender-affirming care" or "gender-affirming mental health care." S.B. 107 § 1. This provision makes no exception for parents requesting access to these records.[17] The bill also prevents parents from seeking court intervention to gain access to their child's medical records. S.B. 107 § 2. Instead, these sections protect government entities, including foster care, shielding them from producing medical records should they improperly subject a child to transgender medicine at the expense of fundamental parental rights.

70.     SB 107 further violates the Due Process Clause because the bill allows the "taking of the child" away from his or her parents to California to obtain gender transition

---

[17] California law generally gives parents access to their children's medical records. *See* Cal. Health & Saf. Code §§ 123105 & 123110; *see also* Cal. Civ. Code § 56.10(b)(7)), However, California law provides exceptions, such as when "the health care provider determines that access to the patient records requested by the representative would have a detrimental effect on the provider's professional relationship with the minor patient or the minor's physical safety or psychological well-being." Cal. Health & Saf. Code § 123115(a)(2). This section may be utilized in tandem with SB 107 to prevent parental access to medical records.

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

procedures. S.B. 107 § 7. California courts must then exercise jurisdiction over the child either by emergency jurisdiction or making an initial custody determination pursuant to the UCCJEA. S.B. 107 §§ 4, 5.

71.　After exercising emergency jurisdiction pursuant to SB 107, the State can emancipate the minor, enter the minor into the foster care system, or place the minor with a guardian, allowing the minor to obtain gender-transition procedures.

72.　SB 107 places parents in an untenable position. All children, regardless of comorbid mental health issues, can receive gender care in California with no impediments to the parents to prevent the harm, as California courts must take jurisdiction. S.B. 107 §§ 4, 5. 6, and 7. SB 107 completely obliterates parents' rights in contravention of the US Constitution.

73.　Plaintiff has suffered damages due to SB 107 because it has had to divert resources to combat the devastating effects of the bill. The bill frustrates Plaintiff's mission – namely – the preservation of parental rights.

74.　Plaintiff has no adequate remedy at law and will suffer irreparable harm unless the Court enjoins Defendant's violation of the Due Process Clause.

75.　Plaintiff is entitled to recover their costs and attorneys' fees under 42 U.S.C. § 1988 plus injunctive relief and a judicial declaration that SB 107 is unconstitutional.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE RIGHT TO FAMILIAL ASSOCIATION
## UNDER THE FIRST AND FOURTEENTH AMENDMENTS
### (42 U.S.C. § 1983)

76.　Plaintiff incorporates by reference the allegations in the preceding paragraphs 1 through 75, as if fully set forth herein.

77.　Pursuant to the Due Process Clause of the Fourteenth Amendment, parents have a "fundamental liberty interest" in "the companionship and society of his or her child" and that the state's interference with that liberty interest without due process of

law is remediable under 42 USC § 1983. *Kelson v. City of Springfield*, 767 F.2d 651, 654-55 (9th Cir. 1985) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). "[T]his constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents." *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir.1987) overruled on other grounds by *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir.1999).

78.     Moreover, the First Amendment protects the right to intimate association. *See Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619-20 (1984)). First Amendment protections extend to "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (quoting *Board of Dirs. of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 545 (1987)).

79.     Protecting family relations "from unwarranted state interference" is necessary to safeguard the ability to define one's identity which is central to the concept of liberty. *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 619 (1984)).

80.     SB 107 constitutes an "unwarranted interference" of parents' rights to familial association under the First Amendment and Fourteenth Amendment, as SB 107 allows the "taking of the child" away from his or her parents to California to obtain gender transition procedures. S.B. 107 § 7. SB 107 mandates that California courts exercise jurisdiction over children seeking gender dysphoria treatments. S.B. 107 §§ 4, 5.

81.     The enforcement of SB 107 is the direct and legal cause of the deprivation of parents' constitutionally protected rights under the First and Fourteenth Amendments to the association, companionship, and society of parent and child.

82.     Plaintiff has no adequate remedy at law and will suffer irreparable harm unless the Court enjoins Defendant's violation of the Due Process Clause.

83.     Plaintiff is entitled to recover their costs and attorneys' fees under 42 U.S.C. § 1988 plus injunctive relief and a judicial declaration that SB 107 is unconstitutional.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE FULL FAITH AND CREDIT**

**CLAUSE OF THE FOURTH AMENDMENT**

**(42 U.S.C. § 1983)**

84.     Plaintiff incorporates by reference the allegations in the preceding paragraphs 1 through 83, as if fully set forth herein.

85.     The Full Faith and Credit Clause states: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." U.S. Const. Art. IV, § 1, cl. 1.

86.     The Full Faith and Credit Clause demands that state court judgments be accorded full effect in the courts of other states and precludes states from adopting any "policy of hostility" toward the public acts of another state. *Franchise Tax Board v. Hyatt*, 578 U.S. 171 (2016); *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485 (2019).

87.     The clause also requires states to recognize judgments from other state courts, so that "a cause of action merged in a judgment in one state is likewise merged in every other." *Magnolia Petroleum Co. v. Hunt*, 340 U.S. 430, 439 (1943).

88.     28 U.S.C. § 1738A generally requires each state to give full faith and credit to child custody determinations made by another state, and further recognizes that a child's home state is generally the state with jurisdiction to make such determinations.

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

89.     SB 107 violates the Full Faith and Credit Clause because the bill was passed as a direct "policy of hostility" towards statutes passed in other states, which restrict or criminalize gender-transition procedures for minors.

90.     For instance, State Senator Scott Wiener, the sponsor of SB 107, stated that SB 107 was "[i]n response to recent executive and legislative action in states like Alabama and Texas." *See* Exhibit 1. Governor Newsom similarly commented that he was signing SB 107 because "[s]tates across the country [were] passing laws to demonize the transgender community."

91.     California specifically exempted children obtaining gender-affirming care from its general rule that the state should not consider the taking or retention of a child from a person who has legal custody. California has created a special carve-out from its general jurisdiction rule to allow the "taking of a child" from their custodial parent if done to pursue gender transition procedures in California, while overlooking other egregious violations that could warrant the "taking of a child", such as sexual abuse. S.B. 107 § 7. This ignores the rightful jurisdiction of the child's home state.

92.     SB 107 "close[s] the door of [California's] courts to the cause of action" created by other states statutes in favor of its own policies. *Hughes v. Fetter*, 341 U.S. 609, 611-612 (1951). SB 107 unlawfully prohibits the enforcement of an order based upon another state's law authorizing a child to be removed from their parent because the parent allowed the child to undergo gender transitioning surgery. S.B. 107 § 8. The bill also prevents law enforcement from carrying out their duties by executing an out-of-state warrant, and hospitals cannot respond to a subpoena requesting medical information of a child receiving gender-affirming care. S.B. 107 §§ 9, 10.

93.     California does not apply the same rules consistently, as SB 107 also exempts law enforcement from its general duty to facilitate out-of-state warrants if the warrant relates to gender-affirming care. *Id.*, § 9.

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

94.     SB 107 also violates Full Faith and Credit Clause by preventing recognition of laws and judgments of another state that authorizes a state agency to remove a child from their parent or guardian based on the parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care. S.B. 107 § 8. The Full Faith and Credit Clause requires California to recognize these laws and judgments that were validly decreed in other states, including the removal of a child based on the parent or guardian allowing their child to receive experimental gender-affirming health care or gender-affirming mental health care. *See Finstuen v. Crutcher* 496 F.3d 1139, 1153 (10th Cir. 2007).

95.     SB 107 further violates the Full Faith and Credit Clause by taking away other states' rightful jurisdiction for any child visiting California who seeks—or claims to be seeking—puberty blockers, cross-sex hormones, etc.

96.     Specifically, Section 4 of the bill amended the California Family Code to state that "the presence of a child" in California "for the purpose of obtaining gender-affirming health care" is sufficient for California courts to exercise jurisdiction over custody decisions for the child. S.B. 107 § 4. Section 8 of the bill prohibits the enforcement of a court order based on another state's law authorizing a child to be removed from their parent or guardian based on that parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care. S.B. 107 § 8.  These new paragraphs unjustifiably ignore the nationally established UCCJEA and its determinations regarding the proper and rightful jurisdiction of the child's home state.

97.     Section 6 of SB 107 further compounds these problems by stating that, even if California is an "inconvenient forum" compared to another state based on factors like how long the child has lived outside the state, where evidence for the case is located, and where the parties to the case are located, California courts must disregard these important

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

considerations and claim sole jurisdiction if the child's case involves gender identity issues. S.B. 107 § 6.

98.   These amendments erode the efficacy of the multi-state UCCJEA and render all non-Californian custody agreements and judgments illusory. Deference to the laws and jurisdictions of the 49 other states is required under the "Full Faith and Credit" Clause of the U.S. Constitution. California cannot ignore the authority and jurisdiction of other states granted by the UCCJEA.

99.   Plaintiff has no adequate remedy at law and will suffer irreparable harm unless the Court enjoins Defendant's violation of the Full Faith and Credit Clause.

100.   Plaintiff is entitled to recover their costs and attorneys' fees under 42 U.S.C. § 1988 plus injunctive relief and a judicial declaration that SB 107 is unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.   For damages;

2.   For an order declaring SB 107 unconstitutional;

3.   For an order temporarily, preliminarily, and permanently enjoining SB 107;

4.   For costs, attorneys' fees, and interest, as allowed by law; and

5.   For such other relief the Court determines is proper.

Respectfully submitted,

ADVOCATES FOR FAITH & FREEDOM

Dated:  August 1, 2023        /s/Mariah R. Gondeiro
                              Mariah R. Gondeiro

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**VERIFICATION**

I am an officer of Our Watch With Tim Thompson, a party to this action, and authorized to make this verification for and on its behalf, and I make this verification for that reason.

I am informed, believe, and on that ground allege that the matters stated in the foregoing **VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** are true. The matters stated in the foregoing document are true and based upon my own knowledge. I believe the matters based upon information and belief are also true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on <u>08/01/2023</u>, at Murrieta, California.

**OUR WATCH WITH TIM THOMPSON**

By <u>_Timothy R Thompson_</u>
Timothy R Thompson (Aug 1, 2021 15:46 PDT)
Tim Thompson

VERIFIED SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF