1   ROB BONTA
    Attorney General of California
2   RENUKA R. GEORGE
    Senior Assistant Attorney General
3   KATHLEEN BOERGERS, State Bar No. 213530
    Supervising Deputy Attorney General
4   NIMROD PITSKER ELIAS, State Bar No. 251634
    LILY WEAVER, State Bar No. 289038
5   NATALIE S. TORRES, State Bar No. 283571
    Deputy Attorneys General
6    1515 Clay Street, 20th Floor
     P.O. Box 70550
7    Oakland, CA  94612-0550
     Telephone: (510) 879-0012
8    Fax: (510) 622-2270
     E-mail: Nimrod.Elias@doj.ca.gov
9   *Attorneys for Defendant Rob Bonta,*
    *Attorney General of California*

10

11                IN THE UNITED STATES DISTRICT COURT

12              FOR THE EASTERN DISTRICT OF CALIFORNIA

13

14

| | |
|---|---|
| 15 **OUR WATCH WITH TIM THOMPSON**, a California Non-Profit Organization, <br><br> 16 <br><br> 17 Plaintiff, <br><br> 18 v. <br><br> 19 <br><br> 20 **ROB BONTA, the Attorney General of California,** <br><br> 21 Defendant. <br><br> 22 | Case No. 2:23-cv-00422-DAD-DB <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [Fed. R. Civ. P. 12(b)(1) & (6)]** <br><br> Hearing Date: October 17, 2023 <br> Time:          1:30 p.m. <br> Dept:          Courtroom 4 <br> Judge:         Hon. Dale A. Drozd |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

        A.    SB 107 Provides Legal Safeguards for Transgender Minors and Their Parents Seeking Gender-Affirming Care in California ................... 2

               1.    SB 107 bars compliance with foreign subpoenas that are based on out-of-state laws penalizing the provision of gender-affirming care ............................................................ 3

               2.    SB 107 clarifies situations when California courts retain jurisdiction over family law matters ................................. 4

               3.    SB 107 limits California law enforcement's ability to assist with out-of-state criminal actions involving gender-affirming care ....................................................................... 8

LEGAL STANDARD ........................................................................................................... 9

        A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction ....................... 9

        B.    Motion to Dismiss for Failure to State a Claim ......................................... 9

ARGUMENT ..................................................................................................................... 10

    I.    PLAINTIFF LACKS STANDING ........................................................................ 10

        A.    Plaintiff Lacks Article III Standing .......................................................... 10

               1.    Plaintiff has not concretely demonstrated frustration of its mission ....................................................................... 11

               2.    Plaintiff has not shown that it was forced to divert resources ....... 12

        B.    The Doctrine of Third Party Standing Independently Bars Plaintiff's Suit ......................................................................................... 14

    II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER ANY OF ITS CONSTITUTIONAL THEORIES ...................................................................... 15

        A.    Plaintiff's Due Process and Familial Association Claims Fail as a Matter of Law .......................................................................................... 16

        B.    Plaintiff's Full Faith and Credit Claim Fails as a Matter of Law ............. 20

               1.    SB 107 does not violate the Full Faith and Credit Clause's obligation to respect the final judgments of other states ............. 21

               2.    SB 107 permissibly furthers California's legitimate public policy .................................................................................... 22

               3.    The Full Faith and Credit Clause does not require California to apply an out-of-state law that violates California's public policy in California court proceedings ...................................... 23

        C.    Plaintiff's Facial Challenge to SB 107 Fails as a Matter of Law ............. 24

CONCLUSION .................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Packers Ass'n v. Indus. Acc. Comm'n of Cal.*
294 U.S. 532 (1935)......................................................................................22, 24

*Am. Acad. of Pediatrics v. Lungren*
16 Cal.4th 307 (1997).........................................................................................18

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)............................................................................................10

*Baker v. Gen. Motors Corp.*
522 U.S. 222 (1998)............................................................................................21

*Broderick v. Rosner*
294 U.S. 629 (1935)............................................................................................23

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
657 F.3d 936 (9th Cir. 2011)...............................................................................11

*Connecticut Parents Union v. Russell-Tucker*
8 F.4th 167 (2d Cir. 2021)...................................................................................13

*E. Bay Sanctuary Covenant v. Biden*
993 F.3d 640 (9th Cir. 2021)...............................................................................14

*Finstuen v. Crutcher*
496 F.3d 1139 (10th Cir. 2007)...........................................................................24

*Franchise Tax Bd. of Cal. v. Hyatt*
578 U.S. 171 (2016)................................................................................22, 23, 24

*Frazier v. City of Fresno*
No. 1:20-cv-01069-DAD-SAB, 2022 WL 1128991 (E.D. Cal. Apr. 15, 2022).........10, 14, 15

*Havens Realty Corp. v. Coleman*
455 U.S. 363 (1982)................................................................................10, 12, 13

*Hughes v. Fetter*
341 U.S. 609 (1951)............................................................................................23

*Hyatt v. State Franchise Tax Bd.*
105 A.D.3d 186 (N.Y. Supr. Ct. App. Div. 2013)....................................21, 22, 23

*In Defense of Animals, et al. v. Sanderson Farms, Inc.*
No. 20-cv-05293-RS, 2021 WL 4243391 (N.D. Cal. 2021).......................11, 12, 13

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

4

*Kowalski v. Tesmer*
    543 U.S. 125 (2004) ........................................................................................ 14, 15

5

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*
    624 F.3d 1083 (9th Cir. 2010) ................................................................. 10, 11, 13

6

7

*La Clinica de la Raza v. Trump*
    No. 19-CV-04980-PJH, 2020 WL 6940934 (N.D. Cal. Nov. 25, 2020) ................................ 13

8

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ............................................................................................ 9, 10

9

10

*Nguyen v. City of Buena Park*
    No. 8:20-cv-00348-JLS-ADS, 2020 WL 5991616 (C.D. Cal. Aug. 18, 2020) ...................... 25

11

*Pink v. A.A.A. Highway Exp.*
    314 U.S. 201 (1941) .......................................................................................... 23, 24

12

13

*Rodriguez v. City of San Jose*
    930 F.3d 1123 (9th Cir. 2019) .................................................................................. 11

14

15

*Rosenblatt v. City of Santa Monica*
    940 F.3d 439 (9th Cir. 2019) .................................................................................... 25

16

17

*Shroyer v. New Cingular Wireless, Inc.*
    622 F.3d 1035 (9th Cir. 2010) ............................................................................. 10, 15

18

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) .................................................................................... 10

19

20

*U.S. ex rel. Chunie v. Ringrose*
    788 F.2d 638 (9th Cir. 1986) ............................................................................. 10, 17

21

22

*U.S. v. Salerno*
    481 U.S. 739 (1987) .......................................................................................... 24, 25

23

24

*United States v. Hansen*
    143 S.Ct. 1932 (2023) ....................................................................................... 14, 25

25

*Ward v. City of San Jose*
    967 F.2d 280 (9th Cir. 1991) .................................................................................... 16

26

27

*Warth v. Seldin*
    422 U.S. 490 (1975) ................................................................................................ 14

28

iii

**<u>TABLE OF AUTHORITIES</u>**
(continued)

**Page**

*Wash. State Grange v. Wash. State Republican Party*
    552 U.S. 442 (2008) ................................................................................................ 16, 25

**STATUTES**

Cal. Civ. Code

    § 56.10(b)(7) ........................................................................................................... 17

    § 56.109 ..................................................................................................................... 3

Cal. Code Civ. Proc.

    § 2029.300 ................................................................................................................. 3

    § 2029.350 ................................................................................................................. 3

Cal. Fam. Code

    § 3400 *et seq.* ........................................................................................................... 4

    § 3408 ....................................................................................................................... 6

    § 3421 ....................................................................................................................... 3

    § 3421(a)(1) ......................................................................................................... 5, 20

    § 3421(a)(1)-(4) ....................................................................................................... 5

    § 3421(a)(2) ......................................................................................................... 5, 20

    § 3422 ................................................................................................................. 5, 20

    § 3423 ................................................................................................................. 7, 20

    § 3423(a)-(b) ............................................................................................................ 7

    § 3424 ................................................................................................................. 3, 20

    § 3424(a) ................................................................................................................... 5

    § 3424(c) ................................................................................................................... 6

    § 3424(c)-(d) ............................................................................................................ 6

    § 3424(d) ................................................................................................................... 6

iv

# TABLE OF AUTHORITIES
**(continued)**

**Page**

Cal. Fam. Code (continued)

§ 3425 .......................................................................................................... 6

§ 3426 .......................................................................................................... 6

§ 3427 .......................................................................................................... 3

§ 3427(a) ...................................................................................................... 7

§ 3428 .......................................................................................................... 3

§ 3428(a) ...................................................................................................... 7

§ 3428(a)(1)-(3) ........................................................................................ 7, 8

§ 3429 .......................................................................................................... 6

§ 3443 ..................................................................................................... 8, 22

§ 3446 ..................................................................................................... 8, 22

§ 3453 .......................................................................................................... 8

§ 3453.5 ....................................................................................................... 3

§ 6910 ........................................................................................................ 18

§ 6924(b) .................................................................................................... 19

§ 7050(e)(1) ............................................................................................... 19

Cal. Health & Saf. Code

§ 123105 ..................................................................................................... 17

§ 123110 ..................................................................................................... 17

§ 123115(a)(2) ............................................................................................ 17

§ 124260(b)(1) ........................................................................................... 19

Cal. Pen. Code

§ 819 ............................................................................................................. 3

§ 1326 ........................................................................................................... 3

v

## TABLE OF AUTHORITIES
### (continued)

**Page**

Cal. Welf. & Inst. Code

§ 16010.2(b)(1) ............................................................................................ 19

§ 16010.2(b)(3)(A) ........................................................................................ 3

§ 16010.2 ...................................................................................................... 3

UCCJEA .................................................................................................. *passim*

**REGULATIONS**

Cal. Code Regs. Title 9

§ 782.14 ....................................................................................................... 18

§ 784.29(a) ................................................................................................... 18

**COURT RULES**

Federal Rule of Civil Procedure

12(b)(6) .................................................................................................... 9, 10

12(b)(1) ............................................................................................. 9, 10, 14

**OTHER AUTHORITIES**

Andrew Demillo, *Which States are Poised to Rule Next on Transgender Health Care Restrictions,* https://apnews.com/article/transgender-gender-affirming-lawsuits-court-14b09741257b971911367250055f671c (last viewed on August 28, 2023) ....................................................................................................... 1

*Health Insurance FAQ*, UCLA (2023), https://www.uclahealth.org/medical-services/gender-health/patient-resources/health-insurance-faq (last visited March 29, 2023) ............................................................................................ 19

Patricia M. Hoff, The Uniform Child-Custody Jurisdiction and Enforcement Act, U.S. Dep't of J., Off. of J. Progs (Dec. 2001), https://www.ojp.gov/pdffiles1/ojjdp/189181.pdf (last visited Apr. 18, 2023) ........................ 4

Wylie C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons* 102(11) J. Clin. Endocrinology & Metabolism 3869 (2017) ....................................................................................................... 18

**INTRODUCTION**

Beginning last year, 22 states have enacted laws restricting or banning gender-affirming care for teenagers.[1] These bans can impose civil and criminal liability on anyone who assists a minor with obtaining gender-affirming healthcare. Doctors, parents, and teenagers themselves can face investigations, license revocation, felony charges, civil fines, and prison time for seeking medical treatment based on well-accepted standards of care. Foreseeing this tsunami of legislation banning gender-affirming care, the California Legislature enacted Senate Bill (SB) 107. *See* S.B. 107, 2021-2022 Reg. Sess. (Cal. 2022) (SB 107). SB 107 protects families who come to California to obtain gender-affirming care that is inaccessible where they live, as well as doctors and staff providing such care in California. SB 107 implements various safeguards against the enforcement of other states' laws that would penalize people for obtaining medically-necessary healthcare that is legal in California—and often lifesaving.

This Court previously held that Plaintiff Our Watch with Tim Thompson (Plaintiff) lacks Article III standing because it failed "to identify any restrictions on its ability to perform the core [organizational] activities" and to "allege facts indicating that its alleged diversion of resources in response to SB 107 has been anything other than voluntary on its part." Docket No. 22 at 12, 16. The allegations in the Second Amended Complaint (SAC) fare no better. None of Plaintiff's services, activities, functions, or funding have been impaired in any way by SB 107. As this Court said previously, Plaintiff's philosophical disagreement with SB 107 and its voluntary choice to spend money opposing it "is not a golden ticket to obtaining Article III standing." Docket No. 22 at 19. Plaintiff also lacks prudential standing to assert the constitutional claims of third parties— out-of-state parents and other states—who are the only people theoretically impacted by SB 107.[2]

In addition to lacking Article III and prudential standing, Plaintiff's allegations fail to state a claim for relief. Plaintiff's challenge rests on a presumption that SB 107 allows children to flee to California to obtain gender-affirming care against their parents' wishes. It does not. Indeed, the

---

[1] *See* Andrew Demillo, See Which States are Poised to Rule Next on Transgender Health Care Restrictions, last updated on August 25, 2023, available at https://apnews.com/article/transgender-gender-affirming-lawsuits-court-14b09741257b971911367250055f671c (last viewed on August 28, 2023).

[2] Tellingly, Plaintiff has not identified anyone actually *harmed* by SB 107's provisions.

express aim of SB 107 is to "provide[] parents assurances that, if they come to California with their child to obtain medical care for the child, their *own parental choice* will not be subject to second-guessing by their home state." SB 107 (Wiener) Sen. Jud. Com. Analysis, at 11 (Aug. 29, 2022) (emphasis added). SB 107 did not alter existing parental consent laws in California. Gender-affirming healthcare for minors such as puberty blockers, hormone replacement therapy, and surgeries generally require parental consent in California. Nothing in SB 107 changes that. Nor does SB 107 modify the ability of parents to access their children's medical records. Finally, SB 107 does not supplant the "home state" jurisdiction of any other state's courts, nor does it grant California courts any new substantive authority to take custody of minors or allow California courts to ignore other states' custody determinations. Based on the plain language of the statute, which the Court interprets as a matter of law, the assertions in the SAC are incorrect. The Court should dismiss for failure to state a claim.

California acted well within its constitutional authority in seeking to ensure that transgender teenagers and their families can safely obtain medically necessary healthcare in our state without fear of repercussion. This lawsuit should be dismissed with prejudice.

**BACKGROUND**

**A.     SB 107 Provides Legal Safeguards for Transgender Minors and Their Parents Seeking Gender-Affirming Care in California**

The California Legislature passed SB 107 against a national backdrop of proliferating state actions targeting transgender teenagers and their families and doctors. It enacts various safeguards to protect California residents and people traveling to our state against the enforcement of other states' laws that penalize individuals for obtaining gender-affirming care that is legal in California. *See, e.g.*, SB 107 (Wiener) Sen. Jud. Com. Analysis, at 11 (Aug. 29, 2022) (discussing "regressive transphobic laws and executive orders" from other states which put "parents and doctors in the position of risking sentences of up to ten years in prison for simply getting their child the medical care they need"); *see also* SB 107 (Wiener) Assembly Jud. Com. Analysis at 1, 6-7 (June 5, 2022). SB 107's protections operate in three main ways, by: (1) barring compliance with foreign subpoenas that are based on other states' laws penalizing the provision of gender-

2

affirming care; (2) clarifying situations when California courts retain jurisdiction over family law matters; and (3) limiting state law enforcement assistance with out-of-state criminal actions involving gender-affirming care.[3]

### 1.   SB 107 bars compliance with foreign subpoenas that are based on out-of-state laws penalizing the provision of gender-affirming care

SB 107 limits the ability of litigants in other states to obtain civil discovery from California entities to prosecute an out-of-state action that would penalize an individual for obtaining (or helping their child or patient obtain) gender-affirming healthcare and gender-affirming mental healthcare in California. SB 107 §§ 1-3.5.[4] Section 1 states that:

> [A] provider of health care, health care service plan, or contractor shall not release medical information related to a person or entity allowing a child to receive gender-affirming health care or gender-affirming mental health care in response to any civil action, including a foreign subpoena, based on another state's law that authorizes a person to bring a civil action against a person or entity [permitting such care].

SB 107 § 1. Section 1 also provides that these same entities cannot release gender-affirming healthcare information to people who are authorized to receive it when "the information is being requested pursuant to another state's law that authorizes a person to bring a civil action against a person or entity" permitting such care. *Id*. Sections 2 and 2.5 similarly prohibit a Superior Court clerk from issuing a domestic subpoena in response to a foreign subpoena that "is based on a

---

[3] For ease of reference, this brief generally refers to the various sections of SB 107 in shorthand and does not always note the codes that were amended or added. Those sections added or amended other statutory provisions as follows. Cal. S.B. 107 §§ 1 (adding Cal. Civ. Code § 56.109); 2 (amending Cal. Code Civ. Proc. § 2029.300); 2.5 (amending Cal. Code Civ. Proc. § 2029.300); 3 (amending Cal. Code Civ. Proc. § 2029.350); 3.5 (amending Cal. Code Civ. Proc. § 2029.350); 4 (amending Cal. Fam. Code § 3421); 5 (amending Cal. Fam. Code § 3424); 6 (amending Cal. Fam. Code § 3427); 7 (amending Cal. Fam. Code § 3428); 8 (amending Cal. Fam. Code § 3453.5); 9 (adding Cal. Pen. Code § 819); & 10 (amending Cal. Pen. Code § 1326).

[4] SB 107 adopts the definitions of "gender-affirming health care" and "gender-affirming mental health care" found in California Welfare & Institutions Code section 16010.2. Gender-affirming healthcare is defined as "medically necessary health care that respects the gender identity of the patient, as experienced and defined by the patient" and may include: (1) interventions to suppress the development of endogenous secondary sex characteristics; (2) interventions to align the patient's appearance or physical body with the patient's gender identity; and (3) interventions to alleviate symptoms of clinically significant distress resulting from gender dysphoria. Cal. Welf. & Inst. Code § 16010.2(b)(3)(A). Gender-affirming mental healthcare is "mental health care or behavioral health care that respects the gender identity of the patient, as experienced and defined by the patient," and may include developmentally appropriate exploration and integration of identity, reduction of distress, adaptive coping, and strategies to increase family acceptance. *Id*. at § 16010.2(b)(3)(B). Unless stated otherwise, references to "gender-affirming healthcare" refer to both medical and mental healthcare.

violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care." SB 107 §§ 2, 2.5. Sections 3 and 3.5 impose similar limitations on licensed California attorneys, prohibiting them from issuing subpoenas pursuant to foreign subpoenas based on out-of-state laws that interfere with the provision of gender-affirming care. SB 107 §§ 3, 3.5.

> **2.     SB 107 clarifies situations when California courts retain jurisdiction over family law matters**

SB 107 also modifies several provisions of the Family Code that codify the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)[5] to ensure that California courts can protect families that come to California for gender-affirming care. The UCCJEA, which nearly all states—including California—have adopted, promotes uniform jurisdiction and enforcement provisions in inter-state child custody cases.[6] The UCCJEA governs state courts' jurisdiction to make and modify child custody determinations and requires state courts to enforce valid child custody determinations made by sister state courts.[7] However, the UCCJEA is not a substantive custody statute; it does not dictate legal standards for making or modifying child custody decisions.[8] It merely outlines which states have jurisdiction to decide the merits and requires uniform enforcement of such determinations.[9] Generally speaking, there are two requirements for making or modifying a custody determination under the UCCJEA: (1) the court must have a basis for jurisdiction, and (2) the parties must be given notice and an opportunity to be heard.[10]

SB 107 amended UCCJEA provisions relating to: (1) jurisdiction over initial child custody determinations; (2) emergency jurisdiction; (3) determining whether a state is an inconvenient forum; and (4) declining jurisdiction because the petitioner engaged in unjustifiable conduct. Each is addressed in turn.

---

[5] *See* Cal. Fam. Code section 3400 *et seq*.
[6] *See generally* Patricia M. Hoff, The Uniform Child-Custody Jurisdiction and Enforcement Act, U.S. Dep't of J., Off. of J. Progs (Dec. 2001), https://www.ojp.gov/pdffiles1/ojjdp/189181.pdf (last visited Apr. 18, 2023).
[7] *Id.* at 1.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 5.

1    Consistent with the UCCJEA, the California Family Code provides four bases for asserting

2    jurisdiction in initial child custody determinations: (1) home state jurisdiction; (2) significant

3    connection jurisdiction; (3) more appropriate forum jurisdiction; and (4) vacuum jurisdiction.[11]

4    Cal. Fam. Code § 3421(a)(1)-(4). However, home state jurisdiction has statutory priority. *Id.* A

5    California court has jurisdiction to make an initial child custody determination if California is the

6    home state of the child on the date that custody proceedings commence, or if California was the

7    home state of the child within six months before proceedings commenced and the child is absent

8    from this state but a parent continues to live here. Cal. Fam. Code § 3421(a)(1).

9    If California lacks home state jurisdiction, it can assert significant connection jurisdiction.

10   Cal. Fam. Code § 3421(a)(2). However, it can only do so if: (1) the child has no home state (or

11   the home state declines jurisdiction on the ground that this state is the more appropriate forum);

12   (2) the child and the child's parents, or the child and at least one parent, have a significant

13   connection to this state other than mere physical presence; and (3) substantial evidence is

14   available in this state concerning the child's care, protection, training, and personal relationships.

15   *Id.* at (a)(2)(A)-(B). SB 107 amends the requirements for significant connection jurisdiction. It

16   establishes that the "presence of a child in this state for the purposes of obtaining gender-

17   affirming health care" (SB 107, § 4) meets the requirement of a having significant connection

18   with this state. Cal. Fam. Code § 3421(a)(2).

19   The UCCJEA also recognizes the need to protect children in emergencies, no matter where

20   they are located when the emergency arises. The UCCJEA gives courts temporary emergency

21   jurisdiction when a child is in the state and has been abandoned, and when an emergency makes it

22   necessary to protect the child because the child, or a sibling or parent of the child, is subjected to,

23   or threatened with, mistreatment or abuse. UCCJEA § 204; *see also* Cal. Fam. Code § 3424(a).[12]

24   SB 107 added two emergency situations to this list: cases involving domestic violence, and cases

25   where the child has been unable to obtain gender-affirming healthcare in another state. SB 107

26   ---

[11] SB 107 did not change the legal standards for home state, more appropriate forum, or
vacuum jurisdiction (bases 1, 3, and 4 above).

27   [12] Emergency jurisdiction is the only exception to the exclusive, continuing jurisdiction of
the state that made the initial child custody determination, which is typically the home state. Cal.

28   Fam. Code § 3422.

§ 5.[13] However, even though emergency jurisdiction can be invoked in limited circumstances, numerous safeguards protect the home state's authority.

First, in any child custody proceeding, each party's first pleading must state under oath whether there has been any other proceeding concerning the custody of the child and provide the court with the relevant information. Cal. Fam. Code § 3429. The California court should immediately know if another state has initiated a child custody proceeding or made a child custody determination. *Id.* Second, aside from emergency jurisdiction, a California court "may not exercise jurisdiction" if a child custody proceeding has been commenced in another state as long as those proceedings substantially conformed with the UCCJEA. Cal. Fam. Code § 3426. Third, before a child custody determination is made by a California court, notice and an opportunity to be heard must be given to all persons entitled to such notice, including any parent whose parental rights have not been terminated and any person having physical custody of the child. Cal. Fam. Code § 3425. This includes notice to persons outside California. Cal. Fam. Code § 3408. Fourth, if another state has commenced child custody proceedings or made a child custody determination, any emergency order issued by a California court must limit the length of the order to a period of time that the court considers adequate to allow the petitioner to seek an order from the other state (typically the home state). Cal. Fam. Code § 3424(c). Fifth, if another state has commenced child custody proceedings or made a child custody determination, the California court "shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." Cal. Fam. Code § 3424(d).

Emergency jurisdiction is temporary and it does not—and cannot—modify or supplant a child custody determination from a child's home state. Cal. Fam. Code § 3424(c)-(d); *see also* Cal. Fam. Code § 3423 ("a court of this state may not modify a child custody determination made by a court of another state").[14]

---

[13] The addition of domestic violence to the list of emergency situations in which the court can assert temporary jurisdiction is not at issue in this case.

[14] The only exception to this rule is when a California court has jurisdiction to make an initial child custody determination and either: (1) the court of the other state determines it no

(continued…)

As with all courts, family courts must determine if they are the appropriate forum for the matter before them. Consistent with the UCCJEA, a California court that has jurisdiction to make a child custody determination may decline to exercise that jurisdiction if it determines that it is an inconvenient forum and that another court is a more appropriate forum. Cal. Fam. Code § 3427(a). There are several factors that a family court must consider before deciding that it is an inconvenient forum. *Id.* at (b). SB 107 augments this section to include that, when gender-affirming healthcare for the child is an issue, "a court of this state shall not determine that it is an inconvenient forum where the law or policy of the other state that may take jurisdiction limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child." SB 107 § 6. In other words, SB 107 simply provides that a California court cannot decline jurisdiction on the ground that it is an inconvenient forum in one specific circumstance: when a parent's ability to obtain gender-affirming healthcare for their child in another state is at issue and is constrained because of that state's law or policy. *Id.*

The UCCJEA also requires a court to decline jurisdiction if the person seeking to invoke the court's jurisdiction has engaged in "unjustifiable conduct." UCCJEA § 208; *see also* Cal. Fam. Code § 3428(a). Neither the UCCJEA nor the Family Code define "unjustifiable conduct." Nonetheless, even when unjustifiable conduct has occurred, courts may retain jurisdiction if: (1) the parents have acquiesced in the exercise of jurisdiction; (2) a court of a state otherwise having jurisdiction determines that California is a more appropriate forum; or (3) no court of any other state would have jurisdiction. Cal. Fam. Code § 3428(a)(1)-(3). SB 107 amends this section by stating that when making a jurisdiction determination:

> [A] court shall not consider as a factor weighing against the petitioner any taking of the child, or retention of the child after a visit . . . from the person who has legal custody, if there is evidence that the taking or retention of the child was a result of domestic violence against the petitioner . . . or for the purposes of obtaining gender-affirming health care . . . for the child and the law or policy of the other state limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child.

longer has exclusive, continuing jurisdiction or that a court of this state would be a more convenient forum; or (2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state. Cal. Fam. Code § 3423(a)-(b). SB 107 did not change this prohibition on modifying a child custody determination made by the court of another state.

7

SB 107 § 7. In other words, SB 107 provides two examples of what is *not* unjustifiable conduct requiring a court to decline jurisdiction, one of which is bringing a child to California for gender-affirming care when a parent is unable to obtain such care for their child in another state.[15] *Id.* SB 107 also adds a section to the Family Code stating that:

> A law of another state that authorizes a state agency to remove a child from their parent or guardian based on the parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care is against the public policy of this state and shall not be enforced or applied in a case pending in a court in this state.

SB 107 § 8.

Beyond establishing rules for jurisdiction, the UCCJEA requires states to recognize and enforce child custody determinations made by other states. Pursuant to those provisions, California courts "shall recognize and enforce a child custody determination of a court of another state." Cal. Fam. Code § 3443; *see also* Cal. Fam. Code § 3446 ("A court of this state shall recognize and enforce, but may not modify . . . a registered child custody determination of a court of another state."). Consistent with the UCCJEA, California law requires California courts to "accord full faith and credit to an order issued by another state" and "enforce a child custody determination made by a court of another state unless the order has been vacated, stayed, or modified by a court having jurisdiction to do so"). Cal. Fam. Code § 3453. SB 107 did not change any of these recognition and enforcement provisions.

### 3. SB 107 limits California law enforcement's ability to assist with out-of-state criminal actions involving gender-affirming care

SB 107 adds to, and amends, sections of the Penal Code to limit (and in some cases to prevent) California's law enforcement agencies from assisting other states' prosecutions of people involved in providing or seeking gender-affirming care. First, SB 107 declares that "[i]t is the public policy of the state that an out-of-state arrest warrant for an individual based on violating another state's law against providing, receiving, or allowing their child to receive gender-affirming health care or gender-affirming mental health care is the lowest law enforcement priority." SB 107 § 9. Second:

---

[15] As with section 5, section 7's addition of domestic violence is not challenged here.

> California law enforcement agencies shall not knowingly make or participate in the arrest or participate in any extradition of an individual pursuant to an out-of-state arrest warrant for violation of another state's law against providing, receiving, or allowing a child to receive gender-affirming health care . . . if that care is lawful under the laws of this state, to the fullest extent permitted by federal law.

*Id.* Third, "[n]o state or local law enforcement agency shall cooperate with or provide information to any individual or out-of-state agency or department regarding the provision of lawful gender-affirming health care or gender-affirming mental health care performed in this state." SB 107 § 9.

Fourth, SB 107 amends the section addressing subpoenas in criminal actions, stating that:

> [A] provider of health care, health care service plan, or contractor shall not release medical information related to a person or entity allowing a child to receive gender-affirming health care . . . in response to any foreign subpoena that is based on a violation of another state's laws authorizing a criminal action against a person or entity that allows a child to receive gender-affirming care or gender-affirming mental health care.

*Id.* at § 10. SB 107 also includes a severability clause. *Id.* at § 11.

## LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise the defense that a court lacks jurisdiction over the subject matter of a claim for lack of standing. Fed. R. Civ. P. 12(b)(1). Article III standing requires a plaintiff to demonstrate: (1) an injury in fact; (2) a causal connection; and (3) redressability. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not th[e] result [of] the independent action of some third party not before the court.'" *Id.* "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.* at 561 (citations omitted).

### B.   Motion to Dismiss for Failure to State a Claim

A motion to dismiss tests the legal sufficiency of a claim. Fed. R. Civ. P. 12(b)(6). Dismissal should be entered where the plaintiff has failed to allege facts sufficient to support a cognizable legal theory. *Shroyer v. New Cingular Wireless, Inc.*, 622 F.3d 1035, 1041 (9th Cir.

9

2010). All material allegations in the pleadings are taken as true and construed in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court, however, is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id*. In addition, the Court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*.

## ARGUMENT

### I.   PLAINTIFF LACKS STANDING

Plaintiff lacks Article III standing because SB 107 did not impede any of Plaintiff's organizational activities or functions. Docket No. 22 at 11-19. And even if Plaintiff could establish Article III standing, Plaintiff lacks prudential standing to assert third party claims on behalf of out-of-state parents and other states.[16]

#### A.   Plaintiff Lacks Article III Standing

While the *Lujan* decision established the "irreducible constitutional minimum" for standing in the context of an individual plaintiff, the same analysis is used to determine whether an organizational plaintiff has standing. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378 (1982). An organization suing on its own behalf can establish an injury when it has suffered "both a diversion of its resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087–88 (9th Cir. 2010) (internal citation omitted) (hereinafter *La Asociacion*). "Frustration of mission cannot be just a setback to an

---

[16] "While challenges to a party's Article III standing are appropriate for resolution under Rule 12(b)(1), issues of prudential standing are appropriately resolved under Rule 12(b)(6)." *Frazier v. City of Fresno*, No. 1:20-cv-01069-DAD-SAB, 2022 WL 1128991, at *5 n.3 (E.D. Cal. Apr. 15, 2022).

organization's values or interests, it must result in an actual impediment to the organization's real world efforts on behalf of such principles." *In Defense of Animals, et al. v. Sanderson Farms, Inc.*, Case No. 20-cv-05293-RS, 2021 WL 4243391, at *3 (N.D. Cal. 2021). And an organization must "show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion*, 624 F.3d at 1088. In other words, an organization has standing to sue if it "could not avoid suffering one injury or the other." *Id.*

Importantly, an organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion*, 624 F.3d at 1088 (internal citation omitted).[17] "An organization may sue only if it was *forced* to choose between suffering an injury and diverting resources to counteract the injury." *Id.* at 1088 n.4 (emphasis added); *see also Rodriguez v. City of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019) (organizations representing gun owners and providing them with legal advice lacked standing because they were not "require[d]" to divert resources to oppose the city's refusal to return confiscated guns to their owner). Put differently, the "challenged conduct must harm the organization's activities specifically, not merely frustrate their mission in a general sense." *In Defense of Animals*, 2021 WL 4243391, at *4.

### 1.     Plaintiff has not concretely demonstrated frustration of its mission

In this case, Plaintiff has not met either of the two requirements for organizational standing because it has not identified any actual injury—in the form of a real-world impediment to Plaintiff's activities—caused by SB 107. As with its prior Complaints, Plaintiff's SAC "is devoid of any allegations pertaining to . . . how SB 107's enactment *specifically impacts the organization's functions*." Docket No. 22 at 11 (emphasis added). Plaintiff alleges that it is a "California non-profit public benefit corporation" whose "mission is to restore Christian-Judeo values in government and education." SAC ¶ 11. Plaintiff "accomplishes its mission through legislative advocacy, research, education of California citizens, and mobilization of California citizens to get involved in community events." *Id*; *see also id*. at ¶¶ 12-13 (citing examples such

---

[17] It is well-accepted that "standing must be established independent of the lawsuit filed by the plaintiff. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* 657 F.3d 936, 943 (9th Cir. 2011) (internal citations omitted).

1    as "hosting speakers," "organizing events and conferences," "sending letters to elected officials,"

2    "organizing rallies," and "researching issues.") But Plaintiff does not—and cannot—allege that

3    any of these activities have been impaired in any way by SB 107. Absent plausible allegations

4    that SB 107 has "restrict[ed] [] its ability to perform the core activities," Plaintiff cannot establish

5    that its mission has been frustrated. Docket No. 22 at 12. Abstract harm to an organization's

6    beliefs is not sufficient. *See Havens*, 455 U.S. at 379 (distinguishing between injury to an

7    "organization's activities" and "simply a setback to the organization's abstract social interests");

8    *In Def. of Animals*, 2021 WL 4243391, at *5 ("[Plaintiff] only pleads facts showing the abstract

9    interests it fights for have been set back by [defendant's conduct] . . . and asserts its mission has

10   been frustrated. This is not enough.")

11        Plaintiff's inability to point to any concrete harm from SB 107 flows partly from the fact

12   that it is an advocacy organization. Because organizational standing requires showing an actual

13   impediment to an organization's activities, it is "easier for service organizations to show

14   standing," as opposed to advocacy organizations like Plaintiff. *See, e.g.*, *In Defense of Animals*,

15   2021 WL 4243391, at *4 n.4. And Plaintiff *is* an advocacy organization. *See* SAC ¶¶ 11, 12, 13,

16   & 15 (using the word "advocacy" four times to describe its activities). The SAC, moreover, does

17   not claim that Plaintiff has clients, provides services, or represents specific individuals in any

18   capacity. *See* SAC. Plaintiff has failed to plausibly allege that SB 107 frustrated its mission by

19   impairing its functions or activities. *See Havens*, 455 U.S. at 379.

20        **2.    Plaintiff has not shown that it was forced to divert resources**

21        For similar reasons, Plaintiff has also failed to plausibly allege that it "was actually forced

22   to divert resources to counteract an injury caused by defendant's conduct." Docket No. 22 at 13.

23   Plaintiff claims that it "has diverted resources, such as staff time and money, from its local issues

24   to address the nationwide effects of SB 107," and that it "now spends less time and money on

25   local issues affecting parents like school policies and topics like critical race theory [.]" SAC

26   ¶ 16.[18] But once again, there is simply "no basis upon which to conclude that its alleged diversion

----

[18] Some of Plaintiff's diversion of resources allegations are inadequate for an additional reason—they have not yet occurred. *See, e.g.*, SAC ¶ 17 ("Our Watch also plans to expend money on conferences [.]")

12

of resources was in any way 'forced.'" Docket No. 22 at 13. An organization cannot create

Article III standing by voluntarily spending money. *La Asociacion*, 624 F.3d at 1088. Instead, a

plaintiff must first "show that it would have suffered some other injury if it had *not* diverted

resources to counteracting the problem." *Id.* (emphasis added); *see also La Clinica de la Raza v.*

*Trump*, No. 19-CV-04980-PJH, 2020 WL 6940934, at *4 (N.D. Cal. Nov. 25, 2020) (plaintiff

must "demonstrate that they will be injured by the Rule if they do nothing"). Yet the SAC

provides no details describing how SB 107 impedes Plaintiff's prior activities. Plaintiff does not

offer a single example describing how its pre-existing advocacy, education, research,

organization, or mobilization efforts have been hindered by SB 107. *See, e.g., Havens*, 455 U.S.

at 379 (challenged conduct must "have perceptively impaired" the "organization's activities"); *In*

*Def. of Animals*, 2021 WL 4243391, at *4 ("The organization must be 'forced' into acting

because the defendant affected its operations.").

  Despite three attempts, Plaintiff's persistent failure to identify any injury that it would have

suffered "if it had not diverted resources to counteracting the problem," *La Asociacion*, 624 F.3d

at 1088, dooms its organizational standing. Under well-established Ninth Circuit precedent,

Plaintiff cannot create standing by "simply choosing to spend money fixing a problem that

otherwise would not affect the organization at all." *Id.*; *see also In Defense of Animals*, 2021 WL

4243391, at *4 (an organization cannot "gin up standing" by "investigating conduct or starting a

new campaign against someone who frustrates its general mission"). Allowing an organization to

"start[] a new campaign against someone who frustrates its general mission . . . would effectively

nullify the constitutional requirements for standing." *In Defense of Animals*, 2021 WL 4243391,

at *4. Under the logic of Plaintiff's argument, "an organization could establish standing by

claiming to have been injured by any law or regulation touching any issue within the scope of its

mission (which the organization itself can define) so long as it expends resources to oppose that

law or regulation." *Connecticut Parents Union v. Russell-Tucker*, 8 F.4th 167, 173 (2d Cir. 2021).

But as this Court properly recognized, Plaintiff's philosophical disagreement with SB 107 and its

1   voluntary choice to spend money opposing it "is not a golden ticket to obtaining Article III

2   standing." Docket No. 22 at 19.[19]

3      At bottom, none of Plaintiff's services, activities, functions, or funding have been impaired

4   in any way by SB 107. Accordingly, Plaintiff cannot show that its mission has been frustrated, or

5   that it was forced to divert resources to counteract that frustration. Plaintiff has not been injured

6   and therefore lacks Article III standing. The Court should dismiss under Fed. R. Civ. P. 12(b)(1).

7      **B.    The Doctrine of Third Party Standing Independently Bars Plaintiff's Suit**

8      Even assuming that Plaintiff can establish Article III standing, prudential limitations on

9   third party standing bar this lawsuit. Although the Court did not reach this argument previously,

10   prudential standing is an independent basis for dismissing this lawsuit.

11      It is well-established that a plaintiff generally must assert his own legal rights and interests,

12   and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*,

13   422 U.S. 490, 499-500 (1975) (internal citations omitted); *see also United States v. Hansen*, 143

14   S.Ct. 1932, 1939 (2023) ("[L]itigants typically lack standing to assert the constitutional rights of

15   third parties"). This Court has also recognized "the general prohibition on a litigant raising

16   another person's legal rights." *Frazier*, 2022 WL 1128991, at *5.

17      Although the bar on third party standing is not absolute, a party invoking the legal rights of

18   others must demonstrate that: (1) "the party asserting the right has a close relationship with the

19   person who possesses the right"; and (2) "there is a hindrance to the possessor's ability to protect

20   his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004) (internal citations omitted).

21   In *Kowalski*, the Supreme Court concluded that the criminal defense attorney plaintiffs did not

22   have standing to assert the constitutional rights of unidentified future clients because they lacked

23   ───────────────

24   [19] The Ninth Circuit's decision in *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th
     Cir. 2021) exemplifies a challenged action that actually impeded an organization's activities.

25   Legal services organizations that represent asylum seekers challenged a federal rule that
     eliminated asylum eligibility for migrants crossing into the United States other than at a port of
     entry. *Id*. at 658–59. The legal services organizations had standing because the rule: (1) made

26   80% of their prospective clients ineligible for asylum; (2) prevented the organizations from
     representing migrants who were still eligible for asylum by detaining those migrants at ports of

27   entry, which were hundreds of miles away from the organizations' offices; and (3) decreased the
     funding that the organizations relied upon to represent asylum seekers. *Id*. at 663–64. That

28   fundamental impairment of the organizations' core activities stands in stark contrast to this case.

a close relationship with their hypothetical future clients, and there was no hindrance to indigent criminal defendants asserting their own constitutional rights. *Id*. at 131-32.

Plaintiff's suit is precisely the type of lawsuit properly barred by the third party standing rule. Plaintiff's due process, familial association, and full faith and credit constitutional claims are premised entirely on the rights of *third parties*: (1) hypothetical out-of-state parents; and (2) other states in the union.[20] But Plaintiff has no relationship with other sovereign states, nor has it shown a close relationship with out-of-state parents.[21] More importantly, Plaintiff has not identified any "hindrance" to out-of-state parents or other states protecting their own interests. *Kowalski*, 543 U.S. at 129-130. There is no reason at all—let alone a compelling one—to permit a California-based advocacy organization to assert the constitutional rights of hypothetical out-of-state parents and states that have banned gender-affirming healthcare. Constitutional claims should be raised by the "one at whom the constitutional protection is aimed." *Kowalski*, 543 U.S. at 129; *see also Frazier*, 2022 WL 1128991, at *5 (prudential standing includes "the general prohibition on a litigant raising another person's legal rights.") Constitutional and prudential standing limitations bar this lawsuit. The Court should dismiss the SAC.

## II.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RELIEF UNDER ANY OF ITS CONSTITUTIONAL THEORIES

The Court should also dismiss the Complaint because Plaintiff has failed to allege facts sufficient to support a cognizable legal theory. *Shroyer,* 622 F.3d at 1041. Plaintiff's due process and familial association claims fail because they are based on unsupported allegations that SB 107 undermines parents' right to access their children's medical records, changes laws involving parental consent to medical procedures, permits parental kidnapping, and overrides other states' jurisdiction over family law matters; these allegations contradict the plain language of the relevant statutory provisions. Plaintiff's Full Faith and Credit Clause claim fails because SB 107 permissibly furthers California's legitimate public policy, and because that constitutional

---

[20] Plaintiff is not a parent or a sovereign state, and thus cannot assert that its own constitutional rights are violated by SB 107.

[21] Implementing education programs and disseminating literature and podcasts to out-of-state parents (SAC ¶ 8) does not establish a "close relationship" to the out-of-state parents whose constitutional rights Plaintiff seeks to invoke. *Kowalski*, 543 U.S. at 129.

1   provision does not require California to apply an out-of-state law that violates California's public

2   policy in California court proceedings. Lastly, Plaintiff's facial challenge to SB 107 cannot

3   succeed because Plaintiff does not remotely demonstrate that SB 107 is unconstitutional "in all of

4   its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

5   **A.    Plaintiff's Due Process and Familial Association Claims Fail as a Matter of
        Law**

6

7       Plaintiff's due process and familial association claims fail at the outset because they may

8   properly be raised only by parents and children; they do not even extend to siblings, let alone to

9   third parties. *See, e.g.*, *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1991) (holding that

10  only parents and children, but not siblings, could assert a "constitutionally protected liberty

11  interest in the companionship and society of his or her child"). Plaintiff's authorities are in

12  agreement. *See, e.g.*, SAC ¶ 78 (citing *Lee v. City of L.A.*, 250 F.3d 668, 685 (9th Cir. 2001) ("It

13  is well established that a *parent* has a fundamental liberty interest in the companionship and

14  society of his or her child" and this constitutional interest "extends to protect *children* from

15  unwarranted state interference with their relationships with their parents") (emphases added)

16  (internal citations omitted).

17      Even assuming that Plaintiff could raise due process and familial association claims as a

18  non-parent, Plaintiff's claims would still fail as a matter of law. Plaintiff's constitutional due

19  process and familial association claims are based on several assertions that bear little resemblance

20  to the actual language of SB 107. Plaintiff avers that SB 107: (1) "den[ies] parents access to their

21  child's medical information"; (2) "prevents parents from seeking court intervention to gain access

22  to their child's medical records"; (3) "allows minor children from any state to obtain puberty

23  blockers and cross-sex hormones and undergo irreversible surgeries without parental

24  involvement"; (4) justifies "parental kidnapping"; and (5) "overrides the jurisdiction of courts in a

25  family's home state." SAC ¶¶ 2, 5, 6, 36, 58, 69. According to Plaintiff, SB 107 "render[s] all

26  non-California custody agreements and judgments illusory" and "completely obliterates parents'

27  rights." SAC ¶¶ 72, 98. None of these assertions are supported by the statutory text, and the Court

28

16

1    "need not assume the truth of legal conclusions cast in the form of factual allegations." *Ringrose*,

2    788 F.2d at 643 n.2.

3    First, SB 107 does not change California law regarding the right of parents to access their

4    child's medical records. In California, parents are generally entitled to their child's medical

5    records and they do not need a subpoena to obtain them. *See* Cal. Health & Saf. Code §§ 123105

6    & 123110; *see also* Cal. Civ. Code § 56.10(b)(7).[22] Nothing in SB 107 changes these

7    longstanding provisions.[23] Section 1 of SB 107 addresses an entirely different situation: when

8    medical information is sought from a medical provider "based on another state's law that

9    authorizes a person to bring a civil action" against the person or entity that allowed or provided

10    gender-affirming care. SB 107 § 1. Section 1 only prevents a provider from releasing medical

11    information in one narrow circumstance: when the request is based on out-of-state laws

12    authorizing a civil action against a person or entity that provided gender-affirming care. *Id*. This

13    limitation is unrelated to a parent's right to access their child's medical records.[24]

14    Second, section 2 does not "prevent[] parents from seeking court intervention to gain access

15    to their child's medical records." SAC ¶ 69. Section 2 does not alter a parent's legal right to

16    access their child's medical records in any way. It merely prevents the clerk of a superior court

17    from issuing a subpoena in the same limited situation: when the foreign subpoena "is based on

18    another state's laws that interfere with a person's right to allow a child to receive gender-

19    affirming health care." SB 107 § 2. Even if a parent needed a subpoena to access their child's

20    [22] There are exceptions to this rule, such as when "the health care provider determines that

21    access to the patient records requested by the representative would have a detrimental effect on the provider's professional relationship with the minor patient or the minor's physical safety or psychological well-being." Cal. Health & Saf. Code § 123115(a)(2).

22    [23] Plaintiff admits that "California law generally gives parents access to their children's

23    medical records." *See* SAC ¶ 69 n.17. However, Plaintiff speculates that the statutory exception found in Cal. Health & Saf. Code § 123115(a)(2) "may be utilized in tandem with SB 107 to

24    prevent parental access to medical records." *Id*. Such speculation is entirely unfounded, and in any event, this exception predates SB 107, was not changed by SB 107, and is not being challenged in this lawsuit.

25    [24] Plaintiff complains that section 1 "makes no exception for custodial parents in another

26    state requesting access to such information." SAC ¶ 47. But no exception is needed. Custodial parents can always request access to their child's medical information. *See* Cal. Health & Saf.

27    Code §§ 123105 & 123110; *see also* Cal. Civ. Code § 56.10(b)(7). They can also subpoena such information in all circumstances except for one: when the subpoena is based on an out-of-state

28    law authorizing a civil action against a person or entity that allowed a minor to receive gender-affirming care. SB 107 § 1.

17

1    medical records (which is generally not the case), courts can issue such a subpoena in all

2    circumstances except this limited one. *Id.*

3         Third, Plaintiff's assertion that SB 107 "allows minor children from any state to obtain

4    puberty blockers and cross-sex hormones and undergo irreversible surgeries without parental

5    involvement" is unfounded.[25] SAC ¶ 36. As a preliminary matter, SB 107 does not change

6    parental consent laws surrounding gender-affirming healthcare. In California, a minor is defined

7    as a person under 18 years of age.[26] With limited exceptions, minors need parental consent for

8    medical care.[27] Parental or legal guardian consent is required for most medical care, including

9    surgery, hormone therapy, puberty blockers, and non-mental health related medical interventions[28]

10   to treat gender dysphoria.[29] Similarly, although minors in foster care have a right to receive

11        [25] Plaintiff acknowledges in a footnote that "California law generally requires parents to
12   consent to medical treatment for minors." SAC ¶ 56 n.16. Although Plaintiff claims that the
     statutory exceptions to this general rule are overly broad, those exceptions pre-date SB 107, were
     not changed by SB 107, and are not being challenged in this lawsuit.

13        [26] Cal. Code Regs. Tit. 9, § 782.14 ("Client means a person, 18 years of age or older,
     admitted to a mental health rehabilitation center for evaluation, observation, diagnosis,
14   rehabilitation and treatment.").

15        [27] Cal. Code Regs. Tit. 9, § 784.29(a) (requiring medical providers to obtain informed
     consent from a client to provide medical treatment); Cal. Fam. Code § 6910 ("The parent,
16   guardian, or caregiver of a minor who is a relative of the minor and who may authorize medical
     care and dental care under Section 6550, may authorize in writing an adult into whose care a
17   minor has been entrusted to consent to medical care or dental care, or both, for the minor."); *see
     also Am. Acad. of Pediatrics v. Lungren*, 16 Cal.4th 307, 315 (1997) ("The requirement that
18   medical care be provided to a minor only with the consent of the minor's parent or guardian
     remains the general rule, both in California and throughout the United States.").

          [28] Plaintiff also claims that, under SB 107, children can receive gender-affirming care
19   without a diagnosis of gender dysphoria, and that children can decide what medical interventions
     they want. SAC ¶¶ 42-45. But this argument is a red herring, as SB 107 did not change
20   clinical standards for treating gender dysphoria. These standards track the recommendations of
     major medical organizations and do not, as Plaintiff claims, allow teenagers to have surgery "on a
21   whim." SAC ¶ 44. For example, the Endocrine Society recommends that pharmaceutical
     interventions should not be provided until puberty and then only for "adolescents who meet
22   diagnostic criteria for [gender dysphoria]/gender incongruence" and fulfill criteria for treatment.
     Wylie C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent
23   Persons*, 102(11) J. Clin. Endocrinology & Metabolism 3869, 3871 (2017). Gender dysphoria in
     adolescents should only be diagnosed by mental health professionals using diagnostic tools like
24   the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American
     Psychiatric Association. *Id.* at 3870. Hormone therapy should only be initiated under rigorous
25   safety monitoring "after a multidisciplinary team of medical and [mental health professionals] has
     confirmed the persistence of [gender dysphoria]/gender incongruence and sufficient mental
26   capacity to give informed consent." *Id.* at 3871. The Endocrine Society recommends that
     "clinicians delay gender-affirming genital surgery involving gonadectomy and/or hysterectomy
27   until the patient is at least 18 years old or legal age of majority." *Id.* at 3872.

          [29] In California, emancipated minors at least 15 years of age and financially independent

28                                                                                      (continued…)

medically necessary gender-affirming care, that right "is subject to existing laws governing consent to health care for minors and nonminors and does not limit, add, or otherwise affect applicable laws governing consent to health care."[30] In line with California's parental consent laws, healthcare providers, such as the UCLA Gender Health Program, require parental consent for gender-affirming medical treatment.[31] Nothing in SB 107 addresses—let alone modifies—longstanding parental consent requirements in this state.[32]

Moreover, the intent of SB 107 is to empower (not undermine) out-of-state parents seeking medically recommended gender-affirming healthcare for their child. SB 107 "provides parents assurances that, if they come to California with their child to obtain medical care for the child, their *own parental choice* will not be subject to second-guessing by their home state." SB 107 (Wiener) Sen. Jud. Comm. Analysis, at 11 (Aug. 29, 2022) (emphasis added); *see also* SB 107 (Wiener) Assembly Jud. Comm. Analysis, at 10-11 (June 5, 2022) (SB 107 seeks to protect "care that is administered after a patient provides informed consent, *is administered with parental consent*, and is administered under the supervision of a trained medical professional" (emphasis added). Far from undermining parental rights, SB 107 enables parents to pursue gender-affirming healthcare for their child in California without fear of criminal and civil liability in other states.

Fourth, SB 107 does not permit "parental kidnapping . . . for ideological purposes." SAC ¶ 58 (citing SB 107 § 7). As discussed above, section 7 does not address custody determinations at all. SB 107 § 7. It only addresses when a court must decline jurisdiction on one specific basis:

minors living apart from their parents may consent to their own medical care. Cal. Fam. Code §§ 7050(e)(1); 6922(a).

[30] Cal. Welf. & Inst. Code §16010.2(b)(1).

[31] *See* UCLA Gender Health Program, *Health Insurance FAQ*, UCLA (2023), https://www.uclahealth.org/medical-services/gender-health/patient-resources/health-insurance-faq (last visited March 29, 2023) ("Due to California state law, our primary care team cannot provide gender affirming medical treatments without parent/legal caregiver consent. If a patient is legally emancipated or turns 18, they can consent to their own care without parent consent.").

[32] California law allows minors to consent to their own mental health care in certain circumstances, none of which were affected by SB 107. *See* Cal. Fam. Code § 6924(b) (a minor who is 12 years or older may consent to mental health treatment or counseling on an outpatient basis if: (1) the minor, in the opinion of the attending professional person, is mature enough to participate intelligently in the outpatient services and (2) the minor would present a danger of serious physical or mental harm to self or to others without the mental health treatment or counseling or is the alleged victim of incest or child abuse); *see also* Cal. Health & Saf. Code § 124260(b)(1).

19

1   when the person invoking its jurisdiction engaged in unjustifiable conduct. *Id*. Section 7 merely

2   states that when the court evaluates whether a petitioner engaged in "unjustifiable conduct," the

3   court cannot consider the act of bringing a child to California for gender-affirming care when a

4   *parent* is unable to obtain such care for their child in another state. SB 107 § 7. In other words, it

5   provides one example of conduct that does not legally qualify as unjustifiable. *Id*. Notably, even

6   before SB 107 became law, family courts were free to conclude that bringing a child to California

7   for gender-affirming care did not qualify as such conduct.[33] Moreover, section 7 does not affect

8   any other state's jurisdiction (as a home state or otherwise). *Id*.

9         Lastly, there is no merit to Plaintiff's claim that SB 107 "overrides the jurisdiction of courts

10   in a family's home state." SAC ¶ 6. SB 107 did not change the standard for home state

11   jurisdiction or alter the home state priority established by the statutory scheme. *See* Cal. Fam.

12   Code § 3421(a)(1); SB 107 § 4. Section four merely amended the requirements for "significant

13   connection" jurisdiction, which is only relevant when there is no home state or the home state has

14   declined to exercise jurisdiction on the ground that another state is the more appropriate forum.

15   *See* Cal. Fam. Code § 3421(a)(2). Home states maintain exclusive, continuing jurisdiction (except

16   in emergencies), and their child custody determinations cannot be modified by a court of another

17   state (excepting emergencies). *See* Cal. Fam. Code §§ 3422 & 3423. And even emergency

18   situations require deference to home state jurisdiction; any emergency order is temporary, the

19   courts must immediately communicate, and the court claiming emergency jurisdiction gives the

20   petitioner a limited period of time to seek a custody order from the home state court. Cal. Fam.

21   Code § 3424. Temporary emergency jurisdiction does not—and cannot—supplant a child custody

22   determination from a child's home state. *Id*.

23         SB 107 does not violate the right to due process or familial association. The Court should

24   dismiss those claims.

25       **B.    Plaintiff's Full Faith and Credit Claim Fails as a Matter of Law**

26         Plaintiff's assertion that SB 107 violates the Full Faith and Credit Clause also fails as a

27           [33] Plaintiff wrongly asserts that bringing a child to California for gender-affirming care
     was deemed unjustifiable conduct before SB 107 was enacted. SAC ¶ 58. In fact, "unjustifiable
28   conduct" has never been statutorily defined in the UCCJEA or in California's Family Code.

matter of law. According to Plaintiff, SB 107 violates the Full Faith and Credit Clause because it: (1) "was passed as a direct 'policy of hostility' towards statutes passed in other states"; and (2) "unlawfully prohibits the enforcement of an order based upon another state's law authorizing a child to be removed from their parent because the parent allowed the child to undergo gender transitioning surgery."[34] SAC ¶¶ 89, 92. Both claims lack merit.

### 1. SB 107 does not violate the Full Faith and Credit Clause's obligation to respect the final judgments of other states

The Constitution's Full Faith and Credit Clause provides "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof." Art. IV, § 1. Supreme Court jurisprudence "differentiates the credit owed to laws (legislative measures and common law) and to judgments" under the Full Faith and Credit Clause. *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232 (1998). With respect to judgments, "the full faith and credit obligation is exacting. A final judgment in one State . . . qualifies for recognition throughout the land." *Id.* at 233. Subpoenas, however, are not considered final judgments under the Full Faith and Credit Clause. *See, e.g.*, *Hyatt v. State Franchise Tax Bd.*, 105 A.D.3d 186, 198 (N.Y. Supr. Ct. App. Div. 2013) (holding that "the subpoenas are not judgments of the California courts to which full faith and credit must be granted," particularly where "the propriety of the subpoenas was never determined by the courts of California").

SB 107 does not even use the word judgment, let alone require California to ignore a final judgment from a sister state. On the contrary, SB 107 did not change California's legal obligations to recognize and enforce child custody determinations made by other states. *See, e.g.*, Cal. Fam. Code § 3443 (California courts "shall recognize and enforce a child custody determination of a court of another state"); *see also id.* §§ 3446 ("A court of this state shall recognize and enforce, but may not modify . . . a registered child custody determination of a court

---

[34] Plaintiff also claims that SB 107 violates the Full Faith and Credit Clause "by taking away other states' rightful jurisdiction for any child visiting California" who seeks gender-affirming care. SAC ¶ 95. This assertion is addressed in section II.A., *infra*.

1  of another state."); 3453 (California courts "shall accord *full faith and credit* to an order issued by

2  another state" and "enforce a child custody determination made by a court of another state unless

3  the order has been vacated, stayed, or modified by a court having jurisdiction to do so")

4  (emphasis added). SB 107 does not violate California's obligation under the Full Faith and Credit

5  Clause to respect the final judgments of other states.

6         **2.**    **SB 107 permissibly furthers California's legitimate public policy**

7        In contrast to final judgments, the Full Faith and Credit Clause gives states some flexibility

8  when it comes to recognizing out-of-state statutes. The Full Faith and Credit Clause "does not

9  require a State to substitute for its own statute, applicable to persons and events within it, the

10  statute of another State reflecting a conflicting and opposed policy." *Franchise Tax Bd. of Cal. v.*

11  *Hyatt*, 578 U.S. 171, 176 (2016) (internal citation omitted). States need not "apply another State's

12  law that violates its '"own legitimate public policy."' *Id*. at 177 (internal citations omitted). This

13  is known as the public policy exception. The public policy exception is well established in

14  Supreme Court jurisprudence. *Id; see also Alaska Packers Ass'n v. Indus. Acc. Comm'n of Cal.*,

15  294 U.S. 532, 549–50 (1935) (acknowledging the importance of a state's public policy and

16  holding that "[n]o persuasive reason is shown for denying to California the right to enforce its

17  own laws in its own courts" and that "the full faith and credit clause does not require that the

18  statutes of Alaska" trump California's laws). SB 107 properly establishes California's public

19  policy of protecting transgender teenagers and their families receiving medically necessary (and

20  lawful) healthcare in our state.

21        One limit to the public policy exception is that states may not evince "a policy of hostility

22  toward" another state. *Hyatt*, 578 U.S. at 176 (cleaned up). In *Hyatt*, for example, the Nevada

23  Supreme Court applied a "special and discriminatory rule" by awarding $1 million dollars in

24  damages to a Nevada taxpayer in a lawsuit against a California agency. *Id*. at 175, 178. That

25  award far exceeded the maximum damages of $50,000 that could have been awarded in similar

26  circumstances against a Nevada agency, and the ruling ignored both Nevada's and California's

27  rules for immunity. *Id*. at 178. Because the Nevada Supreme Court treated a California agency

28  differently than it would have treated a Nevada agency in similar circumstances, Nevada

1 exhibited a "policy of hostility" towards California. *Id*. at 176; *see also Broderick v. Rosner*, 294

2 U.S. 629, 642-43 (1935) (finding a policy of hostility when a state statute would permit

3 enforcement of certain claims in that state but deny enforcement of similar, valid claims under a

4 sister state's law); *Hughes v. Fetter*, 341 U.S. 609, 611-12 (1951) (invalidating a Wisconsin

5 statute that barred wrongful death actions when the death occurred in other states but permitted

6 them for deaths that occurred in Wisconsin).

7       SB 107 does not resemble the actions challenged in *Hyatt*, *Broderick*, or *Hughes*. It does

8 not create a "special and discriminatory rule" towards a specific sister state while simultaneously

9 disregarding California's own legal standards. Nor does it treat similar claims differently,

10 depending on which state is asserting the claim. On the contrary, California has consistently

11 permitted gender-affirming care for minors, and SB 107 merely creates legal safeguards for

12 transgender teenagers and their families who choose to come to California to obtain care that is

13 legal here. SB 107 establishes California's public policy of protecting individuals within our

14 borders from being penalized or prosecuted by other states for providing or receiving gender-

15 affirming healthcare. The California Legislature's considered determination is well within the

16 Full Faith and Credit Clause's public policy exception. *See, e.g.*, *Pink v. A.A.A. Highway Exp.*,

17 314 U.S. 201, 210 (1941) (The Full Faith and Credit Clause is not a "means for compelling one

18 state wholly to subordinate its own laws and policy concerning its peculiarly domestic affairs to

19 the laws and policy of others.").

20       **3.**    **The Full Faith and Credit Clause does not require California to**

21                **apply an out-of-state law that violates California's public policy in California court proceedings**

22       Plaintiff singles out section 8 in particular as running afoul of the Full Faith and Credit

23 Clause. SAC ¶¶ 92, 94. That section states:

24     A law of another state that authorizes a state agency to remove a child from their parent or
    guardian based on the parent or guardian allowing their child to receive gender-affirming

25     health care or gender-affirming mental health care is against the public policy of this state
    and shall not be enforced or applied in a case pending in a court in this state.

26

27 SB 107 § 8. Plaintiff claims that section 8 "unlawfully prohibits the enforcement of an *order*

28 based upon another state's law authorizing a child to be removed from their parent because the

1   parent allowed the child to undergo gender transitioning surgery." SAC ¶ 92 (emphasis added).

2   But another state's *law* is different from a state court *order* enforcing that law. For nearly a

3   century, the Supreme Court has consistently held that the Full Faith and Credit Clause permits

4   states to apply their own laws in their own courts, and does not require subordinating their

5   domestic laws to those of other states. *See Franchise Tax Bd. of Cal.*, 578 U.S. at 176; *Alaska*

6   *Packers Ass'n*, 294 U.S. at 549-50; *Pink*, 314 U.S. at 210. Section 8's application to other states'

7   laws—and not to final judgments premised on those laws—falls squarely within this line of

8   precedent.

9       In support of this argument, Plaintiff cites an out-of-circuit case, *Finstuen v. Crutcher*, 496

10   F.3d 1139 (10th Cir. 2007). SAC ¶ 94. But that case does not help Plaintiff. In *Finstuen*, the

11   Tenth Circuit confirmed that "[i]n applying the Full Faith and Credit Clause, the Supreme Court

12   has drawn a distinction between statutes and judgments." *Finstuen*, 496 F.3d at 1152. The Full

13   Faith and Credit Clause "applies unequivocally to judgments of sister states, [but] it applies with

14   less force to their statutory laws." *Id*. In light of that critical distinction, the Tenth Circuit held

15   that "final adoption orders and decrees are judgments that are entitled to recognition by all other

16   states under the Full Faith and Credit Clause." *Id*. at 1156. But nothing in *Finstuen* suggests that

17   California must apply another state's laws in its own court proceedings.

18       Because SB 107 furthers California's legitimate public policy and does not impact

19   California's recognition of final judgments from other states, it does not run afoul of the Full

20   Faith and Credit Clause.

21       **C.    Plaintiff's Facial Challenge to SB 107 Fails as a Matter of Law**

22       As a final matter, Plaintiff's facial challenge to SB 107 should be dismissed. Plaintiff

23   "seeks declaratory relief holding SB 107 unconstitutional . . ." SAC ¶ 10; *see also* Prayer for

24   Relief (requesting "an order declaring SB 107 unconstitutional"). But Plaintiff cannot meet the

25   high bar for invalidating a statute on its face. "A facial challenge to a legislative Act is . . . the

26   most difficult challenge to mount successfully, since the challenger must establish that no set of

27   circumstances exists under which the Act would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745

28   (1987). The Supreme Court reaffirmed the *Salerno* standard earlier this year. *See Hansen*, 143

S.Ct. at 1939 ("litigants mounting a facial challenge to a statute normally must establish that *no set of circumstances* exists under which the statute would be valid." (citing *Salerno*) (emphasis original). The fact that a law "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Salerno*, 481 U.S. at 745 (holding that respondents "failed to shoulder their heavy burden to demonstrate" that the law was unconstitutional on its face). "Facial challenges are disfavored" because they "often rest on speculation" and "they raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Wash. St. Grange*, 552 U.S. at 450.

Plaintiff speculates that SB 107 will result in "a flood of children" fleeing to California to obtain gender-affirming care that their parents oppose. SAC ¶ 53. For the many reasons outlined above, this fear is unjustified, implausible, and entirely unmoored from the actual statutory language. Such unfounded speculation is also legally insufficient to strike down SB 107 in its entirety. In this facial challenge, Plaintiff must establish that SB 107 "is unconstitutional in all of its applications." *Wash. St. Grange*, 552 U.S. at 449. Plaintiff does not come close to such a showing. The Court can—and should—dismiss on this basis as well. *See, e.g., Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 444, 453 (9th Cir. 2019) (affirming district court dismissal because plaintiff could not show "that no set of circumstances exists under which the [Ordinance] would be valid.") (internal citations omitted); *Nguyen v. City of Buena Park*, No. 8:20-cv-00348-JLS-ADS, 2020 WL 5991616, at *7 (C.D. Cal. Aug. 18, 2020) (granting motion to dismiss equal protection and due process claims because "Plaintiffs cannot allege that no set of circumstances exists under which the Ordinances would be valid" among other reasons).

## CONCLUSION

Plaintiff has already amended its Complaint twice, and it has failed to establish standing, state a claim, or carry its heavy burden on a facial challenge to a statute. The Court should dismiss the SAC with prejudice.

Dated:  September 5, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California
KATHLEEN BOERGERS
Supervising Deputy Attorney General

*/s/ Nimrod Pitsker Elias*
NIMROD PITSKER ELIAS
LILY WEAVER
NATALIE TORRES
Deputy Attorneys General
*Attorneys for Defendant Rob Bonta,*
*Attorney General of California*

OK2023900104
91672578.docx

Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss SAC
(2:23-cv-00422-DAD-DB)