Mariah Gondeiro, Esq., CA Bar No. 323683
mgondeiro@faith-freedom.com
Julianne Fleischer, Esq., CA Bar No. 337006
jfleischer@faith-freedom.com
Bethany Onishenko, *pro hac vice*
bonishenko@faith-freedom.com
ADVOCATES FOR FAITH & FREEDOM
25026 Las Brisas Road
Murrieta, California 92562
Telephone:     (951) 600-2733
Facsimile:      (951) 600-4996

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OUR WATCH,** a California non-profit organization;<br><br>              Plaintiff,<br><br>     vs.<br><br>**ROB BONTA**, the attorney general of California;<br><br>              Defendants. | Case No.:  2:23-CV-00422-DAD-DB<br><br>**PLAINTIFF OUR WATCH'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date:    October 17, 2023<br>Time:               1:30 p.m.<br>Dept.:              Courtroom 4<br>Judge:             Hon. Dale A. Drozd |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 2

III. LEGAL STANDARD ......................................................................................... 8

IV. ARGUMENT ...................................................................................................... 9

    A.    Plaintiff Has Standing To Challenge SB 107 ........................................ 9

        1.    Plaintiff has Article III standing ................................................. 9

        2.    Third-party standing does not apply here. ................................13

    B.    Plaintiff Alleges Cognizable Claims For Relief ........................13

        1.    Plaintiff alleges facts that show that SB 107 violates parental rights in violation of the Fourteenth Amendment..........13

        2.    Plaintiff alleges facts that show that SB 107 violates the right to familial association under the Fourteenth Amendment and First Amendment ................................................................18

        3.    Plaintiff alleges facts to show that SB 107 Violates the Full Faith and Credit Clause ............................................................19

        4.    Plaintiff's facial challenge is meritorious ..................................24

V. CONCLUSION ..................................................................................................25

1

**TABLE OF AUTHORITIES**

2

Cases

3

*Alaska Packers Ass'n v. Indus. Acc. Comm'n*,
4    294 U.S. 532 (1935) .................................................................................................. 24

5   *Animal Legal Def. Fund v. United States Dep't of Agric.*,
    223 F. Supp. 3d 1008 (C.D. Cal. 2016) ...............................................................10, 11

6   *Baker by Thomas v. Gen. Motors Corp.*,
    522 U.S. 222 (1998) ............................................................................................. 20, 21

7   *BASF Corp. v. Cesare's Collision Repair & Towing, Inc.*,
    364 F. Supp. 3d 1115 (E.D. Cal. 2019) ...................................................................... 9

8   *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
    481 U.S. 537 (1987) .................................................................................................. 18

9   *Broderick v. Rosner*,
    294 U.S. 629 (1935) .................................................................................................. 23

10  *Burke v. County of Alameda*,
    586 F.3d 725 (9th Cir. 2009) .............................................................................. 15, 16

11  *Calabretta v. Floyd*,
    189 F.3d 808 (9th Cir. 1999) .................................................................................... 18

12  *City of Chicago v. Morales*,
    527 U.S. 41 ................................................................................................................ 24

13  Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,
    *657 F.3d 936 (9th Cir. 2011)* .................................................................................... 12

14  *Council of Ins. Agents & Brokers v. Molasky–Arman*,
    522 F.3d 925 (9th Cir. 2008) .................................................................................... 10

15  *Countrywide Home Loans, Inc. v. U.S. ex rel. I.R.S.*,
    No. CVF026405 AWISMS, 2005 WL 1355440 (E.D. Cal. Apr. 29, 2005) ............... 9

16  *E. Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) .................................................................................... 13

17  El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review,
    *959 F.2d 742 (9th Cir. 1991)* .................................................................................... 12

18  Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC,
    *666 F.3d 1216 (9th Cir. 2012)* ................................................................................. 12

19  *Fair Hous. of Marin v. Combs*,
    285 F.3d 899 (9th Cir. 2002) ...................................................................................... 9

20  *Fauntleroy v. Lum*,
    210 U.S. 230 (1908) .................................................................................................. 20

21  *Finstuen v. Crutcher*,
    496 F.3d 1139 (10th Cir. 2007) ................................................................................ 20

22  *Franchise Tax Bd. of California v. Hyatt*,
    139 S. Ct. 1485 (2019) .............................................................................................. 21

23  *Franchise Tax Board v. Hyatt*,
    578 U.S. 171 (2016) .................................................................................................. 21

24  Garcia v. City of Los Angeles,
    *611 F. Supp. 3d 941 (C.D. Cal. 2020)* .................................................................... 12

25  *Hughes v. Fetter*,
    341 U.S. 609 (1951) .................................................................................................. 23



28

MEMORANDUM OF POINTS AND AUTHORITIES

*Janklow v. Planned Parenthood*,
  517 U.S. 1174 (1996) ............................................................................... 24
*Keates v. Koile*,
  883 F.3d 1228 (9th Cir. 2018) ................................................................ 19
*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .................................................................. 18
*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014).................................................................. 8
*Mann v. Cnty. of San Diego*,
  907 F.3d 1154 (9th Cir. 2018) ................................................................ 15
*Meyer v. Nebraska*,
  262 U.S. 390 (1923) ................................................................................ 14
*Parham v. J.R.*,
  442 U.S. 584 (1979) ................................................................................ 15
*People for the Ethical Treatment of Animals v. U.S. Dept. of Agriculture*,
  797 F.3d 1087 (D.C. Cir. 2015) ............................................................. 10
*Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*,
  268 U.S. 510 (1925) ........................................................................... 1, 14
*Planned Parenthood v. Casey*,
  505 U.S. 833 (1992) ................................................................................ 24
*Preminger v. Peake*,
  552 F.3d 757 (9th Cir. 2008) .................................................................... 9
*Reno v. Flores*,
  507 U.S. 292 (1993) ................................................................................ 24
*Roberts v. Corrothers*,
  812 F.2d 1173 (9th Cir. 1987).................................................................. 8
*Roberts v. U.S. Jaycees*,
  468 U.S. 609 (1984) ................................................................................ 18
*Rodriguez v. City of San Jose*,
  930 F.3d 1123 (9th Cir. 2019)................................................................... 9
*Rogers v. County of San Joaquin*,
  487 F.3d 1288 (9th Cir. 2007) ................................................................ 15
*Sessions v. Morales–Santana*,
  137 S. Ct. 1678 (2017) ............................................................................ 13
*Sierra Club v. Bosworth*,
  510 F.3d 1016 (9th Cir. 2007) ................................................................ 24
*Smith v. Pac. Properties & Dev. Corp.*,
  358 F.3d 1097 (9th Cir. 2004) ........................................................... 10, 12
*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979) .................................................................... 8
*Troxel v. Granville*,
  530 U.S. 57 (2000) ......................................................................... 1, 14, 17
*U. S. v. Salerno*,
  481 U.S. 739 (1987) ........................................................................... 24, 25
*Valle del Sol Inc. v. Whiting*,
  732 F.3d 1006 (9th Cir. 2013) ........................................................... 10, 12
*Wallis v. Spencer*,
  202 F.3d 1126 (9th Cir. 2001)........................................................... passim



iii

MEMORANDUM OF POINTS AND AUTHORITIES

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003)..................................................................8
*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) ...............................................................................25
*Washington v. Glucksberg*,
   521 U.S. 702 (1997) ...............................................................................14
*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
   135 F.3d 658 (9th Cir. 1998) ...................................................................9

Statutes

42 U.S.C. § 1983 .........................................................................................18
California Civil Code § 56.10(b)(7) ..............................................................4
California Civil Code § 56.109 .....................................................................4
California Family Code §§ 3400-3465 ..........................................................5
California Family Code § 3421 .....................................................................5
California Family Code § 3421(d) .................................................................5
California Family Code § 3424 ......................................................................6
California Family Code § 3424(a) ..................................................................6
California Family Code § 3424(b-c) .............................................................14
California Family Code § 3424(b-d) .............................................................14
California Family Code § 3424(d) ................................................................14
California Family Code § 3427 ......................................................................7
California Family Code § 3428 ......................................................................7
California Family Code § 6910, 6911 ............................................................6
California Family Code § 6911 ......................................................................6
California Family Code, § 3424(b) ..........................................................6, 14
California Health & Safety Code § 123105 ....................................................4
California Health & Safety Code § 123110 ....................................................4
California Health & Safety Code § 123115(a)(2) ......................................4, 14
California Health & Safety Code § 124260(b)............................................6, 7
California Welfare and Institutions Code § 16001.9(a) ..................................6
California Welfare and Institutions Code § 16010.2 ......................................6
Code of Civil Procedure § 2029.300 .............................................................4
U.S. Constitution Article XIV ......................................................................14

Other Authorities

California Senate Bill 107 .....................................................................passim
South Dakota HB 1080 ................................................................................22
Utah SB 16 ..................................................................................................22



MEMORANDUM OF POINTS AND AUTHORITIES

# I. INTRODUCTION

The right of parents to raise their children is one of the most fundamental and long-standing constitutional rights. *See, e.g., Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925) ("The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); *Troxel v. Granville*, 530 U.S. 57, 72-73 (2000) ("[A] State [may not] infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made."). California Senate Bill 107 ("SB 107") is an explicit and radical assault on sacred parental rights and the comity between states.

SB 107 violates the fundamental right of parents to direct the care and upbringing of their child by allowing minors to obtain reassignment treatment like harmful puberty blockers, cross-sex hormones, and irreversible surgeries without parental consent, while denying parents access to their child's medical information. The bill also requires the State of California to exercise jurisdiction over minors present in the state seeking gender reassignment treatment. SB 107 also violates the Full Faith and Credit Clause to the United States Constitution, by overriding the jurisdiction of courts in a family's home state, which are usually the proper forum for custody determinations.

Defendant Rob Bonta ("Defendant" or "State") attempts to dismiss Plaintiff's lawsuit, claiming it does not have standing to challenge SB 107 and fails to state a claim for relief. The Court should deny the motion for two reasons.

First, Plaintiff has adequately alleged facts establishing organizational standing, rendering any third-party standing concerns meritless. Plaintiff has standing because it has diverted organizational resources to address the effects of SB 107, including implementing education programs and designing and disseminating literature and podcasts to reach churches and parents outside of California.

Second, Plaintiff alleges cognizable claims under the Due Process Clause, First Amendment, and Full Faith and Credit Clause, as SB 107 violates fundamental parental rights,

MEMORANDUM OF POINTS AND AUTHORITIES

including the right to direct the care and upbringing of their children and the right to familial association, and upends comity between the states.

Accordingly, this Court should deny the State's motion to dismiss.

## II. FACTUAL BACKGROUND

Plaintiff Our Watch With Tim Thompson ("Our Watch" or "Plaintiff") is a California 501(c)(3) organization dedicated to restoring Christian-Judeo values in government and education. Verified Second Amended Complaint ("VC"), ¶ 11, ECF No. 25. Our Watch is also committed to tackling major cultural issues that violate Christian-Judeo values, including the sexual indoctrination of children, transgenderism, critical race theory, and abortion. *Id.*, ¶ 12.

Our Watch has been directly harmed by SB 107. Our Watch has had to divert organizational resources to address the effects of SB 107, such as staff time and money, from its local issues to address the nationwide effects of SB 107. *Id.*, ¶ 16. It now spends less time and money on local issues affecting parents like school policies and topics like critical race theory because it is a small organization with small resources. *Id.*

Our Watch has diverted resources to address SB 107 by preparing written educational materials and hosting conferences and online training. *Id.* These trainings require staff to divert their attention from the local issues to prepare for the online trainings, conduct research, and coordinate speakers who can discuss the effects of SB 107, such as legislators, teenagers who have de-transitioned, and medical professionals. *Id.* Our Watch also plans to expend money on conferences to connect key stakeholders who are also fighting against the devastating effects of SB 107, which will result in a further diversion of resources from its locally driven events and conferences. *Id.*, ¶ 17.

**Gender Dysphoria In Children**

Multiple studies have found that approximately 80-95% of children who experience gender dysphoria ultimately find comfort with their biological sex and cease experiencing gender dysphoria as they age if they are not encouraged to pursue gender identity treatments. *Id.*, ¶ 21. Given the lack of evidence on long-term outcomes and divergent views on this sensitive issue, the

World Health Professional Association for Transgender Health ("WPATH"), a transgender advocacy organization, recommends that health professionals defer to parents "as they work through the options and implications," even if they ultimately "do not allow their young child to make a gender-role transition." *Id.*, ¶ 25.

Many clinics in the United States are quick to offer irreversible medical treatment, including puberty blocking hormones and gender reassignment surgeries, to kids who would otherwise outgrow their gender confusion. *Id.*, ¶ 26. These treatments are offered despite known long-term and often irreversible side effects. *Id.* For example, puberty blocking hormones can permanently alter neurodevelopment, sexual function, and bone development in children. *Id.*, ¶ 27. Further, it has been suggested that puberty suppression may alter the course of gender identity development, essentially "locking in" a gender identity that may have reconciled with biological sex during the natural course of puberty. *Id.* There is no doubt that gender reassignment surgery causes life-long, irreversible side effects in children. *Id.*, ¶ 28. Girls as young as 14 can have their breasts permanently cut off. *Id.* Young girls are left with permanent scars and disfigurement and a lack of function and sensation in their breasts. *Id.*

**Senate Bill 107**

On September 29, 2022, Governor Gavin Newsom signed into law SB 107, rendering California a sanctuary state for child mutilation. *Id.*, ¶ 34. The law allows minor children from any state to obtain puberty blockers and cross-sex hormones and undergo irreversible surgeries without parental involvement. *Id.*

SB 107 was initially drafted by Senator Scott Wiener "in response to recent executive and legislative action in states like Alabama and Texas" that have banned minors from receiving sterilizing puberty blockers, cross-sex hormones, and transgender surgeries or that have labeled these treatments as child abuse. *Id.*, ¶ 35. Governor Newsom signed SB 107 into law because "[s]tates across the country [were] passing laws to demonize the transgender community…." *Id.*, ¶ 38. The bill is a direct attack on the laws and policies of other states like Alabama and Texas. *Id.*



**SB 107's Amendments to California Law**

Section 1 of SB 107 amends California Civil Code § 56.109 to require doctors to "release medical information related to a person or entity allowing a child to receive gender-affirming health care or gender-affirming mental health care in response to any civil action, including a foreign subpoena…" SB 107 § 1(a). The term "person" relative to this statute is defined expansively and ambiguously to include an individual, governmental subdivision, agency, or instrumentality. VC, ¶ 44. The expansive definition of a "person" protects government entities, including foster care, shielding them from civil action should they improperly subject a child to transgender treatment. *Id.*

Section 1 also mandates that doctors conceal a child's medical information from "persons or entities…who are authorized by law to receive that information", "in response to any civil action, including a foreign subpoena, based on another state's law that authorizes a person to bring a civil action against a person or entity that allows a child to receive gender-affirming health care or gender-affirming mental health care." SB 107 § 1(b). This provision makes no exception for custodial parents in another state requesting access to such information.[1]

Section 2 of SB 107 amends Code of Civil Procedure § 2029.300. This section is designed to permit litigants in other states to obtain records and discovery from persons in California for evidentiary purposes of litigation in the parties' home state. VC, ¶ 46. Section 2 blocks the receipt of certain records from California for use in other states' actions: "no subpoena shall be issued pursuant to this section if the foreign subpoena is based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care." SB 107 § 2(e).

---

[1] California law generally gives parents access to their children's medical records. *See* Cal. Health & Saf. Code §§ 123105 & 123110; *see also* Cal. Civ. Code § 56.10(b)(7)). However, California law provides exceptions, such as when "the health care provider determines that access to the patient records requested by the representative would have a detrimental effect on the provider's professional relationship with the minor patient or the minor's physical safety or psychological well-being." Cal. Health & Saf. Code § 123115(a)(2). This section may be utilized in tandem with SB 107 to prevent parental access to medical records.

The result of Section 2 is two-fold. First, if the foreign subpoena requests records related to "sensitive services," the potential respondent cannot comply regardless of any agreement or court order to the contrary. *Id.* § 2.5(e)(2). Second, Section 2 forbids a potential respondent from providing documents and records if the foreign subpoena is "based on a violation of another state's laws that interfere with a person's right to allow a child to receive gender-affirming health care or gender-affirming mental health care." *Id.* § 2(e). A "person" is ambiguously defined and could include a schoolteacher, a court-appointed counsel, a trans advocate, or a neighbor. VC, ¶ 47.

Sections 4, 5, 6, and 7 of SB 107 amend California's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")[2]. SB 107 §§ 4, 5, 6, and 7. Currently, 49 states have enacted the UCCJEA to prevent parents from crossing state lines to avoid custody orders and visitation orders from their home state. VC, ¶ 49.  SB 107 disrupts this multi-state law and renders all non-Californian custody agreements illusory. *Id.* SB 107 carves out substantial changes to the standardized Act that has served to protect parents and the best interests of children for close to two decades. *Id.* Any exception to this well-established Act allows states to pit their custody laws against each other for political gain. *Id.*

Section 4 of SB 107 amends Section 3421 of the Family Code, which grants California courts jurisdiction to make the initial child custody agreements in certain circumstances. VC, ¶ 50. Generally, there needs to a sufficient nexus between the state of California and the parents or the child for California courts to have control. *Id.* SB 107 turns the UCCJEA on its head, as no nexus is needed for California to take jurisdiction. *Id.*

The language of Section 4 states in relevant part: "The presence of a child in this state for the purpose of obtaining gender-affirming health care or gender-affirming mental health care as, defined by paragraph (3) subdivision (b) of Section 106010.2 of the Welfare and Institutions Code, is sufficient to meet the requirements of paragraph (2) of subdivision (a)." SB 107 § 4; *see also*

---

[2] California's version of the UCCJEA is currently codified at California Family Code §§ 3400-3465. SB 107 was passed despite concerns that it violated the Uniform Child Custody Jurisdiction Enforcement Act. The California Family Council posted footage of the CA Public Safety Committee hearing concerning SB 107 and the UCCJEA. It is available here: https://www.youtube.com/watch?v=A-Lf3X6-og0.

MEMORANDUM OF POINTS AND AUTHORITIES

Cal. Fam. Code §3421(d). This amendment gives California courts jurisdiction over the child to make initial custody determinations regardless of whether there is a sufficient nexus. VC, ¶ 51. The bill only requires that the child – not the child and parents – be present in California for the purpose of obtaining gender-affirming health care or gender-affirming mental health care. *Id.*

The UCCJEA also uniformly recognizes the need to protect children in emergency situations no matter where they are located when the emergency arises. VC, ¶ 51. Thus, the UCCJEA gives courts temporary emergency jurisdiction when a child is in the state and an emergency makes it necessary to protect the child because the child, or a sibling or parent of the child, is subjected to, or threatened with, mistreatment or abuse. UCCJEA § 204; *see also* Cal. Fam. Code § 3424(a).

Section 5 of SB 107 amends Family Code Section 3424 to expand the circumstances under which a California court may take "temporary emergency jurisdiction" over a child. SB 107 § 5. SB 107 now "provides that a court of this state has temporary emergency jurisdiction over a child if the child is present in the state because the child has been unable to obtain gender-affirming health care or gender-affirming mental health care." VC, ¶ 53. There is no evidence that gender reassignment care is an exigent need. *Id.*

Pursuant to Section 5, California courts have emergency jurisdiction[3] of a child who is present in California, regardless of whether the child's home state permitted gender-affirming care. SB 107 § 5. The law permits California entities, Child and Family Services, foster care, and other non-parents to obtain emergency custody of a child so that the child can override their parent's objections to the gender reassignment treatment. VC, ¶ 54.[4] The minor can avoid any limitations of his or her home state that might require parental consent or a mental health assessment. *Id.*

---

[3] Once emergency jurisdiction is established, the emergency order remains in effect "until an order is obtained from a court of a state having jurisdiction." Cal. Fam. Code, § 3424(b). If no child custody proceeding is commenced in a court of a state having jurisdiction, the emergency order "becomes a final determination… and [California] becomes the home state of the child." *Id*.

[4] While California law generally requires parents to consent to medical treatment for minors (*see* Cal. Code Regs. Tit. 9, § 784.29(a)), there are broad exceptions. For example, children in foster care have a right to receive medical treatment, including transgender healthcare. *See* California Welfare and Institutions Code §§ 16001.9(a), 16010.2. DCFS can consent to treatment for the minor, including surgery if the minor is over 14 years of age (*See* DCFS Child Welfare Policy Manual, available at

The UCCJEA generally allows a court to decline to exercise jurisdiction if the court is an inconvenient forum based on factors such as the location of witnesses, financial hardship to the parties, and the familiarity of a court in another state with the family's background. Cal. Fam. Code § 3427. Section 6 of SB 107 limits the court's discretion in the following manner: "In a case where the provision of gender-affirming health care or gender-affirming mental health care to the child is at issue, a court of this state shall not determine that it is an inconvenient forum where the law or policy of the other state that may take jurisdiction limits the ability of a parent to obtain gender-affirming health care or gender-affirming mental health care for their child." SB 107 § 6.

California law generally prohibits "unjustifiable conduct" to obtain jurisdiction in a California court for custody determinations. Cal. Fam. Code § 3428. Section 7 of SB 107 creates a carve-out from the universal UCCJEA, explicitly stating that the "taking of a child" away "from the person who has legal custody" (i.e the child's parents) is not unjustifiable conduct if done to pursue gender transition procedures in California. SB 107 § 7.

Section 8 of SB 107 prohibits California courts from enforcing "a law of another state that authorizes a state agency to remove a child from their parent or guardian based on the parent or guardian allowing their child to receive gender-affirming health care." SB 107 § 8.

Sections 9 and 10 of SB 107 add to, and amend, sections of the California Penal Code to limit (and in some cases to prevent) California's law enforcement agencies from assisting other states' prosecutions of people involved in providing or seeking gender-affirming care. VC, ¶ 58.

Section 9 declares that "[i]t is the public policy of the state that an out-of-state arrest warrant for an individual based on violating another state's law against providing, receiving, or allowing their child to receive gender-affirming health care or gender-affirming mental health care is the lowest law enforcement priority." SB 107 § 9. Section 9 further states that "California law enforcement agencies shall not knowingly make or participate in the arrest or participate in any

---

https://policy.dcfs.lacounty.gov/). Courts and established guardians can also consent to treatment for the minor. *See* Cal. Fam. Code §§ 6910, 6911. In addition, one parent can consent to treatment for the minor, in defiance of the other parent, and be protected under SB 107. Informed consent can also be waived in emergencies. Cal. Code Regs. tit. 9 § 853. Minors 12 and up do not need parental consent to receive gender-affirming mental health care. *See* Cal. Health & Safety Code § 124260(b).

MEMORANDUM OF POINTS AND AUTHORITIES

extradition of an individual pursuant to an out-of-state arrest warrant for violation of another state's law against providing, receiving, or allowing a child to receive gender-affirming health care . . . if that care is lawful under the laws of this state, to the fullest extent permitted by federal law." *Id*.

Section 9 also prohibits state and local law enforcement agencies from cooperating with or providing information to "any individual or out-of-state agency or department" regarding "lawful gender-affirming health care" performed in California. SB 107 § 9(c). This section protects an out-of-state non-custodial parent who obtains gender reassignment treatment for their minor in California from prosecution because the treatment is lawful in California, even though the treatment may violate an out-of-state custody agreement. VC, ¶ 60.

Section 10 of SB 107 addresses subpoenas in criminal actions, stating that "a provider of health care, health care service plan, or contractor shall not release medical information related to a person or entity allowing a child to receive gender-affirming health care . . . in response to any foreign subpoena that is based on a violation of another state's laws authorizing a criminal action against a person or entity that allows a child to receive gender-affirming care or gender-affirming mental health care." SB 107 § 6.

### III. LEGAL STANDARD

A Fed. R Civ. P. 12(b)(1) motion challenges a court's subject matter jurisdiction either facially, claiming that the facts accepted as true do not establish jurisdiction, or factual, claiming that the facts establishing jurisdiction are not true. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In determining a facial attack, a court must accept the allegations in the complaint as true. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Likewise, in determining a factual attack, "when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim" (*id*. at 1122 n.3), the court "must 'assume [ ] the truth of the allegations in a complaint ... unless controverted by undisputed facts in the record.'" *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). This is a very liberal standard. For a complaint to survive a 12(b)(6) motion, it must allege "enough facts to state a claim to relief that is plausible on its face." *BASF Corp. v. Cesare's Collision Repair & Towing, Inc.*, 364 F. Supp. 3d 1115, 1118 (E.D. Cal. 2019). "A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct." *Id.*

This standard is especially liberal when applied to the constitutional claims alleged in this action, which are governed by Rule 8. Rule 8's burden is "minimal," and requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Countrywide Home Loans, Inc. v. U.S. ex rel. I.R.S.*, No. CVF026405 AWISMS, 2005 WL 1355440, at *3 (E.D. Cal. Apr. 29, 2005) (quotations omitted). "It is the burden of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met." *Id.*

## IV. ARGUMENT

**A.    Plaintiff Has Standing To Challenge SB 107**

    1.    <u>Plaintiff has Article III standing</u>

An organization suing on its own behalf can establish an injury when it suffered "both a diversion of its resources and a frustration of its mission." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). "In other words, an organizational plaintiff must show that the defendant's actions run counter to the organization's purpose, that the organization seeks broad relief against the defendant's actions, and that granting relief would allow the organization to redirect resources currently spent combating the specific challenged conduct to other activities that would advance its mission." *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019). If the injury is particularized, the injury can be "minimal." *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008).

"[A]n identifiable trifle is enough to fight out a question of principle; the trifle is the basis for standing and the principle provides the motivation." *Council of Ins. Agents & Brokers v. Molasky–Arman*, 522 F.3d 925, 932 (9th Cir. 2008).

> *a.    SB 107 frustrates Plaintiff's mission*

The State erroneously contends that Plaintiff's allegations are insufficient to establish standing "because it has not identified any actual injury – in the form of a real-world impediment to Plaintiff's activities – caused by SB 107." State's Motion to Dismiss ("Mot.") at 11, ECF No. 28. But the diversion of resources to counteract the frustration of Our Watch's mission is itself the actual or imminent injury to Our Watch. *See Animal Legal Def. Fund v. United States Dep't of Agric.*, 223 F. Supp. 3d 1008, 1017 (C.D. Cal. 2016) ("[T]he frustration of an organization's mission is the personalized injury that 'forces' the organization to spend money to alleviate the frustration; an organization is only 'choosing' to spend money if the defendant's conduct '[would] not affect the organization at all.'" (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013)); *see also Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (allegations that the organization had to "divert its scarce resources from other efforts to promote awareness of federal and state accessibility laws and to benefit the disabled community in other ways" to "monitor[ing] the violations and educat[ing] the public regarding the discrimination at issue" are sufficient to allege standing).

While the State alleges that it is "easier for service organizations to show standing, as opposed to advocacy organizations like Plaintiff", they cite to no case law to support this proposition. Mot. at 11. Courts have consistently granted organizational standing to advocacy organizations. *See People for the Ethical Treatment of Animals v. U.S. Dept. of Agriculture*, 797 F.3d 1087, 1093–97 (D.C. Cir. 2015) (finding that the Government's refusal to apply the Animal Welfare Act to birds impaired an advocacy organization's mission by preventing the organization from seeking redress for bird abuse, and the organization expended resources to counter these injuries); *Animal Legal Def. Fund v. United States Dep't of Agric.*, 223 F. Supp. 3d 1008, 1015-1018 (C.D. Cal. 2016) (holding that an animal rights advocacy organization had "spent over a

decade pursuing petitions, campaigns…and outreach efforts to address force-fed foie gras" and thus, defendant's decision not to ban force-fed foie gras operated as a "substantial setback to [plaintiff's] goal ... [and] is fairly characterized as 'frustrating' its mission, even if that is only one of several goals pursued by [plaintiff]").

Here, Our Watch alleges that its mission is committed to restoring Christian-Judeo values in government and education, and it does so through "legislative advocacy, research, education of California citizens, and mobilization of California citizens to get involved in community events." *VC*, ¶¶ 11-12. Since 2008, Our Watch has pursued "petitions, campaigns…and outreach efforts to address" parental rights issues. *Animal Legal Def. Fund*, 223 F. Supp. 3d at 1018. SB 107 impaired Our Watch's mission by allowing the State of California to remove children from parental custody in violation of the rights Our Watch seeks to protect. Our Watch had to reform their parental education programs to educate parents and churches about the devasting effects of SB 107. *Id.*, ¶ 15. SB 107 is a "substantial setback" to Our Watch's goal of preserving and protecting parental rights and is thus a frustration of its mission. *See Animal Legal Def. Fund*, 223 F. Supp. 3d at 1018.

Even if courts applied a different test for service-based organizations, Our Watch has alleged that it does provide services. For example, the organization provides research on upcoming statewide bills and local races – issues that are important to Our Watch's members – and provides them with resources to get involved with legislative advocacy. VC, ¶ 13.  It connects them with other organizations who may be scheduling rallies and protests and provides them with vital information on proposed bills and candidates through a biblical vantage point. *Id.*

b.    *SB 107 causes Plaintiff to divert resources*

Contrary to Defendant's claim, Plaintiff is not "simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." Mot. at 13. Rather, the SAC alleges that Our Watch "has diverted resources, such as staff time and money, from its local issues to address the nationwide effects of SB 107." VC, ¶ 16. "It now spends less time and money on local issues affecting parents like school policies and topics like critical race theory because it is a small organization with small resources." Id., ¶ 15. The State ignores that Our Watch's staff had

MEMORANDUM OF POINTS AND AUTHORITIES

"to divert their attention from the local issues to prepare for the online trainings, conduct research, and coordinate speakers who can discuss the effects of SB 107." Id.

SB 107 was the catalyst that forced Our Watch to divert its resources. Id. As soon as SB 107 became law, Our Watch received numerous inquiries and concerns from members across the State of California and country, including parents. Id. The bill's passage prompted the organization to educate parents about how they can protect their children from the danger imposed by SB 107. Id. These claims are not abstract or conjectural.

This significant alteration of resource allocation is more than sufficient to establish an injury-in-fact. See Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1018 (9th Cir. 2013) (finding organizational standing where the plaintiffs "had to divert resources to educational programs to address its members' and volunteers' concerns about the [challenged] law's effect"); Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC, 666 F.3d 1216, 1219 (9th Cir. 2012) (finding organizational standing where the plaintiff, in response to the defendant's challenged practices, "started new education and outreach campaigns targeted at discriminatory roommate advertising"); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 943–44 (9th Cir. 2011) (finding organizational standing where resources directed toward "assisting day laborers during their arrests and meeting with workers about the status of the [challenged] ordinance would have otherwise been expended toward [the advocacy group's] core organizing activities"); Smith v. Pac. Properties & Dev. Corp., 358 F.3d 1097, 1105 (9th Cir. 2004) (finding organizational standing where complaint was dismissed without leave to amend and plaintiff alleged it "divert[ed] its scarce resources from other efforts" so it could "monitor the [subject] violations and educate the public regarding the discrimination"); El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review, 959 F.2d 742, 748 (9th Cir. 1991) (finding organizational standing where plaintiffs "expend[ed] resources in representing clients they otherwise would spend in other ways"). At the pleading stage, "it is enough for [Our Watch] to allege that it spent more resources than it otherwise would have as a result of the [State's] actions." Garcia v. City of Los Angeles, 611 F. Supp. 3d 941, 949 (C.D. Cal. 2020).

---

Because SB 107 frustrates Our Watch's mission and because it was forced to reallocate resources as a result, Plaintiff has standing to challenge the bill.

2.      Third-party standing does not apply here.

Defendant's third-party standing argument lacks merit. Mot. at 14-15. "Ordinarily, a party 'must assert his own legal rights' and 'cannot rest his claim to relief on the legal rights of third parties.'" *Sessions v. Morales–Santana*, 137 S. Ct. 1678, 1689 (2017). Defendants "conflate[] organizational standing with third-party standing." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 664 (9th Cir. 2021) (rejecting Defendants third-party standing argument when Plaintiff had established injury in fact based on organizational standing). Third-party standing is not at issue here, as Our Watch is asserting its own legal rights via organizational standing. While SB 107 does affect the rights of out-of-state parents and other states, it is precisely this effect that has frustrated Our Watch's mission and caused the organization to divert resources – giving Our Watch standing. Accordingly, Plaintiff does not have to satisfy the third-party standing test.

**B.      Plaintiff Alleges Cognizable Claims For Relief**

Plaintiff alleges three valid causes of actions under the Fourteenth Amendment, First Amendment, and Full Faith and Credit Clause. Additionally, Plaintiff's facial challenge to SB 107 is meritorious because SB 107 is unconstitutional in all its applications. The Court should deny Defendant's motion.

1.      Plaintiff alleges facts that show that SB 107 violates parental rights in violation of
        the Fourteenth Amendment

Defendant's erroneously rely on laws pertaining to medical records access and informed consent to suggest that SB 107 does not infringe upon parental rights. Mot. at 16-20. SB 107 labels gender-affirming health care an "emergency," such that emergency treatment may then be provided to the minor without parental consent, or the court may place the minor in foster care or with a guardian who can then consent to medical treatment for the minor.[5] If a parent then sues to right

---

[5] *See* supra fn. 5. Plaintiff does not challenge these statutory exceptions to consent laws, but rather challenges SB 107's policy of labeling gender-affirming health care an "emergency" such that "emergency" treatment may be provided to the minor without parental consent or pursuant to the court's exercise of emergency jurisdiction under SB 107.

these wrongs, SB 107 protects the persons and entities that provided gender-affirming care by concealing the child's medical records from discovery – including from parents. SB 107 §§ 1, 2.[6]

The State's arguments regarding the UCCJEA also do not impact the veracity of Plaintiff's parental rights claims, as an exercise of emergency jurisdiction allows the court to enter emergency orders that remain in effect until a determination is made by another court regardless of home state jurisdiction – giving the child ample time to receive gender-affirming treatment in defiance of parental rights. Mot. at 20; Cal. Fam. Code § 3424(b-c). Additionally, home state and emergency courts must communicate only if there exists a current custody arrangement in another state. Cal. Fam. Code § 3424(d). Notably, this intra-court communication does not hinder the emergency court's ability to issue emergency orders, which remain in effect until the home state issues a differing order. Cal. Fam. Code § 3424(b-d). If no state has issued a custody determination, California courts do not have to communicate with any other court, and its temporary custody determination can ripen into a permanent determination. Cal. Fam. Code § 3424(b).

Plaintiff alleges facts sufficient to show that SB 107 violates fundamental parental rights. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Art. XIV. The Due Process Clause "guarantees more than fair process." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," *Id.* at 720, including "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). These rights have been acknowledged for a century. *See Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925).



---

[6] Additionally, because SB 107 labels gender-affirming care an emergency, doctors can utilize other statutory exceptions to deny parent's access to their child's medical records, including Cal. Health & Saf. Code § 123115(a)(2) which allows the concealment of medical records when "the health care provider determines that access to the patient records requested by the representative would have a detrimental effect on the provider's professional relationship with the minor patient or the minor's physical safety or psychological well-being." Plaintiff does not challenge these exceptions but highlights how SB 107's expansive definition of gender-affirming care and defining such care as an emergency allows doctors and other entities wide latitude to deny parental rights.

"[P]arental consent is critical" in medical procedures involving children "because children rely on parents or other surrogates to provide informed permission for medical procedures that are essential for their care." *Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1162 (9th Cir. 2018) (referencing Am. Academy of Pediatrics, Informed Consent, Parental Permission, and Assent in Pediatric Practice, 95 Pediatrics 314–17 (Feb. 1995) ("It should go without saying that adequate consent is elemental to proper medical treatment.")). "Simply because the decision of a parent is not agreeable to a child or because it involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state… Parents can and must make those judgments," specifically where those decisions are not made in bad faith. *Parham v. J.R.*, 442 U.S. 584, 603 (1979).

A parent is entitled to notice and consent of their child's medical examinations regardless of the procedure used, the environment in which the examination occurs, or whether the child protests the examination. *Mann*, 907 F.3d at 1162. Given the trauma that can be associated with a medical examination, a parent's right to notice and consent is an essential protection for the child and the parent. *Id*. Notice and consent is not required if there is "specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Wallis v. Spencer*, 202 F.3d 1126, 1138 (9th Cir. 2001). "Serious allegations of abuse that have been investigated and corroborated" may give rise to a reasonable inference that children "might again be beaten or molested during the time it would take to get a warrant" unless the official takes the children into emergency custody. *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294-95 (9th Cir. 2007). Lack of health insurance, by contrast, does not provide a reasonable cause to believe a child is in imminent danger. *Id.* at 1296.

Further, because the "scope of the intrusion" must be "reasonably necessary to avert" a specific injury, the intrusion cannot be longer than necessary to avert the injury. *Wallis*, 202 F.3d at 1140–41; *see also Burke v. County of Alameda*, 586 F.3d 725, 730 (9th Cir. 2009) (holding that although the officials had reasonable cause to believe the child was in imminent danger, the

officials may have violated the father's rights because the "scope of the intrusion" may have been greater than necessary to avert the danger to the child). *Id.* at 732–33.

For instance, in *Wallis*, parents challenged the state's decision to illegally remove their children from their custody, place the children in an institution, and conduct intrusive physical examinations on the children without the parents' consent. 202 F.3d at 1131. The government claimed exigent circumstances existed to remove the children from their parents without a court order because the father was going to sacrifice one of the children to Satan on September 21, 1991, a day after the children's seizure. *Id.* at 1140. The Court held there were triable issues of fact as to whether the removal of the children from their mother's custody and subsequent placement in a county institution for an indefinite period was necessary considering there was no evidence of past or future abuse by the mother. *Id.* at 1140-41.

SB 107 is unprecedented in that it allows children to flee to California, become a ward of the state, and obtain life-altering gender reassignment treatment without appropriate parental consent. VC, ¶¶ 41, 46, 55. Notably, the bill's definition of "gender-affirming health care" explicitly grants minors – not their parents – the authority to define what medical interventions are appropriate for them. *Id.,* ¶¶ 41-43. SB 107 then permits doctors to refuse to disclose medical records to parents who rely on another state's laws to bring a civil action – shielding government entities and individuals who improperly subject a child to transgender treatment. *Id.,* ¶¶ 46, 55. Specifically, Sections 1 and 2 prohibit the release of medical information when medical information is sought, including under subpoena, from a medical provider "based on another state's law that authorizes a person to bring a civil action" against the person or entity that allowed or provided gender-affirming care. SB 107 § 1, 2. These sections do not make any exception for custodial parents in another state requesting access to such information.

Section 5 also allows California to retain temporary jurisdiction of a child who desires to pursue gender transition procedures in California. VC, ¶¶ 52-56, 58. California considers gender-affirming health care an emergency, allowing doctors to waive medical consent requirements (or receive consent from the court, foster care, or the minor's guardian) and the state to assert

16

1  emergency jurisdiction of the child. *Id*. The court can then place the child in foster care, where the

2  minor is entitled to receive medical and mental health services –including gender-affirming

3  healthcare without parental consent. *See* Cal. Welf. & Inst. Code § 16001.9 (a).

4      The legislative history of the bill anticipates this grave reality. *See* Request for Judicial

5  Notice, Ex. 1. Even when no emergency exists, if a child is present in the state to receive gender-

6  affirming healthcare, the state may assert jurisdiction pursuant to Section 4 of SB 107 and make

7  an initial custody determination. VC, ¶ 52. Most alarming is that SB 107 requires only "the

8  presence of a child in this state for the purpose of obtaining gender-affirming health care or gender-

9  affirming mental health care" to exercise jurisdiction – not the presence of the child and his or her

10  parents. SB 107 § 4.

11      However, as *Wallis* affirms, exigent circumstances are required to justify the taking of a

12  child, even temporarily, and the existence of reasonable cause is a factual question. 202 F.3d at

13  1138. Indeed, in *Wallis*, the court explained that a father wanting to sacrifice his child was not

14  enough evidence to justify the taking of the children from both parents and subsequent placement

15  in a county institution. *Id.* at 140-41. SB 107 undermines the necessary factual showing required

16  to take a child away from his or her parents and deems gender-affirming care an emergency. VC,

17  ¶¶ 52-56. In other words, a child could live in a safe home with loving parents, but if he or she

18  seeks any type of gender-affirming health care or mental care, California can assert jurisdiction,

19  enable the child to receive treatment, and deny parents access to their child's medical information.

20      SB 107 is even less defensible than the law struck down in *Troxel*, which allowed any

21  person to petition the court for visitation rights at any time if a court determined the visitation was

22  in the child's best interest. 530 U.S. at 60-61. In *Troxel*, the lower court incorrectly placed the

23  burden on the fit custodial parent to disprove that visitation would be in the child's best interest,

24  thereby failing to protect the fundamental right of fit parents to make decisions concerning the

25  rearing of their children. *Id.* at 69-70. SB 107 does not even require a state to determine whether

26  it is in the best interest of the child to undergo gender-affirming care without parental involvement.

27

28

VC, ¶¶ 52-56, 58. And it ostensibly treats any parent denying their child gender-affirming care as unfit.

SB 107 directly interferes with a parent's ability to direct the care, custody, and control of their child. As such, Plaintiff's due process claim satisfies the liberal pleading standard of Rule 8.

2. <u>Plaintiff alleges facts that show that SB 107 violates the right to familial association under the Fourteenth Amendment and First Amendment</u>

Plaintiff also alleges facts that show a violation of the right to familial association. "It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process is remediable under 42 U.S.C. § 1983." *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (cleaned up). "This constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their parents." *Id.* (cleaned up).

"The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141; *Calabretta v. Floyd*, 189 F.3d 808 (9th Cir. 1999) (holding that "[t]he government's interest in the welfare of children embraces not only protecting children from physical abuse, but also protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents.").

Moreover, the First Amendment offers protection to the right to intimate association. *See Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619-20 (1984)). First Amendment protections extend to "family relationships, that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Lee*, 250 F.3d at 685 (quoting *Board of Dirs. of Rotary Int'l*, 481 U.S. at 545).

Ninth Circuit case law clearly establishes that the rights of parents and children to familial association under the Fourteenth and First Amendments are violated if a state official removes

children from their parents without their consent, "unless information at the time of the seizure, after reasonable investigation, establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury, and the scope, degree, and duration of the intrusion are reasonably necessary to avert the specific injury at issue." *Keates v. Koile*, 883 F.3d 1228, 1237–38 (9th Cir. 2018); *see also Wallis*, 202 F.3d at 1138. Otherwise, "a state has no interest whatever in protecting children from parents." *Id.*

As explained above, SB 107 does not require a parent to consent to their child's medical procedure and treats gender-affirming care as an emergency, thereby allowing California to assert emergency jurisdiction over the child. VC, ¶¶ 52-56. Gender-affirming care is not just limited to a physical examination, *Wallis*, 202 F.3d at 1131, but experimental and irreversible medical procedures that could cause permanent scars and disfigurement and permanently alter neurodevelopment, sexual function, and bone development in children. VC, ¶¶ 28-30. SB 107 also treats any parent who denies their child gender-affirming care as unfit, even if the parent is trying to help their child work through their insecurities and vulnerabilities to avoid a potentially irreversible and regrettable decision. *Id.*, ¶¶ 27-28, 32-35, 52-56. The law goes even further by excusing the "taking of the child" away from his or her parents to California to obtain gender-affirming health care and allowing California to nevertheless enter custody orders. SB 107 § 7. Plaintiff has alleged facts sufficient to show that SB 107 is an extreme and unwarranted interference of a parent's right to familial association.

3.   Plaintiff alleges facts to show that SB 107 Violates the Full Faith and Credit Clause

a.   *SB 107 ignores the rightful jurisdiction and judgments of other states*

Defendant's claim that SB 107 "did not change California's legal obligations to recognize and enforce child custody determinations made by other states" is disingenuous and misconstrues Plaintiff's argument. Mot. at 21. Defendants cite a string of family code statutes reflecting that California courts must recognize the custody determinations of other states. *Id.* Here, SB 107 amends California's version of the UCCJEA to directly conflict with nationally accepted UCCJEA and the Full Faith and Credit Clause by overriding the rightful jurisdiction and judgments of courts

MEMORANDUM OF POINTS AND AUTHORITIES

in a family's home state. The UCCJEA is unique precisely because its provisions are uniform among the states. SB 107 disrupts this uniformity and erodes the UCCJEA's efficacy.

Section 4 of the bill amended the California Family Code to state that "the presence of a child" in California "for the purpose of obtaining gender-affirming health care" is sufficient for California courts to exercise jurisdiction over custody decisions for the child. SB 107 § 4. Section 8 of the bill prohibits the enforcement of another state's law authorizing a child to be removed from their parent or guardian based on that parent or guardian allowing their child to receive gender-affirming health care or gender-affirming mental health care. SB 107 § 8.

Section 6 of SB 107 further compounds these problems by stating that, even if California is an "inconvenient forum" compared to another state based on factors like how long the child has lived outside the state, where evidence for the case is located, and where the parties to the case are located, California courts must disregard these important considerations and claim sole jurisdiction if the child's case involves gender identity issues. *Id.*, § 6.

Case law is clear that California cannot disregard the custody jurisdiction and judgments of sister states, as this fails to meet the "exacting" standard of the Full Faith and Credit Clause. Regarding judgments, "the full faith and credit obligation is exacting." *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998). Even if California disagrees with the legal principles underlying a judgment, it still cannot ignore the bounds of the Full Faith and Credit Clause. *See id.* at 232-33 ("[O]ur decisions support no roving 'public policy exception' to the full faith and credit due judgments."); *Fauntleroy v. Lum*, 210 U.S. 230, 236 (1908) ("[T]he judgment of a state court has the same credit, validity, and effect in every other court in the United States, which it had in the state where it was pronounced.").

*Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007) is instructive. Mot. at 24. In *Finstuen*, the court held that an Oklahoma statute preventing recognition of adoptions by same-sex couples was unconstitutional because the Full Faith and Credit Clause required Oklahoma to recognize adoptions, including same-sex couples' adoptions, that were validly decreed in other states, despite the state being opposed to the practice as a matter of policy. 496 F.3d at 1153. *Finstuen* makes

1  clear that while California may disagree with the policies of other states seeking to protect minors

2  from irreversible gender transition procedures, it cannot interfere with or prohibit the enforcement

3  of the custody determinations of those states that were validly decreed. *Id*. Imagine the chaos that

4  would ensue if other states began exercising emergency jurisdiction over children from California

5  every time there was a disagreement over policy matters?  This is precisely what SB 107 attempts

6  to do.

7         SB 107 also prohibits California courts from enforcing subpoenas seeking information

8  about gender-affirming medical care issued by out-of-state courts. SB 107 §§ 1, 2. Yet again, SB

9  107 permits California to impede the judicial proceedings of other states.

10        In sum, SB 107 violates the Full Faith and Credit Clause because California has decided

11  that its courts—not those of the family's home state—should be the final arbiters of whether

12  parents are fit to raise their child. Plaintiff alleges facts sufficient to plead a Full Faith and Credit

13  Clause violation.

14             *b.*        *SB 107 is a "policy of hostility" towards the public acts of other states*

15        Defendants improperly argue that SB 107 falls under the public policy exception to the Full

16  Faith and Credit Clause. Mot. at 22. The U.S. Supreme Court has explained that the Full Faith and

17  Credit Clause demands that state court judgments be accorded full effect in the courts of other

18  states and precludes states from adopting any policy of hostility toward the public acts (i.e. statutes)

19  of another state – regardless of any public policy exception. *Franchise Tax Board v. Hyatt*, 578

20  U.S. 171, 176 (2016) ("Hyatt II");  *Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1497

21  (2019) ("Hyatt III"); Mot. at 21-22.

22         For example, in *Hyatt II*, the Court found that Nevada had adopted a policy of hostility

23  when it applied a special rule of applicability to California but not the principles of Nevada law

24  ordinarily applicable to suits against Nevada's own agencies. 578 U.S. at 178-80. In applying its

25  own rules, Nevada cited concerns that California's conflicting statute failed to provide "adequate

26  recourse" to Nevada's citizens. *Id.* at 178. The Court noted that this concern was not sufficient to

27  overcome the full faith and credit obligation and held that, "in devising a special – and hostile –

28

rule for California, Nevada has not sensitively applied principles of comity with a healthy regard for California's sovereign status." *Id.* at 180 (internal quotation omitted).

SB 107 was passed as a policy of hostility toward transgender statutes and polices of other states, as evidenced by the statements of both State Senator Scott Wiener and Governor Gavin Newsom. State Senator Wiener, the sponsor of SB 107, stated that he drafted SB 107 "in response to recent executive and legislative action in states like Alabama and Texas." VC, ¶¶ 37, 40, Ex. 1. Governor Newsom similarly commented that he was signing SB 107 into law because "[s]tates across the country [were] passing laws to demonize the transgender community." *Id.*, ¶ 40.

True to word, California specifically exempted children obtaining gender-affirming care from its general rule that the state should not consider the taking or retention of a child from a person who has legal custody. *Id.*, ¶ 58. Thus, just like in *Hyatt II*, where Nevada applied a special rule of applicability to California, California has created a special carve-out from its general jurisdiction rule to allow the "taking of a child" if done to pursue gender transition procedures in California, while overlooking other egregious violations that could warrant the "taking of a child", such as sexual abuse. SB 107 § 7. This rule unjustifiably ignores the proper and rightful jurisdiction of the child's home state. VC, ¶¶ 51-58.

Further, SB 107 attempts to impermissibly trump the laws of other states regarding gender-reassignment treatment and custody determinations. *Id.*, 89-90. For example, South Dakota HB 1080 and Utah SB 16 ban gender reassignment surgery and hormone treatments for minors. SB 107 will allow California doctors to provide gender reassignment treatments to minors who still live in another state. California doctors, via telehealth appointments, will be able to prescribe cross-sex hormones to a child in South Dakota or Utah in hostile disregard of the full faith and credit obligation that a state defer to other states' laws and jurisdictions. Further, if South Dakota or Utah parents seek to hold California doctors accountable pursuant to their state's laws, SB 107 would shield medical professionals from the reaches of South Dakota's and Utah's conflicting laws.

SB 107 "close[s] the door of [California's] courts to the cause of action" created by other state statutes in favor of its own policies. *Hughes v. Fetter*, 341 U.S. 609, 611-612 (1951)

(invalidating a Wisconsin statute that "close[d] the doors of its courts" to an Illinois cause of action); *Broderick v. Rosner*, 294 U.S. 629, 642–43 (1935) (finding a policy of hostility when a state statute would permit enforcement of certain claims in that state but deny enforcement of similar claims under a sister state's law). In the same vein as *Hughes* and *Broderick*, SB 107 unlawfully prohibits causes of actions based upon another state's law authorizing a child to be removed from their parent because the parent allowed the child to undergo gender transitioning surgery. SB 107 § 8. The bill also prevents law enforcement from carrying out their duties by executing an out-of-state warrant, and hospitals cannot respond to a subpoena requesting medical information of a child receiving gender-affirming care. *Id.*, §§ 2, 9, 10.

California's policy might pass constitutional muster if the state applied the same rules consistently. But similar to the special carve-out rule regarding jurisdiction, SB 107 also exempts law enforcement from its general duty to facilitate out-of-state warrants if the warrant relates to gender-affirming care. *Id.*, § 9. California "cannot escape th[e] constitutional obligation to enforce the rights and duties validly created under the laws of other states…." *Hughes*, 341 U.S. at 611.

Finally, when statutes conflict, the Full Faith and Credit Clause often affords states the right to implement their own statutes; however, when a state's statute infringes on a constitutional provision, upends rules of comity, or the "governmental interest" of one jurisdiction far outweighs that of another, a state must subordinate its statute to that of the other state. *See Alaska Packers Ass'n v. Indus. Acc. Comm'n*, 294 U.S. 532, 547 (1935); *see also Broderick v. Rosner*, 294 U.S. 629, 643 (1935) ("For the States of the Union, the constitutional limitation imposed by the full faith and credit clause abolished, in large measure, the general principle … by which local policy is permitted to dominate rules of comity.").

Here, SB 107 infringes upon parental rights and violates the governmental interests of other states. California claims the bill is intended to protect minors by "creat[ing] legal safeguards for transgender youth and their families", but it actually harms children. Mot. at 23. Research shows that social transitions of minors are significant psychotherapeutic interventions that merit parental involvement. VC, ¶¶ 26-30. Research shows that these procedures have life-altering side-effects.

1   *Id.*, ¶¶ 28-30.  It has also been reported that children regretted undergoing life-altering gender

2   reassignment treatment. *Id.*, ¶¶ 32-35. The interests of states like Alabama and Texas therefore

3   preempt the interests of California.

4         In sum, SB 107 was passed in direct hostility to the laws of other states, rendering

5   California law sovereign over all other states on issues of transgenderism and closing the doors of

6   California courts to the causes of action created by other states to protect minors from experimental

7   transgender treatments. Plaintiff alleges facts sufficient to show that the bill directly disregards the

8   principles of comity which lie at the heart of the Full Faith and Credit Clause.

9         4.    Plaintiff's facial challenge is meritorious

10        Defendants argue that Plaintiff's challenge to SB 107 fails as a matter of law because it is

11  too speculative and thus fails to show that under "no set of circumstances" is SB 107 constitutional.

12  Mot. at 25 (citing *U. S. v. Salerno*, 481 U.S. 739, 745 (1987). Preliminarily, it is unclear whether

13  *Salerno*'s "no set of circumstances" test is valid law. *See, e.g., City of Chicago v. Morales*, 527

14  U.S. 41, 55 n. 22 (1999) (plurality opinion) ("To the extent we have consistently articulated a clear

15  standard for facial challenges, it is not the Salerno formulation, which has never been the decisive

16  factor in any decision of this Court."); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1023 (9th Cir.

17  2007) ("Jurisprudence appears to be divided on the question whether the Salerno "no set of

18  circumstances" standard is dicta or whether it is to be generally applied to facial challenges.");

19  *Janklow v. Planned Parenthood*, 517 U.S. 1174, 1175 (1996) (Stevens, J., respecting denial of

20  cert.) (calling Salerno "draconian" and containing "rigid and unwise dictum" that the Court

21  properly had ignored). Notably, the Court has refused to apply the "no set of circumstances" test

22  to facial challenges in some instances. *See Planned Parenthood v. Casey*, 505 U.S. 833 (1992).

23        Regardless of whether the test applies, Plaintiff meets its burden because Plaintiff's claims

24  are not speculative and are rooted in the plain text of SB 107. In a facial constitutional challenge,

25  it is enough that "[w]e have only the [statute] itself" and the "statement of basis and purpose that

26  accompanied its promulgation." *Reno v. Flores*, 507 U.S. 292, 300–01 (1993).

27

28

24

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's allegations show that SB 107 tramples on constitutional guarantees to parental rights and full faith and credit. The text of SB 107 explicitly permits children to flee –without their parents' consent – to California to obtain gender-affirming care. SB 107 §§ 4, 5. California courts can then exercise jurisdiction over the child present in California, with or without his/her parents, for purposes of obtaining gender-affirming healthcare. *Id*. When parents seek to hold the state accountable, SB 107 permits concealment of medical records from discovery – including from parents. *Id.* §§ 1, 2. The bill also excuses "the taking of a child" away from his or her parents when determining whether to exercise jurisdiction over a child. *Id.* § 7. The bill further bars compliance with out of subpoenas and arrest warrants. *Id.* §§ 2, 9, 10.

The text of the bill clearly infringes upon constitutional guarantees "in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). Under "no set of circumstances" is the taking of a child away from his or her parents for experimental treatments and surgeries constitutional. *Salerno*, 481 U.S. at 745.

### V. CONCLUSION

For the foregoing reasons, this Court should deny Defendant's motion to dismiss.

Respectfully submitted,

ADVOCATES FOR FAITH & FREEDOM

Dated:  September 26, 2023

By: /s/Bethany Onishenko
   Bethany Onishenko
   Attorney for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES