UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR WATCH WITH TIM THOMPSON,<br><br>    Plaintiff,<br><br>    v.<br><br>ROB BONTA,<br><br>    Defendant. | No.  2:23-cv-00422-DAD-DB<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND CLOSING THIS CASE<br><br>(Doc. Nos. 28, 30) |

This matter came before the court on October 17, 2023 for a hearing on defendant's motion to dismiss plaintiff's second amended complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. No. 28.)  Attorney Bethany Onishenko appeared by video on behalf of plaintiff.  Deputy Attorney General Nimrod Elias appeared by video on behalf of defendant.  For the reasons explained below, defendant's motion will be granted.

**BACKGROUND**

Plaintiff Our Watch with Tim Thompson ("Our Watch"), an advocacy organization "dedicated to protecting family and parental rights in California," brought this action against the Attorney General of California to challenge the constitutionality of California Senate Bill 107 ("SB 107"), a state law pertaining to gender-affirming mental health care.  (Doc. No. 25 at ¶ 8.)

On July 18, 2023, the court issued an order granting defendant's motion to dismiss plaintiff's first amended complaint ("FAC"), with leave to amend.  (Doc. No. 22.)  In that order,

1

the court detailed the legal standards for Article III organizational standing and identified several deficiencies in plaintiff's allegations, which fell short of satisfying those standing requirements. (*Id.*)  Because the court found that plaintiff lacked standing to bring this action against defendant, the court did not address the parties' 12(b)(6) arguments in that order.  (*Id.* at 20.)

On August 1, 2023, plaintiff filed the operative second amended complaint ("SAC"), bringing the same three claims under 42 U.S.C. § 1983 that it had brought in the FAC: (1) violation of the Due Process Clause of the Fourteenth Amendment; (2) violation of the right to familial association under the First and Fourteenth Amendments; and (3) violation of the Full Faith and Credit Clause of Article IV of the U.S. Constitution.  (Doc. No. 25.)  The substantive allegations as to these claims remain the exact same in the SAC as they were in the FAC. (*Compare* Doc. No. 10 *with* Doc. No. 25.)  Accordingly, the court incorporates by reference herein the analysis of those allegations and the background section contained in its July 18, 2023 order.  (Doc. No. 22 at 1–5.)

The only changes that plaintiff made between the FAC and the SAC are modifications to its allegations made in seven paragraphs under the heading "Parties–Plaintiffs."  (Doc. No. 25 at 4–5; SAC at ¶¶ 11–17.)  The changes include the following.  In the SAC, plaintiff no longer alleges that "SB 107 conflicts with Our Watch's mission . . . by stripping parents of custody." (FAC at ¶ 12.)  Plaintiff also no longer alleges that it is "committed to protecting . . . religious

/////
/////
/////
/////
/////
/////
/////
/////
/////

liberty, and the right to life across California." (FAC at ¶ 11.)[1]  Instead, plaintiff alleges in its SAC that Our Watch's "mission is to restore Christian-Judeo values in government and education," and it "is committed to tackling major cultural issues that violate Chistian-Judeo values." (SAC at ¶¶ 11–12.)  Specifically, Our Watch now alleges that it "tackles these issues by hosting speakers at church and on its podcast, organizing events and conferences, sending letters to elected officials, organizing rallies, and researching issues that affect its mission and members, who are primarily comprised of Christians and parents." (SAC at ¶ 12.)  Plaintiff also alleges that its "members look to Our Watch to help them get involved in local and state-wide advocacy," and it "provides research on upcoming statewide bills and local races—issues that are important to Our Watch's members—and provides them with resources to get involved with legislative advocacy," including "connect[ing] them with other organizations who may be scheduling rallies

---

[1] In the SAC, plaintiff also no longer alleges the following paragraphs which were included in the FAC:

> Since the enactment of SB 107, Our Watch has diverted resources from its other focus areas like critical race theory and abortion rights to counteract the harms to parental rights resulting from SB 107. The organization has implemented new educational outreach programs both inside and outside of California and even funded de-transitioning teenagers to come on the organization's podcast to speak on the issue.

> Our Watch has also diverted resources, so it can reach parents and churches in other states through its podcast and literature. Specifically, Our Watch has hired individuals to warn parents and churches in California and outside of California about the devastating effects of SB 107 and to explain how parents and churches can protect their children.

> SB 107 was the primary catalyst that prompted Our Watch to focus nearly exclusively on educating parents and churches about transgender issues and the effect on parental rights. The bill has caused Our Watch to divert time and attention from its other focus areas and activities like legislative advocacy. Thus, Our Watch is not just continuing with normal business. Although counteracting SB 107 aligns with Our Watch's mission, the bill has caused Our Watch to shift its focus from education of California residents to education of both in state and out of state residents. The bill has also caused Our Watch to divert time and attention from other issues, causes, and activities that align with its mission.

(FAC at ¶¶ 13–15.)

and protests and provides them with vital information on proposed bills and candidates through a biblical vantage point." (SAC at ¶¶ 12–13.) The SAC also includes the following new allegations:

> Although Our Watch has been committed to addressing the issue of transgenderism through its podcast, educational materials (i.e., newsletter), and legislative advocacy, transgenderism is now a more prominent focal point in its day-to-day operations. SB 107 was the primary catalyst that prompted Our Watch to divert its attention to transgender issues because it received numerous inquiries and concerns from members across the state of California and country, including parents. The bill's passage prompted the need to educate parents and churches about the devasting effects of SB 107 and how parents and the church can protect children.
>
> Specifically, Our Watch has diverted resources, such as staff time and money, from its local issues to address the nationwide effects of SB 107. It now spends less time and money on local issues affecting parents like school policies and topics like critical race theory because it is a small organization with small resources. It has diverted resources to address SB 107 by preparing written educational materials and hosting conferences and online training. The online trainings require staff to divert their attention from the local issues to prepare for the online trainings, conduct research, and coordinate speakers who can discuss the effects of SB 107, such as legislators, teenagers who have de-transitioned, and medical professionals.
>
> Our Watch also plans to expend money on conferences to connect key stakeholders who are also fighting against the devastating effects of SB 107, such as organizations, ministries, politicians, and parents. The conferences will require Our Watch to divert resources, such as staff time and money, from its locally driven events and conferences. Like the online training, the conferences will help Our Watch educate key stakeholders on how to combat SB 107 and protect children. The conferences will include speakers like medical professionals, parents, legislators, and teenagers who have de-transitioned.

(SAC at ¶¶ 15–17.)

On September 5, 2023, defendant filed the pending motion to dismiss plaintiff's SAC pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that plaintiff still fails to satisfy Article III organizational standing requirements and to state a cognizable claim. (Doc. No. 28.) Plaintiff filed its opposition to the pending motion on September 26, 2023, along with a request that the court take judicial notice of the California

/////

4

Assembly Committee on Judiciary Analysis of SB 107, Issued June 8, 2022.[2] (Doc. Nos. 29, 30). On October 10, 2023, defendant filed his reply in support of the pending motion. (Doc. No. 31.)

## LEGAL STANDARD[3]

**A.      Motion to Dismiss Pursuant to Rule 12(b)(1)**

"Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions." *Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Program*, 443 F. Supp. 3d 1152, 1156 (E.D. Cal. 2020) (citing *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994)), *aff'd*, 997 F.3d 848 (9th Cir. 2021).  Federal courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Subject matter jurisdiction is required; it cannot be forfeited or waived. *Howard Jarvis Taxpayers Ass'n*, 443 F. Supp. 3d at 1156.  Indeed, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may "challenge a federal court's jurisdiction over the subject matter of the complaint." *Nat'l Photo Grp., LLC v. Allvoices*, *Inc.*, No. 3:13-cv-03627-JSC, 2014 WL 280391, at *1 (N.D. Cal. Jan. 24, 2014).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

/////

---

[2] Having reviewed plaintiff's request for judicial notice, which defendant does not oppose, the court finds that the California Assembly Committee on Judiciary Analysis of SB 107, Issued June 8, 2022, is the proper subject of judicial notice and thus will grant plaintiff's request. *See* Fed. R. Evid. 201(b)–(c); *Anderson v. Holder*, 673 F.3d 1089, 1094 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice."); *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1083 n.3 (9th Cir. 2022) (taking judicial notice of a document obtained from an official government website).

[3] This order does not address the legal standard governing consideration of motions to dismiss brought under Rule 12(b)(6) because, as explained below, the court does not reach defendant's 12(b)(6) arguments.

1   Here, because defendant argues that the allegations in plaintiff's SAC are insufficient for
2   the invocation of federal jurisdiction over plaintiff's claims, defendant mounts a facial attack
3   under Rule 12(b)(1).
4   A party making a facial attack does not submit supporting evidence with the motion
5   because jurisdiction is challenged based solely on the pleadings. *Howard Jarvis Taxpayers Ass'n*,
6   443 F. Supp. 3d at 1156; *see also Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d
7   1074, 1084 (N.D. Cal. 2019) ("[C]ourts do not consider evidence outside the pleadings when
8   deciding a facial attack.") (citation omitted). "The district court resolves a facial attack as it
9   would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and
10  drawing all reasonable inferences in the plaintiff's favor, the court determines whether the
11  allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*,
12  749 F.3d 1117, 1121 (9th Cir. 2014). However, the court need not assume the truth of legal
13  conclusions cast in the form of factual allegations. *Warren v. Fox Family Worldwide, Inc.*, 328
14  F.3d 1136, 1139 (9th Cir. 2003).

**B.      Article III Standing**

16  "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the
17  threshold requirement imposed by Article III of the Constitution by alleging an actual case or
18  controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also Matter of East
19  Coast Foods, Inc.,* 66 F.4th 1214, 1218 (9th Cir. 2023) (Because "standing is an 'essential and
20  unchanging' requirement . . . a party must establish an Article III case or controversy before we
21  exert subject matter jurisdiction.") (citations omitted); *City of Oakland v. Lynch*, 798 F.3d 1159,
22  1163 (9th Cir. 2015) ("A suit brought by a plaintiff without Article III standing is not a 'case or
23  controversy,' and Article III federal courts lack subject matter jurisdiction over such suits.")
24  (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)). An actual case or
25  controversy will be held to exist when a plaintiff establishes standing. *Lujan v. Defs. of Wildlife*,
26  504 U.S. 555, 560 (1992).
27  "[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is
28  sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or

6

1  hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is
2  'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d
3  974, 985 (9th Cir. 2007) (*en banc*) (citing *Lujan*, 504 U.S. at 560–61).  "Standing must be shown
4  with respect to each form of relief sought, whether it be injunctive relief, damages or civil
5  penalties."  *Id*.  "[T]o establish standing to pursue injunctive relief . . . [plaintiff] must
6  demonstrate a real and immediate threat of repeated injury in the future."  *Chapman v. Pier 1*
7  *Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation omitted).

8  "To determine whether organizational standing requirements have been satisfied, [courts]
9  'conduct the same inquiry as in the case of an individual:  Has the plaintiff alleged such a
10  personal stake in the outcome of the controversy as to warrant his invocation of federal-court
11  jurisdiction?'"  *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662 (9th Cir. 2021) (quoting
12  *Havens Realty Corp*. *v*. *Coleman*, 455 U.S. 363, 378–79 (1982)).  "Organizations can assert
13  standing on behalf of their own members, or in their own right." *E. Bay Sanctuary Covenant*, 993
14  F.3d at 662 (internal citations omitted); *see also Rodriguez v. City of San Jose*, 930 F.3d 1123,
15  1134 (9th Cir. 2019) ("[A]bsent a member with standing, . . . an organizational plaintiff 'may
16  have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever
17  rights and immunities the association itself may enjoy.'") (quoting *Am. Fed'n of Gov't Emps.*
18  *Local 1 v. Stone*, 502 F.3d 1027, 1032 (9th Cir. 2007)).

19  Here, plaintiff does not assert standing on behalf of its members and instead asserts only
20  that it has standing to bring this action in its own right.  (*See, e.g.*, Doc. No. 29 at 18) (explaining
21  that "Our Watch is asserting its own legal rights via organizational standing").

22  An organization has standing on its own behalf if it can show:  (1) that the defendant's
23  actions have frustrated its mission; and (2) that it has spent resources counteracting that
24  frustration.  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013); *see also E. Bay*
25  *Sanctuary Covenant*, 993 F.3d at 663.  "Of course, organizations cannot 'manufacture the injury
26  by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise
27  would not affect the organization at all[.]'"  *E. Bay Sanctuary Covenant*, 993 F.3d at 663 (quoting
28  *La Asociacion de Trabajadores de Lake Forest v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir.

2010)). Rather, an organizational plaintiff must "show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 974 (9th Cir. 2020) (quoting *La Asociacion*, 624 F.3d at 1088). Thus, "[a]n organization may sue only if it was *forced* to choose between suffering an injury and diverting resources to counteract the injury." *La Asociacion*, 624 F.3d at 1088 n.4 (emphasis added).

**ANALYSIS**

In the pending motion, defendant argues that plaintiff's SAC must be dismissed pursuant to Rule 12(b)(1) for the same reasons that the court dismissed plaintiff's FAC; namely, "[p]laintiff lacks Article III standing because SB 107 did not impede any of plaintiff's organizational activities or functions." (Doc. No. 28 at 17.) Defendant contends that plaintiff has still not met the requirements for organizational standing because it "has not identified any actual injury—in the form of a real-world impediment to plaintiff's activities—caused by SB 107." (*Id.* at 18.) Defendant acknowledges that the SAC specifies some examples of plaintiff's activities (hosting speakers, organizing events and conferences, sending letters to elected officials, organizing rallies, and researching issues), but defendant argues that this additional detail is insufficient to satisfy the frustration-of-mission requirement because "plaintiff does not—and cannot—allege that any of these activities have been impaired in any way by SB 107." (*Id.* at 18–19.) Defendant emphasizes that "[n]one of plaintiff's services, activities, functions, or funding have been impaired in any way by SB 107," and "plaintiff's philosophical disagreement with SB 107 and its voluntary choice to spend money opposing it 'is not a golden ticket to obtaining Article III standing.'" (*Id.* at 8) (quoting Doc. No. 22 at 19).

Defendant further argues that plaintiff still has not alleged facts satisfying the forced-diversion-of-resources requirement, even though the SAC now alleges that Our Watch "has diverted resources, such as staff time and money, from its local issues to address the nationwide effects of SB 107" and "now spends less time and money on local issues affecting parents like school policies and topics like critical race theory because it is a small organization with small resources." (Doc. No. 28 at 19.) Defendant contends that these allegations are insufficient for the

same reason that the court found the allegations of plaintiff's FAC to be insufficient for purposes of organizational standing: these allegations provide "no basis upon which to conclude that plaintiff's alleged diversion of resources was in any way forced." (*Id.* at 19–20) (quoting Doc. No. 22 at 13). Moreover, defendant notes that some of plaintiff's allegations of diversion of resources are inadequate because plaintiff alleges planned expenditures in the future, e.g., plaintiff "plans to expend money on conferences"; that is, the diversion has not yet even occurred according to plaintiff's own allegations. (*Id.* at 19, n. 18.) Defendant stresses that plaintiff has now had three attempts to sufficiently allege its standing to bring this action, and plaintiff has persistently failed "to identify any injury that it would have suffered 'if it had not diverted resources to counteracting the problem.'" (*Id.* at 20) (quoting *La Asociacion*, 624 F.3d at 1088).

The court is persuaded by defendant's arguments, many of which closely track the court's analysis and conclusions set forth in its July 18, 2023 order dismissing plaintiff's FAC due to lack of Article III standing. Plaintiff's opposition to the pending motion, on the other hand, largely ignores the court's prior analysis and doubles down on its conclusory arguments. At the hearing on the pending motion, plaintiff's counsel merely reiterated the arguments that plaintiff advanced in its opposition brief and maintained that, under its view of organizational standing requirements, to show that its organizational activities have been impeded by SB 107, plaintiff need only allege that it is spending less money on other efforts. Plaintiff is incorrect as a matter of law.

In its opposition, plaintiff reasserts (often verbatim) the same arguments it had presented in its opposition to the prior motion to dismiss and that the court already addressed and rejected in its order granting that prior motion to dismiss. (Doc. No. 29 at 15–16.)[4] As for its frustration of mission, plaintiff again merely argues that "the diversion of resources to counteract the frustration of Our Watch's mission is itself the actual or imminent injury to Our Watch." (Doc. No. 29 at 15.)

---

[4] Relatedly, plaintiff reasserts arguments that are based on allegations that were indeed omitted from the SAC. For example, plaintiff again contends that "SB 107 impaired Our Watch's mission by allowing the State of California to remove children from parental custody in violation of the rights Our Watch seeks to protect" (Doc. No. 29 at 16), but plaintiff no longer alleges that "SB 107 conflicts with Our Watch's mission . . . by stripping parents of custody," which plaintiff had alleged in the FAC, (FAC at ¶ 12).

9

However, addressing this very argument in its prior order, the court had stated:

> While the Ninth Circuit has held that "[a]n organization suing on its own behalf can establish an injury when it suffered both a diversion of its resources and a frustration of its mission," plaintiff conveniently glosses over the well-established corollary to this principle: that such an organizational plaintiff "may only sue if it was forced to choose between suffering an injury and diverting resources to counteract the injury." *La Asociacion*, 624 F.3d at 1088 & 1088 n.4 (internal quotation marks omitted). It would appear obvious that to hold otherwise "would effectively nullify the constitutional requirements for standing" because it would, in essence, allow an organization to manufacture standing simply by perfunctorily assigning itself a broad organizational mission and "investigating conduct or starting a new campaign against someone who frustrates [that] general mission." *In Def. of Animals*, 2021 WL 4243391, at *4 (explaining that such an outcome "would be inconsistent with the constitutional minimum for standing, as there is no injury that is 'fairly traceable' to the defendant's conduct [because] the plaintiff's own choice causes the injury").

(Doc. No. 22 at 17.) For this same reason, plaintiff's argument again fails.

Further, in its prior order the court also explained that "plaintiff once again ignores binding Ninth Circuit precedent providing that in order for such a plaintiff to have standing, that organizational plaintiff must also 'show that it would have suffered some other injury if it had not diverted resources to counteracting the problem.'" (*Id.* at 18) (quoting *La Asociacion*, 624 F.3d at 1088). Rather than address this deficiency head on in its opposition to the pending motion, plaintiff has merely copied and pasted the same paragraph from its opposition to the prior motion to dismiss filed in this action. (*Compare* Doc. No. 29 at 15 *with* Doc. No. 15 at 14.)

Moreover, although in its opposition brief plaintiff uses the term "counteract" when presenting its argument—i.e., the diversion of resources to *counteract* the frustration of Our Watch's mission—the SAC does not actually employ the term "counteract" at all. Nor does plaintiff's SAC use terms such as "combat" or "alleviate," even though these three terms appear in the decisions cited by the parties and the court in its prior order. For example, an organizational plaintiff "may only sue if it was forced to choose between suffering an injury and diverting resources *to counteract the injury*." *La Asociacion*, 624 F.3d at 1088 (emphasis added). Despite plaintiff's characterization in its opposition brief, the allegations in the SAC use the term "address," as shown in the following allegations from the SAC:

10

- Our Watch "has had to divert organizational resources *to address* the effects of SB 107, including implementing education programs and designing and disseminating literature and podcasts to reach churches and parents outside of California." (SAC at ¶ 8.)
- "Our Watch has diverted resources, such as staff time and money, from its local issues *to address* the nationwide effects of SB 107." (SAC at ¶ 16.)
- "It has diverted resources *to address* SB 107 by preparing written educational materials and hosting conferences and online training." (*Id.*)

Contrary to plaintiff's characterization, "[a]ddressing" the effects of SB 107 is clearly not synonymous with counteracting an injury caused by SB 107.  Plaintiffs have simply not alleged facts to show that it was forced to divert staff time and resources away from "local issues" because if it had decided not to "divert" such resources, it would have suffered some other injury. Plaintiff does not even attempt to explain how "addressing" the effects of SB 107 constitutes "counteracting" or "combating" an injury that it would otherwise suffer.

Indeed, the court's prior order explained that plaintiff needed to allege "how SB 107's enactment specifically impacts the organization's functions" as opposed to alleging "facts suggesting that its values have been undermined by SB 107." (Doc. No. 29 at 16.)  Plaintiff did not meaningfully address this deficiency in the SAC either.  In its opposition brief, plaintiff contends that "SB 107 was the catalyst that forced Our Watch to divert its resources" (*id.* at 17), but the allegations relied upon to support this contention do not employ the term "forced" or even suggest force.  Rather, plaintiff merely alleges that SB 107 "prompted" its diversion of resources:

> SB 107 was the primary catalyst that *prompted* Our Watch to divert its attention to transgender issues because it received numerous inquiries and concerns from members across the state of California and country, including parents.  The bill's passage *prompted* the need to educate parents and churches about the devasting effects of SB 107 and how parents and the church can protect children.

(SAC at ¶ 15) (emphasis added).  According to its own allegations, plaintiff's decision to place more focus and correspondingly commit more of its resources to "transgender issues" (at the expense of "local issues") was a voluntary decision—not a forced one.  Plaintiff does not allege

11

what injury it would have suffered if it had instead decided to continue spending the same amount of time and money on "local issues affecting parents like school policies and topics like critical race theory." (SAC at ¶ 16.) As defendant emphasizes in his reply brief, "[p]laintiff has not—and cannot—point to any harm that it would have suffered from SB 107 had it not voluntarily chosen to divert its resources." (Doc. No. 31 at 5.)

In sum, plaintiff has again failed to adequately allege facts sufficient to satisfy the established requirements for organizational standing. Accordingly, defendant's motion to dismiss plaintiff's SAC due to plaintiff's lack of Article III standing will be granted. Further, the court finds that the granting of further leave to amend would be futile under the circumstances, given that plaintiff has already been given an opportunity to amend its allegations to cure the deficiencies the court had identified in its prior order, and plaintiff failed to do so.[5] Thus, defendant's motion to dismiss will be granted, without leave to amend.

## CONCLUSION

For the reasons stated above:

1. Plaintiff's request for judicial notice (Doc. No. 30) is granted;
2. Defendant's motion to dismiss plaintiff's second amended complaint due to plaintiff's lack of Article III standing (Doc. No. 28) is granted, without leave to amend;

---

[5] The court's prior order noted the following with regard to leave to amend:

> The court notes that plaintiff has already amended its complaint in this action once, and the court is doubtful that plaintiff will be able to remedy the deficiencies described in this order. The court's doubts in this regard are based in part upon plaintiff's apparent position at the hearing on the pending motions that, in order to have standing, plaintiff need not allege anything more than a vague mission and a voluntary diversion of resources. Nonetheless, out of an abundance of caution, and because defendant does not assert that it will be unduly prejudiced by allowing plaintiff to file a second amended complaint, the court will grant plaintiff leave to amend. *See Nat'l Council of La Raza*, 800 F.3d at 1041 ("It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile.").

(Doc. No. 22 at 20.)

3. This action is dismissed;

4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**April 8, 2024**__

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

13